No. 25-5694

In the

# United States Court of Appeals
## for the Sixth Circuit

FEDEX CORP. AND SUBSIDIARIES,

*Plaintiff-Appellee,*

v.

UNITED STATES,

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Western District of Tennessee, Case No. 2:20-cv-02794,
Hon. Samuel H. Mays, *United States Senior District Judge*

**PLAINTIFF-APPELLEE FEDEX CORP.'S RESPONSE BRIEF**

Joseph B. Judkins
George M. Clarke
Cameron C. Reilly
BAKER & MCKENZIE LLP
815 Connecticut Ave., NW
Washington, DC 20006

Shay Dvoretzky
  *Counsel of Record*
Rajiv Madan
Christopher P. Bowers
Parker Rider-Longmaid
Joshua G. Rabon
Sylvia O. Tsakos
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Plaintiff-Appellee FedEx Corp. and Subsidiaries*

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 25-5694          Case Name: FedEx Corp. v. United States

Name of counsel: Shay Dvoretzky

Pursuant to 6th Cir. R. 26.1, FedEx Corporation
*Name of Party*

makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No. FedEx Corporation is publicly traded on the New York Stock Exchange (Symbol: FDX).

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

### CERTIFICATE OF SERVICE

I certify that on _____ March 23, 2026 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Shay Dvoretzky

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

- i -

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ................................................................................. i

TABLE OF AUTHORITIES ............................................................................... vi

STATEMENT REGARDING ORAL ARGUMENT ........................................ xv

GLOSSARY ...................................................................................................... xvi

INTRODUCTION ..............................................................................................1

STATEMENT OF ISSUES..................................................................................8

PERTINENT STATUTES AND REGULATIONS ............................................9

STATEMENT OF THE CASE ............................................................................9

     A.    Legal background .........................................................................9

          1.    The FTC regime allows U.S. corporations to claim credits for foreign taxes paid by their foreign affiliates. ................................................................................9

          2.    Subpart F requires U.S. shareholders to pay taxes on certain foreign earnings and provides special rules for claiming FTCs associated with those earnings. ..........13

          3.    Congress enacts the TCJA, incentivizing taxpayers to repatriate their CFCs' foreign earnings and imposing a one-time tax on CFCs' net accumulated earnings.............................................................................17

          4.    The operation of § 960(a)(3) allows taxpayers to claim FTCs when they have offset earnings......................21

5. Dissatisfied with the operation of §§ 960 and 965, Treasury promulgates the Disallowance Rule, purporting to exercise its policy judgment to bar taxpayers from claiming FTCs that § 960(a)(3) allows. ...................................................................23

B. Factual and procedural background ............................................24

1. FedEx and its affiliates operate a global transportation, e-commerce, and business services company...................................................................24

2. FedEx receives distributions of foreign earnings during its fiscal year 2018...................................................25

3. FedEx claims a tax refund based on its entitlement to FTCs under § 960(a)(3), and sues in district court........26

4. The district court holds that FedEx is entitled to FTCs, and thus a refund, under § 960(a)(3) and that the Disallowance Rule is invalid because it purports to override the statute.......................................................30

SUMMARY OF ARGUMENT .........................................................................33

STANDARD OF REVIEW.................................................................................38

ARGUMENT ......................................................................................................38

A. Section 960(a)(3)'s plain text allows taxpayers to claim FTCs on offset earnings. .................................................................38

1. Statutory interpretation starts with the text and ends there when the text is clear, and interpreting the Tax Code is no different..............................................38

2. Section 960(a)(3)'s plain text allows taxpayers to claim FTCs on offset earnings.............................................40

B. Section 960(a)(3)'s plain text makes clear that FedEx is entitled to claim FTCs on its offset earnings. .............................42

C. The government's counterarguments fail. ...................................43

1. Section 965(o) does not authorize Treasury to override the text of § 960(a)(3) or any other Code provision. ................................................................................44

a. Section 965(o) authorizes Treasury to issue regulations to prevent the avoidance of the purposes of § 965, but that isn't an authorization to rewrite the Code. ...........................45

b. Section 965(g) doesn't grant Treasury a license to rewrite the Code. ...................................................51

c. Interpreting § 960(a)(3) as allowing taxpayers to claim FTCs for offset earnings isn't "bizarre," and the government's view raises serious concerns. .........................................................54

2. The government's assertion that §§ 7805(a) and 902(c)(8) authorized Treasury to promulgate the Disallowance Rule is incorrect.............................................56

3. The government incorrectly claims that §§ 965(b)(4)(A) and 960(a)(3) disallow FTCs for offset earnings. ...................................................................57

CONCLUSION...................................................................................................61

CERTIFICATE OF COMPLIANCE.................................................................63

**TABLE OF CONTENTS**
(continued)

<b>Page</b>

CERTIFICATE OF SERVICE.................................................................64

ADDENDUM ...................................................................Add.1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Air Alliance Houston v. EPA,*
  906 F.3d 1049 (5th Cir. 2018)..................................................56

*Allegheny Defense Project v.*
  *Federal Energy Regulatory Commission,*
  964 F.3d 1 (D.C. Cir. 2020) (en banc) .......................................46, 57

*American Hospital Ass'n v. Becerra,*
  596 U.S. 724 (2022).................................................................47

*Apache Corp. v. Commissioner,*
  165 T.C. No. 11 (Nov. 13, 2025).............................................37, 61

*Audio Technica U.S., Inc. v. United States,*
  963 F.3d 569 (6th Cir. 2020) ....................................................61

*Babb v. Wilkie,*
  589 U.S. 399 (2020).................................................................38

*Bais Yaakov of Spring Valley v. FCC,*
  852 F.3d 1078 (D.C. Cir. 2017) ............................................53, 54

*Burnet v. Chicago Portrait Co.,*
  285 U.S. 1 (1932)......................................................................10

*Cboe Global Markets, Inc. v. SEC,*
  155 F.4th 704 (D.C. Cir. 2025) .................................................50

*Central Bank of Denver, NA v.*
  *First Interstate Bank of Denver, NA,*
  511 U.S. 164 (1994).................................................................50

*Chrysler Corp. v. Commissioner,*
  436 F.3d 644 (6th Cir. 2006) ...............................................51, 52

*City of Tucson v. Commissioner,*
  820 F.2d 1283 (D.C. Cir. 1987) ................................................61

*Connecticut National Bank v. Germain,*
  503 U.S. 249 (1992).................................................................38

Page(s)

*Contender Farms, LLP v. USDA*,
779 F.3d 258 (5th Cir. 2015) ..................................................................56, 57

*Cook v. Tait*,
265 U.S. 47 (1924)..................................................................................10

*Crooks v. Harrelson*,
282 U.S. 55 (1930)..................................................................................54

*Davenport v. Lockwood, Andrews & Newnam, Inc.*,
854 F.3d 905 (6th Cir. 2017) ................................................................38

*Department of Navy v. Federal Labor Relations Authority*,
975 F.2d 348 (7th Cir. 1992)..................................................................56

*Eaton Corp. v. Commissioner*,
47 F.4th 434 (6th Cir. 2022) ..................................................................59

*First City Bank v. National Credit Union Administration Board*,
111 F.3d 433 (6th Cir. 1997) ................................................................38

*Gitlitz v. Commissioner*,
531 U.S. 206 (2001)................................................................................52

*Gulf Fishermens Ass'n v. National Marine Fisheries Service*,
968 F.3d 454 (5th Cir. 2020) ..........................................................46, 57

*Hanover Bank v. Commissioner*,
369 U.S. 672 (1962)................................................................................53

*Heard v. Strange*,
127 F.4th 630 (6th Cir. 2025) ..........................................................2, 48

*Heating, Air Conditioning, & Refrigeration
Distributors International v. EPA*,
71 F.4th 59 (D.C. Cir. 2023)..................................................................46

*Helvering v. Campbell*,
139 F.2d 865 (4th Cir. 1944) ................................................................12

*INDOPCO, Inc. v. Commissioner*,
503 U.S. 79 (1992)..................................................................................61

*Koshland v. Helvering*,
298 U.S. 441 (1936)..................................................................................49

*Lesko v. United States*,
161 F.4th 1352 (Fed. Cir. 2025) (en banc)................................................51

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024)............................................................. 1, 2, 32, 44, 45

*Manhattan General Equipment Co. v. Commissioner*,
297 U.S. 129 (1936)..................................................................................46

*Mexican Gulf Fishing Co. v. Department of Commerce*,
60 F.4th 956 (5th Cir. 2023) .....................................................................45

*Michigan v. EPA*,
576 U.S. 743 (2015)............................................................................45, 46

*Moctezuma-Reyes v. Garland*,
124 F.4th 416 (6th Cir. 2024) ...................................................................45

*Moore v. United States*,
602 U.S. 572 (2024).................................................................5, 13, 17, 18

*Murray Energy Corp. v. EPA*,
936 F.3d 597 (D.C. Cir. 2019) ..................................................................46

*National Cash Register Co. v. United States*,
400 F.2d 820 (6th Cir. 1968) ....................................................................52

*National Federation of Independent Business v. Sebelius*,
567 U.S. 519 (2012)..................................................................................60

*New Colonial Ice Co. v. Helvering*,
292 U.S. 435 (1934)..................................................................................61

*New Prime Inc. v. Oliveira*,
586 U.S. 105 (2019)..................................................................................39

*New York Stock Exchange LLC v. SEC*,
962 F.3d 541 (D.C. Cir. 2020) ..................................................................46

*OfficeMax, Inc. v. United States,*
428 F.3d 583 (6th Cir. 2005) ........................................................................61

*Ohio Telecom Ass'n v. FCC,*
150 F.4th 694 (6th Cir. 2025) ................................................................50, 51

*Schering Corp. v. Commissioner,*
69 T.C. 579 (1978)........................................................................................12

*Schiff v. United States,*
942 F.2d 348 (6th Cir. 1991) ........................................................................61

*Soto v. United States,*
605 U.S. 360 (2025)......................................................................................54

*Stanley v. City of Sanford,*
606 U.S. 46 (2025).......................................................... 33, 38, 39, 51, 53

*Stanovsek v. Holder,*
768 F.3d 515 (6th Cir. 2014) ........................................................................59

*Summa Holdings, Inc. v. Commissioner,*
848 F.3d 779 (6th Cir. 2017) ............................................................2, 33, 39,
....................................................................................................51, 53, 55, 56

*T.M. v. DeWine,*
49 F.4th 1082 (6th Cir. 2022) .......................................................................38

*Texas v. EPA,*
829 F.3d 405 (5th Cir. 2016) ........................................................................49

*Theo H. Davies & Co. v. Commissioner,*
75 T.C. 443 (1980)..................................................................................10, 11

*United States v. Locke,*
471 U.S. 84 (1985)......................................................................................... 2

*United States v. Merriam,*
263 U.S. 179 (1923)......................................................................................61

*United States v. Woodmansee,*
578 F.2d 1302 (9th Cir. 1978)......................................................................12

*Varian Medical Systems, Inc. v. Commissioner*,
 163 T.C. 76 (2024)................................................................47, 48, 53, 59

**STATUTES**

15 U.S.C. § 1691b(a)........................................................................................55

16 U.S.C. § 825h..............................................................................................55

I.R.C. § 245A...................................................................................................18

 I.R.C. § 245A(d)(1) (2018)...........................................................................60

I.R.C. § 901 ............................................................................................3, 10, 55

 I.R.C. § 901(a) (2016) ..........................................................................5, 15, 17,
 ....................................................................................22, 35, 41, 42, 43

 I.R.C. § 901(b)(1) ..................................................................................3, 10

 I.R.C. § 901(j) .............................................................................................60

 I.R.C. § 901(j)(4) ........................................................................................55

 I.R.C. § 901(k)(4)(C) ..................................................................................55

 I.R.C. § 901(*l*)(2)(D)....................................................................................55

 I.R.C. § 901(*l*)(3) .........................................................................................55

 I.R.C. § 901(m)(7).......................................................................................55

I.R.C. § 902 (2016)................................................................................3, 10, 14,
 ............................................................................... 15, 16, 17, 22, 23,
 .......................................................................... 27, 35, 40, 41, 42, 43

 I.R.C. § 902(a)......................................................................................5, 15, 17,
 ....................................................................................22, 35, 41, 42, 43

 I.R.C. § 902(c)(8)...................................................................36, 37, 56, 57

I.R.C. § 904 .....................................................................................................10

 I.R.C. § 904(d) ............................................................................................11

 I.R.C. § 904(d)(2)(H) .................................................................................12

**Page(s)**

Internal Revenue Code Subpart F,
I.R.C. §§ 951–965 ................................................................13, 14, 18,
............................................................................................19, 20, 41, 59

I.R.C. § 951 ........................................................................8, 12, 14,
............................................................................................16, 17, 21, 22, 28,
............................................................................................30, 34, 37, 40, 58, 59

I.R.C. § 951(a) ........................................................................13, 14, 21,
............................................................................................22, 28, 29, 31,
............................................................................................35, 41, 42, 43, 59, 60

I.R.C. § 951(a)(1) ........................................................................19, 20, 27, 28

I.R.C. § 951(b) ........................................................................13

I.R.C. § 957(a) ........................................................................13

I.R.C. § 959 ........................................................................8, 13,
............................................................................................14, 20, 21, 22,
............................................................................................23, 27, 28, 30, 31,
............................................................................................34, 37, 41, 42, 58, 59, 60

I.R.C. § 959(a) ........................................................................4, 6, 16,
............................................................................................21, 30, 34, 35,
............................................................................................37, 40, 41, 42, 59, 60

I.R.C. § 959(a)(1) ........................................................................14

I.R.C. § 960 (2016) ........................................................................3, 10,
............................................................................................14, 15, 23, 28,
............................................................................................31, 37, 48, 57, 59

I.R.C. § 960(a) ........................................................................15

I.R.C. § 960(a)(1) ........................................................................4, 6, 8,
............................................................................................16, 17, 22, 23,
............................................................................................27, 28, 29, 30, 31,
............................................................................................34, 35, 40, 42, 43, 58, 60

I.R.C. § 960(a)(2) ..............................................................4, 6, 17, 22,
................................................................. 31, 32, 34, 40, 42, 60

I.R.C. § 960(a)(3) ...................................................................... 3,
...............................................................................4, 5,
...............................................................................6, 7, 8,
..............................................................................9, 15, 16,
.............................................................................. 17, 21, 22, 23,
.............................................................................. 26, 27, 28, 29, 30,
.............................................................................. 31, 32, 33, 34, 35, 36,
..............................................................................37, 38, 40, 41, 42, 43, 44, 47,
.............................................................. 48, 49, 51, 53, 54, 56, 57, 58, 59, 60, 61

I.R.C. § 960(d)(4) (2018)..............................................................60

I.R.C. § 965 (2018) ..............................................5, 7, 18, 19, 23, 29,
..............................................................36, 44, 45, 47, 48, 49, 50, 54

I.R.C. § 965(a) .................................................................18, 19, 20,
..............................................................................23, 27, 41, 48, 49

I.R.C. § 965(b)..................................................................5, 24, 25,
..............................................................................30, 36, 48, 49

I.R.C. § 965(b)(1) .................................................................19, 20, 27,
..............................................................................34, 35, 41, 60

I.R.C. § 965(b)(4)(A) .................................................................7, 8, 20,
..............................................................................21, 22, 27,
..............................................................................28, 29, 31, 32,
..............................................................................35, 36, 37, 41, 42,
..............................................................................43, 53, 57, 58, 59, 60, 61

I.R.C. § 965(c) .................................................................18, 48, 49

I.R.C. § 965(d) .................................................................18

I.R.C. § 965(g).................................................................48, 51, 53, 60

I.R.C. § 965(h)..................................................................48, 49

Page(s)

I.R.C. § 965(o)...................................................7, 29, 36,
..........................................................................43, 44, 45, 47,
...................................................................... 48, 49, 50, 51, 54, 55

I.R.C. § 965(o)(2) ......................................................... 44, 45, 49

I.R.C. § 1248(a)............................................................................13

I.R.C. § 6038(c) ...........................................................................60

I.R.C. § 7805(a).........................................................29, 36, 37, 56

33 U.S.C. § 1311(b)(1)(A) ...........................................................55

42 U.S.C. § 300gg-92...................................................................55

42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I) ...............................................47

42 U.S.C. § 2073(a)(4) .................................................................55

47 U.S.C. § 303(f) ........................................................................55

49 U.S.C. § 40113(a) ....................................................................55

Tax Cuts and Jobs Act,
  Pub. L. No. 115-97, 131 Stat. 2054 ...............................5, 15, 17, 18

**REGULATIONS**

26 C.F.R. § 1.904-4 ......................................................................11

26 C.F.R. § 1.965-5(c)(1)(ii)..................................................6, 9, 23,
..........................................................................26, 27, 28, 29,
..........................................................30, 32, 36, 44, 47, 56, 57

*Allocation of Loss With Respect to Stock*
  *and Other Personal Property*,
  64 Fed. Reg. 1505 (Jan. 11, 1999).................................................12

*Guidance Related to the Foreign Tax Credit*,
  83 Fed. Reg. 63,200 (Dec. 7, 2018) ..............................................23

**Page(s)**

*Regulations Regarding the Transition Tax*,
  84 Fed. Reg. 1838 (Feb. 5, 2019) ...........................................................6, 7, 8,
  ....................................................................................................23, 24, 47, 49

**OTHER AUTHORITY**

Kuntz, Peroni & Bogdanski, U.S. International Taxation
  § A1.03[1] (Dec. 2025).....................................................................................13

Kuntz, Peroni & Bogdanski, U.S. International Taxation
  § B1.03[1] (Dec. 2025) ................................................................................9, 10

Kuntz, Peroni & Bogdanski, U.S. International Taxation
  § B4.01 (Dec. 2025).........................................................................................10

Kuntz, Peroni & Bogdanski, U.S. International Taxation
  § B4.10 (Dec. 2025).........................................................................................15

## STATEMENT REGARDING ORAL ARGUMENT

FedEx respectfully submits that the Court can affirm the district court's comprehensive and well-reasoned rulings without oral argument. But FedEx would welcome the opportunity to participate in oral argument if it would assist the Court in resolving this appeal.

# GLOSSARY

| | |
|---|---|
| CFC | Controlled foreign corporation, as defined in I.R.C. § 957(a). |
| The Disallowance Rule | 26 C.F.R. § 1.965-5(c)(1)(ii) |
| FTC | Foreign tax credit |
| I.R.C. | Internal Revenue Code (*i.e.*, Title 26 of the U.S. Code). Unless otherwise indicated, all section references and citations are to the Code provisions in effect for FedEx's 2018 tax year. |
| IRS | Internal Revenue Service |
| Tax Code or Code | Title 26 of the U.S. Code; the Internal Revenue Code. Unless otherwise indicated, all section references and citations are to the Code provisions in effect for FedEx's 2018 tax year. |
| TCJA | Tax Cuts and Jobs Act, Pub. L. No. 115-97, 131 Stat. 2054 |
| Treasury | U.S. Department of the Treasury |
| Treasury regulations | Title 26 of the Code of Federal Regulations |

## INTRODUCTION

This case is about whether FedEx Corp. and its U.S. subsidiaries (FedEx) can claim foreign tax credits (FTCs) for foreign taxes FedEx's foreign affiliates paid on foreign earnings that FedEx repatriated. Under the plain language of the Tax Code, the answer is yes, as the district court correctly concluded. Even so, the government claims it had authority to promulgate a regulation providing that "[n]o credit is allowed" under the Code for offset earnings, thus overriding the result that the plain language of the Code requires. In the government's view, Treasury had authority to disallow FTCs by regulation, based on its asserted authority to enforce its perceived purpose of the Tax Code and implement its own preferred policy. That argument flouts the separation of powers and is incorrect.

Congress may delegate authority to an agency, but "courts, not agencies," interpret the limits of those statutory grants of authority. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 392-96 (2024). In fulfilling that role, courts must "independently interpret the statute and effectuate the will of Congress subject to constitutional limits" by "fixing the boundaries of the delegated authority." *Id.* at 395 (alterations adopted). Those basic principles make clear that Treasury lacks authority to rewrite the Code, as it sought to

do here. Whatever statutory authority Treasury might have to, say, "'fill up the details' of a statutory scheme," *id.*, "[t]here is a basic difference between" exercising that authority "and rewriting rules that Congress has affirmatively and specifically enacted," *United States v. Locke*, 471 U.S. 84, 95 (1985).

It doesn't matter that the government thinks its attempt to rewrite the Code advances some general purpose it claims to divine. "[T]he best evidence of purpose is the statutory text." *Heard v. Strange*, 127 F.4th 630, 636 (6th Cir. 2025) (alteration adopted). Statutory purpose thus flows from—and cannot nullify—statutory text. If Treasury could "undo" results "that the terms of the Code expressly authorize, it's fair to ask what the point of making these terms accessible to the taxpayer and binding on the tax collector is." *Summa Holdings, Inc. v. Commissioner*, 848 F.3d 779, 782 (6th Cir. 2017).

After leading with purposivist arguments about its supposed authority to rewrite the Tax Code, the government finally confronts statutory text at the end of its brief. But briefs aren't like dessert—they don't save the best for last. The government's afterthought of a textual argument lacks merit.

**1.** FedEx and its affiliates offer logistics, transportation, express delivery, e-commerce, and other services to customers worldwide. FedEx has overseas affiliates, and those affiliates pay foreign taxes. That's where the

FTC regime comes in. Under the FTC regime, which has been a cornerstone of the Tax Code for more than a century, a U.S. corporation can claim a tax credit for "the amount of any income … taxes paid or accrued … to any foreign country." I.R.C. § 901(b)(1). The regime generally was designed to address issues that arise when U.S. entities face taxation at home and abroad.

The Code provisions implementing the FTC regime are detailed and mechanical. For instance, to determine how many FTCs taxpayers can claim, the Code prescribes consideration of foreign income and foreign taxes paid in the aggregate. The Code thus doesn't calculate available FTCs on an item-by-item basis—that is, require a particular item of income to be taxed both overseas *and* by the United States to qualify for FTCs. Because the Code measures available FTCs based on aggregate foreign income and taxes, taxpayers can claim FTCs relating to foreign taxes paid on foreign income that *isn't* considered income and thus isn't taxed by the United States.

The Code also allows corporations to claim FTCs based on foreign taxes that their foreign affiliates paid, by "deeming" those taxes paid by the U.S. corporation. *See* I.R.C. §§ 901–902, 960 (2016). U.S. corporations can claim those FTCs when the foreign affiliate distributes foreign earnings to the U.S. shareholder. *See* § 960(a) (2016). As relevant here, under § 960(a)(3),

when a foreign affiliate distributes earnings to a U.S. shareholder, the shareholder has a final chance to claim FTCs on foreign taxes paid on those earnings. Taxpayers generally can claim FTCs under § 960(a)(3) if several requirements are met.

*First*, the distribution must be "excluded from gross income under section 959(a)." I.R.C. § 960(a)(3). When earnings that are treated as previously taxed are distributed to the U.S. shareholder, § 959(a) excludes those earnings from the shareholder's income. *Second*, the foreign affiliate must have paid foreign taxes "on or with respect to the accumulated profits" from which the foreign affiliate made the distribution. *Id. Finally*, the foreign taxes must not have been "deemed paid by" the U.S. shareholder "under [§ 960(a)(1)]." *Id.* And § 960(a)(1) allows a U.S. shareholder to claim FTCs in the year that the shareholder included certain foreign earnings in its income. A taxpayer who already claimed FTCs under § 960(a)(1) cannot also claim FTCs under § 960(a)(3) for the same foreign taxes paid on the same earnings when those earnings are distributed to the U.S. shareholder. I.R.C. § 960(a)(2).

When those requirements are met, § 960(a)(3) "deem[s] [the U.S. shareholder] to have paid" the "foreign income taxes" associated with the

earnings. I.R.C. § 902(a) (2016). And that means the taxpayer is eligible to claim FTCs. I.R.C. § 901(a) (2016).

**2.** In 2017, Congress enacted the Tax Cuts and Jobs Act (TCJA), Pub. L. No. 115-97, 131 Stat. 2054, "to encourage Americans who controlled foreign corporations to invest earnings from their foreign investments back in the United States." *Moore v. United States*, 602 U.S. 572, 579 (2024). The TCJA imposed a "one-time, backward-looking tax"—codified in § 965—on the accumulated, untaxed foreign earnings of a U.S. shareholder's foreign affiliates. *Id.* at 579-80; *see* I.R.C. § 965 (2018). The one-time tax accounts for the fact that some U.S. corporations had unprofitable foreign affiliates. In calculating what amount of foreign earnings are subject to the tax, the Code allows U.S. shareholders to subtract the losses of their unprofitable foreign affiliates from the earnings of their profitable foreign affiliates. *See* I.R.C. § 965(b). The portion of earnings from the profitable affiliates that are offset by losses from the unprofitable affiliates are "offset earnings." Those earnings could be repatriated without being included in income, and thus without being taxed. *See id.*

**3.** FedEx repatriated more than $600 million in the form of distributions from its foreign affiliates. FedEx had profitable and unprofitable foreign affiliates, so it also had offset earnings.

FedEx filed tax returns and sought a refund on the ground that it was entitled to FTCs relating to those offset earnings under § 960(a)(3) and had overpaid its taxes by $89 million. The offset earnings qualified for FTCs. *First*, FedEx received distributions of offset earnings from foreign subsidiaries, and those earnings were "excluded from [FedEx's] gross income under section 959(a)." I.R.C. § 960(a)(3). *Second*, FedEx's foreign affiliates paid taxes on those earnings. *Finally*, those foreign taxes "were not deemed paid by" FedEx under § 960(a)(1). *Id.*

**4.** FedEx filed a refund suit explaining that it was entitled to the FTCs under § 960(a)(3)'s plain terms. The government disagreed, relying primarily on a Treasury regulation purporting to disallow FTCs under § 960(a)(3) for offset earnings.

The regulation provides that "[n]o credit is allowed under section 960(a)(3)." 26 C.F.R. § 1.965-5(c)(1)(ii). Treasury acknowledged that taxpayers might claim FTCs relating to offset earnings under § 960(a)(3). But "[a]s a policy matter," Treasury declared, there is no "need for a foreign tax

credit" under § 960(a)(3) for offset earnings. *Regulations Regarding the Transition Tax*, 84 Fed. Reg. 1838, 1857 (Feb. 5, 2019). In Treasury's view, "[t]he purpose of the foreign tax credit is to mitigate double taxation," but the United States doesn't tax offset earnings, so there's no double taxation. *Id.*

The government argued that Treasury was authorized to issue the regulation under § 965(o), which grants Treasury authority to "carry out the provisions of," and "prevent the avoidance of the purposes of," § 965. As a fallback, the government argued that FedEx couldn't claim FTCs under § 960(a)(3). The government contended that § 965(b)(4)(A) includes offset earnings in income and thus *precludes* FedEx from claiming FTCs under § 960(a)(3) (which applies only to amounts *excluded* from income).

The district court rejected the government's arguments, and for good reason. Under § 960(a)(3)'s plain terms, FedEx may claim FTCs on offset earnings. Treasury lacks authority to make policy decisions that contravene statutory text, even when Treasury thinks that Congress's legislative choices don't further a supposed general purpose of the Tax Code. Treasury thus lacked authority to bar FedEx from claiming FTCs that § 960(a)(3) allows.

The government's statutory argument fails, too, because it likewise seeks to rewrite the Code. Section 965(b)(4)(A) says that, "[f]or purposes of

applying section 959," offset earnings "shall be treated as" if they were "included in ... gross income" under another Code provision. Treating offset earnings as if they were included in income for purposes of applying § 959 doesn't mean earnings *are* included in income under § 951. Instead, § 959 *prevents* offset earnings from being included in income. The government's argument is, essentially, that even though offset earnings are treated as included in income "[f]or purposes of applying section 959," I.R.C. § 965(b)(4)(A), they should *also* be treated as included in income under § 951 for purposes of applying § 960(a)(1). And that would mean that offset earnings do *not* qualify for FTCs under § 960(a)(3), which requires that the earnings were "excluded from gross income." The government's problem is that § 965(b)(4)(A) says no such thing.

This Court should affirm the district court's comprehensive and well-reasoned opinion.

## STATEMENT OF ISSUES

**1.** Whether FedEx is entitled to FTCs under I.R.C. § 960(a)(3) after it repatriated foreign earnings on which FedEx affiliates paid foreign taxes, when FedEx satisfies § 960(a)(3)'s requirements and no other Tax Code provision bars FedEx from claiming FTCs on those earnings.

**2.** Whether 26 C.F.R. § 1.965-5(c)(1)(ii) is invalid because it contravenes I.R.C. § 960(a)(3), and Treasury lacks authority to promulgate a rule that overrides a statute.

## PERTINENT STATUTES AND REGULATIONS

The addendum reproduces pertinent authorities. Add.3-68.

## STATEMENT OF THE CASE

### A. Legal background

This case is about whether FedEx can claim FTCs based on foreign earnings it repatriated and offset with foreign losses under the TCJA, when FedEx's foreign affiliates paid foreign taxes on those earnings. To understand why FedEx is entitled to FTCs, it helps to understand (1) the FTC regime; (2) the rules governing how U.S. corporations are taxed on their foreign affiliates' earnings and can claim FTCs based on foreign taxes those affiliates paid; (3) the TCJA's one-time transition tax and its treatment of offset earnings; and (4) the rule that Treasury promulgated to disallow FTCs on offset earnings that the Code allows.

#### 1. The FTC regime allows U.S. corporations to claim credits for foreign taxes paid by their foreign affiliates.

**a.** The United States historically has taxed the worldwide income of U.S. corporations, no matter where that income is earned. Kuntz, Peroni

& Bogdanski, U.S. International Taxation § B1.03[1] (Dec. 2025); *see Cook v. Tait*, 265 U.S. 47, 56 (1924). That means the government typically taxes income derived from sources within and outside the United States.

U.S. corporations that pay taxes to foreign governments and the United States face unique, and sometimes duplicative, tax burdens. To address those burdens, and to facilitate foreign trade, Congress enacted the foreign tax credit regime in 1918. Kuntz, Peroni & Bogdanski, *supra*, § B4.01; *see Burnet v. Chicago Portrait Co.*, 285 U.S. 1, 7, 9 (1932). Under that regime, U.S. corporations can claim a credit for "the amount of any income … taxes paid or accrued during the taxable year to any foreign country." I.R.C. § 901(b)(1). A U.S. corporation also can claim a credit for foreign taxes that its foreign affiliates paid on foreign earnings, when the taxes are "deemed to have been paid" by the corporation. I.R.C. § 901; *see* I.R.C. §§ 902, 960 (2016).

**b.** The Code limits the FTCs that a U.S. corporation can claim for foreign income taxes it has paid (or is deemed to have paid). A taxpayer generally cannot claim FTCs in an amount greater than the amount of U.S. tax imposed on the taxpayer's net foreign-source taxable income. *See* I.R.C. § 904. Thus, the FTC limit is generally calculated by multiplying the U.S. tax

rate by the taxpayer's net foreign-source income. *Theo H. Davies & Co. v. Commissioner*, 75 T.C. 443, 444-45 (1980).

**c.**     That simplified formula doesn't capture the nuances of the FTC regime. And there are two key features of the regime that are important for understanding how the Code calculates FTCs. *First*, the Code calculates a taxpayer's FTC limit based on the total foreign tax the U.S. corporation paid or is deemed to have paid on certain categories of income, rather than calculating available FTCs for specific items of income. *Second*, and relatedly, U.S. corporations can claim FTCs associated with foreign taxes paid on foreign earnings that the United States doesn't also tax.

**i.**     The FTC regime calculates the credit limit based on the aggregate foreign taxes paid in each category, rather than based on foreign taxes paid on specific items. Specifically, there are four main categories, or baskets, of income, each with its own FTC limit. I.R.C. § 904(d). Thus, FTC limits aren't traced to specific foreign income sources. Instead, the limitation for a particular basket is based on the aggregate foreign income in the basket and the aggregate foreign taxes that relate to that type of foreign income. *Id.*; *see* 26 C.F.R. § 1.904-4.

***ii.*** Because the Tax Code calculates available FTCs in the aggregate, rather than item-by-item, taxpayers can claim FTCs associated with foreign taxes paid on income that the United States doesn't also tax. For example, the Tax Code expressly recognizes that taxpayers can claim FTCs despite the disparities between the items the United States and foreign countries count as part of their tax bases. Those disparities are known as "base differences." I.R.C. § 904(d)(2)(H). Treasury has thus issued regulations explaining that, in some instances, "a foreign tax imposed on an item of income that does not constitute income under U.S. tax principles"—and is thus not subject to U.S. income tax—"shall be treated as imposed with respect to" the "general" foreign income basket. *Allocation of Loss With Respect to Stock and Other Personal Property*, 64 Fed. Reg. 1505, 1508 (Jan. 11, 1999). In other words, the foreign tax on one particular item may be considered for purposes of calculating available FTCs, even though the United States wouldn't tax that item as income. Courts also have long recognized that taxpayers can claim FTCs even when "the foreign source income upon which [the] foreign taxes were paid was exempt from taxation in the United States." *United States v. Woodmansee*, 578 F.2d 1302, 1303 n.2 (9th Cir. 1978); *see Helvering v. Campbell*, 139 F.2d 865, 870-71 (4th Cir. 1944); *Schering Corp. v. Commissioner*, 69 T.C. 579, 592 (1978).

**2.  Subpart F requires U.S. shareholders to pay taxes on certain foreign earnings and provides special rules for claiming FTCs associated with those earnings.**

Subpart F of the Tax Code, I.R.C. §§ 951–965, provides special rules governing how U.S. corporations are taxed on their foreign affiliates' earnings and can claim FTCs for foreign taxes paid on those earnings.

**a.  Rules for taxing foreign income: I.R.C. §§ 951 and 959.** The Code has special rules for taxing foreign income. Historically, U.S. taxpayers weren't taxed on the earnings of a foreign affiliate until the affiliate distributes the earnings to the taxpayer as a dividend. Kuntz, Peroni & Bogdanski, *supra* § A1.03[2]. If the taxpayer didn't receive a dividend, the taxpayer generally was taxed on foreign earnings only when it sold the foreign stock and recognized a gain. *See* I.R.C. § 1248(a).

The Code more immediately taxes U.S. corporations on certain types of income of their "controlled foreign corporations," or CFCs, even if the CFCs didn't distribute earnings to the U.S. shareholders. *Moore*, 602 U.S. at 579. A CFC is "any foreign corporation" that is majority-owned "by United States shareholders." I.R.C. § 957(a). A "United States shareholder," in turn, is a taxpayer owning at least 10% of a foreign corporation's shares. I.R.C. § 951(b). Section 951(a) generally requires U.S. shareholders to include

- 13 -

in their income certain categories of their CFC's income, and pay tax on that income, even if the CFC didn't make a distribution to the U.S. shareholders. Otherwise, the shareholder might defer paying taxes on the CFC's income.

Sometimes a U.S. shareholder pays taxes on its CFC's undistributed earnings under § 951 *and* receives a distribution. When that happens, the Code generally ensures that the U.S. shareholder doesn't include the distribution as income and thus does not pay tax on it again. Section 959 accomplishes that result by generally preventing earnings classified as previously taxed from being included in income upon distribution to the U.S. shareholder. Specifically, § 959(a)(1) provides that earnings included as income under § 951—the provision that taxes certain undistributed earnings of a CFC—won't be included as income and taxed a second time when the earnings are repatriated. It states that "the earnings and profits of a foreign corporation attributable to amounts which are, or have been, included in the gross income of a United States shareholder under section 951(a) shall not" "be again included in the [U.S. shareholder's] gross income" when "such amounts are distributed to" the shareholder. I.R.C. § 959(a)(1).

b.      **Rules for claiming FTCs: I.R.C. §§ 902 and 960.** Subpart F also has special rules for claiming FTCs based on a CFC's earnings. As noted (at

10), a U.S. corporation can claim FTCs for taxes that it is deemed to have paid with respect to income earned by its foreign affiliates. *See* I.R.C. §§ 902, 960 (2016). For instance, when a U.S. corporation receives a distribution from a CFC, the U.S. corporation is "deemed" to have paid the foreign taxes associated with that dividend. I.R.C. § 902(a) (repealed but applicable here given the repeal's effective date, *see* Pub. L. No. 115-97 § 14301(d), 131 Stat. 2054, 2225). Specifically, the pre-TCJA version of § 902(a) provides that when "a domestic corporation … own[ing] 10 percent or more" of a foreign corporation's stock "receives dividends" from that foreign corporation, the domestic corporation "shall be deemed to have paid" foreign taxes associated with the dividends. The U.S. corporation can claim FTCs for the foreign taxes it is "deemed to have … paid." I.R.C. § 901(a) (2016).

The pre-TCJA version of § 960(a) (applicable here, given the effective date of the TCJA amendments to § 960, *see* § 14301(d), 131 Stat. at 2225), provides further guidance for claiming FTCs depending on whether the U.S. shareholder already was deemed to have paid foreign taxes on foreign earnings. *See* Kuntz, Peroni & Bogdanski, *supra* § B4.10. Generally speaking, § 960(a)(3) allows taxpayers a final chance to claim FTCs on foreign taxes paid on earnings that a CFC distributes to a U.S. shareholder. The

shareholder generally can claim FTCs if several requirements are met, as described in further detail below. Section 960(a)(3) provides:

> Taxes paid by foreign corporation and not previously deemed paid by domestic corporation. Any portion of a distribution from a foreign corporation received by a domestic corporation which is excluded from gross income under section 959(a) shall be treated by the domestic corporation as a dividend, solely for purposes of taking into account under section 902 any income, war profits, or excess profits taxes paid to any foreign country or to any possession of the United States, on or with respect to the accumulated profits of such foreign corporation from which such distribution is made, which were not deemed paid by the domestic corporation under paragraph (1) for any prior taxable year.

The provision is dense, but parsing it makes clear that it allows FTCs if the following requirements are met:

1. The distribution was "excluded from gross income under section 959(a)." I.R.C. § 960(a)(3). Section 959(a) generally excludes earnings treated as previously taxed from income upon distribution. It generally instructs that earnings included, or treated as included, as income under § 951 *won't* be included as income again when distributed to the U.S. shareholder. (As a reminder, when it applies by its terms, § 951 requires certain undistributed CFC earnings to be included in income and thus taxed. *Supra* pp. 13-14.) Thus, earnings of a CFC that § 959(a) treats as previously taxed under § 951 and that are distributed to the U.S. shareholder meet this requirement of § 960(a)(3).

2. The CFC paid foreign taxes "on or with respect to the accumulated profits" from which the CFC made the distribution. I.R.C. § 960(a)(3).

3. The foreign taxes "were not deemed paid by the domestic corporation under [§ 960(a)(1)] for any prior taxable year." *Id.*

Section 960(a)(1) generally provides that when a U.S. shareholder includes as income a CFC's earnings under § 951, the shareholder can claim FTCs in the year of that inclusion. A taxpayer who already claimed FTCs under § 960(a)(1) with respect to foreign taxes paid on foreign earnings cannot also claim FTCs under § 960(a)(3) for the same foreign taxes paid on those same earnings when the earnings are distributed. I.R.C. § 960(a)(2). Conversely, a taxpayer qualifies for FTCs under § 960(a)(3) when it paid foreign taxes on earnings that *weren't* included in income under § 951—because that would mean the taxpayer wasn't "deemed" to have paid foreign taxes on those earnings under § 960(a)(1).

If those requirements are met, § 960(a)(3) "treat[s]" earnings "as a dividend, solely for purposes of taking into account under section 902 any income … taxes paid" on those earnings. Recall that under § 902, a U.S. corporation is "deemed to have paid" a portion of the CFC's "foreign income taxes" with respect to a dividend from a CFC. I.R.C. § 902(a) (2016); *supra* pp. 14-15. That means the taxpayer can claim FTCs. *See* I.R.C. § 901(a) (2016).

### 3. Congress enacts the TCJA, incentivizing taxpayers to repatriate their CFCs' foreign earnings and imposing a one-time tax on CFCs' net accumulated earnings.

In 2017, Congress passed the TCJA, changing the United States' approach to international taxation. "The primary goal was to encourage Americans who controlled foreign corporations to invest earnings from their foreign investments back in the United States." *Moore*, 602 U.S. at 579. The

TCJA thus offered incentives, like deductions, to taxpayers who repatriated foreign income. *See* I.R.C. § 245A. To transition to the new regime, the TCJA also imposed a one-time tax on the net, untaxed earnings of CFCs, taking into account the reality that some taxpayers had unprofitable CFCs.

**a.** The TCJA "imposed a one-time, backward-looking tax" on a CFC's accumulated, untaxed earnings abroad under § 965. *Moore*, 602 U.S. at 579-80; *see* I.R.C. § 965 (2018). Generally speaking, § 965 operates by "attribut[ing] the long-accumulated and undistributed income of American-controlled foreign corporations to American shareholders," and then taxing those shareholders on their pro rata shares of that income. *Moore*, 602 U.S. at 580 (citing I.R.C. § 965(a), (c), (d)).

Section 965(a) provides, as an initial matter, that U.S. shareholders will include their CFCs' deferred foreign earnings in their subpart F income so those earnings can be taxed. *See supra* pp. 13-14. It provides that "[i]n the case of the last taxable year of a deferred foreign income corporation which begins before January 1, 2018, the subpart F income of such foreign corporation … shall be increased by the greater of" the corporation's "accumulated post-1986 deferred foreign income," "determined as of November 2, 2017" or "December 31, 2017." I.R.C. § 965(a). And as discussed (at 13-14),

one way U.S. shareholders include certain CFC earnings in their subpart F income is through § 951(a)(1), which requires such inclusions even if the CFC didn't make a distribution.

**b.** Section 965 also mitigates the tax's burden on U.S. corporations. As relevant here, Congress determined that U.S. corporations shouldn't be taxed under § 965(a) for the *full* amount of their CFCs' foreign earnings when they also had unprofitable CFCs. *See* I.R.C. § 965(b)(1). Thus, in calculating the earnings subject to the transition tax, § 965(b)(1) requires U.S. corporations to subtract the overall losses of their unprofitable CFCs from the positive earnings of their profitable CFCs. *Id.* The upshot is that the portion of earnings from the profitable foreign corporations that are offset by losses from the unprofitable foreign corporations—known as "offset earnings"—is not included in the income subject to taxation under § 965(a). Instead, the reduced amount is included in income (and thus taxed under § 965(a)).

Specifically, § 965(b)(1) provides:

In the case of a taxpayer which is a United States shareholder with respect to at least one deferred foreign income corporation and at least one E&P deficit foreign corporation, the amount which would (but for this subsection) be taken into account under section 951(a)(1) by reason of subsection (a) as such United States shareholder's pro rata share of the subpart F income of each deferred foreign income corporation shall be reduced by

the amount of such United States shareholder's aggregate foreign E&P deficit[.]

"[T]he amount which would (but for [§ 965(b)(1)]) be taken into account under section 951(a)(1) by reason of subsection (a) as … subpart F income," I.R.C. § 965(b)(1), is the full amount of positive foreign earnings, *see* I.R.C. § 965(a). But *because of* § 965(b)(1), that amount "shall be reduced by the amount of such United States shareholder's aggregate foreign E&P deficit" — *i.e.*, the total losses of the unprofitable CFCs. The remaining, reduced amount is "taken into account under section 951(a)(1)." I.R.C. § 965(b)(1). But the offset earnings — the amount by which the total was reduced — are thus *not* "taken into account under section 951(a)(1) by reason of [§ 965(a)]." I.R.C. § 965(b)(1). So the offset earnings aren't included in the shareholder's subpart F income, or taxed, under § 965(a).

There is also a rule for when offset earnings are distributed to the U.S. shareholder: They aren't included in income and they remain untaxed. Section 965(b)(4)(A) provides that:

> For purposes of applying section 959 … with respect to any United States shareholder of a deferred foreign income corporation, an amount equal to such shareholder's reduction under paragraph (1) which is allocated to such deferred foreign income corporation under this subsection shall be treated as an amount

which was included in the gross income of such United States shareholder under section 951(a).

Recall that § 959 prevents earnings treated as previously taxed from being included as income. *Supra* p. 14. Thus, by treating offset earnings as included in income under § 951(a) — "[f]or purposes of applying section 959" — § 965(b)(4)(A) treats offset earnings as "previously taxed income" and thus not taxable.

### 4. The operation of § 960(a)(3) allows taxpayers to claim FTCs when they have offset earnings.

Section 960(a)(3) allows taxpayers to claim FTCs based on foreign taxes paid on offset earnings. That's because offset earnings satisfy the three requirements set out above (at 16-17) to qualify for FTCs.

*First*, under § 965(b)(4)(A), offset earnings are "excluded from gross income under section 959(a)," I.R.C. § 960(a)(3), as just discussed. Section 965(b)(4)(A) states that, "[f]or purposes of applying section 959," offset earnings are "treated as an amount which was included in the [U.S. shareholder's] gross income" "under section 951(a)." Treating offset earnings as included in income under § 951(a) for purposes of applying § 959 doesn't mean those earnings actually *are* included as income under § 951 or that

§ 951(a) ever applies. Instead, that treatment means those earnings are *excluded* from income, and not taxed under § 965(a). *Supra* pp. 19-20.

*Second*, foreign taxes on offset earnings are "not deemed paid by the domestic corporation under [§ 960(a)(1)]." I.R.C. § 960(a)(3). That's because § 960(a)(1) applies to amounts "included under section 951(a) in [a U.S. shareholder's] gross income." And, as explained (*supra* pp. 20-21), § 965(b)(4)(A) requires applying § 959 to *exclude* offset earnings from a U.S. shareholder's gross income. Section 965(b)(4)(A) treats offset earnings, "[f]or purposes of applying § 959," as having been previously included in income and taxed under § 951(a). But § 965(b)(4)(A) just classifies such earnings as previously taxed under § 951(a) for purposes of § 959, without actually "includ[ing]" them in gross income "under section 951(a)," I.R.C. § 960(a)(1). The taxes associated with those earnings thus aren't deemed paid by the U.S. shareholder under § 960(a)(1) either.

*Finally*, § 960(a)(3) "treat[s]" offset earnings "as a dividend, solely for purposes of taking into account under section 902 any income … taxes paid" on those earnings. I.R.C. § 960(a)(3). The U.S. shareholder thus "shall be deemed to have paid" the foreign taxes on those earnings, I.R.C. § 902(a); *supra* pp. 14-15, and can claim FTCs, *see* I.R.C. § 901(a) (2016).

**5.** **Dissatisfied with the operation of §§ 960 and 965, Treasury promulgates the Disallowance Rule, purporting to exercise its policy judgment to bar taxpayers from claiming FTCs that § 960(a)(3) allows.**

In February 2019, Treasury promulgated the Disallowance Rule, 26 C.F.R. § 1.965-5(c)(1)(ii), which provides that "[n]o credit is allowed under section 960(a)(3)" for foreign taxes paid on offset earnings. Specifically, the rule provides that "[n]o credit is allowed under section 960(a)(3) or any other section for foreign income taxes that would have been deemed paid under section 960(a)(1) with respect to the portion of a section 965(a) earnings amount that is reduced" by foreign losses. *Id.*

When Treasury proposed the regulation in December 2018, it recognized that "some taxpayers may have added [foreign] taxes paid or accrued with respect to a section 959 distribution" and "included [them] in computing foreign taxes deemed paid under section 902," thus triggering FTCs under § 960(a)(3). *Guidance Related to the Foreign Tax Credit*, 83 Fed. Reg. 63,200, 63,218 (Dec. 7, 2018). When Treasury issued final regulations, it said that FTCs should be disallowed in that situation, because "[a]s a policy matter," there is "no need" "for a foreign tax credit" under § 960(a)(3). *Regulations Regarding the Transition Tax*, 84 Fed. Reg. at 1857.

In Treasury's view, "[t]he purpose of the foreign tax credit is to mitigate double taxation." *Id.* But "there is no double taxation associated with" offset earnings, Treasury concluded, because they are "excluded from U.S. taxable income and thereby effectively exempted from U.S. tax." *Id.* In Treasury's view, "[a]llowing foreign income taxes imposed on income that is not subject to U.S. tax by reason of section 965(b) to be credited against U.S. tax on unrelated income would confer a windfall double benefit." *Id.*

## B. Factual and procedural background

### 1. FedEx and its affiliates operate a global transportation, e-commerce, and business services company.

Headquartered in Memphis, Tennessee, FedEx provides logistics, transportation, express delivery, e-commerce, and other services to customers worldwide. Declaration of R. Bustamante, R.42-2, PageID##282-83 (Bustamante Decl.). FedEx carefully manages its global cash flows to ensure sufficient liquidity for its operations. *Id.* PageID#283.

FedEx's operating expenses and capital expenditures fluctuate throughout the fiscal year, so its liquidity needs likewise vary during the year. *Id.* For example, from June to August, FedEx typically makes major purchases and pays yearly bonuses and thus has significant capital

expenditures. *Id.* PageID#284. FedEx also has significant operating expenses in October and November, when it gears up for the busy holiday season. *Id.*

### 2. FedEx receives distributions of foreign earnings during its fiscal year 2018.

In its fiscal year 2018, FedEx received two distributions from its CFCs. The distributions provided additional cash to FedEx's U.S. operations following a cyberattack that affected company profits, and in anticipation of increased expenses leading up to the busy season. *Id.* PageID##284-86.

FedEx received the first distribution, worth approximately $157 million, in October 2017. *Id.* PageID#286. FedEx received the second distribution, worth around $447 million, in May 2018. Declaration of J. Pourciaux, R.42-2, PageID##291-92 (Pourciaux Decl.). FedEx thus repatriated more than $600 million during fiscal year 2018. Bustamante Decl., PageID##286-87. FedEx's CFCs had paid foreign taxes on those earnings. Joint Statement of Undisputed Facts, R.42-1, PageID#277. And because FedEx had CFCs with positive untaxed earnings and unprofitable CFCs, FedEx had offset earnings under § 965(b). *Id.* PageID##276-77.

### 3. FedEx claims a tax refund based on its entitlement to FTCs under § 960(a)(3), and sues in district court.

**a.** FedEx timely filed a consolidated income tax return for fiscal years 2018 and 2019. *Id.* PageID#276. FedEx then filed amended returns, claiming $288,445,504 in FTCs on its offset earnings related to the distributions. Complaint, R.1, PageID##17-19. FedEx determined that, because it was entitled to those FTCs under § 960(a)(3), it had overpaid its taxes on its original 2019 tax return by about $89 million. *Id.* PageID#19.

**b.** The IRS failed to timely act on FedEx's refund claim, so FedEx brought a refund suit. *Id.* PageID##17-18, 29-31. FedEx explained that it was entitled to the claimed FTCs (and thus a refund), because § 960(a)(3) allows taxpayers to claim FTCs when they have offset earnings, and the Disallowance Rule couldn't provide otherwise. FedEx explained that the rule is invalid because it purports to bar taxpayers from claiming FTCs on offset earnings, when § 960(a)(3) *allows* such FTCs. Complaint, PageID##20-23. FedEx thus also asked the court to find the rule invalid. *Id.* PageID##7, 31.

**c.** The parties cross-moved for partial summary judgment on the question whether FedEx is entitled to claim FTCs on its offset earnings.

FedEx Partial Summary Judgment Mot., R.42, PageID##235-72 (FedEx MSJ); U.S. Partial Summary Judgment Mot., R.43-1, PageID##840-75 (U.S. MSJ).

*i.* FedEx explained that it is entitled to claim FTCs on its offset earnings under § 960(a)(3), and that the Disallowance Rule cannot validly provide otherwise. FedEx MSJ, PageID##247-66. FedEx first explained that § 960(a)(3)'s plain terms allow taxpayers to claim FTCs on offset earnings. *Id.* PageID##247-52. Under § 960(a)(3), "[a]ny portion of a distribution … which is excluded from gross income under section 959 shall be treated as a dividend, solely for purposes of taking into account under section 902 any income … taxes paid to any foreign country … which were not deemed paid … under [§ 960(a)(1)]." Offset earnings are "excluded from gross income under section 959." *Id.* Indeed, offset earnings are never included in income—that is why they aren't subject to tax under § 965(a). Section 965(b)(1) *excludes* offset earnings from the full amount that would otherwise "be taken into account under section 951(a)(1)" as income for purposes of calculating the transition tax. And when there is a distribution, "§ 965(b)(4)(A) treats the Offset Earnings as previously taxed income (by invoking § 959, which excludes earnings treated as previously taxed income)"—but it doesn't actually include offset earnings in income. FedEx

MSJ, PageID##248-52. FedEx also explained that its CFCs paid foreign taxes on the offset earnings. And because those earnings weren't included in income, the taxes previously "were not deemed paid" and FedEx thus couldn't have claimed credits for them under § 960(a)(1). *Id.* PageID##248-49.

FedEx explained that the Disallowance Rule is invalid because it contravenes the Tax Code by purporting to forbid FTCs that the Code allows. And no grant of rulemaking authority allowed Treasury to override the Code. *Id.* PageID##252-66.

***ii.*** The government made two primary arguments. *First*, it asserted that § 965(b)(4)(A) includes offset earnings in income and thus precludes FedEx from claiming FTCs under § 960(a)(3) (which applies only to amounts *not* included in income). U.S. MSJ, PageID##855-63. The government acknowledged that offset earnings "were not actually previously included in income and taxed under § 951(a)." *Id.* PageID##856-67. But the government claimed that, even though § 965(b)(4)(A) says that offset earnings "shall be treated as" if they were "included in … gross income … under section 951(a)" "[f]or purposes of applying section 959," offset earnings should *also* be treated as included in income under § 951 *for purposes of applying § 960*. And, the government claimed, that would mean that offset earnings

do *not* qualify for FTCs under § 960(a)(3), because that provision requires that foreign taxes "were not deemed paid" already under § 960(a)(1) (and, relatedly, that the earnings were *not* included in gross income under § 951(a)). U.S. MSJ, PageID##858-63.

*Second*, the government argued that the Disallowance Rule is valid under the now-defunct *Chevron* framework, and that the rule bars FedEx from claiming FTCs on offset earnings. *Id.* PageID##864-69. The government asserted that, to the extent § 965(b)(4)(A) is ambiguous, the Disallowance Rule is "a permissible construction" of that provision. *Id.* PageID##867-69.

The government claimed that Treasury had authority to promulgate the Disallowance Rule under § 965(o), which authorizes Treasury to "carry out the provisions of [§ 965]" and to "prevent the avoidance of the purposes of [§ 965]." *Id.* PageID#864. The government also asserted that its "general authority to issue 'all needful rules and regulations'" under § 7805(a) authorized Treasury to promulgate the Disallowance Rule. *Id.*

**4. The district court holds that FedEx is entitled to FTCs, and thus a refund, under § 960(a)(3) and that the Disallowance Rule is invalid because it purports to override the statute.**

The district court agreed with FedEx that the plain language of § 960(a)(3) allows FedEx to claim FTCs on offset earnings and that the Disallowance Rule cannot provide otherwise. The court thus granted partial summary judgment to FedEx and denied partial summary judgment to the government. Order on Cross Mots. for Partial Summary Judgment, R.49, PageID##962-63 (Summary Judgment Order).

The district court held that "[u]nder [§ 960(a)(3)'s] straightforward and unambiguous … terms, FedEx is entitled to foreign tax credits on its Offset Earnings." *Id.* PageID#986. Tracking § 960(a)(3)'s text, the court explained that FedEx's offset earnings, "when distributed, were 'excluded from gross income under section 959(a).'" *Id.* Offset earnings are never included in income under § 951, *see* I.R.C. § 965(b)—as both parties agreed—so those earnings are excluded from income under § 959(a), the court explained. Summary Judgment Order, PageID##978-79. As a result, "the foreign taxes paid on Offset Earnings were never previously 'deemed paid … under'

- 30 -

section 960(a)(1)"—which covers earnings included as income under § 951. *Id.* PageID#986 (quoting I.R.C. § 960(a)(3)).

The district court rejected the government's argument that § 965(b)(4)(A) bars taxpayers from claiming FTCs on offset earnings. *Id.* PageID##979-86. Although § 965(b)(4)(A) "treat[s]" offset earnings as "included in … gross income … under section 951(a)," it only does so "[f]or purposes of applying section 959"—*not* "for purposes of applying section 960." *Id.* PageID##980-82. And treating offset earnings as included in income under § 951(a) "for purposes of applying section 959" simply means the earnings are *excluded* from income upon distribution, because they're treated as previously taxed. *Id.* What's more, the court explained, § 965(b)(4)(A) provides that offset earnings are "treated as" if they were included in income only for purposes of applying § 959, but offset earnings aren't actually "included [in income] under section 951(a)," I.R.C. § 960(a)(1). With the earnings excluded from income, the associated foreign taxes on those earnings were not deemed to have been paid (which would preclude FTCs under § 960(a)(3)). Summary Judgment Order, PageID##979-80, 983-84.

The district court rejected the government's purposivist argument on two levels. *First*, given § 960(a)(3)'s clear terms, the court rejected the

- 31 -

government's policy argument that FedEx shouldn't be allowed to claim FTCs because the FTCs wouldn't mitigate double taxation. *Id.* PageID##987-88. *Second*, the court rejected the government's policy argument on its own terms. The court reasoned that Congress designed the TCJA "to incentivize corporations to return money held overseas to the United States," and granting FTCs on offset earnings would do just that. *Id.* PageID##988-89.

The district court held that the Disallowance Rule is invalid because it "contradicts the statute." *Id.* PageID#990. Thus, the court concluded, "[u]nder the plain language of the tax code, FedEx is entitled to a credit for foreign taxes paid on Offset Earnings." *Id.* PageID##989-90.

The district court reaffirmed its conclusion and its grant of summary judgment to FedEx after the Supreme Court overruled *Chevron* in *Loper Bright*. Order Granting Partial Summary Judgment, R.70, PageID##1139-66. The court explained that it had held that FedEx was entitled to claim FTCs on offset earnings under the plain terms of § 960(a)(3), without deference to the agency's views. *Id.* PageID#1155. Because the court decided for itself the best meaning of §§ 960(a)(3) and 965(b)(4)(A), "it never deferred to an agency interpretation" under *Chevron*. *Id.*

The parties agreed that, under the district court's rulings, FedEx is entitled to an $84.6 million tax refund for the 2018 and 2019 tax years. Order Granting Motion for Judgment, R.74, PageID##1171-72. The district court thus entered judgment for FedEx. Judgment, R.75, PageID##1173-74.

## SUMMARY OF ARGUMENT

The district court correctly ruled that FedEx is entitled to FTCs under § 960(a)(3) relating to its offset earnings.

**A.** Section 960(a)(3)'s plain text allows taxpayers to claim FTCs on offset earnings.

**1.** Statutory interpretation starts with the text's plain meaning and ends there when the meaning is clear. That principle applies equally to the Tax Code. In fact, the Code's "highly reticulated" design makes it especially important that courts adhere to the Code's plain text, and avoid rewriting tax laws in favor of purposivist, atextual arguments. *Summa Holdings*, 848 F.3d at 788-89. "Legislation is, after all, the art of compromise." *Stanley v. City of Sanford*, 606 U.S. 46, 58 (2025). And rewriting the Code based on notions about the provisions' general purpose ignores that reality and usurps Congress' legislative function.

**2.** Section 960(a)(3)'s plain text allows taxpayers to claim FTCs on offset earnings. When a CFC distributes offset earnings, the U.S. shareholder can claim FTCs under § 960(a)(3) when three requirements are met:

1. The distribution was "excluded from gross income under section 959(a)." I.R.C. § 960(a)(3). Breaking that down: § 959 generally excludes earnings treated as previously taxed from income upon distribution to the U.S. shareholder. It generally instructs that earnings included, or treated as included, as income under § 951 *won't* be included as income again when distributed to the U.S. shareholder. (As a reminder, when it applies by its terms, § 951 requires certain undistributed CFC earnings to be included in income and thus taxed. *Supra* pp. 13-14.) Thus, earnings of a CFC included in income under § 951 (or classified as such), and subsequently distributed to the U.S. shareholder meet this requirement of § 960(a)(3).

2. The CFC paid foreign taxes "on or with respect to the accumulated profits" from which the CFC made the distribution. *Id.*

3. The foreign taxes "were not deemed paid" by the U.S. shareholder "under [§ 960(a)(1)]." *Id.* Section 960(a)(1) generally provides that when a U.S. shareholder includes as income a CFC's earnings under § 951, the shareholder can claim FTCs in the year of that inclusion. Thus, a taxpayer who already claimed FTCs under § 960(a)(1) with respect to foreign taxes paid on foreign earnings cannot *also* use those earnings to claim duplicative FTCs under § 960(a)(3). Conversely, a taxpayer qualifies for FTCs under § 960(a)(3) when it paid foreign taxes on earnings that *weren't* included in income under § 951, because that would mean the taxpayer wasn't "deemed" to have paid the foreign taxes on those earnings under § 960(a)(1).

Offset earnings meet all three requirements. Offset earnings are "excluded from gross income under section 959(a)," because under § 965(b)(1),

they are not included in "the amount which would … be taken into account" as a U.S. shareholder's income. The distribution of offset earnings is treated "as a dividend" under § 902. I.R.C. § 960(a)(3). That means the U.S. shareholder is "deemed to have paid" a portion of the CFC's "foreign income taxes," I.R.C. § 902(a) (2016), and can thus claim the related FTCs, *see* I.R.C. § 901(a). And the foreign taxes imposed on offset earnings "were not deemed paid by the domestic corporation under [§ 960(a)(1)] for any prior taxable year," I.R.C. § 960(a)(3), because § 960(a)(1) applies to amounts "included under section 951(a) in [a U.S. shareholder's] gross income" — and offset earnings were *not* so included.

**B.**     Under § 960(a)(3)'s plain terms, FedEx is entitled to claim FTCs on its offset earnings. Those earnings were "excluded from [FedEx's] gross income under section 959(a)." FedEx's foreign affiliates paid taxes on the earnings and FedEx was thus "deemed to have paid" the foreign taxes on those earnings. I.R.C. § 902(a) (2016). And FedEx previously wasn't "deemed [to have] paid" the foreign taxes under § 960(a)(1), because § 960(a)(1) applies to amounts "included under section 951(a)" as income — but offset earnings are *not* included in income under § 951(a), *see* I.R.C. § 965(b)(4)(A).

So the foreign taxes on the earnings weren't previously deemed paid, and FedEx didn't previously claim FTCs for them.

C.     The government's counterarguments fail.

1.     The government's main argument isn't about §§ 960(a)(3) or 965(b)(4)(A). Instead, the government claims to wield such broad authority to advance its perceived purpose of the FTC regime, that it doesn't actually matter what §§ 960(a)(3) and 965(b) say about whether businesses like FedEx can claim FTCs on offset earnings. Specifically, the government contends that the purpose of the FTC regime is to allow credits only "for taxes paid to foreign countries on income that *also* is taxed by the United States." Br. 1. In the government's view, allowing taxpayers like FedEx to claim FTCs on offset earnings wouldn't accomplish that purpose. So, the government asserts, Treasury had authority to bar FTCs on offset earnings by regulation, because § 965(o) authorizes Treasury to issue regulations "to prevent the avoidance of the purposes of [§ 965]." That is incorrect. Whatever gap-filling authority § 965(o) might grant Treasury, the provision doesn't authorize Treasury to rewrite the text of § 960(a)(3) or any other Code provision.

2.     The government argues in a footnote that I.R.C. §§ 7805(a) and 902(c)(8) also authorized Treasury to promulgate the Disallowance Rule.

Undeveloped arguments made only in footnotes are forfeited. Regardless, neither § 7805(a) nor § 902(c)(8) authorizes Treasury to rewrite § 960(a)(3).

**3.** Finally confronting statutory text, the government argues that § 965(b)(4)(A) precludes FedEx from claiming FTCs for offset earnings under § 960(a)(3). The government points to § 965(b)(4)(A)'s language that, "[f]or purposes of applying section 959," offset earnings "shall be treated as" if they were "included in … gross income" under § 951. The government claims that, as a result, offset earnings are considered to be included in income for purposes of applying not just § 959 (as the statute specifies), but § 960 as well. And *that* would mean offset earnings flunk § 960(a)(3)'s requirement that earnings be "excluded from gross income." But § 965(b)(4)(A) says no such thing. It says that offset earnings are treated as included in income "[f]or purposes of applying section 959"—*not* "[f]or purposes of applying section 959 and 960." The government is also incorrect in arguing that, if the statutes are too confusing, the tie goes to the government. The statutory text is clear. And even if it weren't, courts construe Tax Code provisions against the government and in favor of the taxpayer. *Apache Corp. v. Commissioner*, 165 T.C. No. 11, at *11 (Nov. 13, 2025).

## STANDARD OF REVIEW

The Court reviews questions of statutory construction, including on cross-motions for summary judgment, de novo. *First City Bank v. National Credit Union Administration Board*, 111 F.3d 433, 436-37 (6th Cir. 1997).

## ARGUMENT

### A. Section 960(a)(3)'s plain text allows taxpayers to claim FTCs on offset earnings.

Section 960(a)(3)'s plain text allows taxpayers to claim FTCs on offset earnings.

#### 1. Statutory interpretation starts with the text and ends there when the text is clear, and interpreting the Tax Code is no different.

Statutory interpretation begins with the text and its "plain meaning." *Babb v. Wilkie*, 589 U.S. 399, 402 (2020). When the text is clear, "that is the end of the matter." *T.M. v. DeWine*, 49 F.4th 1082, 1089 (6th Cir. 2022); *see Davenport v. Lockwood, Andrews & Newnam, Inc.*, 854 F.3d 905, 909 (6th Cir. 2017). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut National Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

A statute's supposed purpose doesn't override the text. As the Supreme Court has repeatedly explained, "it is 'quite mistaken to

- 38 -

assume … that any interpretation of a law that does more to advance a statute's putative goal must be the law.'" *Stanley*, 606 U.S. at 58. "Legislation is, after all, the art of compromise." *Id.* "[T]he limitations expressed in statutory terms" thus are "often the price of passage, and no statute … pursues its stated purpose at all costs." *Id.* As a result, statutory text is "part of [a law's] purpose.'" *Id.* And "pav[ing] over bumpy statutory texts in the name of more expeditiously advancing a policy goal" ignores the "legislative compromises essential to a law's passage," thus "thwart[ing] rather than honor[ing] … 'congressional intent.'" *New Prime Inc. v. Oliveira*, 586 U.S. 105, 120-21 (2019).

Those basic principles apply to the Tax Code. And the Code's "highly reticulated" design cautions against rewriting tax laws in favor of purposivist, atextual arguments. *Summa Holdings*, 848 F.3d at 788-89. As this Court has recognized, "if there is one title of the United States Code most deserving of attention to text, it is Title 26." *Id.* at 789. The Tax Code "uses language … with nearly mathematic precision" "to reduc[e] its purpose to text." *Id.* Courts should thus "apply each provision as its text requires," rather than "elevat[ing] purpose over text." *Id.* at 788-89. That detailed scheme incorporates "a complicated set of tax credits, deductions," and other "rules that balance many competing rationales." *Id.*

### 2. Section 960(a)(3)'s plain text allows taxpayers to claim FTCs on offset earnings.

Section 960(a)(3)'s plain text allows taxpayers to claim FTCs on offset earnings. Under § 960(a)(3), a taxpayer can claim an FTC when it receives a distribution from a CFC and several requirements are met:

1. The distribution was "excluded from gross income under section 959(a)." I.R.C. § 960(a)(3). Recall that § 959(a) excludes earnings treated as previously taxed from income upon distribution to the U.S. shareholder. (As a reminder, under § 951, certain undistributed CFC earnings generally are included in income, and thus taxed immediately.) *See supra* pp. 16-17.

2. The CFC paid foreign taxes on "the accumulated profits" from which the CFC made the distribution. I.R.C. § 960(a)(3).

3. The foreign taxes "were not deemed paid by the domestic corporation under [§ 960(a)(1)]." I.R.C. § 960(a)(3). To reiterate, § 960(a)(1) generally provides that when a U.S. shareholder includes foreign earnings as income under § 951, the shareholder can claim FTCs in the year of that inclusion. Thus, a taxpayer who already claimed FTCs under § 960(a)(1) with respect to foreign taxes paid on foreign earnings cannot *also* use those earnings to claim FTCs for the same foreign taxes under § 960(a)(3). Conversely, a taxpayer qualifies for FTCs under § 960(a)(3) when it paid foreign taxes on earnings that *weren't* included in income under § 951 — meaning the taxpayer was not deemed to have paid the foreign taxes on those earnings under § 960(a)(1). *Supra* pp. 16-17.

By "treat[ing]" earnings "as a dividend, solely for purposes of taking into account under section 902 any income … taxes paid … on or with respect to" those earnings, § 960(a)(3) provides that the U.S. shareholder is

"deemed to have paid" a portion of the CFC's "foreign income taxes," I.R.C. § 902(a) (2016). The taxpayer can thus claim FTCs. *See* I.R.C. § 901(a) (2016).

Offset earnings satisfy § 960(a)(3)'s requirements. Indeed, the whole point of accounting for unprofitable CFCs is that their losses are subtracted from "the amount which would" otherwise "be taken into account" as income for purposes of calculating the transition tax. I.R.C. § 965(b)(1). Thus, the reduced amount is included in income, but the offset earnings are not.

*First*, offset earnings are "excluded from gross income under section 959(a)." I.R.C. § 960(a)(3). That's because, "[f]or purposes of applying section 959," offset earnings are treated as already included and previously taxed under § 951(a). I.R.C. § 965(b)(4)(A). That means offset earnings are *not* included in "the amount which would … be taken into account" as "subpart F income," I.R.C. § 965(b)(1); *see* I.R.C. § 965(a), because "applying section 959" prevents offset earnings from being included in income and taxed. *See supra* pp. 14, 21-22. Thus, in applying § 959(a), offset earnings are *excluded* from income, because the earnings are treated as previously taxed. I.R.C. § 965(b)(4)(A); Summary Judgment Order, PageID##978-79.

*Second*, by "treat[ing]" offset earnings "as a dividend, solely for purposes of taking into account under section 902 any income … taxes paid" on

those earnings, § 960(a)(3) requires that the U.S. shareholder "be deemed to have paid" a portion of the CFC's "foreign income taxes," I.R.C. § 902(a). That means the taxpayer is eligible to claim FTCs. *See* I.R.C. § 901(a).

*Finally*, foreign taxes on offset earnings "were not deemed paid by the domestic corporation under [§ 960(a)(1)]." I.R.C. § 960(a)(3). That's because § 960(a)(1) applies to amounts "included under section 951(a) in [a U.S. shareholder's] gross income." And offset earnings are *not* included in a U.S. shareholder's income under § 951(a). That's because § 965(b)(4)(A) requires only application of § 959, and treating offset earnings as previously taxed under § 951(a) for purposes of *that* application only. *Supra* pp. 18-22. So offset earnings are not "included under section 951(a)" in gross income. I.R.C. § 960(a)(1). The taxes associated with those earnings thus are not deemed paid by the U.S. shareholder under § 960(a)(1).

**B.  Section 960(a)(3)'s plain text makes clear that FedEx is entitled to claim FTCs on its offset earnings.**

Section 960(a)(3)'s plain text makes clear that FedEx is entitled to claim FTCs on its offset earnings. *First*, FedEx received distributions of offset earnings from its CFCs, *supra* p. 25, and those earnings were "excluded from [FedEx's] gross income under section 959(a)," I.R.C. § 960(a)(3).

*Second*, those offset earnings were treated as dividends "for purposes of taking into account under section 902" foreign income taxes that FedEx's CFCs paid on those earnings. I.R.C. § 960(a)(3). FedEx was thus "deemed to have paid" those taxes, I.R.C. § 902(a), and could claim FTCs, I.R.C. § 901(a).

*Finally*, the foreign taxes "were not deemed paid by" FedEx in a prior taxable year under § 960(a)(1), I.R.C. § 960(a)(3), because the foreign earnings weren't "included [as income] under section 951(a)," I.R.C. § 960(a)(1).

## C. The government's counterarguments fail.

The government's primary argument isn't about the statutory text. Instead, the government's headline argument is about how the FTC regime's supposed purpose and Treasury's view of policy allow Treasury to override legislative text. The government contends that the purpose of FTCs is to allow credits only "for taxes paid to foreign countries on income that *also* is taxed by the United States." Br. 1. In the government's view, allowing taxpayers like FedEx to claim FTCs on offset earnings "would not mitigate double taxation." Br. 1. So, the government asserts, Treasury had authority under § 965(o) to bar FTCs on offset earnings under § 960(a)(3). Br. 35-47. Treasury's purpose-driven authority is so broad in the government's view, that its fallback argument is that §§ 960(a)(3) and 965(b)(4)(A) don't allow

taxpayers to claim FTCs on offset earnings anyway. Br. 48-66. Those arguments fail. Section 965(o) doesn't authorize Treasury to override the text of any Code provision, much less the text of a different section altogether. The government's statutory argument fails, too, because it ignores the plain text of §§ 960(a)(3) and 965(b)(4)(A).

### 1. Section 965(o) does not authorize Treasury to override the text of § 960(a)(3) or any other Code provision.

The government asserts that § 965(o) authorized Treasury to promulgate the Disallowance Rule, because that provision gives Treasury broad discretion to issue regulations "to prevent the avoidance of the purposes of [§ 965]." I.R.C. § 965(o)(2). According to the government, the purpose of § 965 is to allow FTCs only to the extent necessary to mitigate double taxation, and allowing taxpayers to claim FTCs on offset earnings would contravene that purpose and be "bizarre." Br. 36, 38. That argument fails. As *Loper Bright* makes clear, courts determine the limits of agency authority by interpreting the statutes granting that authority. Nothing in the authorization "to prevent the avoidance of the purposes of [§ 965]" allows the government to rewrite the results that § 960(a)(3) expressly allows.

### a. Section 965(o) authorizes Treasury to issue regulations to prevent the avoidance of the purposes of § 965, but that isn't an authorization to rewrite the Code.

Section 965(o) authorizes Treasury to promulgate regulations that are "necessary or appropriate to carry out the provisions of [§ 965], including" regulations "to prevent the avoidance of the purposes of [§ 965]." I.R.C. § 965(o), (o)(2). That authority doesn't allow Treasury to rewrite statutes, much less the terms of a different provision.

***i.*** The best reading of a statute may be that it authorizes an agency "to regulate subject to the limits imposed by a term or phrase that 'leaves agencies with flexibility,'" "such as 'appropriate' or 'reasonable.'" *Loper Bright*, 603 U.S. at 395. But such delegations aren't unbounded. Courts must "independently interpret the statute and effectuate the will of Congress" by "fix[ing] the boundaries of [the] delegated authority." *Id.*; *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 420 (6th Cir. 2024).

For instance, "the adjectives *necessary* and *appropriate* limit the authorization" to make rules anchored to the provisions the agency can carry out. *Mexican Gulf Fishing Co. v. Department of Commerce*, 60 F.4th 956, 965 (5th Cir. 2023). In *Michigan v. EPA*, 576 U.S. 743, 747, 751-53 (2015), for example, the EPA was required to consider the cost of a regulation when finding a

regulation "appropriate and necessary" based on the results of an environmental study. Thus, authority to promulgate "appropriate" regulations "does not afford the agency authority to adopt regulations as it sees fit with respect to all matters covered by the agency's authorizing statute." *New York Stock Exchange LLC v. SEC*, 962 F.3d 541, 554 (D.C. Cir. 2020). Nor can "[t]he grant of authority to promulgate 'necessary' regulations … expand the scope of the provisions the agency is tasked with 'carry[ing] out.'" *Gulf Fishermens Ass'n v. National Marine Fisheries Service*, 968 F.3d 454, 465 (5th Cir. 2020).

Authority to "carry out" the provisions of a section is likewise grounded in textual limitations, and isn't authority to "render nugatory" those provisions. *Allegheny Defense Project v. Federal Energy Regulatory Commission*, 964 F.3d 1, 16 (D.C. Cir. 2020) (en banc). The authority allows agencies to "pass rules to carry out powers granted by … the statute." *Heating, Air Conditioning, & Refrigeration Distributors International v. EPA*, 71 F.4th 59, 66 (D.C. Cir. 2023). Those rules must effectuate statutory text and thus "cannot displace" it. *Murray Energy Corp. v. EPA*, 936 F.3d 597, 627 (D.C. Cir. 2019). Indeed, regulations are a "nullity" if they fail "to carry into effect the will of Congress as expressed by the statute." *Manhattan General Equipment Co. v. Commissioner*, 297 U.S. 129, 134 (1936).

The same goes for provisions authorizing agencies to "carry out" a statute's "purposes." For example, *American Hospital Ass'n v. Becerra*, 596 U.S. 724, 735-36 (2022), held that the Department of Health and Human Services (HHS) exceeded its statutory authority by reducing prescription drug reimbursement rates for certain hospitals. HHS could do so only if it first conducted "a survey of hospitals' acquisition costs for prescription drugs." *Id.*; *see* 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I). The agency couldn't rely on its authority to "adjus[t]" the average price "as necessary for purposes of" the provision, because the provision itself required HHS to first conduct the survey. 596 U.S. at 735-36.

*ii.* Section 965(o) doesn't authorize Treasury to rewrite § 960(a)(3). The Disallowance Rule purports to bar FTCs for offset earnings that § 960(a)(3) allows. The rule, supposedly based on Treasury's authority to prevent avoidance of § 965's purposes, thus rewrites another provision, § 960(a)(3). Indeed, "[a] fair reading of" Treasury's statement that there is "no need for a foreign tax credit" under § 960(a)(3), *Regulations Regarding the Transition Tax*, 84 Fed. Reg. at 1857, "is that Treasury thought the plain statutory text provided (or could be read as providing)" for FTCs, *Varian Medical*

*Systems, Inc. v. Commissioner*, 163 T.C. 76, 105 n.22 (2024). But § 965(o) doesn't authorize Treasury to rewrite § 960(a)(3) or any other provision.

Section 965(o) allows Treasury to issue regulations as "necessary or appropriate to carry out the provisions of [§ 965]." That power includes authority to issue rules "to prevent the avoidance of the purposes of [§ 965], including through a reduction in earnings and profits, through changes in entity classification or accounting methods, or otherwise." I.R.C. § 965(o).

Treasury's rulemaking authority is thus limited. *First*, Treasury can issue regulations to prevent the avoidance of the purposes of § 965—not § 960.

*Second*, "the best evidence of purpose is the statutory text." *Heard*, 127 F.4th at 636 (alterations adopted). Section 965(g) makes clear that to the extent § 965 has any purpose to disallow FTCs, that purpose is limited to disallowing FTCs under § 965(g). But the government doesn't assert that § 965(g) disallows FTCs on offset earnings. *Infra* p. 51; Order Granting Partial Summary Judgment, PageID#1160. More broadly, § 965's text makes clear that the provision's purpose is to impose a carefully calibrated tax on foreign earnings, while encouraging repatriation and minimizing the burdens on taxpayers. Indeed, § 965 provides a baseline equation for determining what amount of foreign earnings are subject to the tax, I.R.C. § 965(a); provides

methods of calculating whether and how to reduce the amount of earnings subject to the tax, I.R.C. § 965(b); adjusts the applicable tax rate through deductions, I.R.C. § 965(c); and allows taxpayers to pay the tax in installments over eight years, I.R.C. § 965(h).

*Finally*, Treasury has limited authority to promulgate regulations addressing certain *means* of avoiding § 965's purpose: "through a reduction in earnings and profits, through changes in entity classification or accounting methods, or otherwise." I.R.C. § 965(o)(2). But § 965(o) doesn't allow Treasury to rewrite § 960(a)(3). For starters, agencies cannot rewrite statutes. Agencies aren't free to "[d]isagree[] with Congress's expressly codified policy choices." *Texas v. EPA*, 829 F.3d 405, 411 (5th Cir. 2016). Indeed, "where, as in this case, the provisions of the act are unambiguous, and its directions specific, there is no power to amend it by regulation." *Koshland v. Helvering*, 298 U.S. 441, 447 (1936). But Treasury purported to do just that after deciding that, "[a]s a policy matter," there is no "need for a foreign tax credit" under § 960(a)(3). *Regulations Regarding the Transition Tax*, 84 Fed. Reg. at 1857.

What's more, nothing in § 965(o) authorizes Treasury to revise *other* provisions. Section 965(o) cabins Treasury's rulemaking authority to issuing regulations to prevent avoidance of the purposes of *§ 965*, not the supposed

purposes of other provisions. And statutory purpose flows from statutory text. *See supra* pp. 38-39. So the authority to make rules to further the purposes of a statute, or to prevent taxpayers from avoiding a statute's purpose, cannot be authority to "override" statutes. *Central Bank of Denver, NA v. First Interstate Bank of Denver, NA*, 511 U.S. 164, 188 (1994).

Put simply, § 965(o)'s rulemaking authorization doesn't authorize Treasury to modify the result under the text of another provision. Section 965(o) authorizes Treasury "to carry out the provisions" and purposes of § 965. "Carrying out" § 965's provisions and purposes doesn't mean rewriting provisions that Treasury doesn't like. *Supra* pp. 45-47.

*Cboe Global Markets, Inc. v. SEC*, 155 F.4th 704 (D.C. Cir. 2025), doesn't suggest otherwise. U.S. Br. 37. In *Cboe*, the SEC "determine[d] that capping access fees is a 'necessary' or 'appropriate' means of ensuring the 'fairness and usefulness'" of certain "information." 155 F.4th at 714. But the SEC was implementing the statute—not overriding it—because the agency had authority "to 'assure' the 'fairness and usefulness'" of that information. *Id.* Likewise, none of the other decisions on which the government relies (Br. 41-42), holds that agencies can override statutes based on authority to make rules that are "necessary" to implement the statute. *See Ohio Telecom Ass'n v.*

*FCC*, 150 F.4th 694, 710-20 (6th Cir. 2025); *Lesko v. United States*, 161 F.4th 1352, 1359-60 (Fed. Cir. 2025) (en banc).

### b. Section 965(g) doesn't grant Treasury a license to rewrite the Code.

The government next pivots to an inapplicable Code provision, asserting that the purpose of § 965(g) is to "allow[] FTCs only to the extent necessary to mitigate double taxation," Br. 32, and that Treasury could use § 965(o) to further *that* purpose. That is incorrect.

*First*, "purpose must be grounded in text." *Summa Holdings*, 848 F.3d at 789; *see Stanley*, 606 U.S. at 58. The government acknowledges that § 965(g) doesn't apply to offset earnings, Br. 43, so the purpose of § 965(g) has nothing to do with whether FedEx can claim FTCs under § 960(a)(3).

*Second*, there is no overarching principle in the Code that allows FTCs only with respect to income that the United States also taxes. Congress uses precise language to allow and limit FTCs. *See infra* p. 60. That language is how Congress has chosen to further the purposes of the FTC regime. Indeed, although *Chrysler Corp. v. Commissioner*, 436 F.3d 644, 654-55 (6th Cir. 2006), noted that the FTC regime generally "'mitigate[s] the evil of double taxation,'" the Court answered the question at hand by first analyzing the

statute's "plain language." *See* U.S. Br. 35. And *National Cash Register Co. v. United States*, 400 F.2d 820, 825 (6th Cir. 1968), likewise considered whether "the express language" of the Code and a treaty provision allowed the taxpayer to claim credits under both sources of law, but didn't hold that the supposed purpose of the FTC regime could override express statutory language. *See* U.S. Br. 63.

The government's purposivist argument also ignores that FTCs aren't measured on an item-by-item basis, and that taxpayers can claim FTCs for foreign taxes paid on items that the United States doesn't tax. Just because the United States doesn't tax one particular item of income that *is* taxed overseas doesn't mean the taxpayer is barred from claiming FTCs based on that income. *Supra* pp. 11-12.

*Third*, the Supreme Court and this Court have repeatedly held that taxpayers are entitled to benefits based on the Code's plain language, even when the government complains that the taxpayer would receive a "windfall" or "double benefit," U.S. Br. 25. In *Gitlitz v. Commissioner*, 531 U.S. 206, 219-20 (2001), the Court held that taxpayers could claim deductions under "the Code's plain text," and declined to consider the IRS's "policy concern" that applying the text would confer a "double windfall" on the taxpayer.

*Hanover Bank v. Commissioner*, 369 U.S. 672, 682 (1962), likewise held that a taxpayer could claim a deduction that the Code authorized, and rejected the IRS's argument that the taxpayer was benefitting from a "loophole." The Court wasn't "at liberty, notwithstanding the apparent tax-saving windfall," "to add or alter the words employed to effect a purpose which does not appear on the face of the statute." *Id.* at 687.

Similarly, *Summa Holdings* held that the Code's plain text allowed taxpayers to claim a benefit, despite the IRS's complaint that the taxpayers thus "reduce their tax bills." 848 F.3d at 788. This Court explained that "[t]he best way to effectuate Congress's nuanced policy judgments is to apply each provision as its text requires — not to elevate purpose over text." *Id.* at 788-89.

So too here. "Congress spoke clearly" in §§ 960(a)(3) and 965(b)(4)(A), and "[a]ppeals to policy and Congress's overarching purpose cannot overcome [legislative] choices, no matter how much the Commissioner may dislike them." *Varian*, 163 T.C. at 102.

*Finally*, even assuming § 965(g)'s purpose is to allow FTCs only to mitigate double taxation, that purpose doesn't authorize Treasury to override § 960(a)(3) and its separate grant of FTCs. No statute pursues its purposes at all costs. *Stanley*, 606 U.S. at 58. And an agency's belief that "its [regulation]

is good policy" can't "change the statute's text." *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1083 (D.C. Cir. 2017).

The Disallowance Rule also doesn't address the elements factoring into § 965's carefully calibrated equation, like earnings and profits, entity classifications, and accounting methods. Instead, it simply nullifies § 960(a)(3).

### c. Interpreting § 960(a)(3) as allowing taxpayers to claim FTCs for offset earnings isn't "bizarre," and the government's view raises serious concerns.

The government gestures at absurdity, arguing that it would be "bizarre" to allow FTCs on offset earnings. Br. 36. That argument fails.

*First*, policy choices are "for Congress, not [the courts], to resolve." *Soto v. United States*, 605 U.S. 360, 375 (2025). And absurdity plays a role in statutory interpretation only in "rare" situations where applying the plain language would be "gross" and "shock the general moral or common sense." *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930). Section 960(a)(3) comes nowhere close to meeting that bar. It was rational for Congress to encourage taxpayers to repatriate foreign earnings by allowing FTCs on offset earnings. It certainly wasn't absurd. *See supra* pp. 11-12, 31-32.

*Second*, the government's view—that § 965(o) authorizes Treasury to rewrite the Tax Code—would have serious consequences for the rest of the

U.S. Code. The Code authorizes Treasury to promulgate regulations to "carry out" many provisions. For example, § 901 includes five delegations of authority to issue regulations "to carry out" § 901's "purposes" or provisions. I.R.C. § 901(j)(4), (k)(4)(C), (*l*)(2)(D), (*l*)(3), (m)(7). Like § 965(o), none permits Treasury to disallow FTCs based on its policy preferences.

Other agencies likewise have authority to carry out particular provisions. *See, e.g.*, 16 U.S.C. § 825h (Federal Energy Regulatory Commission); 42 U.S.C. § 300gg-92 (Department of Health and Human Services); 47 U.S.C. § 303(f) (Federal Communications Commission); 49 U.S.C. § 40113(a) (Department of Transportation). Congress also has authorized some agencies to carry out the purposes or objectives of statutory provisions. *See, e.g.*, 15 U.S.C. § 1691b(a) (Consumer Financial Protection Bureau); 33 U.S.C. § 1311(b)(1)(A) (Environmental Protection Agency); 42 U.S.C. § 2073(a)(4) (Nuclear Regulatory Commission).

The government's view of § 965(o) would mean that agencies could run roughshod over the U.S. Code, rewriting provisions they don't like. That can't be right. "If the government can undo transactions that the terms of the Code expressly authorize, it's fair to ask what the point of making these terms accessible to the taxpayer and binding on the tax collector is." *Summa*

*Holdings*, 848 F.3d at 782. And a system in which agencies could rewrite the U.S. Code to their liking would upend regulated parties' reasonable expectation that Congress—not the executive branch—writes and amends laws.

### 2. The government's assertion that §§ 7805(a) and 902(c)(8) authorized Treasury to promulgate the Disallowance Rule is incorrect.

The government asserts in a footnote that I.R.C. §§ 7805(a) and 902(c)(8) also authorized Treasury to promulgate the Disallowance Rule. Br. 44 n.8. That is incorrect.

*First*, undeveloped arguments raised only in footnotes are forfeited. *Cf. Department of Navy v. Federal Labor Relations Authority*, 975 F.2d 348, 352 n.1 (7th Cir. 1992).

*Second*, neither §§ 7805(a) nor 902(c)(8) authorizes Treasury to rewrite § 960(a)(3). Section 7805(a) authorizes Treasury to "prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law." Treasury "cannot escape Congress's clear intent," expressed in § 960(a)(3)'s text, by invoking its "general authority" under § 7805(a). *Air Alliance Houston v. EPA*, 906 F.3d 1049, 1061 (5th Cir. 2018). Indeed, agencies can't amend statutes based on even "a broad grant of general rulemaking authority."

*Contender Farms, LLP v. USDA*, 779 F.3d 258, 273 (5th Cir. 2015). And authority to "carry out" other provisions isn't authority to "render [them] nugatory." *Allegheny Defense Project*, 964 F.3d at 16. Nor can the authority "expand the scope of the provisions the agency is tasked with 'carry[ing] out.'" *Gulf Fishermens Ass'n*, 968 F.3d at 465.

Here, "enforc[ing]" the Code doesn't mean overriding its provisions. No provision disallows FTCs for offset earnings, so Treasury couldn't have prescribed the Disallowance Rule to "enforc[e]" any such provision. To the contrary, § 960(a)(3) *allows* FTCs for offset earnings.

Section 902(c)(8) doesn't grant Treasury the authority it seeks, either. That provision authorizes Treasury to "provide such regulations as may be necessary or appropriate to carry out the provisions of this section and section 960." But "carry out" doesn't mean "rewrite." *Supra* pp. 45-47. And the Disallowance Rule purports to rewrite § 960(a)(3).

> **3.  The government incorrectly claims that §§ 965(b)(4)(A) and 960(a)(3) disallow FTCs for offset earnings.**

The government saves its textual argument for last, arguing that, even if the Disallowance Rule is invalid, § 960(a)(3) doesn't allow taxpayers to claim FTCs for offset earnings. In the government's view, § 965(b)(4)(A)

treats offset earnings as if they previously *were* included in income, meaning they cannot be used to claim FTCs under § 960(a)(3). The government adds that the Court should resolve any ambiguity in its favor. Br. 48-66. Those arguments fail.

**a.** The government relies on § 965(b)(4)(A), which provides that when offset earnings are distributed, they "shall," "[f]or purposes of applying section 959," "be treated as" having been included in income under § 951. *See* Br. 48-49. According to the government, because § 951 requires including foreign earnings in income and taxing that income, offset earnings also are included as income and considered previously taxed when applying § 960(a)(3). And because U.S. corporations are deemed to have paid the foreign taxes on earnings included in § 951 income, *supra* pp. 14-15, the government claims that the foreign taxes associated with offset earnings are likewise "treated as having been 'deemed paid' by FedEx under section 960(a)(1)." Br. 52. Thus, the government reasons, FTCs aren't available under § 960(a)(3), because that provision requires foreign taxes to "not [be] deemed paid" under § 960(a)(1). *Id.* That logic fails.

*First*, the government ignores the plain text of § 965(b)(4)(A). Section 965(b)(4)(A) provides that "[f]or purposes of applying section 959," earnings

are "treated as" "included in … gross income" under § 951(a). By insisting that § 965(b)(4)(A) requires including income under § 951 when applying *§ 960*, the government ignores § 965(b)(4)(A)'s "limiting initial language." *Stanovsek v. Holder*, 768 F.3d 515, 520 (6th Cir. 2014). As the district court correctly observed, § 965(b)(4)(A) doesn't say "for purposes of applying sections 959 and 960." Summary Judgment Order, PageID##982-83.

Congress could have written that language. In fact, other Code provisions expressly treat certain amounts one way "for purposes of this title," while others treat amounts another way "for purposes of applying" a particular section. *Varian*, 163 T.C. at 92-93. Here, by referencing only § 959, § 965(b)(4)(A) makes clear that it "exclu[des] … other[]" provisions from the same treatment, *Eaton Corp. v. Commissioner*, 47 F.4th 434, 444 (6th Cir. 2022).

*Second*, the government ignores § 960(a)(3)'s plain text. As explained (*supra* pp. 40-43), offset earnings are "excluded from gross income under section 959(a)," I.R.C. § 960(a)(3), because under § 965(b)(4)(A), they are not included in "the amount which would … be taken into account" as a U.S. shareholder's "subpart F income." Indeed, § 965(b)(4)(A) states that, "[f]or purposes of applying section 959," offset earnings are "treated as an amount which was included in the gross income" of a U.S. shareholder "under

section 951(a)." The upshot is that offset earnings are *excluded* from income under § 959(a). *Supra* p. 41. Indeed, the whole point of accounting for unprofitable CFCs is that their losses are excluded from "the amount which would" otherwise "be taken into account" as income for purposes of calculating the transition tax. I.R.C. § 965(b)(1).

*Third*, § 965(g) and other TCJA provisions make clear that when Congress wanted to disallow FTCs, it said so. *See, e.g.*, I.R.C. §§ 245A(d)(1) (2018), 960(d)(4) (2018). Other Code provisions likewise specify when FTCs are limited, reduced, or disallowed. *See* I.R.C. §§ 6038(c), 901(j). Congress didn't do so with respect to offset earnings under § 960(a)(3). And courts presume that "Congress acts intentionally" when it uses different language. *National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 544 (2012).

*Finally*, even on the government's own theory, FedEx was deemed to have paid taxes on offset earnings in a prior year. If so, FedEx should have been allowed to claim FTCs under § 960(a)(1). *See supra* pp. 16-17; Summary Judgment Order, PageID##983-85; U.S. Br. 22. But the government points to no previous tax year for which foreign taxes on offset earnings should have been deemed paid.

**b.**    The text of §§ 960(a)(3) and 965(b)(4)(A) is clear. But even if it weren't, when "the interpretative question" is "a close call," "longstanding precedent … instruct[s] [courts] to construe" Code provisions against the government and in favor of the taxpayer—not the other way around. *Apache Corp.*, 165 T.C. No. 11, at *11; *see, e.g.*, *United States v. Merriam*, 263 U.S. 179, 188 (1923); *City of Tucson v. Commissioner*, 820 F.2d 1283, 1288 n.31 (D.C. Cir. 1987); *cf. OfficeMax, Inc. v. United States*, 428 F.3d 583, 594 (6th Cir. 2005).

The decisions the government relies on (at 65-66) don't establish an opposite presumption. They just confirm that taxpayers have "the burden of proving [their] eligibility for [a] credit," *Audio Technica U.S., Inc. v. United States*, 963 F.3d 569, 577-78 (6th Cir. 2020), or a deduction, *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934); *Schiff v. United States*, 942 F.2d 348, 352 (6th Cir. 1991). But there's no question about proof here.

## CONCLUSION

The Court should affirm the district court's order granting judgment to FedEx.

Dated: March 23, 2026

Respectfully submitted,

*/s/ Shay Dvoretzky*

Shay Dvoretzky
  *Counsel of Record*
Rajiv Madan
Christopher P. Bowers
Parker Rider-Longmaid
Joshua G. Rabon
Sylvia O. Tsakos
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

Joseph B. Judkins
George M. Clarke
Cameron C. Reilly
BAKER & MCKENZIE LLP
815 Connecticut Ave., NW
Washington, DC 20006

*Counsel for Plaintiff-Appellee FedEx Corp. and Subsidiaries*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, as calculated by Microsoft Word, it contains 12,986 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(b)(1). I also certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) and Circuit Rule 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.

Dated: March 23, 2026

Respectfully submitted,

*/s/ Shay Dvoretzky*

Shay Dvoretzky
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Plaintiff-Appellee*
 *FedEx Corp. and Subsidiaries*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2026, I electronically filed this brief and addendum with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


Dated: March 23, 2026          Respectfully submitted,

*/s/ Shay Dvoretzky*

Shay Dvoretzky
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Plaintiff-Appellee*
  *FedEx Corp. and Subsidiaries*

# ADDENDUM

**Page**

Designation of Relevant District Court Documents ...............................Add.2

I.R.C. § 901 (2016) ..........................................................................Add.3

I.R.C. § 902 (2016) ........................................................................Add.13

I.R.C. § 904 (2016) ........................................................................Add.19

I.R.C. § 951 (2016) ........................................................................Add.42

I.R.C. § 959 (2016) ........................................................................Add.46

I.R.C. § 960 (2016) ........................................................................Add.50

I.R.C. § 965 (2017) ........................................................................Add.55

26 C.F.R. § 1.965-5 ........................................................................Add.64

**Designation of Relevant District Court Documents**

Pursuant to Sixth Circuit Rule 30(g)(1), Plaintiff-Appellee hereby designates the following filings in the district court's record as relevant to the disposition of this appeal:

| ECF | Description | Date | PageID## |
|---|---|---|---|
| 1 | Complaint | 11/02/2020 | 1-32 |
| 42 | FedEx Mot. for Partial Summary Judgment | 7/25/2022 | 235-272 |
| 42-1 | Joint Statement of Undisputed Facts | 7/25/2022 | 273-278 |
| 42-2 | Declaration of R. Bustamante | 7/25/2022 | 282-287 |
| 42-2 | Declaration of J. Pourciaux | 7/25/2022 | 288-295 |
| 43-1 | U.S. Mot. for Partial Summary Judgment | 9/09/2022 | 840-875 |
| 49 | Order on Cross Motions for Partial Summary Judgment | 3/31/2023 | 962-990 |
| 70 | Order Granting Partial Summary Judgment | 2/13/2025 | 1139-1166 |
| 74 | Order Granting Motion for Judgment | 6/04/2025 | 1171-1172 |
| 75 | Judgment | 6/04/2025 | 1173-1174 |
| 76 | Notice of Appeal | 8/01/2025 | 1175-1176 |

I.R.C. § 901 (2016)

1982—Pub. L. 97–248, title III, § 337(b), Sept. 3, 1982, 96 Stat. 630, added item for subpart I.

1978—Pub. L. 95–615, § 202(g)(4), formerly § 202(f)(4), Nov. 8, 1978, 92 Stat. 3100, renumbered Pub. L. 96–222, title I, § 108(a)(1)(A), Apr. 1, 1980, 94 Stat. 223, inserted in item for subpart B ''or residents'' after ''citizens.''

1976—Pub. L. 94–455, title X, § 1012(b)(3)(B), Oct. 4, 1976, 90 Stat. 1614, struck out item for subpart G ''Export Trade Corporation'' from analysis without a corresponding repeal of text in such subpart. The amendment probably should have struck out item for subpart H.

Pub. L. 94–455, title X, §§ 1052(c)(7), 1053(d)(5), Oct. 4, 1976, 90 Stat. 1648, 1649, struck out item for subpart C, relating to Western Hemisphere trade corporations, effective for taxable years beginning after Dec. 31, 1979, and item for subpart E, relating to China Trade Act corporations, effective for taxable years beginning after Dec. 31, 1977.

1966—Pub. L. 89–809, title I, § 105(e)(2), Nov. 13, 1966, 80 Stat. 1567, added item for subpart H.

1962—Pub. L. 87–834, § 12(b)(3), Oct. 16, 1962, 76 Stat. 1031, added items for subparts F and G.

### SUBPART A—FOREIGN TAX CREDIT

Sec.
901. Taxes of foreign countries and of possessions of United States.
902. Deemed paid credit where domestic corporation owns 10 percent or more of voting stock of foreign corporation.
903. Credit for taxes in lieu of income, etc., taxes.
904. Limitation on credit.
905. Applicable rules.
906. Nonresident alien individuals and foreign corporations.
907. Special rules in case of foreign oil and gas income.
908. Reduction of credit for participation in or cooperation with an international boycott.
909. Suspension of taxes and credits until related income taken into account.

#### AMENDMENTS

2010—Pub. L. 111–226, title II, § 211(b), Aug. 10, 2010, 124 Stat. 2395, added item 909.

1986—Pub. L. 99–514, title XII, § 1202(d), Oct. 22, 1986, 100 Stat. 2531, substituted ''Deemed paid credit where domestic corporation owns 10 percent or more of voting stock of foreign corporation'' for ''Credit for corporate stockholder in foreign corporation'' in item 902.

1976—Pub. L. 94–455, title X, § 1061(b), Oct. 4, 1976, 90 Stat. 1650, added item 908.

1975—Pub. L. 94–12, title VI, § 601(c), Mar. 29, 1975, 89 Stat. 57, added item 907.

1966—Pub. L. 89–809, title I, § 106(a)(2), Nov. 13, 1966, 80 Stat. 1569, added item 906.

### § 901. Taxes of foreign countries and of possessions of United States

#### (a) Allowance of credit

If the taxpayer chooses to have the benefits of this subpart, the tax imposed by this chapter shall, subject to the limitation of section 904, be credited with the amounts provided in the applicable paragraph of subsection (b) plus, in the case of a corporation, the taxes deemed to have been paid under sections 902 and 960. Such choice for any taxable year may be made or changed at any time before the expiration of the period prescribed for making a claim for credit or refund of the tax imposed by this chapter for such taxable year. The credit shall not be allowed against any tax treated as a tax not imposed by this chapter under section 26(b).

#### (b) Amount allowed

Subject to the limitation of section 904, the following amounts shall be allowed as the credit under subsection (a):

#### (1) Citizens and domestic corporations

In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States; and

#### (2) Resident of the United States or Puerto Rico

In the case of a resident of the United States and in the case of an individual who is a bona fide resident of Puerto Rico during the entire taxable year, the amount of any such taxes paid or accrued during the taxable year to any possession of the United States; and

#### (3) Alien resident of the United States or Puerto Rico

In the case of an alien resident of the United States and in the case of an alien individual who is a bona fide resident of Puerto Rico during the entire taxable year, the amount of any such taxes paid or accrued during the taxable year to any foreign country; and

#### (4) Nonresident alien individuals and foreign corporations

In the case of any nonresident alien individual not described in section 876 and in the case of any foreign corporation, the amount determined pursuant to section 906; and

#### (5) Partnerships and estates

In the case of any person described in paragraph (1), (2), (3), or (4), who is a member of a partnership or a beneficiary of an estate or trust, the amount of his proportionate share of the taxes (described in such paragraph) of the partnership or the estate or trust paid or accrued during the taxable year to a foreign country or to any possession of the United States, as the case may be. Under rules or regulations prescribed by the Secretary, in the case of any foreign trust of which the settlor or another person would be treated as owner of any portion of the trust under subpart E but for section 672(f), the allocable amount of any income, war profits, and excess profits taxes imposed by any foreign country or possession of the United States on the settlor or such other person in respect of trust income.

#### (c) Similar credit required for certain alien residents

Whenever the President finds that—

(1) a foreign country, in imposing income, war profits, and excess profits taxes, does not allow to citizens of the United States residing in such foreign country a credit for any such taxes paid or accrued to the United States or any foreign country, as the case may be, similar to the credit allowed under subsection (b)(3),

(2) such foreign country, when requested by the United States to do so, has not acted to provide such a similar credit to citizens of the United States residing in such foreign country, and

(3) it is in the public interest to allow the credit under subsection (b)(3) to citizens or subjects of such foreign country only if it allows such a similar credit to citizens of the United States residing in such foreign country,

the President shall proclaim that, for taxable years beginning while the proclamation remains in effect, the credit under subsection (b)(3) shall be allowed to citizens or subjects of such foreign country only if such foreign country, in imposing income, war profits, and excess profits taxes, allows to citizens of the United States residing in such foreign country such a similar credit.

**(d) Treatment of dividends from a DISC or former DISC**

For purposes of this subpart, dividends from a DISC or former DISC (as defined in section 992(a)) shall be treated as dividends from a foreign corporation to the extent such dividends are treated under part I as income from sources without the United States.

**(e) Foreign taxes on mineral income**

**(1) Reduction in amount allowed**

Notwithstanding subsection (b), the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country or possession of the United States with respect to foreign mineral income from sources within such country or possession which would (but for this paragraph) be allowed under such subsection shall be reduced by the amount (if any) by which—

(A) the amount of such taxes (or, if smaller, the amount of the tax which would be computed under this chapter with respect to such income determined without the deduction allowed under section 613), exceeds

(B) the amount of the tax computed under this chapter with respect to such income.

**(2) Foreign mineral income defined**

For purposes of paragraph (1), the term ''foreign mineral income'' means income derived from the extraction of minerals from mines, wells, or other natural deposits, the processing of such minerals into their primary products, and the transportation, distribution, or sale of such minerals or primary products. Such term includes, but is not limited to—

(A) dividends received from a foreign corporation in respect of which taxes are deemed paid by the taxpayer under section 902, to the extent such dividends are attributable to foreign mineral income, and

(B) that portion of the taxpayer's distributive share of the income of partnerships attributable to foreign mineral income.

**(f) Certain payments for oil or gas not considered as taxes**

Notwithstanding subsection (b) and sections 902 and 960, the amount of any income, or profits, and excess profits taxes paid or accrued during the taxable year to any foreign country in connection with the purchase and sale of oil or gas extracted in such country is not to be considered as tax for purposes of section 275(a) and this section if—

(1) the taxpayer has no economic interest in the oil or gas to which section 611(a) applies, and

(2) either such purchase or sale is at a price which differs from the fair market value for such oil or gas at the time of such purchase or sale.

**(g) Certain taxes paid with respect to distributions from possessions corporations**

**(1) In general**

For purposes of this chapter, any tax of a foreign country or possession of the United States which is paid or accrued with respect to any distribution from a corporation—

(A) to the extent that such distribution is attributable to periods during which such corporation is a possessions corporation, and

(B)(i) if a dividends received deduction is allowable with respect to such distribution under part VIII of subchapter B, or

(ii) to the extent that such distribution is received in connection with a liquidation or other transaction with respect to which gain or loss is not recognized,

shall not be treated as income, war profits, or excess profits taxes paid or accrued to a foreign country or possession of the United States, and no deduction shall be allowed under this title with respect to any amount so paid or accrued.

**(2) Possessions corporation**

For purposes of paragraph (1), a corporation shall be treated as a possessions corporation for any period during which an election under section 936 applied to such corporation, during which section 931 (as in effect on the day before the date of the enactment of the Tax Reform Act of 1976) applied to such corporation, or during which section 957(c) (as in effect on the day before the date of the enactment of the Tax Reform Act of 1986) applied to such corporation.

**[(h) Repealed. Pub. L. 110–172, § 11(g)(9), Dec. 29, 2007, 121 Stat. 2490]**

**(i) Taxes used to provide subsidies**

Any income, war profits, or excess profits tax shall not be treated as a tax for purposes of this title to the extent—

(1) the amount of such tax is used (directly or indirectly) by the country imposing such tax to provide a subsidy by any means to the taxpayer, a related person (within the meaning of section 482), or any party to the transaction or to a related transaction, and

(2) such subsidy is determined (directly or indirectly) by reference to the amount of such tax, or the base used to compute the amount of such tax.

**(j) Denial of foreign tax credit, etc., with respect to certain foreign countries**

**(1) In general**

Notwithstanding any other provision of this part—

(A) no credit shall be allowed under subsection (a) for any income, war profits, or excess profits taxes paid or accrued (or deemed paid under section 902 or 960) to any country if such taxes are with respect to income attributable to a period during which this subsection applies to such country, and

(B) subsections (a), (b), and (c) of section 904 and sections 902 and 960 shall be applied separately with respect to income attributable to such a period from sources within such country.

**(2) Countries to which subsection applies**

**(A) In general**

This subsection shall apply to any foreign country—

(i) the government of which the United States does not recognize, unless such government is otherwise eligible to purchase defense articles or services under the Arms Export Control Act,

(ii) with respect to which the United States has severed diplomatic relations,

(iii) with respect to which the United States has not severed diplomatic relations but does not conduct such relations, or

(iv) which the Secretary of State has, pursuant to section 6(j) of the Export Administration Act of 1979, as amended, designated as a foreign country which repeatedly provides support for acts of international terrorisms.

**(B) Period for which subsection applies**

This subsection shall apply to any foreign country described in subparagraph (A) during the period—

(i) beginning on the later of—

(I) January 1, 1987, or

(II) 6 months after such country becomes a country described in subparagraph (A), and

(ii) ending on the date the Secretary of State certifies to the Secretary of the Treasury that such country is no longer described in subparagraph (A).

**(3) Taxes allowed as a deduction, etc.**

Sections 275 and 78 shall not apply to any tax which is not allowable as a credit under subsection (a) by reason of this subsection.

**(4) Regulations**

The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purposes of this subsection, including regulations which treat income paid through 1 or more entities as derived from a foreign country to which this subsection applies if such income was, without regard to such entities, derived from such country.

**(5) Waiver of denial**

**(A) In general**

Paragraph (1) shall not apply with respect to taxes paid or accrued to a country if the President—

(i) determines that a waiver of the application of such paragraph is in the national interest of the United States and will expand trade and investment opportunities for United States companies in such country; and

(ii) reports such waiver under subparagraph (B).

**(B) Report**

Not less than 30 days before the date on which a waiver is granted under this paragraph, the President shall report to Congress—

(i) the intention to grant such waiver; and

(ii) the reason for the determination under subparagraph (A)(i).

**(k) Minimum holding period for certain taxes on dividends**

**(1) Withholding taxes**

**(A) In general**

In no event shall a credit be allowed under subsection (a) for any withholding tax on a dividend with respect to stock in a corporation if—

(i) such stock is held by the recipient of the dividend for 15 days or less during the 31-day period beginning on the date which is 15 days before the date on which such share becomes ex-dividend with respect to such dividend, or

(ii) to the extent that the recipient of the dividend is under an obligation (whether pursuant to a short sale or otherwise) to make related payments with respect to positions in substantially similar or related property.

**(B) Withholding tax**

For purposes of this paragraph, the term "withholding tax" includes any tax determined on a gross basis; but does not include any tax which is in the nature of a prepayment of a tax imposed on a net basis.

**(2) Deemed paid taxes**

In the case of income, war profits, or excess profits taxes deemed paid under section 853, 902, or 960 through a chain of ownership of stock in 1 or more corporations, no credit shall be allowed under subsection (a) for such taxes if—

(A) any stock of any corporation in such chain (the ownership of which is required to obtain credit under subsection (a) for such taxes) is held for less than the period described in paragraph (1)(A)(i), or

(B) the corporation holding the stock is under an obligation referred to in paragraph (1)(A)(ii).

**(3) 45-day rule in the case of certain preference dividends**

In the case of stock having preference in dividends and dividends with respect to such stock which are attributable to a period or periods aggregating in excess of 366 days, paragraph (1)(A)(i) shall be applied—

(A) by substituting "45 days" for "15 days" each place it appears, and

(B) by substituting "91-day period" for "31-day period".

**(4) Exception for certain taxes paid by securities dealers**

**(A) In general**

Paragraphs (1) and (2) shall not apply to any qualified tax with respect to any security held in the active conduct in a foreign country of a business as a securities dealer of any person—

(i) who is registered as a securities broker or dealer under section 15(a) of the Securities Exchange Act of 1934,

(ii) who is registered as a Government securities broker or dealer under section 15C(a) of such Act, or

(iii) who is licensed or authorized in such foreign country to conduct securities activities in such country and is subject to bona fide regulation by a securities regulating authority of such country.

#### (B) Qualified tax

For purposes of subparagraph (A), the term ''qualified tax'' means a tax paid to a foreign country (other than the foreign country referred to in subparagraph (A)) if—

(i) the dividend to which such tax is attributable is subject to taxation on a net basis by the country referred to in subparagraph (A), and

(ii) such country allows a credit against its net basis tax for the full amount of the tax paid to such other foreign country.

#### (C) Regulations

The Secretary may prescribe such regulations as may be appropriate to carry out this paragraph, including regulations to prevent the abuse of the exception provided by this paragraph and to treat other taxes as qualified taxes.

### (5) Certain rules to apply

For purposes of this subsection, the rules of paragraphs (3) and (4) of section 246(c) shall apply.

### (6) Treatment of bona fide sales

If a person's holding period is reduced by reason of the application of the rules of section 246(c)(4) to any contract for the bona fide sale of stock, the determination of whether such person's holding period meets the requirements of paragraph (2) with respect to taxes deemed paid under section 902 or 960 shall be made as of the date such contract is entered into.

### (7) Taxes allowed as deduction, etc.

Sections 275 and 78 shall not apply to any tax which is not allowable as a credit under subsection (a) by reason of this subsection.

### (*l*) Minimum holding period for withholding taxes on gain and income other than dividends etc.

#### (1) In general

In no event shall a credit be allowed under subsection (a) for any withholding tax (as defined in subsection (k)) on any item of income or gain with respect to any property if—

(A) such property is held by the recipient of the item for 15 days or less during the 31-day period beginning on the date which is 15 days before the date on which the right to receive payment of such item arises, or

(B) to the extent that the recipient of the item is under an obligation (whether pursuant to a short sale or otherwise) to make related payments with respect to positions in substantially similar or related property.

This paragraph shall not apply to any dividend to which subsection (k) applies.

### (2) Exception for taxes paid by dealers

#### (A) In general

Paragraph (1) shall not apply to any qualified tax with respect to any property held in the active conduct in a foreign country of a business as a dealer in such property.

#### (B) Qualified tax

For purposes of subparagraph (A), the term ''qualified tax'' means a tax paid to a foreign country (other than the foreign country referred to in subparagraph (A)) if—

(i) the item to which such tax is attributable is subject to taxation on a net basis by the country referred to in subparagraph (A), and

(ii) such country allows a credit against its net basis tax for the full amount of the tax paid to such other foreign country.

#### (C) Dealer

For purposes of subparagraph (A), the term ''dealer'' means—

(i) with respect to a security, any person to whom paragraphs (1) and (2) of subsection (k) would not apply by reason of paragraph (4) thereof, and

(ii) with respect to any other property, any person with respect to whom such property is described in section 1221(a)(1).

#### (D) Regulations

The Secretary may prescribe such regulations as may be appropriate to carry out this paragraph, including regulations to prevent the abuse of the exception provided by this paragraph and to treat other taxes as qualified taxes.

### (3) Exceptions

The Secretary may by regulation provide that paragraph (1) shall not apply to property where the Secretary determines that the application of paragraph (1) to such property is not necessary to carry out the purposes of this subsection.

### (4) Certain rules to apply

Rules similar to the rules of paragraphs (5), (6), and (7) of subsection (k) shall apply for purposes of this subsection.

### (5) Determination of holding period

Holding periods shall be determined for purposes of this subsection without regard to section 1235 or any similar rule.

### (m) Denial of foreign tax credit with respect to foreign income not subject to United States taxation by reason of covered asset acquisitions

#### (1) In general

In the case of a covered asset acquisition, the disqualified portion of any foreign income tax determined with respect to the income or gain attributable to the relevant foreign assets—

(A) shall not be taken into account in determining the credit allowed under subsection (a), and

(B) in the case of a foreign income tax paid by a section 902 corporation (as defined in

section 909(d)(5)), shall not be taken into account for purposes of section 902 or 960.

**(2) Covered asset acquisition**

For purposes of this section, the term "covered asset acquisition" means—

(A) a qualified stock purchase (as defined in section 338(d)(3)) to which section 338(a) applies,

(B) any transaction which—

(i) is treated as an acquisition of assets for purposes of this chapter, and

(ii) is treated as the acquisition of stock of a corporation (or is disregarded) for purposes of the foreign income taxes of the relevant jurisdiction,

(C) any acquisition of an interest in a partnership which has an election in effect under section 754, and

(D) to the extent provided by the Secretary, any other similar transaction.

**(3) Disqualified portion**

For purposes of this section—

**(A) In general**

The term "disqualified portion" means, with respect to any covered asset acquisition, for any taxable year, the ratio (expressed as a percentage) of—

(i) the aggregate basis differences (but not below zero) allocable to such taxable year under subparagraph (B) with respect to all relevant foreign assets, divided by

(ii) the income on which the foreign income tax referred to in paragraph (1) is determined (or, if the taxpayer fails to substantiate such income to the satisfaction of the Secretary, such income shall be determined by dividing the amount of such foreign income tax by the highest marginal tax rate applicable to such income in the relevant jurisdiction).

**(B) Allocation of basis difference**

For purposes of subparagraph (A)(i)—

**(i) In general**

The basis difference with respect to any relevant foreign asset shall be allocated to taxable years using the applicable cost recovery method under this chapter.

**(ii) Special rule for disposition of assets**

Except as otherwise provided by the Secretary, in the case of the disposition of any relevant foreign asset—

(I) the basis difference allocated to the taxable year which includes the date of such disposition shall be the excess of the basis difference with respect to such asset over the aggregate basis difference with respect to such asset which has been allocated under clause (i) to all prior taxable years, and

(II) no basis difference with respect to such asset shall be allocated under clause (i) to any taxable year thereafter.

**(C) Basis difference**

**(i) In general**

The term "basis difference" means, with respect to any relevant foreign asset, the excess of—

(I) the adjusted basis of such asset immediately after the covered asset acquisition, over

(II) the adjusted basis of such asset immediately before the covered asset acquisition.

**(ii) Built-in loss assets**

In the case of a relevant foreign asset with respect to which the amount described in clause (i)(II) exceeds the amount described in clause (i)(I), such excess shall be taken into account under this subsection as a basis difference of a negative amount.

**(iii) Special rule for section 338 elections**

In the case of a covered asset acquisition described in paragraph (2)(A), the covered asset acquisition shall be treated for purposes of this subparagraph as occurring at the close of the acquisition date (as defined in section 338(h)(2)).

**(4) Relevant foreign assets**

For purposes of this section, the term "relevant foreign asset" means, with respect to any covered asset acquisition, any asset (including any goodwill, going concern value, or other intangible) with respect to such acquisition if income, deduction, gain, or loss attributable to such asset is taken into account in determining the foreign income tax referred to in paragraph (1).

**(5) Foreign income tax**

For purposes of this section, the term "foreign income tax" means any income, war profits, or excess profits tax paid or accrued to any foreign country or to any possession of the United States.

**(6) Taxes allowed as a deduction, etc.**

Sections 275 and 78 shall not apply to any tax which is not allowable as a credit under subsection (a) by reason of this subsection.

**(7) Regulations**

The Secretary may issue such regulations or other guidance as is necessary or appropriate to carry out the purposes of this subsection, including to exempt from the application of this subsection certain covered asset acquisitions, and relevant foreign assets with respect to which the basis difference is de minimis.

**(n) Cross reference**

**(1) For deductions of income, war profits, and excess profits taxes paid to a foreign country or a possession of the United States, see sections 164 and 275.**

**(2) For right of each partner to make election under this section, see section 703(b).**

**(3) For right of estate or trust to the credit for taxes imposed by foreign countries and possessions of the United States under this section, see section 642(a).**

**(4) For reduction of credit for failure of a United States person to furnish certain information with respect to a foreign corporation or partnership controlled by him, see section 6038.**

(Aug. 16, 1954, ch. 736, 68A Stat. 285; Pub. L. 86–780, § 3(a), (b), Sept. 14, 1960, 74 Stat. 1013; Pub. L. 87–834, §§ 9(d)(3), 12(b)(1), Oct. 16, 1962, 76 Stat.

1001, 1031; Pub. L. 88–272, title II, § 207(b)(7), Feb. 26, 1964, 78 Stat. 42; Pub. L. 89–384, § 1(c)(2), Apr. 8, 1966, 80 Stat. 102; Pub. L. 89–809, title I, § 106(a)(4), (5), (b)(1), (2), Nov. 13, 1966, 80 Stat. 1569; Pub. L. 91–172, title III, § 301(b)(9), title V, § 506(a), Dec. 30, 1969, 83 Stat. 585, 634; Pub. L. 92–178, title V, § 502(b)(1), Dec. 10, 1971, 85 Stat. 549; Pub. L. 93–406, title II, §§ 2001(g)(2)(C), 2002(g)(3), 2005(c)(5), Sept. 2, 1974, 88 Stat. 957, 968, 991; Pub. L. 94–12, title VI, § 601(b), Mar. 29, 1975, 89 Stat. 57; Pub. L. 94–455, title X, §§ 1031(b)(1), 1051(d), title XIX, § 1901(b)(1)(H)(iii), (37)(A), Oct. 4, 1976, 90 Stat. 1622, 1645, 1791, 1803; Pub. L. 95–600, title VII, § 701(u)(1)(A), (B), Nov. 6, 1978, 92 Stat. 2912; Pub. L. 97–248, title II, § 201(d)(8)(A), formerly § 201(c)(8)(A), § 265(b)(2)(A)(iv), Sept. 3, 1982, 96 Stat. 420, 547, renumbered § 201(d)(8)(A), Pub. L. 97–448, title III, § 306(a)(1)(A)(i), Jan. 12, 1983, 96 Stat. 2400; Pub. L. 98–369, div. A, title IV, § 474(r)(20), title VI, § 612(e)(1), title VII, § 713(c)(1)(C), title VIII, § 801(d)(1), July 18, 1984, 98 Stat. 843, 912, 957, 995; Pub. L. 99–509, title VIII, § 8041(a), Oct. 21, 1986, 100 Stat. 1962; Pub. L. 99–514, title I, § 112(b)(3), title XII, § 1204(a), title XVIII, § 1876(p)(2), Oct. 22, 1986, 100 Stat. 2109, 2532, 2902; Pub. L. 100–203, title X, § 10231(a), (b), Dec. 22, 1987, 101 Stat. 1330–418, 1330–419; Pub. L. 100–647, title I, § 1012(j), title II, § 2003(c)(1), Nov. 10, 1988, 102 Stat. 3512, 3598; Pub. L. 103–149, § 4(b)(8)(A), Nov. 23, 1993, 107 Stat. 1505; Pub. L. 104–188, title I, § 1904(b)(2), Aug. 20, 1996, 110 Stat. 1912; Pub. L. 105–34, title X, § 1053(a), title XI, § 1142(e)(4), Aug. 5, 1997, 111 Stat. 941, 983; Pub. L. 105–206, title VI, § 6010(k)(3), July 22, 1998, 112 Stat. 815; Pub. L. 106–200, title VI, § 601(a), May 18, 2000, 114 Stat. 305; Pub. L. 108–311, title IV, § 406(g), Oct. 4, 2004, 118 Stat. 1190; Pub. L. 108–357, title IV, § 405(b), title VIII, § 832(a), (b), Oct. 22, 2004, 118 Stat. 1498, 1587, 1588; Pub. L. 109–135, title IV, § 403(aa)(2), Dec. 21, 2005, 119 Stat. 2630; Pub. L. 110–172, § 11(g)(9), Dec. 29, 2007, 121 Stat. 2490; Pub. L. 111–226, title II, § 212(a), Aug. 10, 2010, 124 Stat. 2396.)

### REFERENCES IN TEXT

The date of the enactment of the Tax Reform Act of 1976, referred to in subsec. (g)(2), is the date of enactment of Pub. L. 94–455, which was approved Oct. 4, 1976.

The date of the enactment of the Tax Reform Act of 1986, referred to in subsec. (g)(2), is the date of enactment of Pub. L. 99–514, which was approved Oct. 22, 1986.

The Arms Export Control Act, referred to in subsec. (j)(2)(A)(i), is Pub. L. 90–269, Oct. 22, 1968, 82 Stat. 1320, as amended, which is classified principally to chapter 39 (§ 2751 et seq.) of Title 22, Foreign Relations and Intercourse. For complete classification of this Act to the Code, see Short Title note set out under section 2751 of Title 22 and Tables.

Section 6(j) of the Export Administration Act of 1979, referred to in subsec. (j)(2)(A)(iv), is classified to section 4605(j) of Title 50, War and National Defense.

Sections 15(a) and 15C(a) of the Securities Exchange Act of 1934, referred to in subsec. (k)(4)(A)(i), (ii), are classified to sections 78*o*(a) and 78*o*–5(a), respectively, of Title 15, Commerce and Trade.

### AMENDMENTS

2010—Subsecs. (m), (n). Pub. L. 111–226 added subsec. (m) and redesignated former subsec. (m) as (n).

2007—Subsec. (h). Pub. L. 110–172 struck out subsec. (h), which read as follows: "No credit shall be allowed under this section for any income, war profits, and excess profits taxes paid or accrued with respect to the

foreign trade income (within the meaning of section 923(b)) of a FSC, other than section 923(a)(2) non-exempt income (within the meaning of section 927(d)(6))."

2005—Subsec. (*l*)(2)(C)(i). Pub. L. 109–135 struck out "if such security were stock" after "paragraph (4) thereof".

2004—Subsec. (b)(5). Pub. L. 108–357, § 405(b), substituted "any person" for "any individual".

Subsec. (k). Pub. L. 108–357, § 832(b), inserted "on dividends" after "taxes" in heading.

Subsec. (k)(1)(A)(i). Pub. L. 108–311, § 406(g)(1), substituted "31-day period" for "30-day period".

Subsec. (k)(3)(B). Pub. L. 108–311, § 406(g)(2), substituted "91-day period" for "90-day period" and "31-day period" for "30-day period".

Subsecs. (*l*), (m). Pub. L. 108–357, § 832(a), added subsec. (*l*) and redesignated former subsec. (*l*) as (m).

2000—Subsec. (j)(5). Pub. L. 106–200 added par. (5).

1998—Subsec. (k)(4)(A). Pub. L. 105–206 substituted "business as a securities dealer" for "securities business" in introductory provisions.

1997—Subsec. (k). Pub. L. 105–34, § 1053(a), added subsec. (k). Former subsec. (k) redesignated (*l*).

Subsec. (*l*). Pub. L. 105–34, § 1053(a), redesignated subsec. (k) as (*l*).

Subsec. (*l*)(4). Pub. L. 105–34, § 1142(e)(4), which directed amendment of subsec. (k)(4) by substituting "foreign corporation or partnership" for "foreign corporation", was executed to subsec. (*l*)(4) to reflect the probable intent of Congress and the redesignation of subsec. (k) as (*l*) by Pub. L. 105–34, § 1053(a). See above.

1996—Subsec. (b)(5). Pub. L. 104–188 inserted at end "Under rules or regulations prescribed by the Secretary, in the case of any foreign trust of which the settlor or another person would be treated as owner of any portion of the trust under subpart E but for section 672(f), the allocable amount of any income, war profits, and excess profits taxes imposed by any foreign country or possession of the United States on the settlor or such other person in respect of trust income."

1993—Subsec. (j)(2)(C). Pub. L. 103–149 struck out heading and text of subpar. (C). Text read as follows:

"(i) IN GENERAL.—In addition to any period during which this subsection would otherwise apply to South Africa, this subsection shall apply to South Africa during the period—

"(I) beginning on January 1, 1988, and

"(II) ending on the date the Secretary of State certifies to the Secretary of the Treasury that South Africa meets the requirements of section 311(a) of the Comprehensive Anti-Apartheid Act of 1986 (as in effect on the date of the enactment of this subparagraph).

"(ii) SOUTH AFRICA DEFINED.—For purposes of clause (i), the term 'South Africa' has the meaning given to such term by paragraph (6) of section 3 of the Comprehensive Anti-Apartheid Act of 1986 (as so in effect)."

1988—Subsec. (g)(2). Pub. L. 100–647, § 1012(j), inserted "(as in effect on the day before the date of the enactment of the Tax Reform Act of 1986)" after "section 957(c)".

Subsec. (j)(3). Pub. L. 100–647, § 2003(c)(1), inserted ", etc." at end of heading and substituted "Sections 275 and 78" for "Section 275" in text.

1987—Subsec. (j)(1). Pub. L. 100–203, § 10231(b), substituted "during which" for "to which" in subpar. (A) and "such country" for "any country so identified" in subpar. (B).

Subsec. (j)(2)(C). Pub. L. 100–203, § 10231(a), added subpar. (C).

1986—Subsec. (h). Pub. L. 99–514, § 1876(p)(2), inserted closing parenthesis after "section 927(d)(6)".

Subsec. (i). Pub. L. 99–514, § 1204(a), added subsec. (i). Former subsec. (i) redesignated (j).

Subsec. (i)(3). Pub. L. 99–514, § 112(b)(3), substituted "section 642(a)" for "section 642(a)(1)".

Subsec. (j). Pub. L. 99–509 added subsec. (j). Former subsec. (j) redesignated (k).

Pub. L. 99–514, § 1204(a), redesignated former subsec. (i) as (j).

Subsec. (k). Pub. L. 99–509 redesignated former subsec. (j) as (k).

1984—Subsec. (a). Pub. L. 98–369, §612(e)(1), substituted ''section 26(b)'' for ''section 25(b)''.

Pub. L. 98–369, §474(r)(20), substituted ''The credit shall not be allowed against any tax treated as a tax not imposed by this chapter under section 25(b)'' for ''The credit shall not be allowed against the tax imposed by section 56 (relating to corporate minimum tax), against the tax imposed for the taxable year under section 72(m)(5)(B) (relating to 10 percent tax on premature distributions to owner-employees) section 72(q)(1) (relating to 5-percent tax on premature distributions under annuity contracts),, against the tax imposed by section 402(e) (relating to tax on lump sum distributions), against the tax imposed for the taxable year by section 408(f) (relating to additional tax on income from certain retirement accounts), against the tax imposed by section 531 (relating to the tax on accumulated earnings), against the additional tax imposed for the taxable year under section 1351 (relating to recoveries of foreign expropriation losses), or against the personal holding company tax imposed by section 541''.

Pub. L. 98–369, §713(c)(1)(C), substituted ''premature distributions to key employees'' for ''premature distributions to owner-employees''.

Subsecs. (h), (i). Pub. L. 98–369, §801(d)(1), added subsec. (h) and redesignated former subsec. (h) as (i).

1982—Subsec. (a). Pub. L. 97–248 substituted ''(relating to corporate minimum tax)'' for ''(relating to minimum tax for tax preferences)'' after ''section 56'', and inserted ''section 72(q)(1) (relating to 5-percent tax on premature distributions under annuity contracts),'' after ''owner employees)''.

1978—Subsec. (g)(1). Pub. L. 95–600, §701(u)(1)(A), inserted provisions prohibiting a deduction for any tax of a foreign country or possession of the United States which is paid or accrued with respect to any distribution from a corporation if a dividends received deduction is allowable with respect to that distribution from a corporation under part VIII of subchapter B.

Subsec. (g)(2). Pub. L. 95–600, §701(u)(1)(B), inserted provision relating to application of section 957(c) of this title.

1976—Subsec. (a). Pub. L. 94–455, §§1031(b)(1), 1901(b)(37)(A), struck out ''under section 1333 (relating to war loss recoveries) or'' after ''imposed for the taxable year'' and ''applicable'' after ''subject to the''.

Subsec. (b). Pub. L. 94–455, §1031(b)(1), struck out ''applicable'' after ''Subject to the''.

Subsec. (d). Pub. L. 94–455, §1051(d)(1), struck out provisions relating to corporations receiving a large percentage of their gross receipts from sources within a possession of the United States and a corporation organized under the China Trade Act, 1922 (15 U.S.C. chapter 4).

Subsecs. (g), (h). Pub. L. 94–455, §§1051(d)(2), 1901(b)(1)(H)(iii), added subsec. (g), redesignated former subsec. (g) as (h), and, as redesignated, substituted ''section 642(a)(1)'' for ''section 642(a)(2)'' in par. (3).

1975—Subsecs. (f), (g). Pub. L. 94–12 added subsec. (f) and redesignated former subsec. (f) as (g).

1974—Subsec. (a). Pub. L. 93–460 inserted references to the tax imposed for the taxable year under section 72(m)(5)(B) (relating to 10 percent tax on premature distributions to owner-employees), the tax imposed for the taxable year by section 408(f) (relating to additional tax on income from certain retirement accounts), and the tax imposed by section 402(e) (relating to tax on lump sum distributions).

1971—Subsec. (d). Pub. L. 92–178 inserted provision for treatment of dividends from a DISC or former DISC as dividends from a foreign corporation to the extent such dividends are treated under part I as income from sources without the United States.

1969—Subsec. (a). Pub. L. 91–172, §301(b)(9), inserted ''against the tax imposed by section 56 (relating to minimum tax for tax preferences),'' after ''not be allowed'' in last sentence.

Subsecs. (e), (f). Pub. L. 91–172, §506(a), added subsec. (e) and redesignated former subsec. (e) as (f).

1966—Subsec. (a). Pub. L. 89–384 added the additional tax imposed under section 1351 (relating to recoveries of foreign expropriation losses) to the list of taxes against which the foreign tax credit may not be allowed.

Subsec. (b)(3). Pub. L. 89–809, §106(b)(1), struck out provisions which made the allowance of the credit dependent upon whether the foreign country of which the alien resident was a citizen or subject, in imposing such taxes, allowed a similar credit to citizens of the United States residing in such country.

Subsec. (b)(4), (5). Pub. L. 89–809, §106(a)(4), (5), added par. (4), redesignated former par. (4) as (5) and inserted reference to par. (4).

Subsecs. (c) to (e). Pub. L. 89–809, §106(b)(2), added subsec. (c) and redesignated former subsecs. (c) and (d) as (d) and (e), respectively.

1964—Subsec. (d)(1). Pub. L. 88–272 inserted reference to section 275.

1962—Subsec. (a). Pub. L. 87–834, §12(b)(1), substituted ''sections 902 and 960'' for ''section 902''.

Subsec. (d)(4). Pub. L. 87–834, §9(d)(3), added par. (4).

1960—Subsec. (a). Pub. L. 86–780, §3(a), (b), inserted ''applicable'' before ''limitation'' and substituted ''Such choice for any taxable year may be made or changed at any time before the expiration of the period prescribed for making a claim for credit or refund of the tax imposed by this chapter for such taxable year'' for ''Such choice may be made or changed at any time prior to the expiration of the period prescribed for making a claim for credit or refund of the tax against which the credit is allowable.''

Subsec. (b). Pub. L. 86–780, §3(b), inserted ''applicable'' before ''limitation''.

#### EFFECTIVE DATE OF 2010 AMENDMENT

Pub. L. 111–226, title II, §212(b), Aug. 10, 2010, 124 Stat. 2398, provided that:

''(1) IN GENERAL.—Except as provided in paragraph (2), the amendments made by this section [amending this section] shall apply to covered asset acquisitions (as defined in section 901(m)(2) of the Internal Revenue Code of 1986, as added by this section) after December 31, 2010.

''(2) TRANSITION RULE.—The amendments made by this section shall not apply to any covered asset acquisition (as so defined) with respect to which the transferor and the transferee are not related if such acquisition is—

''(A) made pursuant to a written agreement which was binding on January 1, 2011, and at all times thereafter,

''(B) described in a ruling request submitted to the Internal Revenue Service on or before July 29, 2010, or

''(C) described on or before January 1, 2011, in a public announcement or in a filing with the Securities and Exchange Commission.

''(3) RELATED PERSONS.—For purposes of this subsection, a person shall be treated as related to another person if the relationship between such persons is described in section 267 or 707(b) of the Internal Revenue Code of 1986.''

#### EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–135 effective as if included in the provision of the American Jobs Creation Act of 2004, Pub. L. 108–357, to which such amendment relates, see section 403(nn) of Pub. L. 109–135, set out as a note under section 26 of this title.

#### EFFECTIVE DATE OF 2004 AMENDMENTS

Pub. L. 108–357, title IV, §405(c), Oct. 22, 2004, 118 Stat. 1498, provided that: ''The amendments made by this section [amending this section and section 902 of this title] shall apply to taxes of foreign corporations for taxable years of such corporations beginning after the date of the enactment of this Act [Oct. 22, 2004].''

Pub. L. 108–357, title VIII, §832(c), Oct. 22, 2004, 118 Stat. 1588, provided that: ''The amendments made by

this section [amending this section] shall apply to amounts paid or accrued more than 30 days after the date of the enactment of this Act [Oct. 22, 2004].''

Amendment by Pub. L. 108–311 effective as if included in the provisions of the Taxpayer Relief Act of 1997, Pub. L. 105–34, to which such amendment relates, see section 406(h) of Pub. L. 108–311, set out as a note under section 55 of this title.

#### EFFECTIVE DATE OF 2000 AMENDMENT

Pub. L. 106–200, title VI, § 601(b), May 18, 2000, 114 Stat. 305, provided that: ''The amendment made by this section [amending this section] shall apply on or after February 1, 2001.''

#### EFFECTIVE DATE OF 1998 AMENDMENT

Amendment by Pub. L. 105–206 effective, except as otherwise provided, as if included in the provisions of the Taxpayer Relief Act of 1997, Pub. L. 105–34, to which such amendment relates, see section 6024 of Pub. L. 105–206, set out as a note under section 1 of this title.

#### EFFECTIVE DATE OF 1997 AMENDMENT

Amendment by section 1053(a) of Pub. L. 105–34 applicable to dividends paid or accrued more than 30 days after Aug. 5, 1997, see section 1053(c) of Pub. L. 105–34, set out as a note under section 853 of this title.

Amendment by section 1142(e)(4) of Pub. L. 105–34 applicable to annual accounting periods beginning after Aug. 5, 1997, see section 1142(f) of Pub. L. 105–34, set out as a note under section 318 of this title.

#### EFFECTIVE DATE OF 1996 AMENDMENT

Amendment by Pub. L. 104–188 effective Aug. 20, 1996, with exception for certain trusts, see section 1904(d) of Pub. L. 104–188, set out as a note under section 643 of this title.

#### EFFECTIVE DATE OF 1988 AMENDMENT

Amendment by section 1012(j) of Pub. L. 100–647 effective, except as otherwise provided, as if included in the provision of the Tax Reform Act of 1986, Pub. L. 99–514, to which such amendment relates, see section 1019(a) of Pub. L. 100–647, set out as a note under section 1 of this title.

Pub. L. 100–647, title II, § 2003(c)(2), Nov. 10, 1988, 102 Stat. 3598, provided that: ''The amendments made by paragraph (1) [amending this section] shall take effect on January 1, 1987.''

#### EFFECTIVE DATE OF 1987 AMENDMENT

Pub. L. 100–203, title X, § 10231(c), Dec. 22, 1987, 101 Stat. 1330–419, provided that: ''The amendments made by this section [amending this section] shall apply to taxable years beginning after December 31, 1987.''

#### EFFECTIVE DATE OF 1986 AMENDMENTS

Amendment by section 112(b)(3) of Pub. L. 99–514 applicable to taxable years beginning after Dec. 31, 1986, see section 151(a) of Pub. L. 99–514, set out as a note under section 1 of this title.

Pub. L. 99–514, title XII, § 1204(b), Oct. 22, 1986, 100 Stat. 2532, provided that: ''The amendment made by subsection (a) [amending this section] shall apply to foreign taxes paid or accrued in taxable years beginning after December 31, 1986.''

Amendment by section 1876(p)(2) of Pub. L. 99–514 effective, except as otherwise provided, as if included in the provisions of the Tax Reform Act of 1984, Pub. L. 98–369, div. A, to which such amendment relates, see section 1881 of Pub. L. 99–514, set out as a note under section 48 of this title.

Pub. L. 99–509, title VIII, § 8041(c), Oct. 21, 1986, 100 Stat. 1963, provided that: ''The amendments made by this section [amending this section and section 952 of this title] shall take effect on January 1, 1987.''

#### EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by section 474(r)(20) of Pub. L. 98–369 applicable to taxable years beginning after Dec. 31, 1983, and to carrybacks from such years, see section 475(a) of Pub. L. 98–369, set out as a note under section 21 of this title.

Amendment by section 612(e)(1) of Pub. L. 98–369 applicable to interest paid or accrued after Dec. 31, 1984, on indebtedness incurred after Dec. 31, 1984, see section 612(g) of Pub. L. 98–369, set out as an Effective Date note under section 25 of this title.

Amendment by section 713(c)(1)(C) of Pub. L. 98–369 effective as if included in the provision of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97–248, to which such amendment relates, see section 715 of Pub. L. 98–369, set out as a note under section 31 of this title.

Amendment by section 801(d)(1) of Pub. L. 98–369 applicable to transactions after Dec. 31, 1984, in taxable years ending after such date, see section 805(a)(1) of Pub. L. 98–369, as amended, set out as a note under section 245 of this title.

#### EFFECTIVE DATE OF 1982 AMENDMENT

Amendment by section 201(d)(8)(A) of Pub. L. 97–248 applicable to taxable years beginning after Dec. 31, 1982, see section 201(e)(1) of Pub. L. 97–248, set out as a note under section 5 of this title.

Amendment by section 265(b)(2)(A)(iv) of Pub. L. 97–248 applicable to distributions after Dec. 31, 1982, see section 265(c)(2) of Pub. L. 97–248, set out as a note under section 72 of this title.

#### EFFECTIVE DATE OF 1978 AMENDMENT

Pub. L. 95–600, title VII, § 701(u)(1)(C), Nov. 6, 1978, 92 Stat. 2913, as amended by Pub. L. 99–514, § 2, Oct. 22, 1986, 100 Stat. 2095, provided that: ''The amendment made by subparagraph (A) [amending this section] shall apply as if included in section 901(g) of the Internal Revenue Code of 1986 [formerly I.R.C. 1954] as added by section 1051(d)(2) of the Tax Reform Act of 1976 [section 1051(d)(2) of Pub. L. 94–455]. The amendments made by subparagraph (B) [amending this section] shall apply to distributions made after the date of the enactment of this Act [Nov. 6, 1978] in taxable years ending after such date.''

#### EFFECTIVE DATE OF 1976 AMENDMENT

Amendment by section 1031(b)(1) of Pub. L. 94–455 applicable to taxable years beginning after Dec. 31, 1975, with certain exceptions, see section 1031(c) of Pub. L. 94–455, set out as a note under section 904 of this title.

Amendment by section 1051(d)(1) of Pub. L. 94–455 applicable to taxable years beginning after Dec. 31, 1975, with certain exceptions, and the provisions of subsec. (g) not to apply to any tax imposed by a possession of the United States with respect to the complete liquidation occurring before Jan. 1, 1979, of a corporation to the extent that such tax is attributable to earnings and profits accumulated by such corporation during periods ending before Jan. 1, 1976, see section 1051(i) of Pub. L. 94–455, set out as a note under section 27 of this title.

Amendment by section 1901(b)(1)(H)(iii), (37)(A) of Pub. L. 94–455 applicable with respect to taxable years beginning after Dec. 31, 1976, see section 1901(d) of Pub. L. 94–455, set out as a note under section 2 of this title.

#### EFFECTIVE DATE OF 1975 AMENDMENT

Amendment by Pub. L. 94–12 applicable to taxable years ending after Dec. 31, 1974, see section 601(d) of Pub. L. 94–12, set out as an Effective Date note under section 907 of this title.

#### EFFECTIVE DATE OF 1974 AMENDMENT

Amendment by section 2001(g)(2)(C) of Pub. L. 93–406, which inserted reference to the tax imposed for the taxable year under section 72(m)(5)(B) (relating to 10 percent tax on premature distributions to owner-employees), applicable to distributions made in taxable years beginning after Dec. 31, 1975, see section 2001(i)(4) of Pub. L. 93–406, set out as a note under section 72 of this title.

Amendment by section 2002(g)(3) of Pub. L. 93–406, which inserted reference to the tax imposed for the taxable year by section 408(f) (relating to additional tax on income from certain retirement accounts), effective on Jan. 1, 1975, see section 2002(i)(2) of Pub. L. 93–406, set out as an Effective Date note under section 4973 of this title.

Amendment by section 2005(c)(5) of Pub. L. 93–406, which inserted reference to the tax imposed for the taxable year under section 402(e) (relating to tax on lump sum distributions), applicable only with respect to distributions or payments made after Dec. 31, 1973, in taxable years beginning after Dec. 31, 1973, see section 2005(d) of Pub. L. 93–406, set out as a note under section 402 of this title.

#### EFFECTIVE DATE OF 1971 AMENDMENT

Amendment by Pub. L. 92–178 applicable with respect to taxable years ending after Dec. 31, 1971, except that a corporation may not be a DISC for any taxable year beginning before Jan. 1, 1972, see section 507 of Pub. L. 92–178, set out as an Effective Date note under section 991 of this title.

#### EFFECTIVE DATE OF 1969 AMENDMENT

Amendment by section 301(b)(9) of Pub. L. 91–172 applicable to taxable years ending after Dec. 31, 1969, see section 301(c) of Pub. L. 91–172, set out as a note under section 5 of this title.

Pub. L. 91–172, title V, § 506(c), Dec. 30, 1969, 83 Stat. 635, provided that: ''The amendments made by this section [amending this section and section 904 of this title] shall apply with respect to taxable years beginning after December 31, 1969.''

#### EFFECTIVE DATE OF 1966 AMENDMENT

Amendment by section 106(a)(4), (5) of Pub. L. 89–809 applicable with respect to taxable years beginning after Dec. 31, 1966, see section 106(a)(6) of Pub. L. 89–809, set out as a note under section 874 of this title.

Pub. L. 89–809, title I, § 106(b)(4), Nov. 13, 1966, 80 Stat. 1570, provided that: ''The amendments made by this subsection (other than paragraph (3)) [amending this section] shall apply with respect to taxable years beginning after December 31, 1966. The amendment made by paragraph (3) [amending section 2014 of this title] shall apply with respect to estates of decedents dying after the date of enactment of this Act [Nov. 13, 1966].''

Amendment by Pub. L. 89–384 applicable with respect to amounts received after December 31, 1964, in respect of foreign expropriation losses (as defined in section 1351(b) of this title) sustained after December 31, 1958, see section 2 of Pub. L. 89–384, set out as an Effective Date note under section 1351 of this title.

#### EFFECTIVE DATE OF 1964 AMENDMENT

Amendment by Pub. L. 88–272 applicable to taxable years beginning after Dec. 31, 1963, see section 207(c) of Pub. L. 88–272, set out as a note under section 164 of this title.

#### EFFECTIVE DATE OF 1962 AMENDMENT

Amendment by section 12(b)(1) of Pub. L. 87–834 applicable with respect to taxable years of foreign corporations beginning after Dec. 31, 1962, and to taxable years of United States shareholders within which or with which such taxable years of such foreign corporations end, see section 12(c) of Pub. L. 87–834, set out as an Effective Date note under section 951 of this title.

#### EFFECTIVE DATE OF 1960 AMENDMENT

Amendment by section 3(a) of Pub. L. 86–780 applicable to taxable years beginning after Dec. 31, 1960, and amendment by section 3(b) of Pub. L. 86–780 applicable to taxable years beginning after Dec. 31, 1953, and ending after Aug. 16, 1954, see section 4 of Pub. L. 86–780, set out as a note under section 904 of this title.

#### EFFECT OF AMENDMENT BY PUB. L. 103–149 ON REVENUE RULING 92–62

Amendment by section 4(b)(8)(A) of Pub. L. 103–149 not to be construed as affecting any of the transitional rules contained in Revenue Ruling 92–62 which apply by reason of the termination of the period for which subsec. (j) of this section was applicable to South Africa, see section 4(b)(8)(B) of Pub. L. 103–149 set out in a Repeal of Chapter; South African Democratic Transition Support note under section 5001 of Title 22, Foreign Relations and Intercourse.

#### PLAN AMENDMENTS NOT REQUIRED UNTIL JANUARY 1, 1989

For provisions directing that if any amendments made by subtitle A or subtitle C of title XI [§§ 1101–1147 and 1171–1177] or title XVIII [§§ 1800–1899A] of Pub. L. 99–514 require an amendment to any plan, such plan amendment shall not be required to be made before the first plan year beginning on or after Jan. 1, 1989, see section 1140 of Pub. L. 99–514, as amended, set out as a note under section 401 of this title.

### § 902. Deemed paid credit where domestic corporation owns 10 percent or more of voting stock of foreign corporation

#### (a) Taxes paid by foreign corporation treated as paid by domestic corporation

For purposes of this subpart, a domestic corporation which owns 10 percent or more of the voting stock of a foreign corporation from which it receives dividends in any taxable year shall be deemed to have paid the same proportion of such foreign corporation's post-1986 foreign income taxes as—

(1) the amount of such dividends (determined without regard to section 78), bears to

(2) such foreign corporation's post-1986 undistributed earnings.

#### (b) Deemed taxes increased in case of certain lower tier corporations

##### (1) In general

If—

(A) any foreign corporation is a member of a qualified group, and

(B) such foreign corporation owns 10 percent or more of the voting stock of another member of such group from which it receives dividends in any taxable year,

such foreign corporation shall be deemed to have paid the same proportion of such other member's post-1986 foreign income taxes as would be determined under subsection (a) if such foreign corporation were a domestic corporation.

##### (2) Qualified group

For purposes of paragraph (1), the term ''qualified group'' means—

(A) the foreign corporation described in subsection (a), and

(B) any other foreign corporation if—

(i) the domestic corporation owns at least 5 percent of the voting stock of such other foreign corporation indirectly through a chain of foreign corporations connected through stock ownership of at least 10 percent of their voting stock,

(ii) the foreign corporation described in subsection (a) is the first tier corporation in such chain, and

I.R.C. § 902 (2016)

Amendment by section 2002(g)(3) of Pub. L. 93–406, which inserted reference to the tax imposed for the taxable year by section 408(f) (relating to additional tax on income from certain retirement accounts), effective on Jan. 1, 1975, see section 2002(i)(2) of Pub. L. 93–406, set out as an Effective Date note under section 4973 of this title.

Amendment by section 2005(c)(5) of Pub. L. 93–406, which inserted reference to the tax imposed for the taxable year under section 402(e) (relating to tax on lump sum distributions), applicable only with respect to distributions or payments made after Dec. 31, 1973, in taxable years beginning after Dec. 31, 1973, see section 2005(d) of Pub. L. 93–406, set out as a note under section 402 of this title.

#### EFFECTIVE DATE OF 1971 AMENDMENT

Amendment by Pub. L. 92–178 applicable with respect to taxable years ending after Dec. 31, 1971, except that a corporation may not be a DISC for any taxable year beginning before Jan. 1, 1972, see section 507 of Pub. L. 92–178, set out as an Effective Date note under section 991 of this title.

#### EFFECTIVE DATE OF 1969 AMENDMENT

Amendment by section 301(b)(9) of Pub. L. 91–172 applicable to taxable years ending after Dec. 31, 1969, see section 301(c) of Pub. L. 91–172, set out as a note under section 5 of this title.

Pub. L. 91–172, title V, § 506(c), Dec. 30, 1969, 83 Stat. 635, provided that: ''The amendments made by this section [amending this section and section 904 of this title] shall apply with respect to taxable years beginning after December 31, 1969.''

#### EFFECTIVE DATE OF 1966 AMENDMENT

Amendment by section 106(a)(4), (5) of Pub. L. 89–809 applicable with respect to taxable years beginning after Dec. 31, 1966, see section 106(a)(6) of Pub. L. 89–809, set out as a note under section 874 of this title.

Pub. L. 89–809, title I, § 106(b)(4), Nov. 13, 1966, 80 Stat. 1570, provided that: ''The amendments made by this subsection (other than paragraph (3)) [amending this section] shall apply with respect to taxable years beginning after December 31, 1966. The amendment made by paragraph (3) [amending section 2014 of this title] shall apply with respect to estates of decedents dying after the date of enactment of this Act [Nov. 13, 1966].''

Amendment by Pub. L. 89–384 applicable with respect to amounts received after December 31, 1964, in respect of foreign expropriation losses (as defined in section 1351(b) of this title) sustained after December 31, 1958, see section 2 of Pub. L. 89–384, set out as an Effective Date note under section 1351 of this title.

#### EFFECTIVE DATE OF 1964 AMENDMENT

Amendment by Pub. L. 88–272 applicable to taxable years beginning after Dec. 31, 1963, see section 207(c) of Pub. L. 88–272, set out as a note under section 164 of this title.

#### EFFECTIVE DATE OF 1962 AMENDMENT

Amendment by section 12(b)(1) of Pub. L. 87–834 applicable with respect to taxable years of foreign corporations beginning after Dec. 31, 1962, and to taxable years of United States shareholders within which or with which such taxable years of such foreign corporations end, see section 12(c) of Pub. L. 87–834, set out as an Effective Date note under section 951 of this title.

#### EFFECTIVE DATE OF 1960 AMENDMENT

Amendment by section 3(a) of Pub. L. 86–780 applicable to taxable years beginning after Dec. 31, 1960, and amendment by section 3(b) of Pub. L. 86–780 applicable to taxable years beginning after Dec. 31, 1953, and ending after Aug. 16, 1954, see section 4 of Pub. L. 86–780, set out as a note under section 904 of this title.

#### EFFECT OF AMENDMENT BY PUB. L. 103–149 ON REVENUE RULING 92–62

Amendment by section 4(b)(8)(A) of Pub. L. 103–149 not to be construed as affecting any of the transitional rules contained in Revenue Ruling 92–62 which apply by reason of the termination of the period for which subsec. (j) of this section was applicable to South Africa, see section 4(b)(8)(B) of Pub. L. 103–149 set out in a Repeal of Chapter; South African Democratic Transition Support note under section 5001 of Title 22, Foreign Relations and Intercourse.

#### PLAN AMENDMENTS NOT REQUIRED UNTIL JANUARY 1, 1989

For provisions directing that if any amendments made by subtitle A or subtitle C of title XI [§§ 1101–1147 and 1171–1177] or title XVIII [§§ 1800–1899A] of Pub. L. 99–514 require an amendment to any plan, such plan amendment shall not be required to be made before the first plan year beginning on or after Jan. 1, 1989, see section 1140 of Pub. L. 99–514, as amended, set out as a note under section 401 of this title.

### § 902. Deemed paid credit where domestic corporation owns 10 percent or more of voting stock of foreign corporation

#### (a) Taxes paid by foreign corporation treated as paid by domestic corporation

For purposes of this subpart, a domestic corporation which owns 10 percent or more of the voting stock of a foreign corporation from which it receives dividends in any taxable year shall be deemed to have paid the same proportion of such foreign corporation's post-1986 foreign income taxes as—

(1) the amount of such dividends (determined without regard to section 78), bears to

(2) such foreign corporation's post-1986 undistributed earnings.

#### (b) Deemed taxes increased in case of certain lower tier corporations

##### (1) In general

If—

(A) any foreign corporation is a member of a qualified group, and

(B) such foreign corporation owns 10 percent or more of the voting stock of another member of such group from which it receives dividends in any taxable year,

such foreign corporation shall be deemed to have paid the same proportion of such other member's post-1986 foreign income taxes as would be determined under subsection (a) if such foreign corporation were a domestic corporation.

##### (2) Qualified group

For purposes of paragraph (1), the term ''qualified group'' means—

(A) the foreign corporation described in subsection (a), and

(B) any other foreign corporation if—

(i) the domestic corporation owns at least 5 percent of the voting stock of such other foreign corporation indirectly through a chain of foreign corporations connected through stock ownership of at least 10 percent of their voting stock,

(ii) the foreign corporation described in subsection (a) is the first tier corporation in such chain, and

(iii) such other corporation is not below the sixth tier in such chain.

The term "qualified group" shall not include any foreign corporation below the third tier in the chain referred to in clause (i) unless such foreign corporation is a controlled foreign corporation (as defined in section 957) and the domestic corporation is a United States shareholder (as defined in section 951(b)) in such foreign corporation. Paragraph (1) shall apply to those taxes paid by a member of the qualified group below the third tier only with respect to periods during which it was a controlled foreign corporation.

### (c) Definitions and special rules

For purposes of this section—

#### (1) Post-1986 undistributed earnings

The term "post-1986 undistributed earnings" means the amount of the earnings and profits of the foreign corporation (computed in accordance with sections 964(a) and 986) accumulated in taxable years beginning after December 31, 1986—

(A) as of the close of the taxable year of the foreign corporation in which the dividend is distributed, and

(B) without diminution by reason of dividends distributed during such taxable year.

#### (2) Post-1986 foreign income taxes

The term "post-1986 foreign income taxes" means the sum of—

(A) the foreign income taxes with respect to the taxable year of the foreign corporation in which the dividend is distributed, and

(B) the foreign income taxes with respect to prior taxable years beginning after December 31, 1986, to the extent such foreign taxes were not attributable to dividends distributed by the foreign corporation in prior taxable years.

#### (3) Special rule where foreign corporation first qualifies after December 31, 1986

##### (A) In general

If the 1st day on which the requirements of subparagraph (B) are met with respect to any foreign corporation is in a taxable year of such corporation beginning after December 31, 1986, the post-1986 undistributed earnings and the post-1986 foreign income taxes of such foreign corporation shall be determined by taking into account only periods beginning on and after the 1st day of the 1st taxable year in which such requirements are met.

##### (B) Ownership requirements

The requirements of this subparagraph are met with respect to any foreign corporation if—

(i) 10 percent or more of the voting stock of such foreign corporation is owned by a domestic corporation, or

(ii) the requirements of subsection (b)(2) are met with respect to such foreign corporation.

#### (4) Foreign income taxes

##### (A) In general

The term "foreign income taxes" means any income, war profits, or excess profits taxes paid by the foreign corporation to any foreign country or possession of the United States.

##### (B) Treatment of deemed taxes

Except for purposes of determining the amount of the post-1986 foreign income taxes of a sixth tier foreign corporation referred to in subsection (b)(2), the term "foreign income taxes" includes any such taxes deemed to be paid by the foreign corporation under this section.

#### (5) Accounting periods

In the case of a foreign corporation the income, war profits, and excess profits taxes of which are determined on the basis of an accounting period of less than 1 year, the word "year" as used in this subsection shall be construed to mean such accounting period.

#### (6) Treatment of distributions from earnings before 1987

##### (A) In general

In the case of any dividend paid by a foreign corporation out of accumulated profits (as defined in this section as in effect on the day before the date of the enactment of the Tax Reform Act of 1986) for taxable years beginning before the 1st taxable year taken into account in determining the post-1986 undistributed earnings of such corporation—

(i) this section (as amended by the Tax Reform Act of 1986) shall not apply, but

(ii) this section (as in effect on the day before the date of the enactment of such Act) shall apply.

##### (B) Dividends paid first out of post-1986 earnings

Any dividend in a taxable year beginning after December 31, 1986, shall be treated as made out of post-1986 undistributed earnings to the extent thereof.

#### (7) Constructive ownership through partnerships

Stock owned, directly or indirectly, by or for a partnership shall be considered as being owned proportionately by its partners. Stock considered to be owned by a person by reason of the preceding sentence shall, for purposes of applying such sentence, be treated as actually owned by such person. The Secretary may prescribe such regulations as may be necessary to carry out the purposes of this paragraph, including rules to account for special partnership allocations of dividends, credits, and other incidents of ownership of stock in determining proportionate ownership.

#### (8) Regulations

The Secretary shall provide such regulations as may be necessary or appropriate to carry out the provisions of this section and section 960, including provisions which provide for the separate application of this section and section 960 to reflect the separate application of section 904 to separate types of income and loss.

### (d) Cross references

**(1) For inclusion in gross income of an amount equal to taxes deemed paid under subsection (a), see section 78.**

**(2)** For application of subsections (a) and (b) with respect to taxes deemed paid in a prior taxable year by a United States shareholder with respect to a controlled foreign corporation, see section 960.

**(3)** For reduction of credit with respect to dividends paid out of post-1986 undistributed earnings for years for which certain information is not furnished, see section 6038.

(Aug. 16, 1954, ch. 736, 68A Stat. 286; Pub. L. 86–780, §6(b)(2), Sept. 14, 1960, 74 Stat. 1016; Pub. L. 87–834, §9(a), Oct. 16, 1962, 76 Stat. 999; Pub. L. 91–684, §§1, 2, Jan. 12, 1971, 84 Stat. 2068, 2069; Pub. L. 94–12, title VI, §602(c)(6), Mar. 29, 1975, 89 Stat. 59; Pub. L. 94–455, title X, §1033(a), Oct. 4, 1976, 90 Stat. 1626; Pub. L. 99–514, title XII, §1202(a), Oct. 22, 1986, 100 Stat. 2528; Pub. L. 100–647, title I, §1012(b)(1), (2), Nov. 10, 1988, 102 Stat. 3496; Pub. L. 105–34, title XI, §§1113(a), 1163(a), Aug. 5, 1997, 111 Stat. 970, 987; Pub. L. 108–357, title IV, §405(a), Oct. 22, 2004, 118 Stat. 1498.)

### REFERENCES IN TEXT

The date of the enactment of the Tax Reform Act of 1986, referred to in subsec. (c)(6)(A), is the date of enactment of Pub. L. 99–514, which was approved Oct. 22, 1986.

The Tax Reform Act of 1986, referred to in subsec. (c)(6)(A)(i), is Pub. L. 99–514, Oct. 22, 1986, 100 Stat. 2085. For complete classification of this Act to the Code, see Tables.

### AMENDMENTS

2004—Subsec. (c)(7), (8). Pub. L. 108–357 added par. (7) and redesignated former par. (7) as (8).

1997—Subsec. (b). Pub. L. 105–34, §1113(a)(1), amended subsec. (b) generally. Prior to amendment, subsec. (b) consisted of pars. (1) to (3) relating to deemed taxes increased in case of certain 2nd and 3rd tier foreign corporations.

Subsec. (c)(2)(B). Pub. L. 105–34, §1163(a), substituted "attributable to" for "deemed paid with respect to".

Subsec. (c)(3). Pub. L. 105–34, §1113(a)(2)(C), substituted "where foreign corporation first qualifies" for "where domestic corporation acquires 10 percent of foreign corporation" in heading.

Pub. L. 105–34, §1113(a)(2)(D), struck out "ownership" after "on which the" and "in which such" in subpar. (A) and before "requirements of this subparagraph" in introductory provisions of subpar. (B).

Subsec. (c)(3)(B). Pub. L. 105–34, §1113(a)(2)(A), inserted "or" at end of cl. (i), added cl. (ii), and struck out former cls. (ii) and (iii) which read as follows:

"(ii) the requirements of subsection (b)(3)(A) are met with respect to such foreign corporation and 10 percent or more of the voting stock of such foreign corporation is owned by another foreign corporation described in clause (i), or

"(iii) the requirements of subsection (b)(3)(B) are met with respect to such foreign corporation and 10 percent or more of the voting stock of such foreign corporation is owned by another foreign corporation described in clause (ii)."

Subsec. (c)(4)(B). Pub. L. 105–34, §1113(a)(2)(B), substituted "sixth tier foreign corporation" for "3rd foreign corporation".

1988—Subsec. (c)(1). Pub. L. 100–647, §1012(b)(2), substituted "sections 964(a) and 986" for "sections 964 and 986".

Subsec. (c)(7). Pub. L. 100–647, §1012(b)(1), substituted "section 960" for "secton 960" and "this section and section 960" for second reference to "this section".

1986—Pub. L. 99–514 amended section generally, substituting "Deemed paid credit where domestic corporation owns 10 percent or more of voting stock of foreign corporation" for "Credit for corporate stockholder in foreign corporation" as section catchline and substituting present provisions generally relating to post-1986

earnings and taxes for former provisions which had provided in subsec. (a) for a general rule with respect to treatment of taxes paid by foreign corporations, in subsec. (b) for treatment of taxes by a foreign subsidiary of first and second foreign corporations, in subsec. (c) for rules defining accumulated profits and determining accounting periods, and in subsec. (d) for cross references.

1976—Pub. L. 94–455, §1033(a), struck out provisions by which dividends from less developed country corporations are not grossed-up by the amount of foreign taxes paid on the underlying income and the deemed-paid foreign tax credits attributable to those dividends are reduced proportionately, struck out subsec. (d) which defined less developed country corporations, and redesignated subsec. (e) as (d).

1975—Subsec. (d). Pub. L. 94–12 substituted "paragraph (3) or (4)", "paragraph (3)", "paragraph (3)(A)", and "paragraph (3)(B)" for "section 955(c)(1) or (2)", "section 955(c)(1)", "section 955(c)(1)(A)", and "section 955(c)(1)(B)", respectively, in existing provisions and added pars. (3), (4), and (5) and provisions following par. (5).

1971—Subsec. (b). Pub. L. 91–684, §1, substituted "Foreign subsidiary of first and second foreign corporation" for "Foreign subsidiary of foreign corporation" in heading, designated existing provisions as par. (1) and inserted terminology denominating corporations involved as first foreign corporation and second foreign corporation, and reduced the ownership percentage requirement in voting stock from 50 percent to 10 percent between the first and second foreign corporations, and added pars. (2) and (3).

Subsec. (c)(1)(A). Pub. L. 91–684, §2(1), substituted "(b)(1)(A), and (b)(2)(A)" for "and (b)(1)".

Subsec. (c)(1)(B). Pub. L. 91–684, §2(2), substituted "(b)(1)(B), and (b)(2)(B)" for "and (b)(2)".

1962—Subsec. (a). Pub. L. 87–834 limited provisions which required a domestic corporation owning at least 10 per cent of the voting stock of a foreign corporation from which it receives dividends in any taxable year to be deemed to have paid the same proportion of any income, war profits, or excess profits taxes paid or deemed to be paid by such foreign corporation to any foreign country or to any possession of the United States which the amount of such dividends bears to the amount of accumulated profits to those cases where a foreign corporation paid such dividends out of accumulated profits of a year for which such foreign corporation is a less developed country corporation, and inserted provisions requiring, in the case of a domestic corporation which owns at least 10 percent of the voting stock of a foreign corporation from which it receives dividends in a taxable year, to the extent such dividends are paid by such foreign corporation out of accumulated profits of a year for which such foreign corporation is not a less developed country corporation, to be deemed to have paid the same proportion of any income, war profits, or excess profits taxes paid or deemed to be paid by such foreign corporation to any foreign country or to any possession of the United States on or with respect to such accumulated profits, which the amount of such dividends (determined without regard to section 78) bears to the amount of such accumulated profits in excess of such income, war profits, and excess profits taxes (other than those deemed paid).

Subsec. (b). Pub. L. 87–834 substituted "from which such dividends were paid which—

"(1) for purposes of applying subsection (a)(1), the amount of such dividends bears to the amount of the accumulated profits (as defined in subsection (c)(1)(A)) of such other foreign corporation from which such dividends were paid in excess of such income, war profits, and excess profits taxes, or

"(2) for purposes of applying subsection (a)(2), the amount of such dividends bears to the amount of the accumulated profits (as defined in subsection (c)(1)(B)) of such other foreign corporation from which such dividends were paid"

**- App.16 -**

for "from which such dividends were paid, which the amount of such dividends bears to the amount of such accumulated profits''.

Subsec. (c). Pub. L. 87–834 defined "accumulated profits" for purposes of subsecs. (a)(1) and (b)(1) as meaning the amount of its gains, profits, or income computed without reduction by the amount of the income, war profits, and excess profits taxes imposed on or with respect to such profits or income by and foreign country or any possession of the United States, and limited provisions defining "accumulated profits" as the amount of its gains, profits, or income in excess of the income, war profits, and excess profits taxes imposed on or with respect to such profits or income to subsecs. (a)(2) and (b)(2).

Subsec. (d). Pub. L. 87–834 substituted provisions defining "less developed country corporation" for provisions which established special rules for certain wholly-owned foreign corporations.

Subsec. (e). Pub. L. 87–834 designated existing provisions as par. (3) and added pars. (1) and (2).

1960—Subsec. (e). Pub. L. 86–780 added subsec. (e).

#### EFFECTIVE DATE OF 2004 AMENDMENT

Amendment by Pub. L. 108–357 applicable to taxes of foreign corporations for taxable years of such corporations beginning after Oct. 22, 2004, see section 405(c) of Pub. L. 108–357, set out as a note under section 901 of this title.

#### EFFECTIVE DATE OF 1997 AMENDMENT

Pub. L. 105–34, title XI, §1113(c), Aug. 5, 1997, 111 Stat. 971, provided that:

"(1) IN GENERAL.—The amendments made by this section [amending this section and section 960 of this title] shall apply to taxes of foreign corporations for taxable years of such corporations beginning after the date of enactment of this Act [Aug. 5, 1997].

"(2) SPECIAL RULE.—In the case of any chain of foreign corporations described in clauses (i) and (ii) of section 902(b)(2)(B) of the Internal Revenue Code of 1986 (as amended by this section), no liquidation, reorganization, or similar transaction in a taxable year beginning after the date of the enactment of this Act shall have the effect of permitting taxes to be taken into account under section 902 of the Internal Revenue Code of 1986 which could not have been taken into account under such section but for such transaction.''

Pub. L. 105–34, title XI, §1163(c), Aug. 5, 1997, 111 Stat. 987, provided that: "The amendments made by this section [amending this section and section 904 of this title] shall take effect on the date of the enactment of this Act [Aug. 5, 1997].''

#### EFFECTIVE DATE OF 1988 AMENDMENT

Amendment by Pub. L. 100–647 effective, except as otherwise provided, as if included in the provision of the Tax Reform Act of 1986, Pub. L. 99–514, to which such amendment relates, see section 1019(a) of Pub. L. 100–647, set out as a note under section 1 of this title.

#### EFFECTIVE DATE OF 1986 AMENDMENT

Pub. L. 99–514, title XII, §1202(e), Oct. 22, 1986, 100 Stat. 2531, provided that: "The amendments made by this section [amending this section and sections 960 and 6038 of this title] shall apply to distributions by foreign corporations out of, and to inclusions under section 951(a) of the Internal Revenue Code of 1986 attributable to, earnings and profits for taxable years beginning after December 31, 1986.''

#### EFFECTIVE DATE OF 1976 AMENDMENT

Pub. L. 94–455, title X, §1033(c), Oct. 4, 1976, 90 Stat. 1628, as amended by Pub. L. 99–514, §2, Oct. 22, 1986, 100 Stat. 2095, provided that: "The amendments made by this section [amending this section and sections 78, 535, 545, and 960 of this title] shall apply—

"(1) in respect of any distribution received by a domestic corporation after December 31, 1977, and

"(2) in respect of any distribution received by a domestic corporation before January 1, 1978, in a taxable year of such corporation beginning after December 31, 1975, but only to the extent that such distribution is made out of the accumulated profits of a foreign corporation for a taxable year (of such foreign corporation) beginning after December 31, 1975.

For purposes of paragraph (2), a distribution made by a foreign corporation out of its profits which are attributable to a distribution received from a foreign corporation to which section 902(b) of the Internal Revenue Code of 1986 [formerly I.R.C. 1954] applies shall be treated as made out of the accumulated profits of a foreign corporation for a taxable year beginning before January 1, 1976, to the extent that such distribution was paid out of the accumulated profits of such foreign corporation for a taxable year beginning before January 1, 1976.''

#### EFFECTIVE DATE OF 1975 AMENDMENT

Amendment by Pub. L. 94–12 applicable to taxable years of foreign corporations beginning after Dec. 31, 1975, and to taxable years of United States shareholders (within the meaning of section 951(b) of this title) within which or with which such taxable years of such foreign corporations end, see section 602(f) of Pub. L. 94–12, set out as an Effective Date note under section 955 of this title.

#### EFFECTIVE DATE OF 1971 AMENDMENT

Pub. L. 91–684, §3, Jan. 12, 1971, 84 Stat. 2069, provided that: "The amendments made by this Act [amending this section] shall apply with respect to all taxable years of domestic corporations, ending after the date of enactment of this Act [Jan. 12, 1971], but only in respect of dividends paid by one corporation to another corporation after the date of the enactment of this Act.''

#### EFFECTIVE DATE OF 1962 AMENDMENT

Pub. L. 87–834, §9(e), Oct. 16, 1962, 76 Stat. 1001, provided that: "The amendments made by this section [enacting section 78 of this title and amending this section and sections 535, 545, 861, and 901 of this title] shall apply—

"(1) in respect of any distribution received by a domestic corporation after December 31, 1964, and

"(2) in respect of any distribution received by a domestic corporation before January 1, 1965, in a taxable year of such corporation beginning after December 31, 1962, but only to the extent that such distribution is made out of the accumulated profits of a foreign corporation for a taxable year (of such foreign corporation) beginning after December 31, 1962.

For purposes of paragraph (2), a distribution made by a foreign corporation out of its profits which are attributable to a distribution received from a foreign subsidiary to which section 902(b) applies shall be treated as made out of the accumulated profits of a foreign corporation for a taxable year beginning before January 1, 1963, to the extent that such distribution was paid out of the accumulated profits of such foreign subsidiary for a taxable year beginning before January 1, 1963.''

#### EFFECTIVE DATE OF 1960 AMENDMENT

Amendment by Pub. L. 86–780 applicable to taxable years beginning after Dec. 31, 1960, see section 6(c) of Pub. L. 86–780), set out as an Effective Date note under section 6038 of this title.

#### INCREASE IN EARNINGS AND PROFITS OF FOREIGN CORPORATIONS UNDER SECTION 1023(e)(3)(C) OF PUB. L. 99–514

Pub. L. 100–647, title I, §1012(b)(3), Nov. 10, 1988, 102 Stat. 3496, provided that: "For purposes of sections 902 and 960 of the 1986 Code, the increase in earnings and profits of any foreign corporation under section 1023(e)(3)(C) of the Reform Act [Pub. L. 99–514, set out as an Effective Date note under section 846 of this title]

shall be taken into account ratably over the 10-year period beginning with the corporation's first taxable year beginning after December 31, 1986.''

## § 903. Credit for taxes in lieu of income, etc., taxes

For purposes of this part and of sections 164(a) and 275(a), the term ''income, war profits, and excess profits taxes'' shall include a tax paid in lieu of a tax on income, war profits, or excess profits otherwise generally imposed by any foreign country or by any possession of the United States.

(Aug. 16, 1954, ch. 736, 68A Stat. 287; Pub. L. 88–272, title II, § 207(b)(8), Feb. 26, 1964, 78 Stat. 42; Pub. L. 100–647, title I, § 1012(v)(9), Nov. 10, 1988, 102 Stat. 3530; Pub. L. 106–519, § 4(4), Nov. 15, 2000, 114 Stat. 2433; Pub. L. 108–357, title I, § 101(b)(7), Oct. 22, 2004, 118 Stat. 1423.)

### AMENDMENTS

2004—Pub. L. 108–357 substituted ''164(a)'' for ''114, 164(a),''.

2000—Pub. L. 106–519 substituted ''114, 164(a),'' for ''164(a)''.

1988—Pub. L. 100–647 substituted ''this part'' for ''this subpart''.

1964—Pub. L. 88–272 substituted ''sections 164(a) and 275(a)'' for ''section 164(b)''.

### EFFECTIVE DATE OF 2004 AMENDMENT

Amendment by Pub. L. 108–357 applicable to transactions after Dec. 31, 2004, see section 101(c) of Pub. L. 108–357, set out as a note under section 56 of this title.

### EFFECTIVE DATE OF 2000 AMENDMENT

Amendment by Pub. L. 106–519 applicable to transactions after Sept. 30, 2000, with special rules relating to existing foreign sales corporations, see section 5 of Pub. L. 106–519, set out as a note under section 56 of this title.

### EFFECTIVE DATE OF 1988 AMENDMENT

Amendment by Pub. L. 100–647 effective, except as otherwise provided, as if included in the provision of the Tax Reform Act of 1986, Pub. L. 99–514, to which such amendment relates, see section 1019(a) of Pub. L. 100–647, set out as a note under section 1 of this title.

### EFFECTIVE DATE OF 1964 AMENDMENT

Amendment by Pub. L. 88–272 applicable to taxable years beginning after Dec. 31, 1963, see section 207(c) of Pub. L. 88–272, set out as a note under section 164 of this title.

## § 904. Limitation on credit

### (a) Limitation

The total amount of the credit taken under section 901(a) shall not exceed the same proportion of the tax against which such credit is taken which the taxpayer's taxable income from sources without the United States (but not in excess of the taxpayer's entire taxable income) bears to his entire taxable income for the same taxable year.

### (b) Taxable income for purpose of computing limitation

#### (1) Personal exemptions

For purposes of subsection (a), the taxable income in the case of an individual, estate, or trust shall be computed without any deduction for personal exemptions under section 151 or 642(b).

#### (2) Capital gains

For purposes of this section—

##### (A) In general

Taxable income from sources outside the United States shall include gain from the sale or exchange of capital assets only to the extent of foreign source capital gain net income.

##### (B) Special rules where capital gain rate differential

In the case of any taxable year for which there is a capital gain rate differential—

(i) in lieu of applying subparagraph (A), the taxable income from sources outside the United States shall include gain from the sale or exchange of capital assets only in an amount equal to foreign source capital gain net income reduced by the rate differential portion of foreign source net capital gain,

(ii) the entire taxable income shall include gain from the sale or exchange of capital assets only in an amount equal to capital gain net income reduced by the rate differential portion of net capital gain, and

(iii) for purposes of determining taxable income from sources outside the United States, any net capital loss (and any amount which is a short-term capital loss under section 1212(a)) from sources outside the United States to the extent taken into account in determining capital gain net income for the taxable year shall be reduced by an amount equal to the rate differential portion of the excess of net capital gain from sources within the United States over net capital gain.

##### (C) Coordination with capital gains rates

The Secretary may by regulations modify the application of this paragraph and paragraph (3) to the extent necessary to properly reflect any capital gain rate differential under section 1(h) or 1201(a) and the computation of net capital gain.

#### (3) Definitions

For purposes of this subsection—

##### (A) Foreign source capital gain net income

The term ''foreign source capital gain net income'' means the lesser of—

(i) capital gain net income from sources without the United States, or

(ii) capital gain net income.

##### (B) Foreign source net capital gain

The term ''foreign source net capital gain'' means the lesser of—

(i) net capital gain from sources without the United States, or

(ii) net capital gain.

##### (C) Section 1231 gains

The term ''gain from the sale or exchange of capital assets'' includes any gain so treated under section 1231.

##### (D) Capital gain rate differential

There is a capital gain rate differential for any taxable year if—

**I.R.C. § 904 (2016)**

shall be taken into account ratably over the 10-year period beginning with the corporation's first taxable year beginning after December 31, 1986.''

## § 903. Credit for taxes in lieu of income, etc., taxes

For purposes of this part and of sections 164(a) and 275(a), the term ''income, war profits, and excess profits taxes'' shall include a tax paid in lieu of a tax on income, war profits, or excess profits otherwise generally imposed by any foreign country or by any possession of the United States.

(Aug. 16, 1954, ch. 736, 68A Stat. 287; Pub. L. 88–272, title II, §207(b)(8), Feb. 26, 1964, 78 Stat. 42; Pub. L. 100–647, title I, §1012(v)(9), Nov. 10, 1988, 102 Stat. 3530; Pub. L. 106–519, §4(4), Nov. 15, 2000, 114 Stat. 2433; Pub. L. 108–357, title I, §101(b)(7), Oct. 22, 2004, 118 Stat. 1423.)

### AMENDMENTS

2004—Pub. L. 108–357 substituted ''164(a)'' for ''114, 164(a),''.

2000—Pub. L. 106–519 substituted ''114, 164(a),'' for ''164(a)''.

1988—Pub. L. 100–647 substituted ''this part'' for ''this subpart''.

1964—Pub. L. 88–272 substituted ''sections 164(a) and 275(a)'' for ''section 164(b)''.

### EFFECTIVE DATE OF 2004 AMENDMENT

Amendment by Pub. L. 108–357 applicable to transactions after Dec. 31, 2004, see section 101(c) of Pub. L. 108–357, set out as a note under section 56 of this title.

### EFFECTIVE DATE OF 2000 AMENDMENT

Amendment by Pub. L. 106–519 applicable to transactions after Sept. 30, 2000, with special rules relating to existing foreign sales corporations, see section 5 of Pub. L. 106–519, set out as a note under section 56 of this title.

### EFFECTIVE DATE OF 1988 AMENDMENT

Amendment by Pub. L. 100–647 effective, except as otherwise provided, as if included in the provision of the Tax Reform Act of 1986, Pub. L. 99–514, to which such amendment relates, see section 1019(a) of Pub. L. 100–647, set out as a note under section 1 of this title.

### EFFECTIVE DATE OF 1964 AMENDMENT

Amendment by Pub. L. 88–272 applicable to taxable years beginning after Dec. 31, 1963, see section 207(c) of Pub. L. 88–272, set out as a note under section 164 of this title.

## § 904. Limitation on credit

### (a) Limitation

The total amount of the credit taken under section 901(a) shall not exceed the same proportion of the tax against which such credit is taken which the taxpayer's taxable income from sources without the United States (but not in excess of the taxpayer's entire taxable income) bears to his entire taxable income for the same taxable year.

### (b) Taxable income for purpose of computing limitation

#### (1) Personal exemptions

For purposes of subsection (a), the taxable income in the case of an individual, estate, or trust shall be computed without any deduction for personal exemptions under section 151 or 642(b).

#### (2) Capital gains

For purposes of this section—

##### (A) In general

Taxable income from sources outside the United States shall include gain from the sale or exchange of capital assets only to the extent of foreign source capital gain net income.

##### (B) Special rules where capital gain rate differential

In the case of any taxable year for which there is a capital gain rate differential—

(i) in lieu of applying subparagraph (A), the taxable income from sources outside the United States shall include gain from the sale or exchange of capital assets only in an amount equal to foreign source capital gain net income reduced by the rate differential portion of foreign source net capital gain,

(ii) the entire taxable income shall include gain from the sale or exchange of capital assets only in an amount equal to capital gain net income reduced by the rate differential portion of net capital gain, and

(iii) for purposes of determining taxable income from sources outside the United States, any net capital loss (and any amount which is a short-term capital loss under section 1212(a)) from sources outside the United States to the extent taken into account in determining capital gain net income for the taxable year shall be reduced by an amount equal to the rate differential portion of the excess of net capital gain from sources within the United States over net capital gain.

##### (C) Coordination with capital gains rates

The Secretary may by regulations modify the application of this paragraph and paragraph (3) to the extent necessary to properly reflect any capital gain rate differential under section 1(h) or 1201(a) and the computation of net capital gain.

#### (3) Definitions

For purposes of this subsection—

##### (A) Foreign source capital gain net income

The term ''foreign source capital gain net income'' means the lesser of—

(i) capital gain net income from sources without the United States, or

(ii) capital gain net income.

##### (B) Foreign source net capital gain

The term ''foreign source net capital gain'' means the lesser of—

(i) net capital gain from sources without the United States, or

(ii) net capital gain.

##### (C) Section 1231 gains

The term ''gain from the sale or exchange of capital assets'' includes any gain so treated under section 1231.

##### (D) Capital gain rate differential

There is a capital gain rate differential for any taxable year if—

(i) in the case of a taxpayer other than a corporation, subsection (h) of section 1 applies to such taxable year, or

(ii) in the case of a corporation, any rate of tax imposed by section 11, 511, or 831(a) or (b) (whichever applies) exceeds the alternative rate of tax under section 1201(a) (determined without regard to the last sentence of section 11(b)(1)).

**(E) Rate differential portion**

**(i) In general**

The rate differential portion of foreign source net capital gain, net capital gain, or the excess of net capital gain from sources within the United States over net capital gain, as the case may be, is the same proportion of such amount as—

(I) the excess of the highest applicable tax rate over the alternative tax rate, bears to

(II) the highest applicable tax rate.

**(ii) Highest applicable tax rate**

For purposes of clause (i), the term "highest applicable tax rate" means—

(I) in the case of a taxpayer other than a corporation, the highest rate of tax set forth in subsection (a), (b), (c), (d), or (e) of section 1 (whichever applies), or

(II) in the case of a corporation, the highest rate of tax specified in section 11(b).

**(iii) Alternative tax rate**

For purposes of clause (i), the term "alternative tax rate" means—

(I) in the case of a taxpayer other than a corporation, the alternative rate of tax determined under section 1(h), or

(II) in the case of a corporation, the alternative rate of tax under section 1201(a).

**(4) Coordination with section 936**

For purposes of subsection (a), in the case of a corporation, the taxable income shall not include any portion thereof taken into account for purposes of the credit (if any) allowed by section 936 (without regard to subsections (a)(4) and (i) thereof).

**(c) Carryback and carryover of excess tax paid**

Any amount by which all taxes paid or accrued to foreign countries or possessions of the United States for any taxable year for which the taxpayer chooses to have the benefits of this subpart exceed the limitation under subsection (a) shall be deemed taxes paid or accrued to foreign countries or possessions of the United States in the first preceding taxable year and in any of the first 10 succeeding taxable years, in that order and to the extent not deemed taxes paid or accrued in a prior taxable year, in the amount by which the limitation under subsection (a) for such preceding or succeeding taxable year exceeds the sum of the taxes paid or accrued to foreign countries or possessions of the United States for such preceding or succeeding taxable year and the amount of the taxes for any taxable year earlier than the current taxable year which shall be deemed to have been paid or accrued in such preceding or subsequent taxable year (whether or not the taxpayer chooses to have the benefits of this subpart with respect to such earlier taxable year). Such amount deemed paid or accrued in any year may be availed of only as a tax credit and not as a deduction and only if the taxpayer for such year chooses to have the benefits of this subpart as to taxes paid or accrued for that year to foreign countries or possessions of the United States.

**(d) Separate application of section with respect to certain categories of income**

**(1) In general**

The provisions of subsections (a), (b), and (c) and sections 902, 907, and 960 shall be applied separately with respect to—

(A) passive category income, and

(B) general category income.

**(2) Definitions and special rules**

For purposes of this subsection—

**(A) Categories**

**(i) Passive category income**

The term "passive category income" means passive income and specified passive category income.

**(ii) General category income**

The term "general category income" means income other than passive category income.

**(B) Passive income**

**(i) In general**

Except as otherwise provided in this subparagraph, the term "passive income" means any income received or accrued by any person which is of a kind which would be foreign personal holding company income (as defined in section 954(c)).

**(ii) Certain amounts included**

Except as provided in clause (iii), the term "passive income" includes, except as provided in subparagraph (E)(iii)[1] or paragraph (3)(I)[1], any amount includible in gross income under section 1293 (relating to certain passive foreign investment companies).

**(iii) Exceptions**

The term "passive income" shall not include—

(I) any export financing interest, and

(II) any high-taxed income.

**(iv) Clarification of application of section 864(d)(6)**

In determining whether any income is of a kind which would be foreign personal holding company income, the rules of section 864(d)(6) shall apply only in the case of income of a controlled foreign corporation.

**(v) Specified passive category income**

The term "specified passive category income" means—

(I) dividends from a DISC or former DISC (as defined in section 992(a)) to the

––––––––––––

[1] See References in Text note below.

extent such dividends are treated as income from sources without the United States, and

(II) distributions from a former FSC (as defined in section 922) out of earnings and profits attributable to foreign trade income (within the meaning of section 923(b)) or interest or carrying charges (as defined in section 927(d)(1)) derived from a transaction which results in foreign trade income (as defined in section 923(b)).

Any reference in subclause (II) to section 922, 923, or 927 shall be treated as a reference to such section as in effect before its repeal by the FSC Repeal and Extraterritorial Income Exclusion Act of 2000.

**(C) Treatment of financial services income and companies**

**(i) In general**

Financial services income shall be treated as general category income in the case of—

(I) a member of a financial services group, and

(II) any other person if such person is predominantly engaged in the active conduct of a banking, insurance, financing, or similar business.

**(ii) Financial services group**

The term "financial services group" means any affiliated group (as defined in section 1504(a) without regard to paragraphs (2) and (3) of section 1504(b)) which is predominantly engaged in the active conduct of a banking, insurance, financing, or similar business. In determining whether such a group is so engaged, there shall be taken into account only the income of members of the group that are—

(I) United States corporations, or

(II) controlled foreign corporations in which such United States corporations own, directly or indirectly, at least 80 percent of the total voting power and value of the stock.

**(iii) Pass-thru entities**

The Secretary shall by regulation specify for purposes of this subparagraph the treatment of financial services income received or accrued by partnerships and by other pass-thru entities which are not members of a financial services group.

**(D) Financial services income**

**(i) In general**

Except as otherwise provided in this subparagraph, the term "financial services income" means any income which is received or accrued by any person predominantly engaged in the active conduct of a banking, insurance, financing, or similar business, and which is—

(I) described in clause (ii), or

(II) passive income (determined without regard to subparagraph (B)(iii)(II)).

**(ii) General description of financial services income**

Income is described in this clause if such income is—

(I) derived in the active conduct of a banking, financing, or similar business,

(II) derived from the investment by an insurance company of its unearned premiums or reserves ordinary and necessary for the proper conduct of its insurance business, or

(III) of a kind which would be insurance income as defined in section 953(a) determined without regard to those provisions of paragraph (1)(A) of such section which limit insurance income to income from countries other than the country in which the corporation was created or organized.

**(E) Noncontrolled section 902 corporation**

**(i) In general**

The term "noncontrolled section 902 corporation" means any foreign corporation with respect to which the taxpayer meets the stock ownership requirements of section 902(a) (or, for purposes of applying paragraph (3) or (4), the requirements of section 902(b)). A controlled foreign corporation shall not be treated as a noncontrolled section 902 corporation with respect to any distribution out of its earnings and profits for periods during which it was a controlled foreign corporation.

**(ii) Treatment of inclusions under section 1293**

If any foreign corporation is a non-controlled section 902 corporation with respect to the taxpayer, any inclusion under section 1293 with respect to such corporation shall be treated as a dividend from such corporation.

**(F) High-taxed income**

The term "high-taxed income" means any income which (but for this subparagraph) would be passive income if the sum of—

(i) the foreign income taxes paid or accrued by the taxpayer with respect to such income, and

(ii) the foreign income taxes deemed paid by the taxpayer with respect to such income under section 902 or 960,

exceeds the highest rate of tax specified in section 1 or 11 (whichever applies) multiplied by the amount of such income (determined with regard to section 78). For purposes of the preceding sentence, the term "foreign income taxes" means any income, war profits, or excess profits tax imposed by any foreign country or possession of the United States.

**(G) Export financing interest**

For purposes of this paragraph, the term "export financing interest" means any interest derived from financing the sale (or other disposition) for use or consumption outside the United States of any property—

(i) which is manufactured, produced, grown, or extracted in the United States by the taxpayer or a related person, and

(ii) not more than 50 percent of the fair market value of which is attributable to products imported into the United States.

For purposes of clause (ii), the fair market value of any property imported into the United States shall be its appraised value, as determined by the Secretary under section 402 of the Tariff Act of 1930 (19 U.S.C. 1401a) in connection with its importation.

**(H) Treatment of income tax base differences**

**(i) In general**

In the case of taxable years beginning after December 31, 2006, tax imposed under the law of a foreign country or possession of the United States on an amount which does not constitute income under United States tax principles shall be treated as imposed on income described in paragraph (1)(B).

**(ii) Special rule for years before 2007**

**(I) In general**

In the case of taxes paid or accrued in taxable years beginning after December 31, 2004, and before January 1, 2007, a taxpayer may elect to treat tax imposed under the law of a foreign country or possession of the United States on an amount which does not constitute income under United States tax principles as tax imposed on income described in subparagraph (C) or (I) of paragraph (1).

**(II) Election irrevocable**

Any such election shall apply to the taxable year for which made and all subsequent taxable years described in subclause (I) unless revoked with the consent of the Secretary.

**(I) Related person**

For purposes of this paragraph, the term "related person" has the meaning given such term by section 954(d)(3), except that such section shall be applied by substituting "the person with respect to whom the determination is being made" for "controlled foreign corporation" each place it appears.

**[(J) Repealed. Pub. L. 113–295, div. A, title II, § 221(a)(72), Dec. 19, 2014, 128 Stat. 4049]**

**(K) Transitional rules for 2007 changes**

For purposes of paragraph (1)—

(i) taxes carried from any taxable year beginning before January 1, 2007, to any taxable year beginning on or after such date, with respect to any item of income, shall be treated as described in the subparagraph of paragraph (1) in which such income would be described were such taxes paid or accrued in a taxable year beginning on or after such date, and

(ii) the Secretary may by regulations provide for the allocation of any carryback of taxes with respect to income from a taxable year beginning on or after January 1, 2007, to a taxable year beginning before such date for purposes of allocating such income among the separate categories in effect for the taxable year to which carried.

**(3) Look-thru in case of controlled foreign corporations**

**(A) In general**

Except as otherwise provided in this paragraph, dividends, interest, rents, and royalties received or accrued by the taxpayer from a controlled foreign corporation in which the taxpayer is a United States shareholder shall not be treated as passive category income.

**(B) Subpart F inclusions**

Any amount included in gross income under section 951(a)(1)(A) shall be treated as passive category income to the extent the amount so included is attributable to passive category income.

**(C) Interest, rents, and royalties**

Any interest, rent, or royalty which is received or accrued from a controlled foreign corporation in which the taxpayer is a United States shareholder shall be treated as passive category income to the extent it is properly allocable (under regulations prescribed by the Secretary) to passive category income of the controlled foreign corporation.

**(D) Dividends**

Any dividend paid out of the earnings and profits of any controlled foreign corporation in which the taxpayer is a United States shareholder shall be treated as passive category income in proportion to the ratio of—

(i) the portion of the earnings and profits attributable to passive category income, to

(ii) the total amount of earnings and profits.

**(E) Look-thru applies only where subpart F applies**

If a controlled foreign corporation meets the requirements of section 954(b)(3)(A) (relating to de minimis rule) for any taxable year, for purposes of this paragraph, none of its foreign base company income (as defined in section 954(a) without regard to section 954(b)(5)) and none of its gross insurance income (as defined in section 954(b)(3)(C)) for such taxable year shall be treated as passive category income, except that this sentence shall not apply to any income which (without regard to this sentence) would be treated as financial services income. Solely for purposes of applying subparagraph (D), passive income of a controlled foreign corporation shall not be treated as passive category income if the requirements of section 954(b)(4) are met with respect to such income.

**(F) Coordination with high-taxed income provisions**

(i) In determining whether any income of a controlled foreign corporation is passive category income, subclause (II) of paragraph (2)(B)(iii) shall not apply.

(ii) Any income of the taxpayer which is treated as passive category income under this paragraph shall be so treated notwithstanding any provision of paragraph (2); ex-

cept that the determination of whether any amount is high-taxed income shall be made after the application of this paragraph.

**(G) Dividend**

For purposes of this paragraph, the term ''dividend'' includes any amount included in gross income in section 951(a)(1)(B). Any amount included in gross income under section 78 to the extent attributable to amounts included in gross income in section 951(a)(1)(A) shall not be treated as a dividend but shall be treated as included in gross income under section 951(a)(1)(A).

**(H) Look-thru applies to passive foreign investment company inclusion**

If—

(i) a passive foreign investment company is a controlled foreign corporation, and

(ii) the taxpayer is a United States shareholder in such controlled foreign corporation,

any amount included in gross income under section 1293 shall be treated as income in a separate category to the extent such amount is attributable to income in such category.

**(4) Look-thru applies to dividends from noncontrolled section 902 corporations**

**(A) In general**

For purposes of this subsection, any dividend from a noncontrolled section 902 corporation with respect to the taxpayer shall be treated as income described in a subparagraph of paragraph (1) in proportion to the ratio of—

(i) the portion of earnings and profits attributable to income described in such subparagraph, to

(ii) the total amount of earnings and profits.

**(B) Earnings and profits of controlled foreign corporations**

In the case of any distribution from a controlled foreign corporation to a United States shareholder, rules similar to the rules of subparagraph (A) shall apply in determining the extent to which earnings and profits of the controlled foreign corporation which are attributable to dividends received from a noncontrolled section 902 corporation may be treated as income in a separate category.

**(C) Special rules**

For purposes of this paragraph—

**(i) Earnings and profits**

**(I) In general**

The rules of section 316 shall apply.

**(II) Regulations**

The Secretary may prescribe regulations regarding the treatment of distributions out of earnings and profits for periods before the taxpayer's acquisition of the stock to which the distributions relate.

**(ii) Inadequate substantiation**

If the Secretary determines that the proper subparagraph of paragraph (1) in which a dividend is described has not been substantiated, such dividend shall be treated as income described in paragraph (1)(A).

**(iii) Coordination with high-taxed income provisions**

Rules similar to the rules of paragraph (3)(F) shall apply for purposes of this paragraph.

**(iv) Look-thru with respect to carryover of credit**

Rules similar to subparagraph (A) also shall apply to any carryforward under subsection (c) from a taxable year beginning before January 1, 2003, of tax allocable to a dividend from a noncontrolled section 902 corporation with respect to the taxpayer. The Secretary may by regulations provide for the allocation of any carryback of tax allocable to a dividend from a noncontrolled section 902 corporation from a taxable year beginning on or after January 1, 2003, to a taxable year beginning before such date for purposes of allocating such dividend among the separate categories in effect for the taxable year to which carried.

**(5) Controlled foreign corporation; United States shareholder**

For purposes of this subsection—

**(A) Controlled foreign corporation**

The term ''controlled foreign corporation'' has the meaning given such term by section 957 (taking into account section 953(c)).

**(B) United States shareholder**

The term ''United States shareholder'' has the meaning given such term by section 951(b) (taking into account section 953(c)).

**(6) Separate application to items resourced under treaties**

**(A) In general**

If—

(i) without regard to any treaty obligation of the United States, any item of income would be treated as derived from sources within the United States,

(ii) under a treaty obligation of the United States, such item would be treated as arising from sources outside the United States, and

(iii) the taxpayer chooses the benefits of such treaty obligation,

subsections (a), (b), and (c) of this section and sections 902, 907, and 960 shall be applied separately with respect to each such item.

**(B) Coordination with other provisions**

This paragraph shall not apply to any item of income to which subsection (h)(10) or section 865(h) applies.

**(C) Regulations**

The Secretary may issue such regulations or other guidance as is necessary or appropriate to carry out the purposes of this paragraph, including regulations or other guidance which provides that related items of in-

come may be aggregated for purposes of this paragraph.

**(7) Regulations**

The Secretary shall prescribe such regulations as may be necessary or appropriate for the purposes of this subsection, including regulations—

(A) for the application of paragraph (3) and subsection (f)(5) in the case of income paid (or loans made) through 1 or more entities or between 2 or more chains of entities,

(B) preventing the manipulation of the character of income the effect of which is to avoid the purposes of this subsection, and

(C) providing that rules similar to the rules of paragraph (3)(C) shall apply to interest, rents, and royalties received or accrued from entities which would be controlled foreign corporations if they were foreign corporations.

**[(e) Repealed. Pub. L. 101–508, title XI, § 11801(a)(31), Nov. 5, 1990, 104 Stat. 1388–521]**

**(f) Recapture of overall foreign loss**

**(1) General rule**

For purposes of this subpart and section 936, in the case of any taxpayer who sustains an overall foreign loss for any taxable year, that portion of the taxpayer's taxable income from sources without the United States for each succeeding taxable year which is equal to the lesser of—

(A) the amount of such loss (to the extent not used under this paragraph in prior taxable years), or

(B) 50 percent (or such larger percent as the taxpayer may choose) of the taxpayer's taxable income from sources without the United States for such succeeding taxable year,

shall be treated as income from sources within the United States (and not as income from sources without the United States).

**(2) Overall foreign loss defined**

For purposes of this subsection, the term "overall foreign loss" means the amount by which the gross income for the taxable year from sources without the United States (whether or not the taxpayer chooses the benefits of this subpart for such taxable year) for such year is exceeded by the sum of the deductions properly apportioned or allocated thereto, except that there shall not be taken into account—

(A) any net operating loss deduction allowable for such year under section 172(a), and

(B) any—

(i) foreign expropriation loss for such year, as defined in section 172(h) (as in effect on the day before the date of the enactment of the Revenue Reconciliation Act of 1990), or

(ii) loss for such year which arises from fire, storm, shipwreck, or other casualty, or from theft,

to the extent such loss is not compensated for by insurance or otherwise.

**(3) Dispositions**

**(A) In general**

For purposes of this chapter, if property which has been used predominantly without the United States in a trade or business is disposed of during any taxable year—

(i) the taxpayer, notwithstanding any other provision of this chapter (other than paragraph (1)), shall be deemed to have received and recognized taxable income from sources without the United States in the taxable year of the disposition, by reason of such disposition, in an amount equal to the lesser of the excess of the fair market value of such property over the taxpayer's adjusted basis in such property or the remaining amount of the overall foreign losses which were not used under paragraph (1) for such taxable year or any prior taxable year, and

(ii) paragraph (1) shall be applied with respect to such income by substituting "100 percent" for "50 percent".

In determining for purposes of this subparagraph whether the predominant use of any property has been without the United States, there shall be taken into account use during the 3-year period ending on the date of the disposition (or, if shorter, the period during which the property has been used in the trade or business).

**(B) Disposition defined and special rules**

(i) For purposes of this subsection, the term "disposition" includes a sale, exchange, distribution, or gift of property whether or not gain or loss is recognized on the transfer.

(ii) Any taxable income recognized solely by reason of subparagraph (A) shall have the same characterization it would have had if the taxpayer had sold or exchanged the property.

(iii) The Secretary shall prescribe such regulations as he may deem necessary to provide for adjustments to the basis of property to reflect taxable income recognized solely by reason of subparagraph (A).

**(C) Exceptions**

Notwithstanding subparagraph (B), the term "disposition" does not include—

(i) a disposition of property which is not a material factor in the realization of income by the taxpayer, or

(ii) a disposition of property to a domestic corporation in a distribution or transfer described in section 381(a).

**(D) Application to certain dispositions of stock in controlled foreign corporation**

**(i) In general**

This paragraph shall apply to an applicable disposition in the same manner as if it were a disposition of property described in subparagraph (A), except that the exception contained in subparagraph (C)(i) shall not apply.

**(ii) Applicable disposition**

For purposes of clause (i), the term "applicable disposition" means any disposi-

tion of any share of stock in a controlled foreign corporation in a transaction or series of transactions if, immediately before such transaction or series of transactions, the taxpayer owned more than 50 percent (by vote or value) of the stock of the controlled foreign corporation. Such term shall not include a disposition described in clause (iii) or (iv), except that clause (i) shall apply to any gain recognized on any such disposition.

**(iii) Exception for certain exchanges where ownership percentage retained**

A disposition shall not be treated as an applicable disposition under clause (ii) if it is part of a transaction or series of transactions—

(I) to which section 351 or 721 applies, or under which the transferor receives stock in a foreign corporation in exchange for the stock in the controlled foreign corporation and the stock received is exchanged basis property (as defined in section 7701(a)(44)), and

(II) immediately after which, the transferor owns (by vote or value) at least the same percentage of stock in the controlled foreign corporation (or, if the controlled foreign corporation is not in existence after such transaction or series of transactions, in another foreign corporation stock in[2] which was received by the transferor in exchange for stock in the controlled foreign corporation) as the percentage of stock in the controlled foreign corporation which the taxpayer owned immediately before such transaction or series of transactions.

**(iv) Exception for certain asset acquisitions**

A disposition shall not be treated as an applicable disposition under clause (ii) if it is part of a transaction or series of transactions in which the taxpayer (or any member of an affiliated group of corporations filing a consolidated return under section 1501 which includes the taxpayer) acquires the assets of a controlled foreign corporation in exchange for the shares of the controlled foreign corporation in a liquidation described in section 332 or a reorganization described in section 368(a)(1).

**(v) Controlled foreign corporation**

For purposes of this subparagraph, the term ''controlled foreign corporation'' has the meaning given such term by section 957.

**(vi) Stock ownership**

For purposes of this subparagraph, ownership of stock shall be determined under the rules of subsections (a) and (b) of section 958.

**(4) Accumulation distributions of foreign trust**

For purposes of this chapter, in the case of amounts of income from sources without the United States which are treated under section 666 (without regard to subsections (b) and (c)

thereof if the taxpayer chose to take a deduction with respect to the amounts described in such subsections under section 667(d)(1)(B)) as having been distributed by a foreign trust in a preceding taxable year, that portion of such amounts equal to the amount of any overall foreign loss sustained by the beneficiary in a year prior to the taxable year of the beneficiary in which such distribution is received from the trust shall be treated as income from sources within the United States (and not income from sources without the United States) to the extent that such loss was not used under this subsection in prior taxable years, or in the current taxable year, against other income of the beneficiary.

**(5) Treatment of separate limitation losses**

**(A) In general**

The amount of the separate limitation losses for any taxable year shall reduce income from sources within the United States for such taxable year only to the extent the aggregate amount of such losses exceeds the aggregate amount of the separate limitation incomes for such taxable year.

**(B) Allocation of losses**

The separate limitation losses for any taxable year (to the extent such losses do not exceed the separate limitation incomes for such year) shall be allocated among (and operate to reduce) such incomes on a proportionate basis.

**(C) Recharacterization of subsequent income**

If—

(i) a separate limitation loss from any income category (hereinafter in this subparagraph referred to as ''the loss category'') was allocated to income from any other category under subparagraph (B), and

(ii) the loss category has income for a subsequent taxable year,

such income (to the extent it does not exceed the aggregate separate limitation losses from the loss category not previously recharacterized under this subparagraph) shall be recharacterized as income from such other category in proportion to the prior reductions under subparagraph (B) in such other category not previously taken into account under this subparagraph. Nothing in the preceding sentence shall be construed as recharacterizing any tax.

**(D) Special rules for losses from sources in the United States**

Any loss from sources in the United States for any taxable year (to the extent such loss does not exceed the separate limitation incomes from such year) shall be allocated among (and operate to reduce) such incomes on a proportionate basis. This subparagraph shall be applied after subparagraph (B).

**(E) Definitions**

For purposes of this paragraph—

**(i) Income category**

The term ''income category'' means each separate category of income described in subsection (d)(1).

---

[2] So in original.

**(ii) Separate limitation income**

The term ''separate limitation income'' means, with respect to any income category, the taxable income from sources outside the United States, separately computed for such category.

**(iii) Separate limitation loss**

The term ''separate limitation loss'' means, with respect to any income category, the loss from such category determined under the principles of section 907(c)(4)(B).

**(F) Dispositions**

If any separate limitation loss for any taxable year is allocated against any separate limitation income for such taxable year, except to the extent provided in regulations, rules similar to the rules of paragraph (3) shall apply to any disposition of property if gain from such disposition would be in the income category with respect to which there was such separate limitation loss.

**(g) Recharacterization of overall domestic loss**

**(1) General rule**

For purposes of this subpart and section 936, in the case of any taxpayer who sustains an overall domestic loss for any taxable year beginning after December 31, 2006, that portion of the taxpayer's taxable income from sources within the United States for each succeeding taxable year which is equal to the lesser of—

(A) the amount of such loss (to the extent not used under this paragraph in prior taxable years), or

(B) 50 percent of the taxpayer's taxable income from sources within the United States for such succeeding taxable year,

shall be treated as income from sources without the United States (and not as income from sources within the United States).

**(2) Overall domestic loss**

For purposes of this subsection—

**(A) In general**

The term ''overall domestic loss'' means—

(i) with respect to any qualified taxable year, the domestic loss for such taxable year to the extent such loss offsets taxable income from sources without the United States for the taxable year or for any preceding qualified taxable year by reason of a carryback, and

(ii) with respect to any other taxable year, the domestic loss for such taxable year to the extent such loss offsets taxable income from sources without the United States for any preceding qualified taxable year by reason of a carryback.

**(B) Domestic loss**

For purposes of subparagraph (A), the term ''domestic loss'' means the amount by which the gross income for the taxable year from sources within the United States is exceeded by the sum of the deductions properly apportioned or allocated thereto (determined without regard to any carryback from a subsequent taxable year).

**(C) Qualified taxable year**

For purposes of subparagraph (A), the term ''qualified taxable year'' means any taxable year for which the taxpayer chose the benefits of this subpart.

**(3) Characterization of subsequent income**

**(A) In general**

Any income from sources within the United States that is treated as income from sources without the United States under paragraph (1) shall be allocated among and increase the income categories in proportion to the loss from sources within the United States previously allocated to those income categories.

**(B) Income category**

For purposes of this paragraph, the term ''income category'' has the meaning given such term by subsection (f)(5)(E)(i).

**(4) Coordination with subsection (f)**

The Secretary shall prescribe such regulations as may be necessary to coordinate the provisions of this subsection with the provisions of subsection (f).

**(h) Source rules in case of United States-owned foreign corporations**

**(1) In general**

The following amounts which are derived from a United States-owned foreign corporation and which would be treated as derived from sources outside the United States without regard to this subsection shall, for purposes of this section, be treated as derived from sources within the United States to the extent provided in this subsection:

(A) Any amount included in gross income under—

(i) section 951(a) (relating to amounts included in gross income of United States shareholders), or

(ii) section 1293 (relating to current taxation of income from qualified funds).

(B) Interest.

(C) Dividends.

**(2) Subpart F and passive foreign investment company inclusions**

Any amount described in subparagraph (A) of paragraph (1) shall be treated as derived from sources within the United States to the extent such amount is attributable to income of the United States-owned foreign corporation from sources within the United States.

**(3) Certain interest allocable to United States source income**

Any interest which—

(A) is paid or accrued by a United States-owned foreign corporation during any taxable year,

(B) is paid or accrued to a United States shareholder (as defined in section 951(b)) or a related person (within the meaning of section 267(b)) to such a shareholder, and

(C) is properly allocable (under regulations prescribed by the Secretary) to income of such foreign corporation for the taxable year from sources within the United States,

shall be treated as derived from sources within the United States.

**(4) Dividends**

**(A) In general**

The United States source ratio of any dividend paid or accrued by a United States-owned foreign corporation shall be treated as derived from sources within the United States.

**(B) United States source ratio**

For purposes of subparagraph (A), the term "United States source ratio" means, with respect to any dividend paid out of the earnings and profits for any taxable year, a fraction—

(i) the numerator of which is the portion of the earnings and profits for such taxable year from sources within the United States, and

(ii) the denominator of which is the total amount of earnings and profits for such taxable year.

**(5) Exception where United States-owned foreign corporation has small amount of United States source income**

Paragraph (3) shall not apply to interest paid or accrued during any taxable year (and paragraph (4) shall not apply to any dividends paid out of the earnings and profits for such taxable year) if—

(A) the United States-owned foreign corporation has earnings and profits for such taxable year, and

(B) less than 10 percent of such earnings and profits is attributable to sources within the United States.

For purposes of the preceding sentence, earnings and profits shall be determined without any reduction for interest described in paragraph (3) (determined without regard to subparagraph (C) thereof).

**(6) United States-owned foreign corporation**

For purposes of this subsection, the term "United States-owned foreign corporation" means any foreign corporation if 50 percent or more of—

(A) the total combined voting power of all classes of stock of such corporation entitled to vote, or

(B) the total value of the stock of such corporation,

is held directly (or indirectly through applying paragraphs (2) and (3) of section 958(a) and paragraph (4) of section 318(a)) by United States persons (as defined in section 7701(a)(30)).

**(7) Dividend**

For purposes of this subsection, the term "dividend" includes any gain treated as a dividend under section 1248.

**(8) Coordination with subsection (f)**

This subsection shall be applied before subsection (f).

**(9) Treatment of certain domestic corporations**

In the case of any dividend treated as not from sources within the United States under section 861(a)(2)(A), the corporation paying such dividend shall be treated for purposes of this subsection as a United States-owned foreign corporation.

**(10) Coordination with treaties**

**(A) In general**

If—

(i) any amount derived from a United States-owned foreign corporation would be treated as derived from sources within the United States under this subsection by reason of an item of income of such United States-owned foreign corporation,

(ii) under a treaty obligation of the United States (applied without regard to this subsection and by treating any amount included in gross income under section 951(a)(1) as a dividend), such amount would be treated as arising from sources outside the United States, and

(iii) the taxpayer chooses the benefits of this paragraph,

this subsection shall not apply to such amount to the extent attributable to such item of income (but subsections (a), (b), and (c) of this section and sections 902, 907, and 960 shall be applied separately with respect to such amount to the extent so attributable).

**(B) Special rule**

Amounts included in gross income under section 951(a)(1) shall be treated as a dividend under subparagraph (A)(ii) only if dividends paid by each corporation (the stock in which is taken into account in determining whether the shareholder is a United States shareholder in the United States-owned foreign corporation), if paid to the United States shareholder, would be treated under a treaty obligation of the United States as arising from sources outside the United States (applied without regard to this subsection).

**(11) Regulations**

The Secretary shall prescribe such regulations as may be necessary or appropriate for purposes of this subsection, including—

(A) regulations for the application of this subsection in the case of interest or dividend payments through 1 or more entities, and

(B) regulations providing that this subsection shall apply to interest paid or accrued to any person (whether or not a United States shareholder).

**(i) Limitation on use of deconsolidation to avoid foreign tax credit limitations**

If 2 or more domestic corporations would be members of the same affiliated group if—

(1) section 1504(b) were applied without regard to the exceptions contained therein, and

(2) the constructive ownership rules of section 1563(e) applied for purposes of section 1504(a),

the Secretary may by regulations provide for resourcing the income of any of such corporations or for modifications to the consolidated return regulations to the extent that such resourcing

or modifications are necessary to prevent the avoidance of the provisions of this subpart.

**(j) Certain individuals exempt**

**(1) In general**

In the case of an individual to whom this subsection applies for any taxable year—

(A) the limitation of subsection (a) shall not apply,

(B) no taxes paid or accrued by the individual during such taxable year may be deemed paid or accrued under subsection (c) in any other taxable year, and

(C) no taxes paid or accrued by the individual during any other taxable year may be deemed paid or accrued under subsection (c) in such taxable year.

**(2) Individuals to whom subsection applies**

This subsection shall apply to an individual for any taxable year if—

(A) the entire amount of such individual's gross income for the taxable year from sources without the United States consists of qualified passive income,

(B) the amount of the creditable foreign taxes paid or accrued by the individual during the taxable year does not exceed $300 ($600 in the case of a joint return), and

(C) such individual elects to have this subsection apply for the taxable year.

**(3) Definitions**

For purposes of this subsection—

**(A) Qualified passive income**

The term ''qualified passive income'' means any item of gross income if—

(i) such item of income is passive income (as defined in subsection (d)(2)(B) without regard to clause (iii) thereof), and

(ii) such item of income is shown on a payee statement furnished to the individual.

**(B) Creditable foreign taxes**

The term ''creditable foreign taxes'' means any taxes for which a credit is allowable under section 901; except that such term shall not include any tax unless such tax is shown on a payee statement furnished to such individual.

**(C) Payee statement**

The term ''payee statement'' has the meaning given to such term by section 6724(d)(2).

**(D) Estates and trusts not eligible**

This subsection shall not apply to any estate or trust.

**(k) Cross reference**

**(1) For increase of limitation under subsection (a) for taxes paid with respect to amounts received which were included in the gross income of the taxpayer for a prior taxable year as a United States shareholder with respect to a controlled foreign corporation, see section 960(b).**

**(2) For modification of limitation under subsection (a) for purposes of determining the amount of credit which can be taken against the alternative minimum tax, see section 59(a).**

(Aug. 16, 1954, ch. 736, 68A Stat. 287; Pub. L. 85–866, title I, § 42(a), Sept. 2, 1958, 72 Stat. 1639;

Pub. L. 86–780, § 1, Sept. 14, 1960, 74 Stat. 1010; Pub. L. 87–834, §§ 10(a), 12(b)(2), Oct. 16, 1962, 76 Stat. 1002, 1031; Pub. L. 88–272, title II, § 234(b)(6), Feb. 26, 1964, 78 Stat. 116; Pub. L. 89–809, title I, § 106(c)(1), Nov. 13, 1966, 80 Stat. 1570; Pub. L. 91–172, title V, § 506(b), Dec. 30, 1969, 83 Stat. 635; Pub. L. 92–178, title V, § 502(b)(2)–(4), Dec. 10, 1971, 85 Stat. 549; Pub. L. 94–455, title V, § 503(b)(1), title X, §§ 1031(a), 1032(a), 1034(a), 1051(e), title XIX, § 1901(b)(10)(B), Oct. 4, 1976, 90 Stat. 1562, 1620, 1624, 1629, 1646, 1795; Pub. L. 95–30, title I, § 102(b)(11), May 23, 1977, 91 Stat. 138; Pub. L. 95–600, title IV, §§ 403(c)(4), 421(e)(6), title VII, § 701(q)(2), (u)(2)(A)–(C), (3)(A), (4)(A), (B), (8)(C), Nov. 6, 1978, 92 Stat. 2868, 2876, 2910, 2913, 2916; Pub. L. 96–222, title I, § 104(a)(3)(D), Apr. 1, 1980, 94 Stat. 215; Pub. L. 97–248, title II, § 211(c)(2), Sept. 3, 1982, 96 Stat. 449; Pub. L. 98–21, title I, § 122(c)(1), Apr. 20, 1983, 97 Stat. 87; Pub. L. 98–369, div. A, title I, §§ 121(a), 122(a), title IV, § 474(r)(21), title VIII, § 801(d)(2), July 18, 1984, 98 Stat. 638, 643, 843, 995; Pub. L. 99–514, title I, § 104(b)(13), title VII, § 701(e)(4)(H), title XII, §§ 1201(a), (b), (d)(1)–(3), 1203(a), 1211(b)(3), 1235(f)(4), title XVIII, §§ 1810(a)(1)(A), (b)(1)–(4)(A), 1876(d)(2), 1899A(24), Oct. 22, 1986, 100 Stat. 2105, 2343, 2520, 2525, 2531, 2536, 2575, 2821, 2823, 2899, 2959; Pub. L. 100–647, title I, §§ 1003(b)(2), 1012(a)(1)(A), (2)–(4), (6)–(11), (c), (p)(11), (29), (q)(12), (bb)(4)(A), title II, § 2004(*l*), Nov. 10, 1988, 102 Stat. 3383, 3493–3497, 3517, 3521, 3525, 3534, 3606; Pub. L. 101–239, title VII, §§ 7402(a), 7811(i)(1), Dec. 19, 1989, 103 Stat. 2357, 2409; Pub. L. 101–508, title XI, §§ 11101(d)(5), 11801(a)(31), Nov. 5, 1990, 104 Stat. 1388–405, 1388–521; Pub. L. 103–66, title XIII, §§ 13227(d), 13235(a)(2), Aug. 10, 1993, 107 Stat. 494, 504; Pub. L. 104–188, title I, §§ 1501(b)(1), (12), 1703(i)(1), 1704(t)(36), Aug. 20, 1996, 110 Stat. 1825, 1826, 1876, 1889; Pub. L. 105–34, title III, § 311(c)(3), title XI, §§ 1101(a), 1105(a), (b), 1111(b), 1163(b), Aug. 5, 1997, 111 Stat. 835, 963, 967, 969, 987; Pub. L. 106–170, title V, § 501(b)(2), Dec. 17, 1999, 113 Stat. 1919; Pub. L. 107–16, title II, §§ 201(b)(2)(G), 202(f)(2)(C), title VI, § 618(b)(2)(D), June 7, 2001, 115 Stat. 46, 49, 108; Pub. L. 107–147, title IV, § 417(23)(B), title VI, § 601(b)(1), Mar. 9, 2002, 116 Stat. 57, 59; Pub. L. 108–311, title III, § 312(b)(1), Oct. 4, 2004, 118 Stat. 1181; Pub. L. 108–357, title IV, §§ 402(a), 403(a)–(b)(5), 404(a)–(f), 413(c)(14), (15), 417(a), title VIII, § 895(a), Oct. 22, 2004, 118 Stat. 1491–1495, 1508, 1512, 1647; Pub. L. 109–135, title IV, §§ 402(i)(3)(G), 403(k), (*o*), Dec. 21, 2005, 119 Stat. 2614, 2625, 2626; Pub. L. 110–172, § 11(f)(3), (g)(10), Dec. 29, 2007, 121 Stat. 2489, 2490; Pub. L. 111–5, div. B, title I, §§ 1004(b)(5), 1142(b)(1)(E), 1144(b)(1)(E), Feb. 17, 2009, 123 Stat. 314, 330, 332; Pub. L. 111–148, title X, § 10909(b)(2)(K), (c), Mar. 23, 2010, 124 Stat. 1023; Pub. L. 111–226, title II, §§ 213(a), 217(c)(2), Aug. 10, 2010, 124 Stat. 2398, 2402; Pub. L. 111–312, title I, § 101(b)(1), Dec. 17, 2010, 124 Stat. 3298; Pub. L. 112–240, title I, § 104(c)(2)(K), Jan. 2, 2013, 126 Stat. 2322; Pub. L. 113–295, div. A, title II, §§ 219(c), 221(a)(72), Dec. 19, 2014, 128 Stat. 4035, 4049.)

REFERENCES IN TEXT

Subparagraph (E)(iii) of subsection (d)(2) of this section, referred to in subsec. (d)(2)(B)(ii), was redesignated as subparagraph (E)(ii) by Pub. L. 108–357, title IV, § 403(b)(4)(B), Oct. 22, 2004, 118 Stat. 1494.

Paragraph (3) of subsection (d) of this section, referred to in subsec. (d)(2)(B)(ii), was amended generally by Pub. L. 108–357, title IV, § 404(f)(4), Oct. 22, 2004, 118 Stat. 1496, and as so amended, no longer contains a subpar. (I).

The FSC Repeal and Extraterritorial Income Exclusion Act of 2000, referred to in subsec. (d)(2)(B)(v), is Pub. L. 106–519, Nov. 15, 2000, 114 Stat. 2423. For complete classification of this Act to the Code, see Short Title of 2000 Amendments note set out under section 1 of this title and Tables.

Section 172(h), referred to in subsec. (f)(2)(B)(i), was repealed by Pub. L. 101–508, title XI, § 11811(b)(1), Nov. 5, 1990, 104 Stat. 1388–532.

The date of the enactment of the Revenue Reconciliation Act of 1990, referred to in subsec. (f)(2)(B)(i), is the date of enactment of Pub. L. 101–508, title XI, which was approved Nov. 5, 1990.

#### AMENDMENTS

2014—Subsec. (d)(2)(J). Pub. L. 113–295, § 221(a)(72), struck out subpar. (J) which related to a transition rule for taxes paid or accrued in a taxable year beginning before Jan. 1, 1987.

Subsec. (h)(7). Pub. L. 113–295, § 219(c), struck out "as ordinary income under section 1246 or" after "gain treated".

2013—Subsecs. (i) to (*l*). Pub. L. 112–240 redesignated subsecs. (j) to (*l*) as (i) to (k), respectively, and struck out former subsec. (i). Text read as follows: "In the case of any taxable year of an individual to which section 26(a)(2) does not apply, for purposes of subsection (a), the tax against which the credit is taken is such tax reduced by the sum of the credits allowable under subpart A of part IV of subchapter A of this chapter (other than sections 23, 24, 25A(i), 25B, 30 30B,, and 30D)."

2010—Subsec. (d)(6), (7). Pub. L. 111–226, § 213(a), added par. (6) and redesignated former par. (6) as (7).

Subsec. (h)(9). Pub. L. 111–226, § 217(c)(2), amended par. (9) generally. Prior to amendment, text read as follows: "For purposes of this subsection—

"(A) in the case of interest treated as not from sources within the United States under section 861(a)(1)(A), the corporation paying such interest shall be treated as a United States-owned foreign corporation, and

"(B) in the case of any dividend treated as not from sources within the United States under section 861(a)(2)(A), the corporation paying such dividend shall be treated as a United States-owned foreign corporation."

Subsec. (i). Pub. L. 111–148, § 10909(b)(2)(K), (c), as amended by Pub. L. 111–312, temporarily struck out "23," after "than sections". See Effective and Termination Dates of 2010 Amendment note below.

2009—Subsec. (i). Pub. L. 111–5, § 1144(b)(1)(E), inserted "30B," after "30".

Pub. L. 111–5, § 1142(b)(1)(E), substituted "25B, 30, and 30D" for "and 25B".

Pub. L. 111–5, § 1004(b)(5), inserted "25A(i)," after "24,".

2007—Subsec. (d)(2)(B)(v). Pub. L. 110–172, § 11(g)(10), inserted "and" at end of subcl. (I), redesignated subcl. (III) as (II), substituted "a former FSC (as defined in section 922)" for "a FSC (or a former FSC)" in subcl. (II), struck out former subcl. (II), which read as follows: "taxable income attributable to foreign trade income (within the meaning of section 923(b)), and", and added concluding provisions.

Subsec. (f)(3)(D)(iv). Pub. L. 110–172, § 11(f)(3), substituted "an affiliated group" for "a controlled group".

2005—Subsec. (d)(2)(D). Pub. L. 109–135, § 403(*o*), inserted "as in effect before its repeal" after "section 954(f)".

Subsec. (g)(2). Pub. L. 109–135, § 403(k), amended heading and text of par. (2) generally. Prior to amendment, text read as follows: "For purposes of this subsection—

"(A) IN GENERAL.—The term 'overall domestic loss' means any domestic loss to the extent such loss off-

sets taxable income from sources without the United States for the taxable year or for any preceding taxable year by reason of a carryback. For purposes of the preceding sentence, the term 'domestic loss' means the amount by which the gross income for the taxable year from sources within the United States is exceeded by the sum of the deductions properly apportioned or allocated thereto (determined without regard to any carryback from a subsequent taxable year).

"(B) TAXPAYER MUST HAVE ELECTED FOREIGN TAX CREDIT FOR YEAR OF LOSS.—The term 'overall domestic loss' shall not include any loss for any taxable year unless the taxpayer chose the benefits of this subpart for such taxable year."

Subsec. (i). Pub. L. 109–135, § 402(i)(3)(G), reenacted heading without change and amended text generally. Prior to amendment, text read as follows: "In the case of an individual, for purposes of subsection (a), the tax against which the credit is taken is such tax reduced by the sum of the credits allowable under subpart A of part IV of subchapter A of this chapter (other than sections 23, 24, and 25B). This subsection shall not apply to taxable years beginning during 2000, 2001, 2002, 2003, 2004, or 2005."

2004—Subsec. (c). Pub. L. 108–357, § 417(a), struck out "in the second preceding taxable year," before "in the first preceding taxable year" and substituted "and in any of the first 10" for ", and in the first, second, third, fourth, or fifth".

Subsec. (d)(1). Pub. L. 108–357, § 404(a), reenacted heading without change and amended text of par. (1) generally, substituting provisions relating to applicability of subsecs. (a), (b), and (c) and sections 902, 907, and 960 to passive category income and general category income, for provisions relating to applicability of subsecs. (a), (b), and (c) and sections 902, 907, and 960 to passive income, high withholding tax interest, financial services income, shipping income, certain dividends from a DISC or former DISC, taxable income attributable to foreign trade income, certain distributions from a FSC or a former FSC, and income other than income previously described.

Subsec. (d)(1)(E). Pub. L. 108–357, § 403(b)(1), struck out subpar. (E) which read as follows: "in the case of a corporation, dividends from noncontrolled section 902 corporations out of earnings and profits accumulated in taxable years beginning before January 1, 2003,".

Subsec. (d)(2)(A). Pub. L. 108–357, § 404(b), added subpar. (A). Former subpar. (A) redesignated (B).

Subsec. (d)(2)(A)(ii). Pub. L. 108–357, § 413(c)(14), reenacted heading without change and amended text of cl. (ii) generally. Prior to amendment, text read as follows: "Except as provided in clause (iii), the term 'passive income' includes any amount includible in gross income under section 551 or, except as provided in subparagraph (E)(iii) or paragraph (3)(I), section 1293 (relating to certain passive foreign investment companies)."

Subsec. (d)(2)(B). Pub. L. 108–357, § 404(b), redesignated subpar. (A) as (B) and struck out former subpar. (B), which defined the term "high withholding tax interest".

Subsec. (d)(2)(B)(iii). Pub. L. 108–357, § 404(f)(1), redesignated subcls. (II) and (III) as (I) and (II), respectively, and struck out former subcl. (I) which read as follows: "any income described in a subparagraph of paragraph (1) other than subparagraph (A),".

Subsec. (d)(2)(B)(v). Pub. L. 108–357, § 404(c), added cl. (v).

Subsec. (d)(2)(C). Pub. L. 108–357, § 404(d), added subpar. (C). Former subpar. (C) redesignated (D).

Subsec. (d)(2)(C)(iii). Pub. L. 108–357, § 403(b)(2), inserted "and" at end of subcl. (I), redesignated subcl. (III) as (II), and struck out former subcl. (II) which read as follows: "any dividend from a noncontrolled section 902 corporation out of earnings and profits accumulated in taxable years beginning before January 1, 2003, and".

Subsec. (d)(2)(D). Pub. L. 108–357, § 404(d), redesignated subpar. (C) as (D) and struck out heading and text of

former subpar. (D). Text read as follows: ''The term 'shipping income' means any income received or accrued by any person which is of a kind which would be foreign base company shipping income (as defined in section 954(f) as in effect before its repeal). Such term does not include any financial services income.''

Pub. L. 108–357, § 403(b)(3), substituted ''Such term does not include any financial services income'' for ''Such term does not include any dividend from a noncontrolled section 902 corporation out of earnings and profits accumulated in taxable years beginning before January 1, 2003 and does not include any financial services income''.

Subsec. (d)(2)(D)(i). Pub. L. 108–357, § 404(f)(2), inserted ''or'' at end of subcl. (I), added subcl. (II), and struck out former subcls. (II) and (III) which read as follows:

''(II) passive income (determined without regard to subclauses (I) and (III) of subparagraph (A)(iii)), or

''(III) export financing interest which (but for subparagraph (B)(ii)) would be high withholding tax interest.''

Subsec. (d)(2)(D)(iii). Pub. L. 108–357, § 404(f)(3), which directed striking out of cl. (iii) ''as so redesignated and amended by section 404(b)(3)'', was executed by striking out heading and text of cl. (iii) as amended by section 403(b)(2) and redesignated by section 404(d), to reflect the probable intent of Congress. Text read as follows: ''The term 'financial services income' does not include—

''(I) any high withholding tax interest, and

''(II) any export financing interest not described in clause (i)(III).''

Subsec. (d)(2)(E)(i). Pub. L. 108–357, § 403(b)(4)(A), inserted ''or (4)'' after ''paragraph (3)''.

Subsec. (d)(2)(E)(ii), (iii). Pub. L. 108–357, § 403(b)(4)(B), redesignated cl. (iii) as (ii) and struck out heading and text of former cl. (ii). Text read as follows: ''If a foreign corporation is a noncontrolled section 902 corporation with respect to the taxpayer, taxes on high withholding tax interest (to the extent imposed at a rate in excess of 5 percent) shall not be treated as foreign taxes for purposes of determining the amount of foreign taxes deemed paid by the taxpayer under section 902.''

Subsec. (d)(2)(E)(iv). Pub. L. 108–357, § 403(b)(4)(B), struck out heading and text of cl. (iv). Text read as follows: ''All noncontrolled section 902 corporations which are not passive foreign investment companies (as defined in section 1297) shall be treated as one noncontrolled section 902 corporation for purposes of paragraph (1).''

Subsec. (d)(2)(H) to (J). Pub. L. 108–357, § 404(e), added subpar. (H) and redesignated former subpars. (H) and (I) as (I) and (J), respectively.

Subsec. (d)(2)(K). Pub. L. 108–357, § 404(f)(5), added subpar. (K).

Subsec. (d)(3). Pub. L. 108–357, § 404(f)(4), reenacted heading without change and amended text of par. (3) generally, substituting provisions consisting of subpars. (A) to (H) for former subpars. (A) to (I) which contained similar provisions.

Subsec. (d)(3)(F)(i). Pub. L. 108–357, § 403(b)(5), substituted ''or (D)'' for ''(D), or (E)''.

Subsec. (d)(4). Pub. L. 108–357, § 403(a), reenacted heading without change and amended text of par. (4) generally, substituting provisions relating to dividends from noncontrolled section 902 corporations, earnings and profits of controlled foreign corporations, and setting forth special rules, for provisions relating to treatment of applicable dividends, defining the term ''applicable dividend'', and setting forth special rules.

Subsec. (f)(3)(D). Pub. L. 108–357, § 895(a), added subpar. (D).

Subsec. (g). Pub. L. 108–357, § 402(a), added subsec. (g). Former subsec. (g) redesignated (h).

Subsec. (h). Pub. L. 108–357, § 402(a), redesignated subsec. (g) as (h). Former subsec. (h) redesignated (i).

Pub. L. 108–311 substituted ''2003, 2004, or 2005'' for ''or 2003''.

Subsec. (h)(1)(A). Pub. L. 108–357, § 413(c)(15)(A), inserted ''or'' at end of cl. (i), redesignated cl. (iii) as (ii),

and struck out former cl. (ii) which read as follows: ''section 551 (relating to foreign personal holding company income taxed to United States shareholders), or''.

Subsec. (h)(2). Pub. L. 108–357, § 413(c)(15)(B), struck out ''foreign personal holding or'' before ''passive foreign investment'' in heading.

Subsecs. (i), (j). Pub. L. 108–357, § 402(a), redesignated subsecs. (h) and (i) as (i) and (j), respectively. Former subsec. (j) redesignated (k).

Subsec. (k). Pub. L. 108–357, § 402(a), redesignated subsec. (j) as (k). Former subsec. (k) redesignated (l).

Subsec. (k)(3)(A)(i). Pub. L. 108–357, § 404(f)(6), which directed amendment of subsec. (j)(3)(A)(i) by substituting ''subsection (d)(2)(B)'' for ''subsection (d)(2)(A)'', was executed to subsec. (k)(3)(A)(i) to reflect the probable intent of Congress and the amendment by Pub. L. 108–357, § 402(a). See above.

Subsec. (l). Pub. L. 108–357, § 402(a), redesignated subsec. (k) as (l).

2002—Subsec. (h). Pub. L. 107–147, § 601(b)(1), substituted ''during 2000, 2001, 2002, or 2003'' for ''during 2000 or 2001''.

Pub. L. 107–147, § 417(23)(B), amended directory language of Pub. L. 107–16, § 618(b)(2)(D). See 2001 Amendment note below.

2001—Subsec. (h). Pub. L. 107–16, § 618(b)(2)(D), as amended by Pub. L. 107–147, § 417(23)(B), substituted '', 24, and 25B'' for ''and 24''.

Pub. L. 107–16, § 202(f)(2)(C), substituted ''sections 23 and 24'' for ''section 24''.

Pub. L. 107–16, § 201(b)(2)(G), inserted ''(other than section 24)'' after ''chapter''.

1999—Subsec. (h). Pub. L. 106–170 inserted at end ''This subsection shall not apply to taxable years beginning during 2000 or 2001.''

1997—Subsec. (b)(2)(C). Pub. L. 105–34, § 311(c)(3), added subpar. (C).

Subsec. (d)(1)(E). Pub. L. 105–34, § 1105(a)(1), amended subpar. (E) generally. Prior to amendment, subpar. (E) read as follows: ''in the case of a corporation, dividends from each noncontrolled section 902 corporation,''.

Subsec. (d)(2)(C)(i)(II). Pub. L. 105–34, § 1163(b), substituted ''subclauses (I) and (III)'' for ''subclause (I)''.

Subsec. (d)(2)(C)(iii)(II), (IV). Pub. L. 105–34, § 1105(a)(3), inserted ''out of earnings and profits accumulated in taxable years beginning before January 1, 2003'' after ''corporation''.

Subsec. (d)(2)(E)(i). Pub. L. 105–34, § 1111(b), struck out ''and except as provided in regulations, the taxpayer was a United States shareholder in such corporation'' after ''was a controlled foreign corporation''.

Subsec. (d)(2)(E)(iv). Pub. L. 105–34, § 1105(a)(2), added cl. (iv).

Subsec. (d)(4) to (6). Pub. L. 105–34, § 1105(b), added par. (4) and redesignated former pars. (4) and (5) as (5) and (6), respectively.

Subsecs. (j), (k). Pub. L. 105–34, § 1101(a), added subsec. (j) and redesignated former subsec. (j) as (k).

1996—Subsec. (d)(3)(G). Pub. L. 104–188, § 1501(b)(1), (12), amended subpar. (G) identically, substituting ''section 951(a)(1)(B)'' for ''subparagraph (B) or (C) of section 951(a)(1)''.

Pub. L. 104–188, § 1703(i)(1), substituted ''subparagraph (B) or (C) of section 951(a)(1)'' for ''section 951(a)(1)(B)''.

Subsec. (f)(2)(B)(i). Pub. L. 104–188, § 1704(t)(36), inserted ''(as in effect on the day before the date of the enactment of the Revenue Reconciliation Act of 1990)'' after ''section 172(h)''.

1993—Subsec. (b)(4). Pub. L. 103–66, § 13227(d), inserted before period at end ''(without regard to subsections (a)(4) and (i) thereof)''.

Subsec. (d)(2)(A)(iii)(II) to (IV). Pub. L. 103–66, § 13235(a)(2), inserted ''and'' at end of subcl. II, substituted ''income.'' for ''income, and'' in subcl. III, and struck out subcl. (IV) which read as follows: ''any foreign oil and gas extraction income (as defined in section 907(c)).''

1990—Subsec. (b)(3)(D)(i). Pub. L. 101–508, § 11101(d)(5)(A), substituted ''subsection (h)'' for ''subsection (j)''.

Subsec. (b)(3)(E)(iii)(I). Pub. L. 101–508, § 11101(d)(5)(B), substituted ''section 1(h)'' for ''section 1(j)''.

Subsec. (e). Pub. L. 101–508, § 11801(a)(31), struck out subsec. (e) which related to transitional rules for carrybacks and carryovers for taxpayers on the per-country limitation.

1989—Subsec. (d)(1)(H). Pub. L. 101–239, § 7811(i)(1), substituted ''interest or carrying charges (as defined in section 927(d)(1)) derived from a transaction which results in foreign trade income (as defined in section 923(b))'' for ''qualified interest and carrying charges (as defined in section 245(c))''.

Subsecs. (i), (j). Pub. L. 101–239, § 7402(a), added subsec. (i) and redesignated former subsec. (i) as (j).

1988—Subsec. (b)(2). Pub. L. 100–647, § 1003(b)(2)(A), amended par. (2) generally, substituting general provisions and provisions setting special rules where there is a capital gain rate differential for provisions for corporations and for other taxpayers.

Subsec. (b)(3)(D). Pub. L. 100–647, § 1003(b)(2)(B), added subpar. (D) and struck out former subpar. (D), Rate differential portion, which read as follows: ''The 'rate differential portion' of foreign source net capital gain, net capital gain, or the excess of net capital gain from sources within the United States over net capital gain, as the case may be, is the same proportion of such amount as the excess of the highest rate of tax specified in section 11(b) over the alternative rate of tax under section 1201(a) bears to the highest rate of tax specified in section 11(b).''

Subsec. (b)(3)(D)(ii). Pub. L. 100–647, § 2004(l), substituted ''section 11(b)(1)'' for ''section 11(b)''.

Subsec. (b)(3)(E). Pub. L. 100–647, § 1003(b)(2)(B), added subpar. (E).

Subsec. (d)(1)(E). Pub. L. 100–647, § 1012(a)(11), inserted ''in the case of a corporation,'' before ''dividends''.

Subsec. (d)(2)(A)(ii). Pub. L. 100–647, § 1012(a)(6)(A), (p)(29)(A), substituted ''Except as provided in clause (iii), the term'' for ''The term'' and ''or, except as provided in subparagraph (E)(iii) or paragraph (3)(I), section 1293'' for ''or section 1293''.

Subsec. (d)(2)(A)(iv). Pub. L. 100–647, § 1012(a)(6)(B), added cl. (iv).

Subsec. (d)(2)(B)(iii). Pub. L. 100–647, § 1012(a)(8), amended cl. (iii) generally. Prior to amendment, cl. (iii) read as follows: ''The Secretary may by regulations provide that amounts (not otherwise high withholding tax interest) shall be treated as high withholding tax interest where necessary to prevent avoidance of the purposes of this subparagraph.''

Subsec. (d)(2)(C). Pub. L. 100–647, § 1012(a)(1)(A), amended subpar. (C) generally, revising and restating as cls. (i) to (iii) provisions of former cls. (i) to (iv).

Subsec. (d)(2)(D). Pub. L. 100–647, § 1012(a)(2), provided for exclusion from term ''shipping income'' any dividend from a noncontrolled section 902 corporation and any financial services income.

Subsec. (d)(2)(E)(i). Pub. L. 100–647, § 1012(a)(10), inserted ''and except as provided in regulations, the taxpayer was a United States shareholder in such corporation'' before period at end.

Subsec. (d)(2)(E)(iii). Pub. L. 100–647, § 1012(p)(29)(B), added cl. (iii).

Subsec. (d)(2)(I)(ii). Pub. L. 100–647, § 1012(a)(9), substituted ''except that—'' for ''except to the extent that—'', added subcls. (I) to (III), and struck out former subcls. (I) and (II) which read as follows:

''(I) the taxpayer establishes to the satisfaction of the Secretary that such taxes were paid or accrued with respect to shipping income, or

''(II) in the case of an entity meeting the requirements of subparagraph (C)(ii), the taxpayer establishes to the satisfaction of the Secretary that such taxes were paid or accrued with respect to financial services income, and''.

Subsec. (d)(3)(E). Pub. L. 100–647, § 1012(a)(4), inserted first sentence, struck out former first sentence which read ''If a controlled foreign corporation meets the requirements of section 954(b)(3)(A) (relating to de minimis rule) for any taxable year, for purposes of this paragraph, none of its income for such taxable year shall be treated as income in a separate category.'', and in second sentence substituted ''passive income'' for ''income (other than high withholding tax interest and dividends from a noncontrolled section 902 corporation)''.

Subsec. (d)(3)(F). Pub. L. 100–647, § 1012(a)(7), amended subpar. (F) generally. Prior to amendment, subpar. (F) read as follows: ''For purposes of this paragraph, the term 'separate category' means any category of income described in subparagraph (A), (B), (C), (D), or (E) of paragraph (1).''

Subsec. (d)(3)(H). Pub. L. 100–647, § 1012(a)(3), added subpar. (H).

Subsec. (d)(3)(I). Pub. L. 100–647, § 1012(p)(11), added subpar. (I).

Subsec. (f)(5)(F). Pub. L. 100–647, § 1012(c), added subpar. (F).

Subsec. (g)(9)(A). Pub. L. 100–647, § 1012(q)(12), substituted ''861(a)(1)(A)'' for ''861(a)(1)(B)''.

Subsec. (g)(10), (11). Pub. L. 100–647, § 1012(bb)(4)(A), added par. (10) and redesignated former par. (10) as (11).

1986—Subsec. (a). Pub. L. 99–514, § 104(b)(13), struck out last sentence ''For purposes of the preceding sentence, in the case of an individual the entire taxable income shall be reduced by an amount equal to the zero bracket amount.''

Subsec. (b)(3)(C). Pub. L. 99–514, § 1211(b)(3), redesignated subpar. (E) as (C) and struck out former subpar. (C), exception for gain from the sale of certain personal property, which read as follows: ''There shall be included as gain from sources within the United States any gain from sources without the United States from the sale or exchange of a capital asset which is personal property which—

''(i) in the case of an individual, is sold or exchanged outside of the country (or possession) of the individual's residence,

''(ii) in the case of a corporation, is stock in a second corporation sold or exchanged other than in a country (or possession) in which such second corporation derived more than 50 percent of its gross income for the 3-year period ending with the close of such second corporation's taxable year immediately preceding the year during which the sale or exchange occurred, or

''(iii) in the case of any taxpayer, is personal property (other than stock in a corporation) sold or exchanged other than in a country (or possession) in which such property is used in a trade or business of the taxpayer or in which such taxpayer derived more than 50 percent of its gross income for the 3-year period ending with the close of its taxable year immediately preceding the year during which the sale or exchange occurred,

unless such gain is subject to an income, war profits, or excess profits tax of a foreign country or possession of the United States, and the rate of tax applicable to such gain is 10 percent or more of the gain from the sale or exchange (computed under this chapter).''

Subsec. (b)(3)(D). Pub. L. 99–514, § 1211(b)(3), redesignated subpar. (F) as (D) and struck out former subpar. (D), gain from liquidation of certain foreign corporations, which read as follows: ''Subparagraph (C) shall not apply with respect to a distribution in liquidation of a foreign corporation to which part II of subchapter C applies if such corporation derived less than 50 percent of its gross income from sources within the United States for the 3-year period ending with the close of such corporation's taxable year immediately preceding the year during which the distribution occurred.''

Subsec. (b)(3)(E), (F). Pub. L. 99–514, § 1211(b)(3), redesignated former subpars. (E) and (F) as (C) and (D), respectively.

Subsec. (d). Pub. L. 99–514, § 1201(d)(1), substituted ''certain categories of income'' for ''certain interest income and income from DISC, former DISC, FSC, or former FSC'' in heading.

Subsec. (d)(1). Pub. L. 99–514, § 1201(a), (d)(2), (3), inserted ''and sections 902, 907, and 960'' in introductory

provisions, added subpars. (A) to (E), struck out former subpar. (A) which read "the interest income described in paragraph (2)", redesignated former subpars. (B), (C), (D), and (E) as (F), (G), (H), and (I), respectively, and in subpar. (I), substituted "in any of the preceding subparagraphs" for "in subparagraph (A), (B), (C), or (D)".

Pub. L. 99–514, §1899A(24), made technical correction clarifying heading. See 1984 Amendment note below.

Subsec. (d)(1)(D). Pub. L. 99–514, §1876(d)(2), amended subpar. (D) generally. Prior to amendment, subpar. (D) read as follows: "distributions from a FSC (or former FSC) out of earnings and profits attributable to foreign trade income (within the meaning of section 923(b)), and".

Subsec. (d)(2). Pub. L. 99–514, §1201(b), added par. (2) and struck out former par. (2), interest income to which applicable, which read as follows: "For purposes of this subsection, the interest income described in this paragraph is interest other than interest—

"(A) derived from any transaction which is directly related to the active conduct by the taxpayer of a trade or business in a foreign country or a possession of the United States,

"(B) derived in the conduct by the taxpayer of a banking, financing, or similar business,

"(C) received from a corporation in which the taxpayer (or one or more includible corporations in an affiliated group, as defined in section 1504, of which the taxpayer is a member) owns, directly or indirectly, at least 10 percent of the voting stock, or

"(D) received on obligations acquired as a result of the disposition of a trade or business actively conducted by the taxpayer in a foreign country or possession of the United States or as a result of the disposition of stock or obligations of a corporation in which the taxpayer owned at least 10 percent of the voting stock.

For purposes of subparagraph (C), stock owned, directly or indirectly, by or for a foreign corporation, shall be considered as being proportionately owned by its shareholders. For purposes of this subsection, interest (after the operation of section 904(d)(3)) received from a designated payor corporation described in section 904(d)(3)(E)(iii) by a taxpayer which owns directly or indirectly less than 10 percent of the voting stock of such designated payor corporation shall be treated as interest described in subparagraph (A) to the extent such interest would have been so treated had such taxpayer received it from other than a designated payor corporation."

Pub. L. 99–514, §1810(b)(3), inserted at end "For purposes of this subsection, interest (after the operation of section 904(d)(3)) received from a designated payor corporation described in section 904(d)(3)(E)(iii) by a taxpayer which owns directly or indirectly less than 10 percent of the voting stock of such designated payor corporation shall be treated as interest described in subparagraph (A) to the extent such interest would have been so treated had such taxpayer received it from other than a designated payor corporation."

Subsec. (d)(3). Pub. L. 99–514, §1201(b), added par. (3) and struck out former par. (3) treating as interest certain amounts attributable to United States-owned foreign corporations, etc., subpars. thereof relating to following subject matter: (A) general provisions, (B) separate limitation interest, (C) exception where designated corporation has small amount of separate limitation interest, (D) treatment of certain interest, (E) designated payor corporation, (F) determination of year to which amount is attributable, (G) ordering rules, (H) dividend, (I) interest and dividends from members of same affiliated group, and (J) distributions through other entities.

Subsec. (d)(3)(C). Pub. L. 99–514, §1810(b)(1), inserted at end "The preceding sentence shall not apply to any amount includible in gross income under section 551 or 951."

Subsec. (d)(3)(E). Pub. L. 99–514, §1810(b)(4)(A), inserted at end:

"(iv) any other corporation formed or availed of for purposes of avoiding the provisions of this paragraph.

For purposes of this paragraph, the rules of paragraph (9) of subsection (g) shall apply."

Subsec. (d)(3)(I). Pub. L. 99–514, §1810(b)(2), redesignated subpar. (I) as (J) and added a new subpar. (I), interest and dividends from members of same affiliated group, which read as follows: "For purposes of this paragraph, dividends and interest received or accrued by the designated payor corporation from another member of the same affiliated group (determined under section 1504 without regard to subsection (b)(3) thereof) shall be treated as separate limitation interest if (and only if) such amounts are attributable (directly or indirectly) to separate limitation interest of any other member of such group."

Subsec. (d)(3)(J). Pub. L. 99–514, §1810(b)(2), redesignated subpar. (I) as (J) and struck out former subpar. (J), interest from members of same affiliated group, which read as follows: "For purposes of this paragraph, interest received or accrued by the designated payor corporation from another member of the same affiliated group (determined under section 1504 without regard to subsection (b)(3) thereof) shall not be treated as separate limitation interest, unless such interest is attributable directly or indirectly to separate limitation interest of such other member."

Subsec. (d)(4), (5). Pub. L. 99–514, §1201(b), added pars. (4) and (5).

Subsec. (f)(5). Pub. L. 99–514, §1203(a), added par. (5).

Subsec. (g)(1)(A)(iii). Pub. L. 99–514, §1235(f)(4)(A), added cl. (iii).

Subsec. (g)(2). Pub. L. 99–514, §1235(f)(4)(B), substituted "holding or passive foreign investment company" for "holding company" in heading.

Subsec. (g)(9), (10). Pub. L. 99–514, §1810(a)(1)(A), added par. (9) and redesignated former par. (9) as (10).

Subsec. (i)(2). Pub. L. 99–514, §701(e)(4)(H), struck out "by an individual" after "can be taken" and substituted "section 59(a)" for "section 55(c)".

1984—Subsec. (d). Pub. L. 98–369, §801(d)(2)(C), which directed amendment of par. (1) heading by substituting "Separate application of section with respect to certain interest income and income from DISC, former DISC, FSC, or former FSC" for "Application of section in case of certain interest income and dividends from a DISC or former DISC" was executed to subsec. (d) heading to reflect the probable intent of Congress.

Subsec. (d)(1)(B) to (E). Pub. L. 98–369, §801(d)(2)(A), (B), struck out "and" after "United States," at end of subpar. (B), substituted "taxable income attributable to foreign trade income (within the meaning of section 923(b))," for "income other than the interest income described in paragraph (2) and dividends described in subparagraph (B)," in subpar. (C), and added subpars. (D) and (E).

Subsec. (d)(3). Pub. L. 98–369, §122(a), added par. (3).

Subsec. (g). Pub. L. 98–369, §121(a), added subsec. (g). Former subsec. (g) redesignated (h).

Pub. L. 98–369, §474(r)(21), amended subsec. (g) generally, substituting "Coordination with nonrefundable personal credits" for "Coordination with credit for the elderly" in heading and in text substituting "reduced by the sum of the credits allowable under subpart A of part IV of subchapter A of this chapter" for "reduced by the amount of the credit (if any) for the taxable year allowable under section 37 (relating to credit for the elderly and the permanently and totally disabled)".

Subsecs. (h), (i). Pub. L. 98–369, §121(a), redesignated former subsecs. (g) and (h) as (h) and (i), respectively.

1983—Subsec. (g). Pub. L. 98–21 substituted "relating to credit for the elderly and the permanently and totally disabled" for "relating to credit for the elderly".

1982—Subsec. (f)(4) to (6). Pub. L. 97–248 struck out par. (4) which provided for the determination of foreign oil related loss where section 907 was applicable, redesignated par. (5) as (4), and purported to redesignate par. (6) as (5). However, subsec. (f) did not contain a par. (6).

1980—Subsec. (b)(3)(F). Pub. L. 96–222, §104(a)(3)(D)(i), redesignated subpar. (E) "Rate differential portion", added by Pub. L. 95–600, as (F).

1978—Subsec. (b)(2). Pub. L. 95–600, §§403(c)(4)(A), 701(u)(2)(A), (3)(A), in subpar. (A) substituted "this sec-

tion'' for ''subsection (a)'', ''the rate differential portion'' for ''three eighths'' wherever appearing, and ''for purposes of determining taxable income from sources without the United States, any net capital loss (and any amount which is a short term capital loss under section 1212(a))'' for ''any net capital loss''.

Subsec. (b)(3). Pub. L. 95–600, §§ 403(c)(4)(B), 701(u)(2)(B), (C), as amended by Pub. L. 96–222, § 104(a)(3)(D)(ii), substituted ''There'' for ''For purposes of this paragraph, there'', added subpar. (D), redesignated former subpar. (D), relating to section 1231 gains, as subpar. (E), and added another subpar. (E), relating to rate differential portion. See 1980 Amendment note above.

Subsec. (f)(2)(A). Pub. L. 95–600, § 701(u)(4)(A), struck out provision relating to capital loss carrybacks and carryovers.

Subsec. (f)(4). Pub. L. 95–600, § 701(u)(4)(B), (8)(C), substituted in introductory provisions ''In making the separate computation under this subsection with respect to foreign oil related income which is required by section 907(b)'' for ''In the case of a corporation to which section 907(b)(1) applies'' and in subpar. (A) struck out provision relating to capital loss carrybacks and carryovers.

Subsec. (f)(5). Pub. L. 95–600, § 701(q)(2), added par. (5).

Subsec. (h). Pub. L. 95–600, § 421(e)(6), designated existing provisions as par. (1) and added par. (2).

1977—Subsec. (a). Pub. L. 95–30 provided that, for purposes of determining the maximum total amount of the credit taken under section 901(a), in the case of an individual, the entire taxable income shall be reduced by an amount equal to the zero bracket amount.

1976—Subsec. (a). Pub. L. 94–455, § 1031(a), struck out provisions allowing the per-country limitation, made the overall limitation applicable to all taxpayers to determine their foreign tax credit limitation, and inserted reference to section 901(a).

Subsec. (b). Pub. L. 94–455, §§ 1031(a), 1034(a), 1051(e), redesignated subsec. (c) as (b)(1), inserted provisions that the net United States capital losses would offset net foreign capital gains and, in the case of corporations, that only ³⁰⁄₄₈ of the net foreign source gain would be included in the foreign tax credit limitation, and that the gain from the sale or exchange of personal property outside the United States would be considered United States source income unless one of three exceptions applied, and added par. (4).

Subsec. (c). Pub. L. 94–455, § 1031(a), redesignated subsec. (d) as (c), and amended the redesignated subsec. (c) generally to conform to the elimination of the per-country limitation in subsec. (a). Former subsec. (c) redesignated (b)(1).

Subsec. (d). Pub. L. 94–455, § 1031(a), redesignated subsec. (f)(1), (2), as (d). Former subsec. (d) redesignated (c).

Subsec. (e). Pub. L. 94–455, § 1031(a), added subsec. (e). Former subsec. (e) was eliminated in view of the amendment of subsec. (a).

Subsec. (f). Pub. L. 94–455, §§ 1031(a), 1032(a), 1901(b)(10)(B), added subsec. (f), and substituted ''section 172(h)'' for ''section 172(k)(1)'' in pars. (2)(B)(i) and (4)(B)(i). Former subsec. (f)(1), (2), was redesignated (d). Former subsecs. (f)(3), (4), (5) were omitted.

Subsec. (g). Pub. L. 94–455, §§ 1032(a), 503(b)(1), added subsec. (g). Former subsec. (f) redesignated (g), and further redesignated (h).

Subsec. (h). Pub. L. 94–455, § 503(b)(1), redesignated former subsec. (g) as (h).

1971—Subsec. (f). Pub. L. 92–178, § 502(b)(2), inserted ''and dividends from a DISC or former DISC'' after ''interest income'' in the heading.

Subsec. (f)(1). Pub. L. 92–178, § 502(b)(2), inserted ''each of the following items of income'' in introductory text, added subpar. (B), and redesignated former subpar. (B) as (C), inserting therein provisions respecting dividends described in subparagraph (B).

Subsec. (f)(3). Pub. L. 92–178, § 502(b)(3), provided that the limitation provided by subsec. (a)(2) shall not apply to dividends described in paragraph (1)(B) and sub-

stituted ''limitation provided by subsection (a)(2) applies with respect to income described in paragraph (1)(B) and (C)'' for ''limitation provided by subsection (a)(2) applies with respect to income other than the interest income described in paragraph (2)''.

Subsec. (f)(5). Pub. L. 92–178, § 502(b)(4), added par. (5).

1969—Subsec. (b)(1). Pub. L. 91–172, § 506(b)(1), substituted ''(A) with the consent of the Secretary or his delegate with respect to any taxable year or (B) for the taxpayer's first taxable year beginning after December 31, 1969'' for ''with the consent of the Secretary or his delegate with respect to any taxable year''.

Subsec. (b)(2). Pub. L. 91–172, § 506(b)(2), substituted ''Except in a case to which paragraph (1)(B) applies, if the taxpayer'' for ''If a taxpayer''.

1966—Subsec. (f)(2). Pub. L. 89–809 inserted reference to includible corporations in an affiliated group, as defined in section 1504, of which the taxpayer is a member and inserted reference to both direct and indirect ownership in subpar. (C) and inserted provision that, for purposes of subpar. (C), stock owned directly or indirectly by or for a foreign corporation shall be considered as being proportionately owned by its shareholders.

1964—Subsec. (g)(2). Pub. L. 88–272 substituted ''section 1503(b)'' for ''section 1503(d)''.

1962—Subsec. (f). Pub. L. 87–834, § 10(a), added subsec. (f). Former subsec. (f) redesignated (g).

Subsec. (g). Pub. L. 87–834, §§ 10(a), 12(b)(2), redesignated former subsec. (f) as (g), designated existing provisions as par. (2), and added par. (1).

1960—Subsec. (a). Pub. L. 86–780, § 1(a), designated existing provisions as par. (1), inserted introductory clause ''In the case of any taxpayer who elects the limitation provided by this paragraph'' and inserted ''foreign'', ''or possession of the United States'' and ''or possession'' therein and added par. (2).

Subsec. (b). Pub. L. 86–780, § 1(a), added subsec. (b). Former subsec. (b) redesignated (c).

Subsec. (c). Pub. L. 86–780, § 1(b), redesignated former subsec. (b) as (c) and inserted ''applicable'' before ''limitation'' therein. Former subsec. (c) redesignated (d).

Subsec. (d). Pub. L. 86–780, § 1(c), redesignated former subsec. (c) as (d) and inserted ''applicable'' before ''limitation'' in two places.

Subsecs. (e), (f). Pub. L. 86–780, § 1(d), added subsecs. (e) and (f).

1958—Subsec. (c). Pub. L. 85–866 added subsec. (c).

### EFFECTIVE DATE OF 2014 AMENDMENT

Amendment by section 219(c) of Pub. L. 113–295 effective as if included in the provision of the American Jobs Creation Act of 2004, Pub. L. 108–357, to which such amendment relates, see section 219(d) of Pub. L. 113–295, set out as a note under section 199 of this title.

Amendment by section 221(a)(72) of Pub. L. 113–295 effective Dec. 19, 2014, subject to a savings provision, see section 221(b) of Pub. L. 113–295, set out as a note under section 1 of this title.

### EFFECTIVE DATE OF 2013 AMENDMENT

Amendment by Pub. L. 112–240 applicable to taxable years beginning after Dec. 31, 2011, see section 104(d) of Pub. L. 112–240, set out as a note under section 23 of this title.

### EFFECTIVE AND TERMINATION DATES OF 2010 AMENDMENT

Pub. L. 111–226, title II, § 213(b), Aug. 10, 2010, 124 Stat. 2399, provided that: ''The amendments made by this section [amending this section] shall apply to taxable years beginning after the date of the enactment of this Act [Aug. 10, 2010].''

Amendment by section 217(c)(2) of Pub. L. 111–226 applicable to taxable years beginning after Dec. 31, 2010, with certain exceptions, see section 217(d) of Pub. L. 111–226, set out as an Effective Date of 2010 Amendment note under section 861 of this title.

Amendment by Pub. L. 111–148 terminated applicable to taxable years beginning after Dec. 31, 2011, and sec-

tion is amended to read as if such amendment had never been enacted, see section 10909(c) of Pub. L. 111–148, set out as a note under section 1 of this title.

Amendment by Pub. L. 111–148 applicable to taxable years beginning after Dec. 31, 2009, see section 10909(d) of Pub. L. 111–148, set out as a note under section 1 of this title.

#### EFFECTIVE DATE OF 2009 AMENDMENT

Amendment by section 1004(b)(5) of Pub. L. 111–5 applicable to taxable years beginning after Dec. 31, 2008, see section 1004(d) of Pub. L. 111–5, set out as an Effective and Termination Dates of 2009 Amendment note under section 24 of this title.

Amendment by section 1142(b)(1)(E) of Pub. L. 111–5 applicable to vehicles acquired after Feb. 17, 2009, see section 1142(c) of Pub. L. 111–5, set out as an Effective and Termination Dates of 2009 Amendment note under section 24 of this title.

Amendment by section 1144(b)(1)(E) of Pub. L. 111–5 applicable to taxable years beginning after Dec. 31, 2008, see section 1144(c) of Pub. L. 111–5, set out as an Effective and Termination Dates of 2009 Amendment note under section 24 of this title.

#### EFFECTIVE DATE OF 2007 AMENDMENT

Pub. L. 110–172, § 11(f)(4), Dec. 29, 2007, 121 Stat. 2489, provided that: ''The amendments made by this subsection [amending this section and sections 1298 and 9502 of this title] shall take effect as if included in the provisions of the American Jobs Creation Act of 2004 [Pub. L. 108–357] to which they relate.''

#### EFFECTIVE AND TERMINATION DATES OF 2005 AMENDMENT

Amendment by section 402(i)(3)(G) of Pub. L. 109–135 subject to title IX of the Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. 107–16, § 901, in the same manner as the provisions of such Act to which such amendment relates, see section 402(i)(3)(H) of Pub. L. 109–135, set out as a note under section 23 of this title. Title IX of Pub. L. 107–16 was repealed by Pub. L. 112–240, title I, § 101(a)(1), Jan. 2, 2013, 126 Stat. 2315.

Amendment by section 402(i)(3)(G) of Pub. L. 109–135 effective as if included in the provisions of the Energy Policy Act of 2005, Pub. L. 109–58, to which it relates and applicable to taxable years beginning after Dec. 31, 2005, see section 402(m) of Pub. L. 109–135, set out as a note under section 23 of this title.

Amendments by section 403(k), (o) of Pub. L. 109–135 effective as if included in the provisions of the American Jobs Creation Act of 2004, Pub. L. 108–357, to which they relate, see section 403(nn) of Pub. L. 109–135, set out as an Effective Date of 2005 Amendment note under section 26 of this title.

#### EFFECTIVE DATE OF 2004 AMENDMENT

Amendment by section 402(a) of Pub. L. 108–357 applicable to losses for taxable years beginning after Dec. 31, 2006, see section 402(c) of Pub. L. 108–357, set out as a note under section 535 of this title.

Amendment by section 403(a), (b)(1)–(5) of Pub. L. 108–357 applicable to taxable years beginning after Dec. 31, 2002, see section 403(c) of Pub. L. 108–357, set out as a note under section 864 of this title.

Amendment by section 403(a), (b)(1)–(5) of Pub. L. 108–357 not applicable to taxable years beginning after Dec. 31, 2002, and before Jan. 1, 2005, with a specific provision for application of subsec. (d)(4)(C)(iv) of this section, if taxpayer so elects, see section 403(d) of Pub. L. 108–357, set out as a note under section 864 of this title.

Pub. L. 108–357, title IV, § 404(g), Oct. 22, 2004, 118 Stat. 1497, provided that:

''(1) IN GENERAL.—The amendments made by this section [amending this section] shall apply to taxable years beginning after December 31, 2006.

''(2) TRANSITIONAL RULE RELATING TO INCOME TAX BASE DIFFERENCE.—Section 904(d)(2)(H)(ii) of the Internal Revenue Code of 1986, as added by subsection (e), shall apply to taxable years beginning after December 31, 2004.''

Amendment by section 413(c)(14), (15) of Pub. L. 108–357 applicable to taxable years of foreign corporations beginning after Dec. 31, 2004, and to taxable years of United States shareholders with or within which such taxable years of foreign corporations end, see section 413(d)(1) of Pub. L. 108–357, set out as an Effective and Termination Dates of 2004 Amendments note under section 1 of this title.

Pub. L. 108–357, title IV, § 417(c), Oct. 22, 2004, 118 Stat. 1512, provided that:

''(1) CARRYBACK.—The amendments made by subsections (a)(1) and (b)(1) [amending this section and section 907 of this title] shall apply to excess foreign taxes arising in taxable years beginning after the date of the enactment of this Act [Oct. 22, 2004].

''(2) CARRYOVER.—The amendments made by subsections (a)(2) and (b)(2) [amending this section and section 907 of this title] shall apply to excess foreign taxes which (without regard to the amendments made by this section [amending this section and section 907 of this title]) may be carried to any taxable year ending after the date of the enactment of this Act [Oct. 22, 2004].''

Pub. L. 108–357, title VIII, § 895(b), Oct. 22, 2004, 118 Stat. 1648, provided that: ''The amendment made by this section [amending this section] shall apply to dispositions after the date of the enactment of this Act [Oct. 22, 2004].''

Amendment by Pub. L. 108–311 applicable to taxable years beginning after Dec. 31, 2003, see section 312(c) of Pub. L. 108–311, set out as a note under section 26 of this title.

#### EFFECTIVE DATE OF 2002 AMENDMENT

Amendment by section 601(b)(1) of Pub. L. 107–147 applicable to taxable years beginning after Dec. 31, 2001, see section 601(c) of Pub. L. 107–147, set out as a note under section 26 of this title.

#### EFFECTIVE DATE OF 2001 AMENDMENT

Amendment by sections 201(b), 202(f), and 618(b) of Pub. L. 107–16 inapplicable to taxable years beginning during 2004 or 2005, see section 312(b)(2) of Pub. L. 108–311, set out as a note under section 23 of this title.

Amendment by sections 201(b), 202(f), and 618(b) of Pub. L. 107–16 inapplicable to taxable years beginning during 2002 and 2003, see section 601(b)(2) of Pub. L. 107–147, set out as a note under section 23 of this title.

Amendment by section 201(b)(2)(G) of Pub. L. 107–16 applicable to taxable years beginning after Dec. 31, 2001, see section 201(e)(2) of Pub. L. 107–16, set out as a note under section 24 of this title.

Amendment by section 202(f)(2)(C) of Pub. L. 107–16 applicable to taxable years beginning after Dec. 31, 2001, see section 202(g)(1) of Pub. L. 107–16, set out as a note under section 23 of this title.

Amendment by section 618(b)(2)(D) of Pub. L. 107–16 applicable to taxable years beginning after Dec. 31, 2001, see section 618(d) of Pub. L. 107–16, set out as a note under section 24 of this title.

#### EFFECTIVE DATE OF 1999 AMENDMENT

Amendment by Pub. L. 106–170 applicable to taxable years beginning after Dec. 31, 1998, see section 501(c) of Pub. L. 106–170, set out as a note under section 24 of this title.

#### EFFECTIVE DATE OF 1997 AMENDMENT

Amendment by section 311(c)(3) of Pub. L. 105–34 applicable to taxable years ending after May 6, 1997, see section 311(d) of Pub. L. 105–34, set out as a note under section 1 of this title.

Pub. L. 105–34, title XI, § 1101(b), Aug. 5, 1997, 111 Stat. 963, provided that: ''The amendment made by subsection (a) [amending this section] shall apply to taxable years beginning after December 31, 1997.''

Pub. L. 105–34, title XI, § 1105(c), Aug. 5, 1997, 111 Stat. 968, provided that: ''The amendments made by this sec-

tion [amending this section] shall apply to taxable years beginning after December 31, 2002.''

Pub. L. 105–34, title XI, § 1111(c)(2), Aug. 5, 1997, 111 Stat. 969, provided that: ''The amendment made by subsection (b) [amending this section] shall apply to distributions after the date of the enactment of this Act [Aug. 5, 1997].''

Amendment by section 1163(b) of Pub. L. 105–34 effective Aug. 5, 1997, see section 1163(c) of Pub. L. 105–34, set out as a note under section 902 of this title.

#### EFFECTIVE DATE OF 1996 AMENDMENT

Pub. L. 104–188, title I, § 1501(d), Aug. 20, 1996, 110 Stat. 1826, provided that: ''The amendments made by this section [amending this section and sections 951, 956, 959, 989, and 1297 of this title and repealing section 956A of this title] shall apply to taxable years of foreign corporations beginning after December 31, 1996, and to taxable years of United States shareholders within which or with which such taxable years of foreign corporations end.''

Amendment by section 1703(i)(1) of Pub. L. 104–188 effective as if included in the provision of the Revenue Reconciliation Act of 1993, Pub. L. 103–66, §§ 13001–13444, to which such amendment relates, see section 1703(o) of Pub. L. 104–188, set out as a note under section 39 of this title.

#### EFFECTIVE DATE OF 1993 AMENDMENT

Amendment by section 13227(d) of Pub. L. 103–66 applicable to taxable years beginning after Dec. 31, 1993, see section 13227(f) of Pub. L. 103–66 set out as a note under section 56 of this title.

Pub. L. 103–66, title XIII, § 13235(c), Aug. 10, 1993, 107 Stat. 505, provided that: ''The amendments made by this section [amending this section and sections 907 and 954 of this title] shall apply to taxable years beginning after December 31, 1992.''

#### EFFECTIVE DATE OF 1990 AMENDMENT

Amendment by section 11101(d)(5) of Pub. L. 101–508 applicable to taxable years beginning after Dec. 31, 1990, see section 11101(e) of Pub. L. 101–508, set out as a note under section 1 of this title.

#### EFFECTIVE DATE OF 1989 AMENDMENT

Pub. L. 101–239, title VII, § 7402(b), Dec. 19, 1989, 103 Stat. 2358, provided that: ''The amendment made by subsection (a) [amending this section] shall apply to taxable years beginning after July 10, 1989.''

Amendment by section 7811(i)(1) of Pub. L. 101–239 effective, except as otherwise provided, as if included in the provision of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100–647, to which such amendment relates, see section 7817 of Pub. L. 101–239, set out as a note under section 1 of this title.

#### EFFECTIVE DATE OF 1988 AMENDMENT

Pub. L. 100–647, title I, § 1012(bb)(4)(B), Nov. 10, 1988, 102 Stat. 3535, provided that: ''The amendment made by subparagraph (A) [amending this section] shall take effect as if included in the amendment made by section 121 of the Tax Reform Act of 1984 [Pub. L. 98–369].''

Amendment by sections 1003(b)(2) and 1012(a)(1)(A), (2)–(4), (6)–(11), (c), (p)(11), (29), (q)(12) of Pub. L. 100–647 effective, except as otherwise provided, as if included in the provision of the Tax Reform Act of 1986, Pub. L. 99–514, to which such amendment relates, see section 1019(a) of Pub. L. 100–647, set out as a note under section 1 of this title.

Amendment by section 2004(l) of Pub. L. 100–647 effective, except as otherwise provided, as if included in the provisions of the Revenue Act of 1987, Pub. L. 100–203, title X, to which such amendment relates, see section 2004(u) of Pub. L. 100–647, set out as a note under section 56 of this title.

#### EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by section 104(b)(13) of Pub. L. 99–514 applicable to taxable years beginning after Dec. 31, 1986,

see section 151(a) of Pub. L. 99–514, set out as a note under section 1 of this title.

Amendment by section 701(e)(4)(H) of Pub. L. 99–514 applicable to taxable years beginning after Dec. 31, 1986, with certain exceptions and qualifications, see section 701(f) of Pub. L. 99–514, set out as an Effective Date note under section 55 of this title.

Pub. L. 99–514, title XII, § 1201(e), Oct. 22, 1986, 100 Stat. 2525, as amended by Pub. L. 100–647, title I, § 1012(a)(5), Nov. 10, 1988, 102 Stat. 3495; Pub. L. 101–239, title VII, § 7404(a), Dec. 19, 1989, 103 Stat. 2361, provided that:

''(1) IN GENERAL.—Except as provided in this subsection, the amendments made by this section [amending this section and sections 864 and 954 of this title] shall apply to taxable years beginning after December 31, 1986.

''[(2) Repealed. Pub. L. 101–239, title VII, § 7404(a), Dec. 19, 1989, 103 Stat. 2361.]

''(3) SPECIAL RULE FOR TAXPAYER WITH OVERALL FOREIGN LOSS.—

''(A) IN GENERAL.—If a taxpayer incorporated on June 20, 1928, the principal headquarters of which is in Minneapolis, Minnesota, sustained an overall foreign loss (as defined in section 904(f)(2) of the Internal Revenue Code of 1954 [now 1986]) in taxable years beginning before January 1, 1986, in connection with 2 separate trades or businesses which the taxpayer had, during 1985, substantially disposed of in tax-free transactions pursuant to section 355 of such Code, then an amount, not to exceed $40,000,000 of foreign source income, which, but for this paragraph, would not be treated as overall limitation income, shall be so treated.

''(B) SUBSTANTIAL DISPOSITION.—For purposes of this paragraph, a taxpayer shall be treated as having substantially disposed of a trade or business if the retained portion of such business had sales of less than 10 percent of the annual sales of such business for taxable years ending in 1985.''

[Pub. L. 101–239, title VII, § 7404(b), (c), Dec. 19, 1989, 103 Stat. 2361, provided that:

[''(b) EFFECTIVE DATE.—The repeal made by subsection (a) [amending section 1201(e) of Pub. L. 99–514, set out above] shall apply to taxable years beginning after December 31, 1989.

[''(c) EXCEPTION FOR CERTAIN TAXPAYERS WITH SUBSTANTIAL LOAN LOSS RESERVES.—

[''(1) IN GENERAL.—The repeal made by subsection (a) shall not apply to any taxpayer if, on any financial statement filed by such taxpayer for regulatory purposes with respect to any quarter ending during the period beginning on March 31, 1989, and ending on December 31, 1989, such taxpayer showed loss reserves against its qualified loans equal to at least 25 percent of the amount of such loans.

[''(2) DEFINITIONS AND SPECIAL RULES.—For purposes of this subsection—

[''(A) QUALIFIED LOAN.—The term 'qualified loan' has the meaning given such term by section 1201(e)(2)(H) of the Tax Reform Act of 1986 [Pub. L. 99–514, formerly set out above] (as in effect before its repeal by subsection (a)).

[''(B) PARENT-SUBSIDIARY CONTROLLED GROUPS.—In the case of any taxpayer which is a member of a parent-subsidiary controlled group (as defined in section 585(c)(5)(A) [26 U.S.C. 585(c)(5)(A)]), this subsection shall be applied by treating all members of such group as 1 taxpayer.'']

Pub. L. 99–514, title XII, § 1203(b), Oct. 22, 1986, 100 Stat. 2532, provided that: ''The amendment made by subsection (a) [amending this section] shall apply to losses incurred in taxable years beginning after December 31, 1986.''

Amendment by section 1211(b)(3) of Pub. L. 99–514 applicable to taxable years beginning after Dec. 31, 1986, except as otherwise provided, see section 1211(c) of Pub. L. 99–514, set out as an Effective Date note under section 865 of this title.

Amendment by section 1235(f)(4) of Pub. L. 99–514 applicable to taxable years of foreign corporations begin-

ning after Dec. 31, 1986, see section 1235(h) of Pub. L. 99–514, set out as an Effective Date note under section 1291 of this title.

Pub. L. 99–514, title XVIII, § 1810(a)(1)(B), Oct. 22, 1986, 100 Stat. 2822, provided that: ''The amendment made by subparagraph (A) [amending this section] shall take effect on March 28, 1985. In the case of any taxable year ending after such date of any corporation treated as a United States-owned foreign corporation by reason of the amendment made by subparagraph (A)—

''(i) only income received or accrued by such corporation after such date shall be taken into account under section 904(g) of the Internal Revenue Code of 1954 [now 1986]; except that

''(ii) paragraph (5) of such section 904(g) shall be applied by taking into account all income received or accrued by such corporation during such taxable year.''

Pub. L. 99–514, title XVIII, § 1810(b)(4)(B), Oct. 22, 1986, 100 Stat. 2824, provided that:

''(i) The amendment made by subparagraph (A) [amending this section] insofar as it adds the last sentence to subparagraph (E) of section 905(d)(3) [904(d)(3)] shall take effect on March 28, 1985. In the case of any taxable year ending after such date of any corporation treated as a designated payor corporation by reason of the amendment made by subparagraph (A)—

''(I) only income received or accrued by such corporation after such date shall be taken into account under section 904(d)(3) of the Internal Revenue Code of 1954 [now 1986]; except that

''(II) subparagraph (C) of such section 904(d)(3) shall be applied by taking into account all income received or accrued by such corporation during such taxable year.

''(ii) The amendment made by subparagraph (A) insofar as it adds clause (iv) to subparagraph (E) of section 904(d)(3) shall take effect on December 31, 1985. For purposes of such amendment, the rule of the second sentence of clause (i) shall be applied by taking into account December 31, 1985, in lieu of March 28, 1985.''

Amendment by sections 1810(b)(1)–(3) and 1876(d)(2) of Pub. L. 99–514 effective, except as otherwise provided, as if included in the provisions of the Tax Reform Act of 1984, Pub. L. 98–369, div. A, to which such amendment relates, see section 1881 of Pub. L. 99–514, set out as a note under section 48 of this title.

EFFECTIVE DATE OF 1984 AMENDMENT

Pub. L. 98–369, div. A, title I, § 121(b), July 18, 1984, 98 Stat. 640, as amended by Pub. L. 99–514, § 2, title XVIII, § 1810(a)(2), (3), Oct. 22, 1986, 100 Stat. 2095, 2822, provided that:

''(1) IN GENERAL.—Except as otherwise provided in this subsection, the amendment made by subsection (a) [amending this section] shall take effect on the date of the enactment of this Act [July 18, 1984]. In the case of any taxable year of any United States-owned foreign corporation ending after the date of the enactment of this Act—

''(A) only income received or accrued by such foreign corporation after such date of enactment shall be taken into account under section 904(g) of the Internal Revenue Code of 1986 [formerly I.R.C. 1954] (as added by subsection (a)); except that

''(B) paragraph (5) of such section 904(g) (relating to exception where small amount of United States source income) shall be applied by taking into account all income received or accrued by such foreign corporation during such taxable year.

''(2) SPECIAL RULE FOR APPLICABLE CFC.—

''(A) IN GENERAL.—In the case of qualified interest received or accrued by an applicable CFC before January 1, 1992—

''(i) such interest shall not be taken into account under section 904(g) of the Internal Revenue Code of 1986 (as added by subsection (a)), except that

''(ii) such interest shall be taken into account for purposes of applying paragraph (5) of such section 904(g) (relating to exception where small amount of United States source income).

''(B) QUALIFIED INTEREST.—For purposes of subparagraph (A), the term 'qualified interest' means—

''(i) the aggregate amount of interest received or accrued during any taxable year by an applicable CFC on United States affiliate obligations held by such applicable CFC, multiplied by,

''(ii) a fraction (not in excess of 1)—

''(I) the numerator of which is the sum of the aggregate principal amount of United States affiliate obligations held by the applicable CFC on March 31, 1984, but not in excess of the applicable limit, and

''(II) the denominator of which is the average daily principal amount of United States affiliate obligations held by such applicable CFC during the taxable year.

Proper adjustments shall be made to the numerator described in clause (ii)(I) for original issue discount accruing after March 31, 1984, on CFC obligations and United States affiliate obligations.

''(C) ADJUSTMENT FOR RETIREMENT OF CFC OBLIGATIONS.—The amount described in subparagraph (B)(ii)(I) for any taxable year shall be reduced by the sum of—

''(i) the excess of (I) the aggregate principal amount of CFC obligations which are outstanding on March 31, 1984, but only with respect to obligations issued before March 8, 1984, or issued after March 7, 1984, by the applicable CFC pursuant to a binding commitment in effect on March 7, 1984, over (II) the average daily outstanding principal amount during the taxable year of the CFC obligations described in subclause (I), and

''(ii) the portion of the equity of such applicable CFC allocable to the excess described in clause (i) (determined on the basis of the debt-equity ratio of such applicable CFC on March 31, 1984).

''(D) APPLICABLE CFC.—For purposes of this paragraph, the term 'applicable CFC' means any controlled foreign corporation (within the meaning of section 957)—

''(i) which was in existence on March 31, 1984, and

''(ii) the principal purpose of which on such date consisted of the issuing of CFC obligations (or short-term borrowing from nonaffiliated persons) and lending the proceeds of such obligations (or such borrowing) to affiliates.

''(E) AFFILIATES; UNITED STATES AFFILIATES.—For purposes of this paragraph—

''(i) AFFILIATE.—The term 'affiliate' means any person who is a related person (within the meaning of section 482 of the Internal Revenue Code of 1986) to the applicable CFC.

''(ii) UNITED STATES AFFILIATE.—The term 'United States affiliate' means any United States person which is an affiliate of the applicable CFC.

''(iii) TREATMENT OF CERTAIN FOREIGN CORPORATIONS ENGAGED IN BUSINESS IN UNITED STATES.—For purposes of clause (ii), a foreign corporation shall be treated as a United States person with respect to any interest payment made by such corporation if—

''(I) at least 50 percent of the gross income from all sources of such corporation for the 3-year period ending with the close of its last taxable year ending on or before March 31, 1984, was effectively connected with the conduct of a trade or business within the United States, and

''(II) at least 50 percent of the gross income from all sources of such corporation for the 3-year period ending with the close of its taxable year preceding the payment of such interest was effectively connected with the conduct of a trade or business within the United States.

''(F) UNITED STATES AFFILIATE OBLIGATIONS.—For purposes of this paragraph, the term 'United States affiliate obligations' means any obligation of (and payable by) a United States affiliate.

''(G) CFC OBLIGATION.—For purposes of this paragraph, the term 'CFC obligation' means any obligation of (and issued by) a CFC if—

''(i) the requirements of clause (i) of [former] section 163(f)(2)(B) of the Internal Revenue Code of 1986 are met with respect to such obligation, and

''(ii) in the case of an obligation issued after December 31, 1982, the requirements of clause (ii) of such [former] section 163(f)(2)(B) are met with respect to such obligation.

''(H) TREATMENT OF OBLIGATIONS WITH ORIGINAL ISSUE DISCOUNT.—For purposes of this paragraph, in the case of any obligation with original issue discount, the principal amount of such obligation as of any day shall be treated as equal to the revised issue price as of such day (as defined in section 1278(a)(4) of the Internal Revenue Code of 1986).

''(I) APPLICABLE LIMIT.—For purposes of subparagraph (B)(ii)(I), the term 'applicable limit' means the sum of—

''(i) the equity of the applicable CFC on March 31, 1984, and

''(ii) the aggregate principal amount of CFC obligations outstanding on March 31, 1984, which were issued by an applicable CFC—

''(I) before March 8, 1984, or

''(II) after March 7, 1984, pursuant to a binding commitment in effect on March 7, 1984.

''(3) EXCEPTION FOR CERTAIN TERM OBLIGATIONS.—The amendments made by subsection (a) shall not apply to interest on any term obligations held by a foreign corporation on March 7, 1984. The preceding sentence shall not apply to any United States affiliate obligation (as defined in paragraph (2)(F)) held by an applicable CFC (as defined in paragraph (2)(D)).

''(4) DEFINITIONS.—Any term used in this subsection which is also used in section 904(g) of the Internal Revenue Code of 1986 (as added by subsection (a)) shall have the meaning given such term by such section 904(g).

''(5) SEPARATE APPLICATION OF SECTION 904 IN CASE OF INCOME COVERED BY TRANSITIONAL RULES.—Subsections (a), (b), and (c) of section 904 of the Internal Revenue Code of 1986 shall be applied separately to any amount not treated as income derived from sources within the United States but which (but for the provisions of paragraph (2) or (3) of this subsection) would be so treated under the amendments made by subsection (a). Any such separate application shall be made before any separate application required under section 904(d) of such Code.

''(6) APPLICATION OF PARAGRAPH (5) DELAYED IN CERTAIN CASES.—In the case of a foreign corporation—

''(A) which is a subsidiary of a domestic corporation which has been engaged in manufacturing for more than 50 years, and

''(B) which issued certificates with respect to obligations on—

''(i) September 24, 1979, denominated in French francs,

''(ii) September 10, 1981, denominated in Swiss francs,

''(iii) July 14, 1982, denominated in Swiss francs, and

''(iv) December 1, 1982, denominated in United States dollars,

with a total principal amount of less than 200,000,000 United States dollars.[,]

then paragraph (5) shall not apply to the proceeds from relending such obligations or related capital before January 1, 1986.''

Pub. L. 98–369, div. A, title I, § 122(b), July 18, 1984, 98 Stat. 644, provided that:

''(1) IN GENERAL.—The amendment made by subsection (a) [amending this section] shall take effect on the date of the enactment of this Act [July 18, 1984].

''(2) SPECIAL RULES FOR INTEREST INCOME.—

''(A) IN GENERAL.—Interest income received or accrued by a designated payor corporation shall be taken into account for purposes of the amendment made by subsection (a) only in taxable years beginning after the date of the enactment of this Act.

''(B) EXCEPTION FOR INVESTMENT AFTER JUNE 22, 1984.—Notwithstanding subparagraph (A), the amendment made by subsection (a) shall apply to interest income received or accrued by a designated payor corporation after the date of enactment of this Act if it is attributable to investment in the designated payor corporation after June 22, 1984.

''(3) TERM OBLIGATIONS OF DESIGNATED PAYOR CORPORATION WHICH IS NOT APPLICABLE CFC.—In the case of any designated payor corporation which is not an applicable CFC (as defined in section 121(b)(2)(D) [section 121(b)(2)(D) of Pub. L. 98–369, set out above]), any interest received or accrued by such corporation on a term obligation held by such corporation on March 7, 1984, shall not be taken into account.''

Amendment by section 474(r)(21) of Pub. L. 98–369 applicable to taxable years beginning after Dec. 31, 1983, and to carrybacks from such years, see section 475(a) of Pub. L. 98–369, set out as a note under section 21 of this title.

Amendment by section 801(d)(2) of Pub. L. 98–369 applicable to transactions after Dec. 31, 1984, in taxable years ending after such date, see section 805(a)(1) of Pub. L. 98–369, as amended, set out as a note under section 245 of this title.

EFFECTIVE DATE OF 1983 AMENDMENT

Amendment by Pub. L. 98–21 applicable to taxable years beginning after Dec. 31, 1983, except that if an individual's annuity starting date was deferred under section 105(d)(6) of this title as in effect on the day before Apr. 20, 1983, such deferral shall end on the first day of such individual's first taxable year beginning after Dec. 31, 1983, see section 122(d) of Pub. L. 98–21, set out as a note under section 22 of this title.

EFFECTIVE DATE OF 1982 AMENDMENT

Amendment by Pub. L. 97–248 applicable to taxable years beginning after Dec. 31, 1982, except that former subsec. (f)(4), which had provided for the determination of foreign oil related loss where section 907 of this title was applicable, shall continue to apply in certain instances where the taxpayer has had a foreign loss from an activity not related to oil and gas, see section 211(e) of Pub. L. 97–248, set out as a note under section 907 of this title.

EFFECTIVE DATE OF 1980 AMENDMENT

Amendment by Pub. L. 96–222 effective, except as otherwise provided, as if it had been included in the provisions of the Revenue Act of 1978, Pub. L. 95–600, to which such amendment relates, see section 201 of Pub. L. 96–222, set out as a note under section 32 of this title.

EFFECTIVE DATE OF 1978 AMENDMENT

Amendment by section 403(c)(4) of Pub. L. 95–600 effective on Nov. 6, 1978, see section 403(d)(3) of Pub. L. 95–600, set out as a note under section 528 of this title.

Amendment by section 421(e)(6) of Pub. L. 95–600 applicable to taxable years beginning after Dec. 31, 1978, see section 421(g) of Pub. L. 95–600, set out as note under section 5 of this title.

Amendment by section 701(a)(8)(C) of Pub. L. 95–600 applicable, in the case of individuals, to taxable years ending after Dec. 31, 1974, and, in the case of corporations, to taxable years ending after Dec. 31, 1976, see section 701(u)(8)(D) of Pub. L. 95–600, set out as a note under section 907 of this title.

Pub. L. 95–600, title VII, § 701(q)(3)(B), Nov. 6, 1978, 92 Stat. 2910, as amended by Pub. L. 99–514, § 2, Oct. 22, 1986, 100 Stat. 2095, provided that: ''The amendments made by paragraph (2) [amending this section] shall take effect as if included in section 904(f) of the Internal Revenue Code of 1986 [formerly I.R.C. 1954], as such provision was added to such Code by section 1032(a) of the Tax Reform Act of 1976 [section 1032(a) of Pub. L. 94–455].''

Pub. L. 95–600, title VII, § 701(u)(2)(D), Nov. 6, 1978, 92 Stat. 2913, provided that: ''The amendments made by this paragraph [amending this section] shall apply to taxable years beginning after December 31, 1975.''

Pub. L. 95–600, title VII, §701(u)(3)(B), Nov. 6, 1978, 92 Stat. 2913, provided that: "The amendment made by subparagraph (A) [amending this section] shall apply to taxable years beginning after December 31, 1975."

Pub. L. 95–600, title VII, §701(u)(4)(C), Nov. 6, 1978, 92 Stat. 2914, provided that: "The amendments made by this paragraph [amending this section] shall apply—

"(i) to overall foreign losses sustained in taxable years beginning after December 31, 1975, and

"(ii) to foreign oil related losses sustained in taxable years ending after December 31, 1975."

#### EFFECTIVE DATE OF 1977 AMENDMENT

Amendment by Pub. L. 95–30 applicable to taxable years beginning after Dec. 31, 1976, see section 106(a) of Pub. L. 95–30, set out as a note under section 1 of this title.

#### EFFECTIVE DATE OF 1976 AMENDMENT

Amendment by section 503(b)(1) of Pub. L. 94–455 applicable to taxable years beginning after Dec. 31, 1975, see section 508 of Pub. L. 94–455, set out as a note under section 3 of this title.

Pub. L. 94–455, title X, §1031(c), Oct. 4, 1976, 90 Stat. 1623, as amended by Pub. L. 95–600, title VII, §701(u)(6), (7)(B)(ii), Nov. 6, 1978, 92 Stat. 2914, 2916; Pub. L. 99–514, §2, Oct. 22, 1986, 100 Stat. 2095, provided that:

"(1) IN GENERAL.—Except as provided in paragraphs (2) and (3), the amendments made by this section [amending this section and sections 243, 383, 901, 907, 960, 1351, 1503, 6038, and 6501 of this title] shall apply to taxable years beginning after December 31, 1975.

"(2) EXCEPTION FOR CERTAIN MINING OPERATIONS.—In the case of a domestic corporation or includible corporation in an affiliated group (as defined in section 1504 of the Internal Revenue Code of 1986 [formerly I.R.C. 1954]) which has as of October 1, 1975—

"(A) been engaged in the active conduct of the trade or business of the extraction of minerals (of a character with respect to which a deduction for depletion is allowable under section 613 of such Code) outside the United States or its possessions for less than 5 years preceding the date of enactment of this Act [Oct. 4, 1976],

"(B) had deductions properly apportioned or allocated to its gross income from such trade or business in excess of such gross income in at least 2 taxable years,

"(C) 80 percent of its gross receipts are from the sale of such minerals, and

"(D) made commitments for substantial expansion of such mineral extraction activities,

the amendments made by this section [amending this section and sections 243, 383, 901, 907, 960, 1351, 1503, 6038, and 6501 of this title] shall apply to taxable years beginning after December 31, 1978. In the case of a loss sustained in a taxable year beginning before January 1, 1979, by any corporation to which this paragraph applies, if section 904(a)(1) of such Code (as in effect before the enactment of this Act [Oct. 4, 1976]) applies with respect to such taxable year, the provisions of section 904(f) of such Code shall be applied with respect to such loss under the principles of such section 904(a)(1).

"(3) EXCEPTION FOR INCOME FROM POSSESSIONS.—In the case of gross income from sources within a possession of the United States (and the deductions properly apportioned or allocated thereto), the amendments made by this section [amending this section and sections 243, 383, 901, 907, 960, 1351, 1503, 6038, and 6501 of this title] shall apply to taxable years beginning after December 31, 1978.

"(4) CARRYBACKS AND CARRYOVERS IN THE CASE OF MINING OPERATIONS AND INCOME FROM A POSSESSION.—In the case of a taxpayer to whom paragraph (2) or (3) of this subsection applies, section 904(e) of such Code [section 904(e) of this title] shall apply except that 'January 1, 1979' shall be substituted for 'January 1, 1976' each place it appears therein. If such a taxpayer elects the overall limitation for a taxable year beginning before

January 1, 1979, such section 904(e) shall be applied by substituting 'the January 1, of the last year for which such taxpayer is on the per-country limitation' for 'January 1, 1976' each place it appears therein."

Pub. L. 94–455, title X, §1032(c), Oct. 4, 1976, 90 Stat. 1626, as amended by Pub. L. 95–600, title VII, §701(u)(5), (7)(A), (B)(i), Nov. 6, 1978, 92 Stat. 2914; Pub. L. 99–514, §2, Oct. 22, 1986, 100 Stat. 2095, provided that:

"(1) IN GENERAL.—Except as provided in paragraphs (2), (3), and (5), the amendment made by subsection (a) [amending this section] shall apply to losses sustained in taxable years beginning after December 31, 1975. The amendment made by subsection (b)(1) [amending section 907 of this title] shall apply to taxable years beginning after December 31, 1975. The amendment made by subsection (b)(2) [amending section 907 of this title] shall apply to losses sustained in taxable years ending after December 31, 1975.

"(2) OBLIGATIONS OF FOREIGN GOVERNMENTS.—The amendments made by subsection (a) [amending this section] shall not apply to losses on the sale, exchange, or other disposition of bonds, notes, or other evidences of indebtedness issued before May 14, 1976, by a foreign government or instrumentality thereof for the acquisition of property located in that country or stock of a corporation (created or organized in or under the laws of that foreign country) or indebtedness of such corporation.

"(3) SUBSTANTIAL WORTHLESSNESS BEFORE ENACTMENT.—The amendments made by subsection (a) [amending this section] shall not apply to losses incurred on the loss from stock or indebtedness of a corporation in which the taxpayer owned at least 10 percent of the voting stock and which has sustained losses in 3 out of the last 5 taxable years beginning before January 1, 1976, which has sustained an overall loss for those 5 years, and with respect to which the taxpayer has terminated or will terminate all operations by reason of sale, liquidation, or other disposition before January 1, 1977, of such corporation or its assets.

"(4) LIMITATION BASED ON DEFICIT IN EARNINGS AND PROFITS.—If paragraph (3) would apply to a taxpayer but for the fact that the loss is sustained after December 31, 1976, and if the loss is sustained in a taxable year beginning before January 1, 1979, the amendments made by subsection (a) [amending this section] shall not apply to such loss to the extent that there was on December 31, 1975, a deficit in earnings and profits in the corporation from which the loss arose. For purposes of the preceding sentence, there shall be taken into account only earnings and profits of the corporation which (A) were accumulated in taxable years of the corporation beginning after December 31, 1962, and during the period in which the stock of such corporation from which the loss arose was held by the taxpayer and (B) are attributable to such stock.

"(5) FOREIGN OIL RELATED LOSSES.—The amendment made by subsection (a) [amending this section] shall apply to foreign oil related losses sustained in taxable years ending after December 31, 1975.

"(6) RECAPTURE OF POSSESSION LOSSES DURING TRANSITIONAL PERIOD WHERE TAXPAYER IS ON A PER-COUNTRY BASIS.—

"(A) APPLICATION OF PARAGRAPH.—This paragraph shall apply if—

"(i) the taxpayer sustained a loss in a possession of the United States in a taxable year beginning after December 31, 1975, and before January 1, 1979,

"(ii) such loss is attributable to a trade or business engaged in by the taxpayer in such possession on January 1, 1976, and

"(iii) the taxpayer chooses to have the benefits of subpart A of part III of subchapter N apply for such taxable year and section 904(a)(1) of the Internal Revenue Code of 1986 [formerly I.R.C. 1954] (as in effect before the enactment of this Act [Oct. 4, 1976]) applies with respect to such taxable year.

"(B) NO RECAPTURE DURING TRANSITION PERIOD.—In any case to which this paragraph applies, for purposes of determining the liability for tax of the tax-

payer for taxable years beginning before January 1, 1979, section 904(f) of the Internal Revenue Code of 1986 shall not apply with respect to the loss described in subparagraph (A)(i).

"(C) RECAPTURE OF LOSS AFTER THE TRANSITION PERIOD.—In any case to which this paragraph applies—

"(i) for purposes of determining the liability for tax of the taxpayer for taxable years beginning after December 31, 1978, section 904(f) of the Internal Revenue Code of 1986 [subsec. (f) of this section] shall be applied with respect to the loss described in subparagraph (A)(i) under the principles of section 904(a)(1) of such Code (as in effect before the enactment of this Act [Oct. 4, 1976]); but

"(ii) in the case of any taxpayer and any possession, the aggregate amount to which such section 904(f) applies by reason of clause (i) shall not exceed the sum of the net incomes of all affiliated corporations from such possession for taxable years of such affiliated corporations beginning after December 31, 1975, and before January 1, 1979.

"(D) TAXPAYERS NOT ENGAGED IN TRADE OR BUSINESS ON JANUARY 1, 1976.—In any case to which this paragraph applies but for the fact that the taxpayer was not engaged in a trade or business in such possession on January 1, 1976, for purposes of determining the liability for tax of the taxpayer for taxable years beginning before January 1, 1979; if section 904(a)(1) of such Code (as in effect before the enactment of this Act [Oct. 4, 1976]) applies with respect to such taxable year, the provisions of section 904(f) of such Code shall be applied with respect to the loss described in subparagraph (A)(i) under the principles of such section 904(a)(1).

"(E) AFFILIATED CORPORATION DEFINED.—For purposes of subparagraph (C)(ii), the term 'affiliated corporation' means a corporation which, for the taxable year for which the net income is being determined, was not a member of the same affiliated group (within the meaning of section 1504 of the Internal Revenue Code of 1986) as the taxpayer but would have been a member of such group but for the application of subsection (b) of such section 1504.''

Pub. L. 94–455, title X, §1034(b), Oct. 4, 1976, 90 Stat. 1630, provided that: "The amendment made by this section [amending this section] shall apply to taxable years beginning after December 31, 1975, except that the provisions of section 904(b)(3)(C) shall only apply to sales or exchanges made after November 12, 1975.''

Amendment by section 1051(e) of Pub. L. 94–455 applicable to taxable years beginning after Dec. 31, 1975, with certain exceptions, see section 1051(i) of Pub. L. 94–455, set out as a note under section 27 of this title.

Amendment by section 1901(b)(10) of Pub. L. 94–455 applicable with respect to taxable years ending after Oct. 4, 1976, see section 1901(d) of Pub. L. 94–455, set out as a note under section 2 of this title.

#### EFFECTIVE DATE OF 1971 AMENDMENT

Amendment by Pub. L. 92–178 applicable with respect to taxable years ending after Dec. 31, 1971, except that a corporation may not be a DISC for any taxable year beginning before Jan. 1, 1972, see section 507 of Pub. L. 92–178, set out as a note under section 991 of this title.

#### EFFECTIVE DATE OF 1969 AMENDMENT

Amendment by Pub. L. 91–172 applicable with respect to taxable years beginning after Dec. 31, 1969, see section 506(c) of Pub. L. 91–172, set out as a note under section 901 of this title.

#### EFFECTIVE DATE OF 1966 AMENDMENT

Pub. L. 89–809, title I, §106(c)(2), Nov. 13, 1966, 80 Stat. 1571, provided that: "The amendments made by paragraph (1) [amending this section] shall apply to interest received after December 31, 1965, in taxable years ending after such date.''

#### EFFECTIVE DATE OF 1964 AMENDMENT

Amendment by Pub. L. 88–272 applicable to taxable years beginning after Dec. 31, 1963, see section 234(c) of Pub. L. 88–272, set out as a note under section 1503 of this title.

#### EFFECTIVE DATE OF 1962 AMENDMENT

Pub. L. 87–834, §10(b), Oct. 16, 1962, 76 Stat. 1003, provided that: "The amendments made by subsection (a) [amending this section] shall apply with respect to taxable years beginning after the date of the enactment of this Act [Oct. 16, 1962], but only with respect to interest resulting from transactions consummated after April 2, 1962.''

#### EFFECTIVE DATE OF 1960 AMENDMENT

Pub. L. 86–780, §4, Sept. 14, 1960, 74 Stat. 1013, provided that: "The amendments made by the first section [amending this section], section 2 [amending section 1503 of this title], and subsection (a) of section 3 of this Act [amending section 901 of this title] shall apply with respect to taxable years beginning after December 31, 1960. The amendment made by subsection (b) of section 3 of this Act [amending section 901 of this title] shall apply with respect to taxable years beginning after December 31, 1953, and ending after August 16, 1954. The amendments made by subsection (c) of section 3 of this Act [enacting section 6501 of this title] shall apply with respect to taxable years beginning after December 31, 1957.''

#### EFFECTIVE DATE OF 1958 AMENDMENT

Pub. L. 85–866, title I, §42(c), Sept. 2, 1958, 72 Stat. 1640, provided that: "The amendments made by subsections (a) and (b) [amending this section and section 6611 of this title] shall apply only with respect to taxable years beginning after December 31, 1957.''

#### SAVINGS PROVISION

For provisions that nothing in amendment by section 11801(a)(31) of Pub. L. 101–508 be construed to affect treatment of certain transactions occurring, property acquired, or items of income, loss, deduction, or credit taken into account prior to Nov. 5, 1990, for purposes of determining liability for tax for periods ending after Nov. 5, 1990, see section 11821(b) of Pub. L. 101–508, set out as a note under section 45K of this title.

#### APPLICABILITY OF CERTAIN AMENDMENTS BY PUB. L. 99–514 IN RELATION TO TREATY OBLIGATIONS OF UNITED STATES

For applicability of amendments by sections 701(e)(4)(H) and 1201(a), (b), (d)(1)–(3) of Pub. L. 99–514 notwithstanding any treaty obligation of the United States in effect on Oct. 22, 1986, and for nonapplication of amendment by section 1211(b)(3) of Pub. L. 99–514 to the extent application of such amendment would be contrary to any treaty obligation of the United States in effect on Oct. 22, 1986, with provision that for such purposes any amendment by title I of Pub. L. 100–647 be treated as if it had been included in the provision of Pub. L. 99–514 to which such amendment relates, see section 1012(aa)(2)–(4) of Pub. L. 100–647, set out as a note under section 861 of this title.

#### PLAN AMENDMENTS NOT REQUIRED UNTIL JANUARY 1, 1989

For provisions directing that if any amendments made by subtitle A or subtitle C of title XI [§§1101–1147 and 1171–1177] or title XVIII [§§1800–1899A] of Pub. L. 99–514 require an amendment to any plan, such plan amendment shall not be required to be made before the first plan year beginning on or after Jan. 1, 1989, see section 1140 of Pub. L. 99–514, as amended, set out as a note under section 401 of this title.

#### LIMITATION ON CARRYBACK OF FOREIGN TAX CREDITS TO TAXABLE YEARS BEGINNING BEFORE 1987

Pub. L. 99–514, title XII, §1205, Oct. 22, 1986, 100 Stat. 2532, provided that:

"(a) DETERMINATION OF EXCESS CREDITS.—

''(1) IN GENERAL.—Any taxes paid or accrued in a taxable year beginning after 1986 may be treated under section 904(c) of the Internal Revenue Code of 1954 as paid or accrued in a taxable year beginning before 1987 only to the extent such taxes would be so treated if the tax imposed by chapter 1 of such Code for the taxable year beginning after 1986 were determined by applying section 1 or 11 of such Code (as the case may be) as in effect on the day before the date of the enactment of this Act [Oct. 22, 1986].

''(2) ADJUSTMENTS.—Under regulations prescribed by the Secretary of the Treasury or his delegate proper adjustments shall be made in the application of paragraph (1) to take into account—

''(A) the repeal of the zero bracket amount, and

''(B) the changes in the treatment of capital gains.

''(b) COORDINATION WITH SEPARATE BASKETS.—Any taxes paid or accrued in a taxable year beginning after 1986 which (after the application of subsection (a)) are treated as paid or accrued in a taxable year beginning before 1987 shall be treated as imposed on income described in section 904(d)(1)(E) of the Internal Revenue Code of 1954 (as in effect on the day before the date of the enactment of this Act [Oct. 22, 1986]). No taxes paid or accrued in a taxable year beginning after 1986 with respect to high withholding tax interest (as defined in section 904(d)(2)(B) of the Internal Revenue Code of 1986 as amended by this Act) may be treated as paid or accrued in a taxable year beginning before 1987.''

#### COORDINATION WITH TREATY OBLIGATIONS

Pub. L. 99–514, title XVIII, § 1810(a)(4), Oct. 22, 1986, 100 Stat. 2822, provided that: ''Section 904(g) of the Internal Revenue Code of 1954 shall apply notwithstanding any treaty obligation of the United States to the contrary (whether entered into on, before, or after the date of the enactment of this Act [Oct. 22, 1986]) unless (in the case of a treaty entered into after the date of the enactment of this Act) such treaty by specific reference to such section 904(g) clearly expresses the intent to override the provisions of such section.''

#### SEPARATE APPLICATION OF SECTION 904 IN CASE OF INCOME COVERED BY TRANSITIONAL RULES

Pub. L. 99–514, title XVIII, § 1810(a)(5), Oct. 22, 1986, 100 Stat. 2823, as amended by Pub. L. 100–647, title I, § 1018(g)(1), Nov. 10, 1988, 102 Stat. 3582, provided that: ''For purposes of section 121(b)(5) of the Tax Reform Act of 1984 [Pub. L. 98–369, set out above] (relating to separate application of section 904 [of the Internal Revenue Code of 1954 [now 1986]] in case of income covered by transitional rules), any carryover under section 904(c) of the Internal Revenue Code of 1954 [now 1986] allowed to a taxpayer which was incorporated on August 31, 1962, attributable to taxes paid or accrued in taxable years beginning in 1981, 1982, 1983, or 1984, with respect to amounts included in gross income under section 951 of such Code in respect of a controlled foreign corporation which was incorporated on May 27, 1977, shall be treated as taxes paid or accrued on income separately treated under such section 121(b)(5).''

### § 905. Applicable rules

#### (a) Year in which credit taken

The credits provided in this subpart may, at the option of the taxpayer and irrespective of the method of accounting employed in keeping his books, be taken in the year in which the taxes of the foreign country or the possession of the United States accrued, subject, however, to the conditions prescribed in subsection (c). If the taxpayer elects to take such credits in the year in which the taxes of the foreign country or the possession of the United States accrued, the credits for all subsequent years shall be taken on the same basis, and no portion of any such taxes shall be allowed as a deduction in the same or any succeeding year.

#### (b) Proof of credits

The credits provided in this subpart shall be allowed only if the taxpayer establishes to the satisfaction of the Secretary—

(1) the total amount of income derived from sources without the United States, determined as provided in part I,

(2) the amount of income derived from each country, the tax paid or accrued to which is claimed as a credit under this subpart, such amount to be determined under regulations prescribed by the Secretary, and

(3) all other information necessary for the verification and computation of such credits.

#### (c) Adjustments to accrued taxes

#### (1) In general

If—

(A) accrued taxes when paid differ from the amounts claimed as credits by the taxpayer,

(B) accrued taxes are not paid before the date 2 years after the close of the taxable year to which such taxes relate, or

(C) any tax paid is refunded in whole or in part,

the taxpayer shall notify the Secretary, who shall redetermine the amount of the tax for the year or years affected. The Secretary may prescribe adjustments to the pools of post-1986 foreign income taxes and the pools of post-1986 undistributed earnings under sections 902 and 960 in lieu of the redetermination under the preceding sentence.

#### (2) Special rule for taxes not paid within 2 years

#### (A) In general

Except as provided in subparagraph (B), in making the redetermination under paragraph (1), no credit shall be allowed for accrued taxes not paid before the date referred to in subparagraph (B) of paragraph (1).

#### (B) Taxes subsequently paid

Any such taxes if subsequently paid—

(i) shall be taken into account—

(I) in the case of taxes deemed paid under section 902 or section 960, for the taxable year in which paid (and no redetermination shall be made under this section by reason of such payment), and

(II) in any other case, for the taxable year to which such taxes relate, and

(ii) shall be translated as provided in section 986(a)(2)(A).

#### (3) Adjustments

The amount of tax (if any) due on any redetermination under paragraph (1) shall be paid by the taxpayer on notice and demand by the Secretary, and the amount of tax overpaid (if any) shall be credited or refunded to the taxpayer in accordance with subchapter B of chapter 66 (section 6511 et seq.).

#### (4) Bond requirements

In the case of any tax accrued but not paid, the Secretary, as a condition precedent to the

**I.R.C. § 951 (2016)**

Sec.
955.    Withdrawal of previously excluded subpart F income from qualified investment.
956.    Investment of earnings in United States property.
[956A.   Repealed.]
957.    Controlled foreign corporations; United States persons.
958.    Rules for determining stock ownership.
959.    Exclusion from gross income of previously taxed earnings and profits.
960.    Special rules for foreign tax credit.
961.    Adjustments to basis of stock in controlled foreign corporations and of other property.
962.    Election by individuals to be subject to tax at corporate rates.
[963.   Repealed.]
964.    Miscellaneous provisions.
965.    Temporary dividends received deduction.

### AMENDMENTS

2004—Pub. L. 108–357, title IV, §422(c), Oct. 22, 2004, 118 Stat. 1519, added item 965.

1996—Pub. L. 104–188, title I, §1501(c), Aug. 20, 1996, 110 Stat. 1826, which directed that the analysis for subpart F be amended by striking item 956A, could not be executed, because item 956A ''Earnings invested in excess passive assets'' had been editorially supplied.

1986—Pub. L. 99–514, title XII, §1221(b)(3)(E), Oct. 22, 1986, 100 Stat. 2553, substituted ''Insurance income'' for ''Income from insurance of United States risks'' in item 953.

1975—Pub. L. 94–12, title VI, §602(a)(3)(A), (c)(7), (d)(3)(B), Mar. 29, 1975, 89 Stat. 58, 60, 64, struck out existing item 955 and replaced it with an identical item 955 and struck out item 963 ''Receipt of minimum distributions by domestic corporations''.

1962—Pub. L. 87–834, §12(a), Oct. 16, 1962, 76 Stat. 1006, added heading of subpart F, and items 951–964.

### § 951. Amounts included in gross income of United States shareholders

**(a) Amounts included**

**(1) In general**

If a foreign corporation is a controlled foreign corporation for an uninterrupted period of 30 days or more during any taxable year, every person who is a United States shareholder (as defined in subsection (b)) of such corporation and who owns (within the meaning of section 958(a)) stock in such corporation on the last day, in such year, on which such corporation is a controlled foreign corporation shall include in his gross income, for his taxable year in which or with which such taxable year of the corporation ends—

(A) the sum of—

(i) his pro rata share (determined under paragraph (2)) of the corporation's subpart F income for such year,

(ii) his pro rata share (determined under section 955(a)(3) as in effect before the enactment of the Tax Reduction Act of 1975) of the corporation's previously excluded subpart F income withdrawn from investment in less developed countries for such year, and

(iii) his pro rata share (determined under section 955(a)(3)) of the corporation's previously excluded subpart F income withdrawn from foreign base company shipping operations for such year; and

(B) the amount determined under section 956 with respect to such shareholder for such year (but only to the extent not excluded from gross income under section 959(a)(2)).

**(2) Pro rata share of subpart F income**

The pro rata share referred to in paragraph (1)(A)(i) in the case of any United States shareholder is the amount—

(A) which would have been distributed with respect to the stock which such shareholder owns (within the meaning of section 958(a)) in such corporation if on the last day, in its taxable year, on which the corporation is a controlled foreign corporation it had distributed pro rata to its shareholders an amount (i) which bears the same ratio to its subpart F income for the taxable year, as (ii) the part of such year during which the corporation is a controlled foreign corporation bears to the entire year, reduced by

(B) the amount of distributions received by any other person during such year as a dividend with respect to such stock, but only to the extent of the dividend which would have been received if the distribution by the corporation had been the amount (i) which bears the same ratio to the subpart F income of such corporation for the taxable year, as (ii) the part of such year during which such shareholder did not own (within the meaning of section 958(a)) such stock bears to the entire year.

For purposes of subparagraph (B), any gain included in the gross income of any person as a dividend under section 1248 shall be treated as a distribution received by such person with respect to the stock involved.

**(3) Limitation on pro rata share of previously excluded subpart F income withdrawn from investment**

For purposes of paragraph (1)(A)(iii), the pro rata share of any United States shareholder of the previously excluded subpart F income of a controlled foreign corporation withdrawn from investment in foreign base company shipping operations shall not exceed an amount—

(A) which bears the same ratio to his pro rata share of such income withdrawn (as determined under section 955(a)(3)) for the taxable year, as

(B) the part of such year during which the corporation is a controlled foreign corporation bears to the entire year.

**(b) United States shareholder defined**

For purposes of this subpart, the term ''United States shareholder'' means, with respect to any foreign corporation, a United States person (as defined in section 957(c)) who owns (within the meaning of section 958(a)), or is considered as owning by applying the rules of ownership of section 958(b), 10 percent or more of the total combined voting power of all classes of stock entitled to vote of such foreign corporation.

**(c) Coordination with passive foreign investment company provisions**

If, but for this subsection, an amount would be included in the gross income of a United States shareholder for any taxable year both under subsection (a)(1)(A)(i) and under section 1293 (relating to current taxation of income from certain

passive foreign investment companies), such amount shall be included in the gross income of such shareholder only under subsection (a)(1)(A).

(Added Pub. L. 87–834, §12(a), Oct. 16, 1962, 76 Stat. 1006; amended Pub. L. 94–12, title VI, §602(a)(3)(B), (c)(3), (4), (d)(2), Mar. 29, 1975, 89 Stat. 58, 62; Pub. L. 94–455, title XIX, §1901(a)(119), Oct. 4, 1976, 90 Stat. 1784; Pub. L. 98–369, div. A, title I, §132(c)(1), title VIII, §801(d)(4), July 18, 1984, 98 Stat. 666, 996; Pub. L. 99–514, title XII, §1235(c), title XVIII, §1876(c)(2), Oct. 22, 1986, 100 Stat. 2574, 2898; Pub. L. 100–647, title I, §1012(i)(15), Nov. 10, 1988, 102 Stat. 3510; Pub. L. 103–66, title XIII, §§13231(a), 13232(c), Aug. 10, 1993, 107 Stat. 495, 502; Pub. L. 104–188, title I, §1501(a)(1), Aug. 20, 1996, 110 Stat. 1825; Pub. L. 105–34, title XI, §1112(a)(1), Aug. 5, 1997, 111 Stat. 969; Pub. L. 108–357, title IV, §413(c)(16), Oct. 22, 2004, 118 Stat. 1508; Pub. L. 110–172, §11(g)(13), Dec. 29, 2007, 121 Stat. 2490.)

REFERENCES IN TEXT

The Tax Reduction Act of 1975, referred to in subsec. (a)(1)(A)(ii), is Pub. L. 94–12, Mar. 29, 1975, 89 Stat. 26, as amended, which was enacted Mar. 29, 1975. For complete classification of this Act to the Code, see Short Title of 1975 Amendment note set out under section 1 of this title and Tables.

AMENDMENTS

2007—Subsecs. (c), (d). Pub. L. 110–172 redesignated subsec. (d) as (c) and struck out heading and text of former subsec. (c). Text read as follows:

''(1) IN GENERAL.—The foreign trade income of a FSC and any deductions which are apportioned or allocated to such income shall not be taken into account under this subpart.

''(2) FOREIGN TRADE INCOME.—For purposes of this subsection, the term 'foreign trade income' has the meaning given such term by section 923(b), but does not include section 923(a)(2) non-exempt income (within the meaning of section 927(d)(6)).''

2004—Subsecs. (c) to (f). Pub. L. 108–357 redesignated subsecs. (e) and (f) as (c) and (d), respectively, and struck out former subsecs. (c) and (d), which related to coordination of provisions with election of a foreign investment company to distribute income and coordination with foreign personal holding company provisions, respectively.

1997—Subsec. (a)(2). Pub. L. 105–34 inserted concluding provisions ''For purposes of subparagraph (B), any gain included in the gross income of any person as a dividend under section 1248 shall be treated as a distribution received by such person with respect to the stock involved.''

1996—Subsec. (a)(1)(A) to (C). Pub. L. 104–188 inserted ''and'' at end of subpar. (A), substituted period for ''; and'' at end of subpar. (B), and struck out subpar. (C) which read as follows: ''the amount determined under section 956A with respect to such shareholder for such year (but only to the extent not excluded from gross income under section 959(a)(3)).''

1993—Subsec. (a)(1)(B). Pub. L. 103–66, §13232(c)(1), substituted ''the amount determined under section 956 with respect to such shareholder for such year (but only to the extent not excluded from gross income under section 959(a)(2)); and'' for ''his pro rata share (determined under section 956(a)(2)) of the corporation's increase in earnings invested in United States property for such year (but only to the extent not excluded from gross income under section 959(a)(2)); and''.

Subsec. (a)(1)(C). Pub. L. 103–66, §13231(a), added subpar. (C).

Subsec. (a)(4). Pub. L. 103–66, §13232(c)(2), struck out heading and text of par. (4). Text read as follows: ''For purposes of paragraph (1)(B), the pro rata share of any

United States shareholder in the increase of the earnings of a controlled foreign corporation invested in United States property shall not exceed an amount (A) which bears the same ratio to his pro rata share of such increase (as determined under section 956(a)(2)) for the taxable year, as (B) the part of such year during which the corporation is a controlled foreign corporation bears to the entire year.''

1988—Subsec. (b). Pub. L. 100–647 substituted ''section 957(c)'' for ''section 957(d)''.

1986—Subsec. (e)(1). Pub. L. 99–514, §1876(c)(2), struck out last sentence which read as follows: ''For purposes of the preceding sentence, income described in paragraph (2) or (3) of section 921(d) shall be treated as derived from sources within the United States.''

Subsec. (f). Pub. L. 99–514, §1235(c), added subsec. (f).

1984—Subsec. (d). Pub. L. 98–369, §132(c)(1), amended subsec. (d) generally, substituting provision that, if a United States shareholder is required to include in gross income an amount under both subsec. (a)(1)(A)(ii) of this section and section 551(b) of this title, such amount be included only under subsec. (a)(1)(A)(ii) of this section for provision that, if a United States shareholder is subject to tax under section 551(b) of this title, such shareholder not be required to include as gross income any amount under subsec. (a) of this section.

Subsec. (e). Pub. L. 98–369, §801(d)(4), added subsec. (e).

1976—Subsec. (a)(1). Pub. L. 94–455 struck out ''beginning after December 31, 1962'' after ''during any taxable year''.

1975—Subsec. (a)(1)(A)(i). Pub. L. 94–12, §602(a)(3)(B), struck out ''except as provided in section 963,'' before ''his pro rata share''.

Subsec. (a)(1)(A)(ii). Pub. L. 94–12, §602(c)(3), substituted ''(determined under section 955(a)(3) as in effect before the enactment of the Tax Reduction Act of 1975)'' for ''(determined under section 955(a)(3))''.

Subsec. (a)(1)(A)(iii). Pub. L. 94–12, §602(d)(2)(A), added cl. (iii).

Subsec. (a)(3). Pub. L. 94–12, §602(c)(4), (d)(2)(B), substituted ''paragraph (i)(A)(iii)'' for ''paragraph (1)(A)(ii)'' and ''foreign base company shipping operations'' for ''less developed countries''.

EFFECTIVE DATE OF 2004 AMENDMENT

Amendment by Pub. L. 108–357 applicable to taxable years of foreign corporations beginning after Dec. 31, 2004, and to taxable years of United States shareholders with or within which such taxable years of foreign corporations end, see section 413(d)(1) of Pub. L. 108–357, set out as an Effective and Termination Dates of 2004 Amendments note under section 1 of this title.

EFFECTIVE DATE OF 1997 AMENDMENT

Pub. L. 105–34, title XI, §1112(a)(2), Aug. 5, 1997, 111 Stat. 969, provided that: ''The amendment made by paragraph (1) [amending this section] shall apply to dispositions after the date of the enactment of this Act [Aug. 5, 1997].''

EFFECTIVE DATE OF 1996 AMENDMENT

Amendment by Pub. L. 104–188 applicable to taxable years of foreign corporations beginning after Dec. 31, 1996, and to taxable years of United States shareholders within which or with which such taxable years of foreign corporations end, see section 1501(d) of Pub. L. 104–188, set out as a note under section 904 of this title.

EFFECTIVE DATE OF 1993 AMENDMENT

Pub. L. 103–66, title XIII, §13231(e), Aug. 10, 1993, 107 Stat. 501, provided that: ''The amendments made by this section [enacting section 956A of this title and amending this section and sections 959, 989, 1293, 1296, and 1297 of this title] shall apply to taxable years of foreign corporations beginning after September 30, 1993, and to taxable years of United States shareholders in which or with which such taxable years of foreign corporations end.''

Pub. L. 103–66, title XIII, § 13232(d), Aug. 10, 1993, 107 Stat. 502, provided that: "The amendments made by this section [amending this section and section 956 of this title] shall apply to taxable years of controlled foreign corporations beginning after September 30, 1993, and to taxable years of United States shareholders in which or with which such taxable years of controlled foreign corporations end."

EFFECTIVE DATE OF 1988 AMENDMENT

Amendment by Pub. L. 100–647 effective, except as otherwise provided, as if included in the provision of the Tax Reform Act of 1986, Pub. L. 99–514, to which such amendment relates, see section 1019(a) of Pub. L. 100–647, set out as a note under section 1 of this title.

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by section 1235(c) of Pub. L. 99–514 applicable to taxable years of foreign corporations beginning after Dec. 31, 1986, see section 1235(h) of Pub. L. 99–514, set out as an Effective Date note under section 1291 of this title.

Amendment by section 1876(c)(2) of Pub. L. 99–514 effective, except as otherwise provided, as if included in the provisions of the Tax Reform Act of 1984, Pub. L. 98–369, div. A, to which such amendment relates, see section 1881 of Pub. L. 99–514, set out as a note under section 48 of this title.

EFFECTIVE DATE OF 1984 AMENDMENT

Pub. L. 98–369, div. A, title I, § 132(d)(2)(A), July 18, 1984, 98 Stat. 667, provided that: "The amendment made by paragraph (1) of subsection (c) [amending this section] shall apply to taxable years of United States shareholders beginning after the date of the enactment of this Act [July 18, 1984]."

Amendment by section 801(d)(4) of Pub. L. 98–369 applicable to transactions after Dec. 31, 1984, in taxable years ending after such date, see section 805(a)(1) of Pub. L. 98–369, as amended, set out as a note under section 245 of this title.

EFFECTIVE DATE OF 1975 AMENDMENT

Amendment by Pub. L. 94–12 applicable to taxable years of foreign corporations beginning after Dec. 31, 1975, and to taxable years of United States shareholders (within the meaning of 951(b) of this title) within which or with which such taxable years of such foreign corporations end, see section 602(f) of Pub. L. 94–12, set out as an Effective Date note under section 955 of this title.

EFFECTIVE DATE

Pub. L. 87–834, § 12(c), Oct. 16, 1962, 76 Stat. 1031, provided that: "The amendments made by this section [enacting this section and sections 952 to 964 and 970 to 972 of this title and amending sections 901, 904, and 1016 of this title] shall apply with respect to taxable years of foreign corporations beginning after December 31, 1962, and to taxable year of United States shareholders within which or with which such taxable years of such foreign corporations end."

PLAN AMENDMENTS NOT REQUIRED UNTIL<br>JANUARY 1, 1989

For provisions directing that if any amendments made by subtitle A or subtitle C of title XI [§§ 1101–1147 and 1171–1177] or title XVIII [§§ 1800–1899A] of Pub. L. 99–514 require an amendment to any plan, such plan amendment shall not be required to be made before the first plan year beginning on or after Jan. 1, 1989, see section 1140 of Pub. L. 99–514, as amended, set out as a note under section 401 of this title.

## § 952. Subpart F income defined

### (a) In general

For purposes of this subpart, the term "subpart F income" means, in the case of any controlled foreign corporation, the sum of—

(1) insurance income (as defined under section 953),

(2) the foreign base company income (as determined under section 954),

(3) an amount equal to the product of—

(A) the income of such corporation other than income which—

(i) is attributable to earnings and profits of the foreign corporation included in the gross income of a United States person under section 951 (other than by reason of this paragraph), or

(ii) is described in subsection (b),

multiplied by

(B) the international boycott factor (as determined under section 999),

(4) the sum of the amounts of any illegal bribes, kickbacks, or other payments (within the meaning of section 162(c)) paid by or on behalf of the corporation during the taxable year of the corporation directly or indirectly to an official, employee, or agent in fact of a government, and

(5) the income of such corporation derived from any foreign country during any period during which section 901(j) applies to such foreign country.

The payments referred to in paragraph (4) are payments which would be unlawful under the Foreign Corrupt Practices Act of 1977 if the payor were a United States person. For purposes of paragraph (5), the income described therein shall be reduced, under regulations prescribed by the Secretary, so as to take into account deductions (including taxes) properly allocable to such income.

### (b) Exclusion of United States income

In the case of a controlled foreign corporation, subpart F income does not include any item of income from sources within the United States which is effectively connected with the conduct by such corporation of a trade or business within the United States unless such item is exempt from taxation (or is subject to a reduced rate of tax) pursuant to a treaty obligation of the United States. For purposes of this subsection, any exemption (or reduction) with respect to the tax imposed by section 884 shall not be taken into account.

### (c) Limitation

#### (1) In general

##### (A) Subpart F income limited to current earnings and profits

For purposes of subsection (a), the subpart F income of any controlled foreign corporation for any taxable year shall not exceed the earnings and profits of such corporation for such taxable year.

##### (B) Certain prior year deficits may be taken into account

###### (i) In general

The amount included in the gross income of any United States shareholder under section 951(a)(1)(A)(i) for any taxable year and attributable to a qualified activity shall be reduced by the amount of such shareholder's pro rata share of any qualified deficit.

- App.45 -

**I.R.C. § 959 (2016)**

## § 958. Rules for determining stock ownership

### (a) Direct and indirect ownership

#### (1) General rule

For purposes of this subpart (other than section 960(a)(1)), stock owned means—

(A) stock owned directly, and

(B) stock owned with the application of paragraph (2).

#### (2) Stock ownership through foreign entities

For purposes of subparagraph (B) of paragraph (1), stock owned, directly or indirectly, by or for a foreign corporation, foreign partnership, or foreign trust or foreign estate (within the meaning of section 7701(a)(31)) shall be considered as being owned proportionately by its shareholders, partners, or beneficiaries. Stock considered to be owned by a person by reason of the application of the preceding sentence shall, for purposes of applying such sentence, be treated as actually owned by such person.

#### (3) Special rule for mutual insurance companies

For purposes of applying paragraph (1) in the case of a foreign mutual insurance company, the term "stock" shall include any certificate entitling the holder to voting power in the corporation.

### (b) Constructive ownership

For purposes of sections 951(b), 954(d)(3), 956(c)(2), and 957, section 318(a) (relating to constructive ownership of stock) shall apply to the extent that the effect is to treat any United States person as a United States shareholder within the meaning of section 951(b), to treat a person as a related person within the meaning of section 954(d)(3), to treat the stock of a domestic corporation as owned by a United States shareholder of the controlled foreign corporation for purposes of section 956(c)(2), or to treat a foreign corporation as a controlled foreign corporation under section 957, except that—

(1) In applying paragraph (1)(A) of section 318(a), stock owned by a nonresident alien individual (other than a foreign trust or foreign estate) shall not be considered as owned by a citizen or by a resident alien individual.

(2) In applying subparagraphs (A), (B), and (C) of section 318(a)(2), if a partnership, estate, trust, or corporation owns, directly or indirectly, more than 50 percent of the total combined voting power of all classes of stock entitled to vote of a corporation, it shall be considered as owning all the stock entitled to vote.

(3) In applying subparagraph (C) of section 318(a)(2), the phrase "10 percent" shall be substituted for the phrase "50 percent" used in subparagraph (C).

(4) Subparagraph (A), (B), and (C) of section 318(a)(3) shall not be applied so as to consider a United States person as owning stock which is owned by a person who is not a United States person.

Paragraphs (1) and (4) shall not apply for purposes of section 956(c)(2) to treat stock of a domestic corporation as not owned by a United States shareholder.

(Added Pub. L. 87–834, §12(a), Oct. 16, 1962, 76 Stat. 1018; amended Pub. L. 88–554, §4(b)(5), Aug. 31, 1964, 78 Stat. 763; Pub. L. 94–455, title X, §1021(b), Oct. 4, 1976, 90 Stat. 1619; Pub. L. 104–188, title I, §§1703(i)(4), 1704(t)(7), Aug. 20, 1996, 110 Stat. 1876, 1887.)

#### AMENDMENTS

1996—Subsec. (a)(1). Pub. L. 104–188, §1704(t)(7), substituted "section 960(a)(1)" for "sections 955(b)(1)(A) and (B), 955(c)(2)(A)(ii), and 960(a)(1)" in introductory provisions.

Subsec. (b). Pub. L. 104–188, §1703(i)(4), substituted "956(c)(2)" for "956(b)(2)" wherever appearing in introductory and closing provisions.

1976—Subsec. (b). Pub. L. 94–455 inserted "956(b)(2)" after "purposes of sections 951(b), 954(d)(3),", "to treat the stock of a domestic corporation as owned by a United States shareholder of the controlled foreign corporation for purposes of section 956(b)(2)" after "meaning of section 954(d)(3)" and "Paragraphs (1) and (4) shall not apply for purposes of section 956(b)(2) to treat stock of a domestic corporation as not owned by a United States shareholder" following subpar. (4).

1964—Subsec. (b). Pub. L. 88–554 redesignated pars. (4) and (5) as (3) and (4), respectively, struck out former par. (3) which related to ownership of stock by a partnership, estate, trust, or corporation for purposes of applying first sentence of subpars. (A) and (B), and subpar. (C)(i) of section 318(a)(2) of this title, and made amendments throughout subsec. (b) to conform to changes made in section 318 of this title by Pub. L. 88–554.

#### EFFECTIVE DATE OF 1996 AMENDMENT

Amendment by section 1703(i)(4) of Pub. L. 104–188 effective as if included in the provision of the Revenue Reconciliation Act of 1993, Pub. L. 103–66, §§13001–13444, to which such amendment relates, see section 1703(o) of Pub. L. 104–188, set out as a note under section 39 of this title.

#### EFFECTIVE DATE OF 1976 AMENDMENT

Amendment by Pub. L. 94–455 applicable to taxable years of foreign corporations beginning after Dec. 31, 1975, and to taxable years of United States shareholders within which or with which such taxable years of such corporations end, see section 1021(c) of Pub. L. 94–455, set out as a note under section 956 of this title.

#### EFFECTIVE DATE OF 1964 AMENDMENT

Amendment by Pub. L. 88–554 effective Aug. 31, 1964, except that for purposes of sections 302 and 304 of this title, such amendments shall not apply to distributions in payment for stock acquisitions or redemptions, if such acquisitions or redemptions occurred before Aug. 31, 1964, see section 4(c) of Pub. L. 88–554, set out as a note under section 318 of this title.

## § 959. Exclusion from gross income of previously taxed earnings and profits

### (a) Exclusion from gross income of United States persons

For purposes of this chapter, the earnings and profits of a foreign corporation attributable to amounts which are, or have been, included in the gross income of a United States shareholder under section 951(a) shall not, when—

(1) such amounts are distributed to, or

(2) such amounts would, but for this subsection, be included under section 951(a)(1)(B) in the gross income of,

such shareholder (or any other United States person who acquires from any person any portion of the interest of such United States share-

holder in such foreign corporation, but only to the extent of such portion, and subject to such proof of the identity of such interest as the Secretary may by regulations prescribe) directly or indirectly through a chain of ownership described under section 958(a), be again included in the gross income of such United States shareholder (or of such other United States person). The rules of subsection (c) shall apply for purposes of paragraph (1) of this subsection and the rules of subsection (f) shall apply for purposes of paragraph (2) of this subsection.

**(b) Exclusion from gross income of certain foreign subsidiaries**

For purposes of section 951(a), the earnings and profits of a controlled foreign corporation attributable to amounts which are, or have been, included in the gross income of a United States shareholder under section 951(a), shall not, when distributed through a chain of ownership described under section 958(a), be also included in the gross income of another controlled foreign corporation in such chain for purposes of the application of section 951(a) to such other controlled foreign corporation with respect to such United States shareholder (or to any other United States shareholder who acquires from any person any portion of the interest of such United States shareholder in the controlled foreign corporation, but only to the extent of such portion, and subject to such proof of identity of such interest as the Secretary may prescribe by regulations).

**(c) Allocation of distributions**

For purposes of subsections (a) and (b), section 316(a) shall be applied by applying paragraph (2) thereof, and then paragraph (1) thereof—

　(1) first to the aggregate of—

　　(A) earnings and profits attributable to amounts included in gross income under section 951(a)(1)(B) (or which would have been included except for subsection (a)(2) of this section), and

　　(B) earnings and profits attributable to amounts included in gross income under section 951(a)(1)(C) (or which would have been included except for subsection (a)(3) of this section),

with any distribution being allocated between earnings and profits described in subparagraph (A) and earnings and profits described in subparagraph (B) proportionately on the basis of the respective amounts of such earnings and profits,

　(2) then to earnings and profits attributable to amounts included in gross income under section 951(a)(1)(A) (but reduced by amounts not included under subparagraph (B) or (C) of section 951(a)(1) because of the exclusions in paragraphs (2) and (3) of subsection (a) of this section), and

　(3) then to other earnings and profits.

References in this subsection to section 951(a)(1)(C) and subsection (a)(3) shall be treated as references to such provisions as in effect on the day before the date of the enactment of the Small Business Job Protection Act of 1996.

**(d) Distributions excluded from gross income not to be treated as dividends**

Except as provided in section 960(a)(3), any distribution excluded from gross income under subsection (a) shall be treated, for purposes of this chapter, as a distribution which is not a dividend; except that such distributions shall immediately reduce earnings and profits.

**(e) Coordination with amounts previously taxed under section 1248**

For purposes of this section and section 960(b), any amount included in the gross income of any person as a dividend by reason of subsection (a) or (f) of section 1248 shall be treated as an amount included in the gross income of such person (or, in any case to which section 1248(e) applies, of the domestic corporation referred to in section 1248(e)(2)) under section 951(a)(1)(A).

**(f) Allocation rules for certain inclusions**

**(1) In general**

For purposes of this section, amounts that would be included under subparagraph (B) of section 951(a)(1) (determined without regard to this section) shall be treated as attributable first to earnings described in subsection (c)(2), and then to earnings described in subsection (c)(3).

**(2) Treatment of distributions**

In applying this section, actual distributions shall be taken into account before amounts that would be included under section 951(a)(1)(B) (determined without regard to this section).

(Added Pub. L. 87–834, § 12(a), Oct. 16, 1962, 76 Stat. 1019; amended Pub. L. 94–455, title XIX, § 1906(b)(13)(A), Oct. 4, 1976, 90 Stat. 1834; Pub. L. 98–369, div. A, title I, § 133(b)(1), July 18, 1984, 98 Stat. 668; Pub. L. 99–514, title XII, § 1226(b), Oct. 22, 1986, 100 Stat. 2560; Pub. L. 100–647, title I, § 1012(bb)(7)(A), Nov. 10, 1988, 102 Stat. 3536; Pub. L. 103–66, title XIII, § 13231(c)(1), (2), (4)(A), (B), Aug. 10, 1993, 107 Stat. 497, 498; Pub. L. 104–188, title I, § 1501(b)(4)–(8), Aug. 20, 1996, 110 Stat. 1826.)

REFERENCES IN TEXT

The date of the enactment of the Small Business Job Protection Act of 1996, referred to in subsec. (c), is the date of enactment of Pub. L. 104–188, which was approved Aug. 20, 1996.

AMENDMENTS

1996—Subsec. (a). Pub. L. 104–188, § 1501(b)(4), (5), substituted ''paragraph (2)'' for ''paragraphs (2) and (3)'' in closing provisions, inserted ''or'' at end of par. (1), struck out ''or'' at end of par. (2), and struck out par. (3) which read as follows: ''such amounts would, but for this subsection, be included under section 951(a)(1)(C) in the gross income of,''.

Subsec. (c). Pub. L. 104–188, § 1501(b)(6), inserted at end ''References in this subsection to section 951(a)(1)(C) and subsection (a)(3) shall be treated as references to such provisions as in effect on the day before the date of the enactment of the Small Business Job Protection Act of 1996.''

Subsec. (f)(1). Pub. L. 104–188, § 1501(b)(7), reenacted heading without change and amended text generally. Prior to amendment, text read as follows: ''For purposes of this section—

　''(A) amounts that would be included under subparagraph (B) of section 951(a)(1) (determined without

regard to this section) shall be treated as attributable first to earnings described in subsection (c)(2), and then to earnings described in subsection (c)(3), and

"(B) amounts that would be included under subparagraph (C) of section 951(a)(1) (determined without regard to this section) shall be treated as attributable first to earnings described in subsection (c)(2) to the extent the earnings so described were accumulated in taxable years beginning after September 30, 1993, and then to earnings described in subsection (c)(3)."

Subsec. (f)(2). Pub. L. 104–188, §1501(b)(8), substituted "section 951(a)(1)(B)" for "subparagraphs (B) and (C) of section 951(a)(1)".

1993—Subsec. (a). Pub. L. 103–66, §13231(c)(2)(A), (4)(A), substituted in introductory provisions "earnings and profits" for "earnings and profits for taxable year" and inserted at end of closing provisions "The rules of subsection (c) shall apply for purposes of paragraph (1) of this subsection and the rules of subsection (f) shall apply for purposes of paragraphs (2) and (3) of this subsection."

Subsec. (a)(3). Pub. L. 103–66, §13231(c)(1), added par. (3).

Subsec. (b). Pub. L. 103–66, §13231(c)(4)(A), substituted "earnings and profits" for "earnings and profits for a taxable year".

Subsec. (c)(1). Pub. L. 103–66, §13231(c)(2)(C), amended par. (1) generally. Prior to amendment, par. (1) read as follows: "first to earnings and profits attributable to amounts included in gross income under section 951(a)(1)(B) (or which would have been included except for subsection (a)(2) of this section),".

Subsec. (c)(2). Pub. L. 103–66, §13231(c)(4)(B), amended par. (2) generally. Prior to amendment, par. (2) read as follows: "then to earnings and profits attributable to amounts included in gross income under section 951(a)(1)(A) (but reduced by amounts not included under section 951(a)(1)(B) because of the exclusion in subsection (a)(2) of this section), and".

Subsec. (f). Pub. L. 103–66, §13231(c)(2)(B), added subsec. (f).

1988—Subsec. (e). Pub. L. 100–647 substituted "such person (or, in any case to which section 1248(e) applies, of the domestic corporation referred to in section 1248(e)(2)) under" for "such person under".

1986—Subsec. (d). Pub. L. 99–514 inserted "; except that such distributions shall immediately reduce earnings and profits".

1984—Subsec. (e). Pub. L. 98–369 added subsec. (e).

1976—Subsecs. (a), (b). Pub. L. 94–455 struck out "or his delegate" after "Secretary".

EFFECTIVE DATE OF 1996 AMENDMENT

Amendment by Pub. L. 104–188 applicable to taxable years of foreign corporations beginning after Dec. 31, 1996, and to taxable years of United States shareholders within which or with which such taxable years of foreign corporations end, see section 1501(d) of Pub. L. 104–188, set out as a note under section 904 of this title.

EFFECTIVE DATE OF 1993 AMENDMENT

Amendment by Pub. L. 103–66 applicable to taxable years of foreign corporations beginning after Sept. 30, 1993, and to taxable years of United States shareholders in which or with which such taxable years of foreign corporations end, see section 13231(e) of Pub. L. 103–66, set out as a note under section 951 of this title.

EFFECTIVE DATE OF 1988 AMENDMENT

Pub. L. 100–647, title I, §1012(bb)(7)(B), Nov. 10, 1988, 102 Stat. 3536, provided that: "The amendment made by subparagraph (A) [amending this section] shall apply in the case of transactions to which section 1248(e) of the 1986 Code applies and which occur after December 31, 1986."

EFFECTIVE DATE OF 1986 AMENDMENT

Pub. L. 99–514, title XII, §1226(c)(2), Oct. 22, 1986, 100 Stat. 2560, provided that: "The amendment made by

subsection (b) [amending this section] shall apply to distributions after the date of the enactment of this Act [Oct. 22, 1986]."

EFFECTIVE DATE OF 1984 AMENDMENT

Pub. L. 98–369, div. A, title I, §133(d)(2), (3), July 18, 1984, 98 Stat. 668, as amended by Pub. L. 99–514, §2, title XVIII, §1810(i)(2), Oct. 22, 1986, 100 Stat. 2095, 2829; Pub. L. 100–647, title I, §1018(g)(2), Nov. 10, 1988, 102 Stat. 3582, provided that:

"(2) SUBSECTIONS (b) AND (c).—Except as provided in paragraph (3), the amendments made by subsections (b) and (c) [amending this section and section 1248 of this title] shall apply with respect to transactions to which subsection (a) or (f) of section 1248 of the Internal Revenue Code of 1986 [formerly I.R.C. 1954] applies occurring after the date of the enactment of this Act [July 18, 1984].

"(3) ELECTION OF EARLIER DATE FOR CERTAIN TRANSACTIONS.—

"(A) IN GENERAL.—If the appropriate election is made under subparagraph (B), the amendments made by subsection (b) [amending this section and section 1248 of this title] shall apply with respect to transactions to which subsection (a) or (f) of section 1248 of such Code applies occurring after October 9, 1975.

"(B) ELECTION.—

"(i) Subparagraph (A) shall apply with respect to transactions to which subsection (a) of section 1248 of such Code applies if the foreign corporation described in such subsection (or its successor in interest) so elects.

"(ii) Subparagraph (A) shall apply with respect to transactions to which subsection (f) of section 1248 of such Code applies if the domestic corporation described in section 1248(f)(1) of such Code (or its successor) so elects.

"(iii) Any election under clause (i) or (ii) shall be made not later than the date which is 1 year after the date of the enactment of the Tax Reform Act of 1986 [Oct. 22, 1986] and shall be made in such manner as the Secretary of the Treasury or his delegate shall prescribe."

## § 960. Special rules for foreign tax credit

### (a) Taxes paid by a foreign corporation

#### (1) Deemed paid credit

For purposes of subpart A of this part, if there is included under section 951(a) in the gross income of a domestic corporation any amount attributable to earnings and profits of a foreign corporation which is a member of a qualified group (as defined in section 902(b)) with respect to the domestic corporation, then, except to the extent provided in regulations, section 902 shall be applied as if the amount so included were a dividend paid by such foreign corporation (determined by applying section 902(c) in accordance with section 904(d)(3)(B)).

#### (2) Taxes previously deemed paid by domestic corporation

If a domestic corporation receives a distribution from a foreign corporation, any portion of which is excluded from gross income under section 959, the income, war profits, and excess profits taxes paid or deemed paid by such foreign corporation to any foreign country or to any possession of the United States in connection with the earnings and profits of such foreign corporation from which such distribution is made shall not be taken into account for purposes of section 902, to the extent such taxes were deemed paid by a domestic corpora-

**I.R.C. § 960 (2016)**

regard to this section) shall be treated as attributable first to earnings described in subsection (c)(2), and then to earnings described in subsection (c)(3), and

"(B) amounts that would be included under subparagraph (C) of section 951(a)(1) (determined without regard to this section) shall be treated as attributable first to earnings described in subsection (c)(2) to the extent the earnings so described were accumulated in taxable years beginning after September 30, 1993, and then to earnings described in subsection (c)(3)."

Subsec. (f)(2). Pub. L. 104–188, §1501(b)(8), substituted "section 951(a)(1)(B)" for "subparagraphs (B) and (C) of section 951(a)(1)".

1993—Subsec. (a). Pub. L. 103–66, §13231(c)(2)(A), (4)(A), substituted in introductory provisions "earnings and profits" for "earnings and profits for taxable year" and inserted at end of closing provisions "The rules of subsection (c) shall apply for purposes of paragraph (1) of this subsection and the rules of subsection (f) shall apply for purposes of paragraphs (2) and (3) of this subsection."

Subsec. (a)(3). Pub. L. 103–66, §13231(c)(1), added par. (3).

Subsec. (b). Pub. L. 103–66, §13231(c)(4)(A), substituted "earnings and profits" for "earnings and profits for a taxable year".

Subsec. (c)(1). Pub. L. 103–66, §13231(c)(2)(C), amended par. (1) generally. Prior to amendment, par. (1) read as follows: "first to earnings and profits attributable to amounts included in gross income under section 951(a)(1)(B) (or which would have been included except for subsection (a)(2) of this section),".

Subsec. (c)(2). Pub. L. 103–66, §13231(c)(4)(B), amended par. (2) generally. Prior to amendment, par. (2) read as follows: "then to earnings and profits attributable to amounts included in gross income under section 951(a)(1)(A) (but reduced by amounts not included under section 951(a)(1)(B) because of the exclusion in subsection (a)(2) of this section), and".

Subsec. (f). Pub. L. 103–66, §13231(c)(2)(B), added subsec. (f).

1988—Subsec. (e). Pub. L. 100–647 substituted "such person (or, in any case to which section 1248(e) applies, of the domestic corporation referred to in section 1248(e)(2)) under" for "such person under".

1986—Subsec. (d). Pub. L. 99–514 inserted "; except that such distributions shall immediately reduce earnings and profits".

1984—Subsec. (e). Pub. L. 98–369 added subsec. (e).

1976—Subsecs. (a), (b). Pub. L. 94–455 struck out "or his delegate" after "Secretary".

#### EFFECTIVE DATE OF 1996 AMENDMENT

Amendment by Pub. L. 104–188 applicable to taxable years of foreign corporations beginning after Dec. 31, 1996, and to taxable years of United States shareholders within which or with which such taxable years of foreign corporations end, see section 1501(d) of Pub. L. 104–188, set out as a note under section 904 of this title.

#### EFFECTIVE DATE OF 1993 AMENDMENT

Amendment by Pub. L. 103–66 applicable to taxable years of foreign corporations beginning after Sept. 30, 1993, and to taxable years of United States shareholders in which or with which such taxable years of foreign corporations end, see section 13231(e) of Pub. L. 103–66, set out as a note under section 951 of this title.

#### EFFECTIVE DATE OF 1988 AMENDMENT

Pub. L. 100–647, title I, §1012(bb)(7)(B), Nov. 10, 1988, 102 Stat. 3536, provided that: "The amendment made by subparagraph (A) [amending this section] shall apply in the case of transactions to which section 1248(e) of the 1986 Code applies and which occur after December 31, 1986."

#### EFFECTIVE DATE OF 1986 AMENDMENT

Pub. L. 99–514, title XII, §1226(c)(2), Oct. 22, 1986, 100 Stat. 2560, provided that: "The amendment made by subsection (b) [amending this section] shall apply to distributions after the date of the enactment of this Act [Oct. 22, 1986]."

#### EFFECTIVE DATE OF 1984 AMENDMENT

Pub. L. 98–369, div. A, title I, §133(d)(2), (3), July 18, 1984, 98 Stat. 668, as amended by Pub. L. 99–514, §2, title XVIII, §1810(i)(2), Oct. 22, 1986, 100 Stat. 2095, 2829; Pub. L. 100–647, title I, §1018(g)(2), Nov. 10, 1988, 102 Stat. 3582, provided that:

"(2) SUBSECTIONS (b) AND (c).—Except as provided in paragraph (3), the amendments made by subsections (b) and (c) [amending this section and section 1248 of this title] shall apply with respect to transactions to which subsection (a) or (f) of section 1248 of the Internal Revenue Code of 1986 [formerly I.R.C. 1954] applies occurring after the date of the enactment of this Act [July 18, 1984].

"(3) ELECTION OF EARLIER DATE FOR CERTAIN TRANSACTIONS.—

"(A) IN GENERAL.—If the appropriate election is made under subparagraph (B), the amendments made by subsection (b) [amending this section and section 1248 of this title] shall apply with respect to transactions to which subsection (a) or (f) of section 1248 of such Code applies occurring after October 9, 1975.

"(B) ELECTION.—

"(i) Subparagraph (A) shall apply with respect to transactions to which subsection (a) of section 1248 of such Code applies if the foreign corporation described in such subsection (or its successor in interest) so elects.

"(ii) Subparagraph (A) shall apply with respect to transactions to which subsection (f) of section 1248 of such Code applies if the domestic corporation described in section 1248(f)(1) of such Code (or its successor) so elects.

"(iii) Any election under clause (i) or (ii) shall be made not later than the date which is 1 year after the date of the enactment of the Tax Reform Act of 1986 [Oct. 22, 1986] and shall be made in such manner as the Secretary of the Treasury or his delegate shall prescribe."

### § 960. Special rules for foreign tax credit

#### (a) Taxes paid by a foreign corporation

##### (1) Deemed paid credit

For purposes of subpart A of this part, if there is included under section 951(a) in the gross income of a domestic corporation any amount attributable to earnings and profits of a foreign corporation which is a member of a qualified group (as defined in section 902(b)) with respect to the domestic corporation, then, except to the extent provided in regulations, section 902 shall be applied as if the amount so included were a dividend paid by such foreign corporation (determined by applying section 902(c) in accordance with section 904(d)(3)(B)).

##### (2) Taxes previously deemed paid by domestic corporation

If a domestic corporation receives a distribution from a foreign corporation, any portion of which is excluded from gross income under section 959, the income, war profits, and excess profits taxes paid or deemed paid by such foreign corporation to any foreign country or to any possession of the United States in connection with the earnings and profits of such foreign corporation from which such distribution is made shall not be taken into account for purposes of section 902, to the extent such taxes were deemed paid by a domestic corpora-

tion under paragraph (1) for any prior taxable year.

**(3) Taxes paid by foreign corporation and not previously deemed paid by domestic corporation**

Any portion of a distribution from a foreign corporation received by a domestic corporation which is excluded from gross income under section 959(a) shall be treated by the domestic corporation as a dividend, solely for purposes of taking into account under section 902 any income, war profits, or excess profits taxes paid to any foreign country or to any possession of the United States, on or with respect to the accumulated profits of such foreign corporation from which such distribution is made, which were not deemed paid by the domestic corporation under paragraph (1) for any prior taxable year.

**(b) Special rules for foreign tax credit in year of receipt of previously taxed earnings and profits**

**(1) Increase in section 904 limitation**

In the case of any taxpayer who—

(A) either (i) chose to have the benefits of subpart A of this part for a taxable year beginning after September 30, 1993, in which he was required under section 951(a) to include any amount in his gross income, or (ii) did not pay or accrue for such taxable year any income, war profits, or excess profits taxes to any foreign country or to any possession of the United States,

(B) chooses to have the benefits of subpart A of this part for any taxable year in which he receives 1 or more distributions or amounts which are excludable from gross income under section 959(a) and which are attributable to amounts included in his gross income for taxable years referred to in subparagraph (A), and

(C) for the taxable year in which such distributions or amounts are received, pays, or is deemed to have paid, or accrues income, war profits, or excess profits taxes to a foreign country or to any possession of the United States with respect to such distributions or amounts,

the limitation under section 904 for the taxable year in which such distributions or amounts are received shall be increased by the lesser of such taxes paid, or deemed paid, or accrued with respect to such distributions or amounts or the amount in the excess limitation account as of the beginning of such taxable year.

**(2) Excess limitation account**

**(A) Establishment of account**

Each taxpayer meeting the requirements of paragraph (1)(A) shall establish an excess limitation account. The opening balance of such account shall be zero.

**(B) Increases in account**

For each taxable year beginning after September 30, 1993, the taxpayer shall increase the amount in the excess limitation account by the excess (if any) of—

(i) the amount by which the limitation under section 904(a) for such taxable year was increased by reason of the total amount of the inclusions in gross income under section 951(a) for such taxable year, over

(ii) the amount of any income, war profits, and excess profits taxes paid, or deemed paid, or accrued to any foreign country or possession of the United States which were allowable as a credit under section 901 for such taxable year and which would not have been allowable but for the inclusions in gross income described in clause (i).

Proper reductions in the amount added to the account under the preceding sentence for any taxable year shall be made for any increase in the credit allowable under section 901 for such taxable year by reason of a carryback if such increase would not have been allowable but for the inclusions in gross income described in clause (i).

**(C) Decreases in account**

For each taxable year beginning after September 30, 1993, for which the limitation under section 904 was increased under paragraph (1), the taxpayer shall reduce the amount in the excess limitation account by the amount of such increase.

**(3) Distributions of income previously taxed in years beginning before October 1, 1993**

If the taxpayer receives a distribution or amount in a taxable year beginning after September 30, 1993, which is excluded from gross income under section 959(a) and is attributable to any amount included in gross income under section 951(a) for a taxable year beginning before October 1, 1993, the limitation under section 904 for the taxable year in which such amount or distribution is received shall be increased by the amount determined under this subsection as in effect on the day before the date of the enactment of the Revenue Reconcilation[1] Act of 1993.

**(4) Cases in which taxes not to be allowed as deduction**

In the case of any taxpayer who—

(A) chose to have the benefits of subpart A of this part for a taxable year in which he was required under section 951(a) to include in his gross income an amount in respect of a controlled foreign corporation, and

(B) does not choose to have the benefits of subpart A of this part for the taxable year in which he receives a distribution or amount which is excluded from gross income under section 959(a) and which is attributable to earnings and profits of the controlled foreign corporation which was included in his gross income for the taxable year referred to in subparagraph (A),

no deduction shall be allowed under section 164 for the taxable year in which such distribution or amount is received for any income, war profits, or excess profits taxes paid or accrued

---

[1] So in original. Probably should be ''Reconciliation''.

to any foreign country or to any possession of the United States on or with respect to such distribution or amount.

**(5) Insufficient taxable income**

If an increase in the limitation under this subsection exceeds the tax imposed by this chapter for such year, the amount of such excess shall be deemed an overpayment of tax for such year.

**(c) Limitation with respect to section 956 inclusions**

**(1) In general**

If there is included under section 951(a)(1)(B) in the gross income of a domestic corporation any amount attributable to the earnings and profits of a foreign corporation which is a member of a qualified group (as defined in section 902(b)) with respect to the domestic corporation, the amount of any foreign income taxes deemed to have been paid during the taxable year by such domestic corporation under section 902 by reason of subsection (a) with respect to such inclusion in gross income shall not exceed the amount of the foreign income taxes which would have been deemed to have been paid during the taxable year by such domestic corporation if cash in an amount equal to the amount of such inclusion in gross income were distributed as a series of distributions (determined without regard to any foreign taxes which would be imposed on an actual distribution) through the chain of ownership which begins with such foreign corporation and ends with such domestic corporation.

**(2) Authority to prevent abuse**

The Secretary shall issue such regulations or other guidance as is necessary or appropriate to carry out the purposes of this subsection, including regulations or other guidance which prevent the inappropriate use of the foreign corporation's foreign income taxes not deemed paid by reason of paragraph (1).

(Added Pub. L. 87–834, §12(a), Oct. 16, 1962, 76 Stat. 1020; amended Pub. L. 94–455, title X, §§1031(b)(1), 1033(b)(2), 1037(a), Oct. 4, 1976, 90 Stat. 1622, 1628, 1633; Pub. L. 99–514, title XII, §1202(b), Oct. 22, 1986, 100 Stat. 2530; Pub. L. 103–66, title XIII, §13233(b)(1), Aug. 10, 1993, 107 Stat. 502; Pub. L. 105–34, title XI, §1113(b), Aug. 5, 1997, 111 Stat. 971; Pub. L. 111–226, title II, §214(a), Aug. 10, 2010, 124 Stat. 2399.)

REFERENCES IN TEXT

The date of the enactment of the Revenue Reconciliation Act of 1993, referred to in subsec. (b)(3), is the date of enactment of Pub. L. 103–66, which was approved Aug. 10, 1993.

AMENDMENTS

2010—Subsec. (c). Pub. L. 111–226 added subsec. (c).

1997—Subsec. (a)(1). Pub. L. 105–34 amended heading and text of par. (1) generally. Prior to amendment, text read as follows: "For purposes of subpart A of this part, if there is included, under section 951(a), in the gross income of a domestic corporation any amount attributable to earnings and profits—

"(A) of a foreign corporation (hereafter in this subsection referred to as the 'first foreign corporation') at least 10 percent of the voting stock of which is owned by such domestic corporation, or

"(B) of a second foreign corporation (hereinafter in this subsection referred to as the 'second foreign corporation') at least 10 percent of the voting stock of which is owned by the first foreign corporation, or

"(C) of a third foreign corporation (hereinafter in this subsection referred to as the 'third foreign corporation') at least 10 percent of the voting stock of which is owned by the second foreign corporation, then, except to the extent provided in regulations, such domestic corporation shall be deemed to have paid a portion of such foreign corporation's post-1986 foreign income taxes determined under section 902 in the same manner as if the amount so included were a dividend paid by such foreign corporation (determined by applying section 902(c) in accordance with section 904(d)(3)(B)). This paragraph shall not apply with respect to any amount included in the gross income of such domestic corporation attributable to earnings and profits of the second foreign corporation or of the third foreign corporation unless, in the case of the second foreign corporation, the percentage-of-voting-stock requirement of section 902(b)(3)(A) is satisfied, and in the case of the third foreign corporation, the percentage-of-voting-stock requirement of section 902(b)(3)(B) is satisfied."

1993—Subsec. (b). Pub. L. 103–66 added pars. (1) to (3), redesignated former pars. (3) and (4) as (4) and (5), respectively, and struck out former par. (1) relating to increase in section 904 limitation and former par. (2) relating to the amount of increase.

1986—Subsec. (a)(1). Pub. L. 99–514 substituted "then, except to the extent provided in regulations, such domestic corporation shall be deemed to have paid a portion of such foreign corporation's post-1986 foreign income taxes determined under section 902 in the same manner as if the amount so included were a dividend paid by such foreign corporation (determined by applying section 902(c) in accordance with section 904(d)(3)(B))" for "then, under regulations prescribed by the Secretary, such domestic corporation shall be deemed to have paid the same proportion of the total income, war profits, and excess profits taxes paid (or deemed paid) by such foreign corporation to a foreign country or possession of the United States for the taxable year on or with respect to the earnings and profits of such foreign corporation which the amount of earnings and profits of such foreign corporation so included in gross income of the domestic corporation bears to the entire amount of the earnings and profits of such corporation for such taxable year".

1976—Subsec. (a)(1). Pub. L. 94–455, §§1033(b)(2), 1037(a), substituted "bears to the entire amount of the earnings and profits of such foreign corporation for such taxable year" for "bears to–" after "gross income of the domestic corporation", struck out subpars. (C) and (D) relating to corporations which are and are not less developed country corporations, inserted in subpar. (A) "(hereafter in this subsection referred to as the 'first foreign corporation')" after "foreign corporation", substituted in subpar. (B) "of a second foreign corporation (hereinafter in this subsection referred to as the 'second foreign corporation') at least 10 percent of the voting stock of which is owned by the first foreign corporation, or" for "of a foreign corporation at least 50 percent of the voting stock of which is owned by a foreign corporation at least 10 percent of the voting stock of which in turn owned by such domestic corporation" after "(B)", added subpar. (C), and inserted at end "This paragraph shall not apply with respect to any amount included in the gross income of such domestic corporation attributable to earning and profits of the second foreign corporation or of the third foreign corporation unless, in the case of the second foreign corporation, the percentage-of-voting-stock requirement of section 902(b)(3)(A) is satisfied, and in the case of the third foreign corporation, the percentage-of-voting-stock requirement of section 902(b)(3)(B) is satisfied."

Subsec. (b). Pub. L. 94–455, §1031(b)(1), struck out "applicable" in par. (1) after "amount, the", in par. (2)

after ''increase of the'', and in subpar. (A) of par. (2) after ''by which the''.

EFFECTIVE DATE OF 2010 AMENDMENT

Pub. L. 111–226, title II, §214(b), Aug. 10, 2010, 124 Stat. 2399, provided that: ''The amendment made by this section [amending this section] shall apply to acquisitions of United States property (as defined in section 956(c) of the Internal Revenue Code of 1986) after December 31, 2010.''

EFFECTIVE DATE OF 1997 AMENDMENT

Amendment by Pub. L. 105–34 applicable, with special rule, to taxes of foreign corporations for taxable years of such corporations beginning after Aug. 5, 1997, see section 1113(c) of Pub. L. 105–34, set out as a note under section 902 of this title.

EFFECTIVE DATE OF 1993 AMENDMENT

Pub. L. 103–66, title XIII, §13233(b)(2), Aug. 10, 1993, 107 Stat. 504, provided that: ''The amendment made by paragraph (1) [amending this section] shall apply to taxable years beginning after September 30, 1993.''

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by Pub. L. 99–514 applicable to distributions by foreign corporations out of, and to inclusions under section 951(a) of this title attributable to, earnings and profits for taxable years beginning after Dec. 31, 1986, see section 1202(e) of Pub. L. 99–514, set out as a note under section 902 of this title.

EFFECTIVE DATE OF 1976 AMENDMENT

Amendment by section 1031(b)(1) of Pub. L. 94–455 applicable to taxable years beginning after Dec. 31, 1975, see section 1031(c) of Pub. L. 94–455, set out as a note under section 904 of this title.

Amendment by section 1033(b)(2) of Pub. L. 94–455 applicable in respect of any distribution received by a domestic corporation after Dec. 31, 1977, and in respect of any distribution received by a domestic corporation before Jan. 1, 1978, in a taxable year of such corporation beginning after Dec. 31, 1975, but only to the extent that such distribution is made out of the accumulated profits of a foreign corporation for a taxable year beginning after Dec. 31, 1975, see section 1033(c) of Pub. L. 94–455, set out as a note under section 902 of this title.

Pub. L. 94–455, title X, §1037(b), Oct. 4, 1976, 90 Stat. 1634, as amended by Pub. L. 99–514, §2, Oct. 22, 1986, 100 Stat. 2095, provided that: ''The amendment made by this section [amending this section] shall apply with respect to earnings and profits of a foreign corporation, included, under section 951(a) of the Internal Revenue Code of 1986 [formerly I.R.C. 1954], in the gross income of a domestic corporation in taxable years beginning after December 31, 1976.''

## § 961. Adjustments to basis of stock in controlled foreign corporations and of other property

### (a) Increase in basis

Under regulations prescribed by the Secretary, the basis of a United States shareholder's stock in a controlled foreign corporation, and the basis of property of a United States shareholder by reason of which he is considered under section 958(a)(2) as owning stock of a controlled foreign corporation, shall be increased by the amount required to be included in his gross income under section 951(a) with respect to such stock or with respect to such property, as the case may be, but only to the extent to which such amount was included in the gross income of such United States shareholder. In the case of a United States shareholder who has made an election under section 962 for the taxable year, the increase in basis provided by this subsection shall not exceed an amount equal to the amount of tax paid under this chapter with respect to the amounts required to be included in his gross income under section 951(a).

### (b) Reduction in basis

#### (1) In general

Under regulations prescribed by the Secretary, the adjusted basis of stock or other property with respect to which a United States shareholder or a United States person receives an amount which is excluded from gross income under section 959(a) shall be reduced by the amount so excluded. In the case of a United States shareholder who has made an election under section 962 for any prior taxable year, the reduction in basis provided by this paragraph shall not exceed an amount equal to the amount received which is excluded from gross income under section 959(a) after the application of section 962(d).

#### (2) Amount in excess of basis

To the extent that an amount excluded from gross income under section 959(a) exceeds the adjusted basis of the stock or other property with respect to which it is received, the amount shall be treated as gain from the sale or exchange of property.

### (c) Basis adjustments in stock held by foreign corporations

Under regulations prescribed by the Secretary, if a United States shareholder is treated under section 958(a)(2) as owning stock in a controlled foreign corporation which is owned by another controlled foreign corporation, then adjustments similar to the adjustments provided by subsections (a) and (b) shall be made to—

(1) the basis of such stock, and

(2) the basis of stock in any other controlled foreign corporation by reason of which the United States shareholder is considered under section 958(a)(2) as owning the stock described in paragraph (1),

but only for the purposes of determining the amount included under section 951 in the gross income of such United States shareholder (or any other United States shareholder who acquires from any person any portion of the interest of such United States shareholder by reason of which such shareholder was treated as owning such stock, but only to the extent of such portion, and subject to such proof of identity of such interest as the Secretary may prescribe by regulations). The preceding sentence shall not apply with respect to any stock to which a basis adjustment applies under subsection (a) or (b).

(Added Pub. L. 87–834, §12(a), Oct. 16, 1962, 76 Stat. 1022; amended Pub. L. 94–455, title XIX, §1906(b)(13)(A), Oct. 4, 1976, 90 Stat. 1834; Pub. L. 105–34, title XI, §1112(b)(1), Aug. 5, 1997, 111 Stat. 969; Pub. L. 109–135, title IV, §409(b), Dec. 21, 2005, 119 Stat. 2635.)

AMENDMENTS

2005—Subsec. (c). Pub. L. 109–135 amended heading and text of subsec. (c) generally. Prior to amendment, text read as follows: ''Under regulations prescribed by the Secretary, if a United States shareholder is treated

I.R.C. § 965 (2017)

Subsec. (e)(4). Pub. L. 115–97, §14102(c)(1), added par. (4).

1997—Subsec. (e). Pub. L. 105–34 added subsec. (e).

1988—Subsec. (d). Pub. L. 100–647 added subsec. (d).

1982—Subsec. (a). Pub. L. 97–248 inserted provision that payments referred to in sentence beginning ''In determining such earnings and profits'' are payments which would be unlawful under the Foreign Corrupt Practices Act of 1977 if the payor were a United States person.

1981—Subsec. (a). Pub. L. 97–34 substituted ''section 312(k)(4)'' for ''section 312(k)(3)''.

1976—Subsec. (a). Pub. L. 94–455, §§1065(b), 1901(b)(32)(B)(ii), 1906(b)(13)(A), struck out ''or his delegate'' after ''Secretary'', inserted second sentence, and substituted ''312(k)(3)'' for ''312(m)(3)'' after ''provided in section''.

Subsecs. (b), (c)(1), (2). Pub. L. 94–455, §1906(b)(13)(A), struck out ''or his delegate'' after ''Secretary'' whenever appearing.

1969—Subsec. (a). Pub. L. 91–172 inserted reference to the exception provided for in section 312(m)(3).

#### EFFECTIVE DATE OF 2017 AMENDMENT

Pub. L. 115–97, title I, §14102(c)(2), Dec. 22, 2017, 131 Stat. 2193, provided that: ''The amendments made by this subsection [amending this section] shall apply to sales or exchanges after December 31, 2017.''

Amendment by section 14212(b)(4) of Pub. L. 115–97 applicable to taxable years of foreign corporations beginning after Dec. 31, 2017, and to taxable years of United States shareholders in which or with which such taxable years of foreign corporations end, see section 14212(c) of Pub. L. 115–97, set out as a note under section 851 of this title.

#### EFFECTIVE DATE OF 1997 AMENDMENT

Pub. L. 105–34, title XI, §1111(c)(1), Aug. 5, 1997, 111 Stat. 969, provided that: ''The amendment made by subsection (a) [amending this section] shall apply to gain recognized on transactions occurring after the date of the enactment of this Act [Aug. 5, 1997].''

#### EFFECTIVE DATE OF 1988 AMENDMENT

Pub. L. 100–647, title VI, §6129(b), Nov. 10, 1988, 102 Stat. 3716, provided that: ''The amendment made by subsection (a) [amending this section] shall apply to taxable years of foreign corporations beginning after December 31, 1988.''

#### EFFECTIVE DATE OF 1982 AMENDMENT

Amendment by Pub. L. 97–248 applicable to payments made after Sept. 3, 1982, see section 288(c) of Pub. L. 97–248, set out as a note under section 162 of this title.

#### EFFECTIVE DATE OF 1981 AMENDMENT

Amendment by Pub. L. 97–34 applicable to property placed in service after Dec. 31, 1980, in taxable years ending after that date, see section 209(a) of Pub. L. 97–34, set out as an Effective Date note under section 168 of this title.

#### EFFECTIVE DATE OF 1976 AMENDMENT

Amendment by section 1065(b) of Pub. L. 94–455 applicable to payments described in section 162(c) of this title made more than 30 days after Oct. 4, 1976, see section 1066(b) of Pub. L. 94–455, set out as a note under section 952 of this title.

### § 965. Treatment of deferred foreign income upon transition to participation exemption system of taxation

#### (a) Treatment of deferred foreign income as subpart F income

In the case of the last taxable year of a deferred foreign income corporation which begins before January 1, 2018, the subpart F income of such foreign corporation (as otherwise determined for such taxable year under section 952) shall be increased by the greater of—

(1) the accumulated post-1986 deferred foreign income of such corporation determined as of November 2, 2017, or

(2) the accumulated post-1986 deferred foreign income of such corporation determined as of December 31, 2017.

#### (b) Reduction in amounts included in gross income of United States shareholders of specified foreign corporations with deficits in earnings and profits

#### (1) In general

In the case of a taxpayer which is a United States shareholder with respect to at least one deferred foreign income corporation and at least one E&P deficit foreign corporation, the amount which would (but for this subsection) be taken into account under section 951(a)(1) by reason of subsection (a) as such United States shareholder's pro rata share of the subpart F income of each deferred foreign income corporation shall be reduced by the amount of such United States shareholder's aggregate foreign E&P deficit which is allocated under paragraph (2) to such deferred foreign income corporation.

#### (2) Allocation of aggregate foreign E&P deficit

The aggregate foreign E&P deficit of any United States shareholder shall be allocated among the deferred foreign income corporations of such United States shareholder in an amount which bears the same proportion to such aggregate as—

(A) such United States shareholder's pro rata share of the accumulated post-1986 deferred foreign income of each such deferred foreign income corporation, bears to

(B) the aggregate of such United States shareholder's pro rata share of the accumulated post-1986 deferred foreign income of all deferred foreign income corporations of such United States shareholder.

#### (3) Definitions related to E&P deficits

For purposes of this subsection—

#### (A) Aggregate foreign E&P deficit

#### (i) In general

The term ''aggregate foreign E&P deficit'' means, with respect to any United States shareholder, the lesser of—

(I) the aggregate of such shareholder's pro rata shares of the specified E&P deficits of the E&P deficit foreign corporations of such shareholder, or

(II) the amount determined under paragraph (2)(B).

#### (ii) Allocation of deficit

If the amount described in clause (i)(II) is less than the amount described in clause (i)(I), then the shareholder shall designate, in such form and manner as the Secretary determines—

(I) the amount of the specified E&P deficit which is to be taken into account for each E&P deficit corporation with respect to the taxpayer, and

(II) in the case of an E&P deficit corporation which has a qualified deficit (as defined in section 952), the portion (if any) of the deficit taken into account under subclause (I) which is attributable to a qualified deficit, including the qualified activities to which such portion is attributable.

**(B) E&P deficit foreign corporation**

The term ''E&P deficit foreign corporation'' means, with respect to any taxpayer, any specified foreign corporation with respect to which such taxpayer is a United States shareholder, if, as of November 2, 2017—

(i) such specified foreign corporation has a deficit in post-1986 earnings and profits,

(ii) such corporation was a specified foreign corporation, and

(iii) such taxpayer was a United States shareholder of such corporation.

**(C) Specified E&P deficit**

The term ''specified E&P deficit'' means, with respect to any E&P deficit foreign corporation, the amount of the deficit referred to in subparagraph (B).

**(4) Treatment of earnings and profits in future years**

**(A) Reduced earnings and profits treated as previously taxed income when distributed**

For purposes of applying section 959 in any taxable year beginning with the taxable year described in subsection (a), with respect to any United States shareholder of a deferred foreign income corporation, an amount equal to such shareholder's reduction under paragraph (1) which is allocated to such deferred foreign income corporation under this subsection shall be treated as an amount which was included in the gross income of such United States shareholder under section 951(a).

**(B) E&P deficits**

For purposes of this title, with respect to any taxable year beginning with the taxable year described in subsection (a), a United States shareholder's pro rata share of the earnings and profits of any E&P deficit foreign corporation under this subsection shall be increased by the amount of the specified E&P deficit of such corporation taken into account by such shareholder under paragraph (1), and, for purposes of section 952, such increase shall be attributable to the same activity to which the deficit so taken into account was attributable.

**(5) Netting among United States shareholders in same affiliated group**

**(A) In general**

In the case of any affiliated group which includes at least one E&P net surplus shareholder and one E&P net deficit shareholder, the amount which would (but for this paragraph) be taken into account under section 951(a)(1) by reason of subsection (a) by each such E&P net surplus shareholder shall be reduced (but not below zero) by such shareholder's applicable share of the affiliated group's aggregate unused E&P deficit.

**(B) E&P net surplus shareholder**

For purposes of this paragraph, the term ''E&P net surplus shareholder'' means any United States shareholder which would (determined without regard to this paragraph) take into account an amount greater than zero under section 951(a)(1) by reason of subsection (a).

**(C) E&P net deficit shareholder**

For purposes of this paragraph, the term ''E&P net deficit shareholder'' means any United States shareholder if—

(i) the aggregate foreign E&P deficit with respect to such shareholder (as defined in paragraph (3)(A) without regard to clause (i)(II) thereof), exceeds

(ii) the amount which would (but for this subsection) be taken into account by such shareholder under section 951(a)(1) by reason of subsection (a).

**(D) Aggregate unused E&P deficit**

For purposes of this paragraph—

**(i) In general**

The term ''aggregate unused E&P deficit'' means, with respect to any affiliated group, the lesser of—

(I) the sum of the excesses described in subparagraph (C), determined with respect to each E&P net deficit shareholder in such group, or

(II) the amount determined under subparagraph (E)(ii).

**(ii) Reduction with respect to E&P net deficit shareholders which are not wholly owned by the affiliated group**

If the group ownership percentage of any E&P net deficit shareholder is less than 100 percent, the amount of the excess described in subparagraph (C) which is taken into account under clause (i)(I) with respect to such E&P net deficit shareholder shall be such group ownership percentage of such amount.

**(E) Applicable share**

For purposes of this paragraph, the term ''applicable share'' means, with respect to any E&P net surplus shareholder in any affiliated group, the amount which bears the same proportion to such group's aggregate unused E&P deficit as—

(i) the product of—

(I) such shareholder's group ownership percentage, multiplied by

(II) the amount which would (but for this paragraph) be taken into account under section 951(a)(1) by reason of subsection (a) by such shareholder, bears to

(ii) the aggregate amount determined under clause (i) with respect to all E&P net surplus shareholders in such group.

**(F) Group ownership percentage**

For purposes of this paragraph, the term ''group ownership percentage'' means, with

respect to any United States shareholder in any affiliated group, the percentage of the value of the stock of such United States shareholder which is held by other includible corporations in such affiliated group. Notwithstanding the preceding sentence, the group ownership percentage of the common parent of the affiliated group is 100 percent. Any term used in this subparagraph which is also used in section 1504 shall have the same meaning as when used in such section.

**(c) Application of participation exemption to included income**

**(1) In general**

In the case of a United States shareholder of a deferred foreign income corporation, there shall be allowed as a deduction for the taxable year in which an amount is included in the gross income of such United States shareholder under section 951(a)(1) by reason of this section an amount equal to the sum of—

(A) the United States shareholder's 8 percent rate equivalent percentage of the excess (if any) of—

(i) the amount so included as gross income, over

(ii) the amount of such United States shareholder's aggregate foreign cash position, plus

(B) the United States shareholder's 15.5 percent rate equivalent percentage of so much of the amount described in subparagraph (A)(ii) as does not exceed the amount described in subparagraph (A)(i).

**(2) 8 and 15.5 percent rate equivalent percentages**

For purposes of this subsection—

**(A) 8 percent rate equivalent percentage**

The term "8 percent rate equivalent percentage" means, with respect to any United States shareholder for any taxable year, the percentage which would result in the amount to which such percentage applies being subject to a 8 percent rate of tax determined by only taking into account a deduction equal to such percentage of such amount and the highest rate of tax specified in section 11 for such taxable year. In the case of any taxable year of a United States shareholder to which section 15 applies, the highest rate of tax under section 11 before the effective date of the change in rates and the highest rate of tax under section 11 after the effective date of such change shall each be taken into account under the preceding sentence in the same proportions as the portion of such taxable year which is before and after such effective date, respectively.

**(B) 15.5 percent rate equivalent percentage**

The term "15.5 percent rate equivalent percentage" means, with respect to any United States shareholder for any taxable year, the percentage determined under subparagraph (A) applied by substituting "15.5 percent rate of tax" for "8 percent rate of tax".

**(3) Aggregate foreign cash position**

For purposes of this subsection—

**(A) In general**

The term "aggregate foreign cash position" means, with respect to any United States shareholder, the greater of—

(i) the aggregate of such United States shareholder's pro rata share of the cash position of each specified foreign corporation of such United States shareholder determined as of the close of the last taxable year of such specified foreign corporation which begins before January 1, 2018, or

(ii) one half of the sum of—

(I) the aggregate described in clause (i) determined as of the close of the last taxable year of each such specified foreign corporation which ends before November 2, 2017, plus

(II) the aggregate described in clause (i) determined as of the close of the taxable year of each such specified foreign corporation which precedes the taxable year referred to in subclause (I).

**(B) Cash position**

For purposes of this paragraph, the cash position of any specified foreign corporation is the sum of—

(i) cash held by such foreign corporation,

(ii) the net accounts receivable of such foreign corporation, plus

(iii) the fair market value of the following assets held by such corporation:

(I) Personal property which is of a type that is actively traded and for which there is an established financial market.

(II) Commercial paper, certificates of deposit, the securities of the Federal government and of any State or foreign government.

(III) Any foreign currency.

(IV) Any obligation with a term of less than one year.

(V) Any asset which the Secretary identifies as being economically equivalent to any asset described in this subparagraph.

**(C) Net accounts receivable**

For purposes of this paragraph, the term "net accounts receivable" means, with respect to any specified foreign corporation, the excess (if any) of—

(i) such corporation's accounts receivable, over

(ii) such corporation's accounts payable (determined consistent with the rules of section 461).

**(D) Prevention of double counting**

Cash positions of a specified foreign corporation described in clause (ii), (iii)(I), or (iii)(IV) of subparagraph (B) shall not be taken into account by a United States shareholder under subparagraph (A) to the extent that such United States shareholder demonstrates to the satisfaction of the Secretary that such amount is so taken into account by such United States shareholder with respect to another specified foreign corporation.

**(E) Cash positions of certain non-corporate entities taken into account**

An entity (other than a corporation) shall be treated as a specified foreign corporation

of a United States shareholder for purposes of determining such United States shareholder's aggregate foreign cash position if any interest in such entity is held by a specified foreign corporation of such United States shareholder (determined after application of this subparagraph) and such entity would be a specified foreign corporation of such United States shareholder if such entity were a foreign corporation.

**(F) Anti-abuse**

If the Secretary determines that a principal purpose of any transaction was to reduce the aggregate foreign cash position taken into account under this subsection, such transaction shall be disregarded for purposes of this subsection.

**(d) Deferred foreign income corporation; accumulated post-1986 deferred foreign income**

For purposes of this section—

**(1) Deferred foreign income corporation**

The term "deferred foreign income corporation" means, with respect to any United States shareholder, any specified foreign corporation of such United States shareholder which has accumulated post-1986 deferred foreign income (as of the date referred to in paragraph (1) or (2) of subsection (a)) greater than zero.

**(2) Accumulated post-1986 deferred foreign income**

The term "accumulated post-1986 deferred foreign income" means the post-1986 earnings and profits except to the extent such earnings—

(A) are attributable to income of the specified foreign corporation which is effectively connected with the conduct of a trade or business within the United States and subject to tax under this chapter, or

(B) in the case of a controlled foreign corporation, if distributed, would be excluded from the gross income of a United States shareholder under section 959.

To the extent provided in regulations or other guidance prescribed by the Secretary, in the case of any controlled foreign corporation which has shareholders which are not United States shareholders, accumulated post-1986 deferred foreign income shall be appropriately reduced by amounts which would be described in subparagraph (B) if such shareholders were United States shareholders.

**(3) Post-1986 earnings and profits**

The term "post-1986 earnings and profits" means the earnings and profits of the foreign corporation (computed in accordance with sections 964(a) and 986, and by only taking into account periods when the foreign corporation was a specified foreign corporation) accumulated in taxable years beginning after December 31, 1986, and determined—

(A) as of the date referred to in paragraph (1) or (2) of subsection (a), whichever is applicable with respect to such foreign corporation, and

(B) without diminution by reason of dividends distributed during the taxable year described in subsection (a) other than dividends distributed to another specified foreign corporation.

**(e) Specified foreign corporation**

**(1) In general**

For purposes of this section, the term "specified foreign corporation" means—

(A) any controlled foreign corporation, and

(B) any foreign corporation with respect to which one or more domestic corporations is a United States shareholder.

**(2) Application to certain foreign corporations**

For purposes of sections 951 and 961, a foreign corporation described in paragraph (1)(B) shall be treated as a controlled foreign corporation solely for purposes of taking into account the subpart F income of such corporation under subsection (a) (and for purposes of applying subsection (f)).

**(3) Exclusion of passive foreign investment companies**

Such term shall not include any corporation which is a passive foreign investment company (as defined in section 1297) with respect to the shareholder and which is not a controlled foreign corporation.

**(f) Determinations of pro rata share**

**(1) In general**

For purposes of this section, the determination of any United States shareholder's pro rata share of any amount with respect to any specified foreign corporation shall be determined under rules similar to the rules of section 951(a)(2) by treating such amount in the same manner as subpart F income (and by treating such specified foreign corporation as a controlled foreign corporation).

**(2) Special rules**

The portion which is included in the income of a United States shareholder under section 951(a)(1) by reason of subsection (a) which is equal to the deduction allowed under subsection (c) by reason of such inclusion—

(A) shall be treated as income exempt from tax for purposes of sections 705(a)(1)(B) and 1367(a)(1)(A), and

(B) shall not be treated as income exempt from tax for purposes of determining whether an adjustment shall be made to an accumulated adjustment account under section 1368(e)(1)(A).

**(g) Disallowance of foreign tax credit, etc.**

**(1) In general**

No credit shall be allowed under section 901 for the applicable percentage of any taxes paid or accrued (or treated as paid or accrued) with respect to any amount for which a deduction is allowed under this section.

**(2) Applicable percentage**

For purposes of this subsection, the term "applicable percentage" means the amount (expressed as a percentage) equal to the sum of—

(A) 0.771 multiplied by the ratio of—

(i) the excess to which subsection (c)(1)(A) applies, divided by

(ii) the sum of such excess plus the amount to which subsection (c)(1)(B) applies, plus

(B) 0.557 multiplied by the ratio of—

(i) the amount to which subsection (c)(1)(B) applies, divided by

(ii) the sum described in subparagraph (A)(ii).

**(3) Denial of deduction**

No deduction shall be allowed under this chapter for any tax for which credit is not allowable under section 901 by reason of paragraph (1) (determined by treating the taxpayer as having elected the benefits of subpart A of part III of subchapter N).

**(4) Coordination with section 78**

With respect to the taxes treated as paid or accrued by a domestic corporation with respect to amounts which are includible in gross income of such domestic corporation by reason of this section, section 78 shall apply only to so much of such taxes as bears the same proportion to the amount of such taxes as—

(A) the excess of—

(i) the amounts which are includible in gross income of such domestic corporation by reason of this section, over

(ii) the deduction allowable under subsection (c) with respect to such amounts, bears to

(B) such amounts.

**(h) Election to pay liability in installments**

**(1) In general**

In the case of a United States shareholder of a deferred foreign income corporation, such United States shareholder may elect to pay the net tax liability under this section in 8 installments of the following amounts:

(A) 8 percent of the net tax liability in the case of each of the first 5 of such installments,

(B) 15 percent of the net tax liability in the case of the 6th such installment,

(C) 20 percent of the net tax liability in the case of the 7th such installment, and

(D) 25 percent of the net tax liability in the case of the 8th such installment.

**(2) Date for payment of installments**

If an election is made under paragraph (1), the first installment shall be paid on the due date (determined without regard to any extension of time for filing the return) for the return of tax for the taxable year described in subsection (a) and each succeeding installment shall be paid on the due date (as so determined) for the return of tax for the taxable year following the taxable year with respect to which the preceding installment was made.

**(3) Acceleration of payment**

If there is an addition to tax for failure to timely pay any installment required under this subsection, a liquidation or sale of substantially all the assets of the taxpayer (including in a title 11 or similar case), a cessation of business by the taxpayer, or any similar circumstance, then the unpaid portion of all remaining installments shall be due on the date of such event (or in the case of a title 11 or similar case, the day before the petition is filed). The preceding sentence shall not apply to the sale of substantially all the assets of a taxpayer to a buyer if such buyer enters into an agreement with the Secretary under which such buyer is liable for the remaining installments due under this subsection in the same manner as if such buyer were the taxpayer.

**(4) Proration of deficiency to installments**

If an election is made under paragraph (1) to pay the net tax liability under this section in installments and a deficiency has been assessed with respect to such net tax liability, the deficiency shall be prorated to the installments payable under paragraph (1). The part of the deficiency so prorated to any installment the date for payment of which has not arrived shall be collected at the same time as, and as a part of, such installment. The part of the deficiency so prorated to any installment the date for payment of which has arrived shall be paid upon notice and demand from the Secretary. This subsection shall not apply if the deficiency is due to negligence, to intentional disregard of rules and regulations, or to fraud with intent to evade tax.

**(5) Election**

Any election under paragraph (1) shall be made not later than the due date for the return of tax for the taxable year described in subsection (a) and shall be made in such manner as the Secretary shall provide.

**(6) Net tax liability under this section**

For purposes of this subsection—

**(A) In general**

The net tax liability under this section with respect to any United States shareholder is the excess (if any) of—

(i) such taxpayer's net income tax for the taxable year in which an amount is included in the gross income of such United States shareholder under section 951(a)(1) by reason of this section, over

(ii) such taxpayer's net income tax for such taxable year determined—

(I) without regard to this section, and

(II) without regard to any income or deduction properly attributable to a dividend received by such United States shareholder from any deferred foreign income corporation.

**(B) Net income tax**

The term "net income tax" means the regular tax liability reduced by the credits allowed under subparts A, B, and D of part IV of subchapter A.

**(i) Special rules for S corporation shareholders**

**(1) In general**

In the case of any S corporation which is a United States shareholder of a deferred foreign income corporation, each shareholder of such S corporation may elect to defer payment of such shareholder's net tax liability under this section with respect to such S corporation

until the shareholder's taxable year which includes the triggering event with respect to such liability. Any net tax liability payment of which is deferred under the preceding sentence shall be assessed on the return of tax as an addition to tax in the shareholder's taxable year which includes such triggering event.

**(2) Triggering event**

**(A) In general**

In the case of any shareholder's net tax liability under this section with respect to any S corporation, the triggering event with respect to such liability is whichever of the following occurs first:

(i) Such corporation ceases to be an S corporation (determined as of the first day of the first taxable year that such corporation is not an S corporation).

(ii) A liquidation or sale of substantially all the assets of such S corporation (including in a title 11 or similar case), a cessation of business by such S corporation, such S corporation ceases to exist, or any similar circumstance.

(iii) A transfer of any share of stock in such S corporation by the taxpayer (including by reason of death, or otherwise).

**(B) Partial transfers of stock**

In the case of a transfer of less than all of the taxpayer's shares of stock in the S corporation, such transfer shall only be a triggering event with respect to so much of the taxpayer's net tax liability under this section with respect to such S corporation as is properly allocable to such stock.

**(C) Transfer of liability**

A transfer described in clause (iii) of subparagraph (A) shall not be treated as a triggering event if the transferee enters into an agreement with the Secretary under which such transferee is liable for net tax liability with respect to such stock in the same manner as if such transferee were the taxpayer.

**(3) Net tax liability**

A shareholder's net tax liability under this section with respect to any S corporation is the net tax liability under this section which would be determined under subsection (h)(6) if the only subpart F income taken into account by such shareholder by reason of this section were allocations from such S corporation.

**(4) Election to pay deferred liability in installments**

In the case of a taxpayer which elects to defer payment under paragraph (1)—

(A) subsection (h) shall be applied separately with respect to the liability to which such election applies,

(B) an election under subsection (h) with respect to such liability shall be treated as timely made if made not later than the due date for the return of tax for the taxable year in which the triggering event with respect to such liability occurs,

(C) the first installment under subsection (h) with respect to such liability shall be paid not later than such due date (but determined without regard to any extension of time for filing the return), and

(D) if the triggering event with respect to any net tax liability is described in paragraph (2)(A)(ii), an election under subsection (h) with respect to such liability may be made only with the consent of the Secretary.

**(5) Joint and several liability of S corporation**

If any shareholder of an S corporation elects to defer payment under paragraph (1), such S corporation shall be jointly and severally liable for such payment and any penalty, addition to tax, or additional amount attributable thereto.

**(6) Extension of limitation on collection**

Any limitation on the time period for the collection of a liability deferred under this subsection shall not be treated as beginning before the date of the triggering event with respect to such liability.

**(7) Annual reporting of net tax liability**

**(A) In general**

Any shareholder of an S corporation which makes an election under paragraph (1) shall report the amount of such shareholder's deferred net tax liability on such shareholder's return of tax for the taxable year for which such election is made and on the return of tax for each taxable year thereafter until such amount has been fully assessed on such returns.

**(B) Deferred net tax liability**

For purposes of this paragraph, the term "deferred net tax liability" means, with respect to any taxable year, the amount of net tax liability payment of which has been deferred under paragraph (1) and which has not been assessed on a return of tax for any prior taxable year.

**(C) Failure to report**

In the case of any failure to report any amount required to be reported under subparagraph (A) with respect to any taxable year before the due date for the return of tax for such taxable year, there shall be assessed on such return as an addition to tax 5 percent of such amount.

**(8) Election**

Any election under paragraph (1)—

(A) shall be made by the shareholder of the S corporation not later than the due date for such shareholder's return of tax for the taxable year which includes the close of the taxable year of such S corporation in which the amount described in subsection (a) is taken into account, and

(B) shall be made in such manner as the Secretary shall provide.

**(j) Reporting by S corporation**

Each S corporation which is a United States shareholder of a specified foreign corporation shall report in its return of tax under section 6037(a) the amount includible in its gross income for such taxable year by reason of this section and the amount of the deduction allowable by

subsection (c). Any copy provided to a shareholder under section 6037(b) shall include a statement of such shareholder's pro rata share of such amounts.

**(k) Extension of limitation on assessment**

Notwithstanding section 6501, the limitation on the time period for the assessment of the net tax liability under this section (as defined in subsection (h)(6)) shall not expire before the date that is 6 years after the return for the taxable year described in such subsection was filed.

**(l) Recapture for expatriated entities**

**(1) In general**

If a deduction is allowed under subsection (c) to a United States shareholder and such shareholder first becomes an expatriated entity at any time during the 10-year period beginning on the date of the enactment of the Tax Cuts and Jobs Act[1] (with respect to a surrogate foreign corporation which first becomes a surrogate foreign corporation during such period), then—

(A) the tax imposed by this chapter shall be increased for the first taxable year in which such taxpayer becomes an expatriated entity by an amount equal to 35 percent of the amount of the deduction allowed under subsection (c), and

(B) no credits shall be allowed against the increase in tax under subparagraph (A).

**(2) Expatriated entity**

For purposes of this subsection, the term "expatriated entity" has the same meaning given such term under section 7874(a)(2), except that such term shall not include an entity if the surrogate foreign corporation with respect to the entity is treated as a domestic corporation under section 7874(b).

**(3) Surrogate foreign corporation**

For purposes of this subsection, the term "surrogate foreign corporation" has the meaning given such term in section 7874(a)(2)(B).

**(m) Special rules for United States shareholders which are real estate investment trusts**

**(1) In general**

If a real estate investment trust is a United States shareholder in 1 or more deferred foreign income corporations—

(A) any amount required to be taken into account under section 951(a)(1) by reason of this section shall not be taken into account as gross income of the real estate investment trust for purposes of applying paragraphs (2) and (3) of section 856(c) to any taxable year for which such amount is taken into account under section 951(a)(1), and

(B) if the real estate investment trust elects the application of this subparagraph, notwithstanding subsection (a), any amount required to be taken into account under section 951(a)(1) by reason of this section shall, in lieu of the taxable year in which it would otherwise be included in gross income (for purposes of the computation of real estate investment trust taxable income under sec-

tion 857(b)), be included in gross income as follows:

(i) 8 percent of such amount in the case of each of the taxable years in the 5-taxable year period beginning with the taxable year in which such amount would otherwise be included.

(ii) 15 percent of such amount in the case of the 1st taxable year following such period.

(iii) 20 percent of such amount in the case of the 2nd taxable year following such period.

(iv) 25 percent of such amount in the case of the 3rd taxable year following such period.

**(2) Rules for trusts electing deferred inclusion**

**(A) Election**

Any election under paragraph (1)(B) shall be made not later than the due date for the first taxable year in the 5-taxable year period described in clause (i) of paragraph (1)(B) and shall be made in such manner as the Secretary shall provide.

**(B) Special rules**

If an election under paragraph (1)(B) is in effect with respect to any real estate investment trust, the following rules shall apply:

**(i) Application of participation exemption**

For purposes of subsection (c)(1)—

(I) the aggregate amount to which subparagraph (A) or (B) of subsection (c)(1) applies shall be determined without regard to the election,

(II) each such aggregate amount shall be allocated to each taxable year described in paragraph (1)(B) in the same proportion as the amount included in the gross income of such United States shareholder under section 951(a)(1) by reason of this section is allocated to each such taxable year.

(III) NO INSTALLMENT PAYMENTS.—The real estate investment trust may not make an election under subsection (g) for any taxable year described in paragraph (1)(B).

**(ii) Acceleration of inclusion**

If there is a liquidation or sale of substantially all the assets of the real estate investment trust (including in a title 11 or similar case), a cessation of business by such trust, or any similar circumstance, then any amount not yet included in gross income under paragraph (1)(B) shall be included in gross income as of the day before the date of the event and the unpaid portion of any tax liability with respect to such inclusion shall be due on the date of such event (or in the case of a title 11 or similar case, the day before the petition is filed).

**(n) Election not to apply net operating loss deduction**

**(1) In general**

If a United States shareholder of a deferred foreign income corporation elects the applica-

---

[1] See References in Text note below.

tion of this subsection for the taxable year described in subsection (a), then the amount described in paragraph (2) shall not be taken into account—

(A) in determining the amount of the net operating loss deduction under section 172 of such shareholder for such taxable year, or

(B) in determining the amount of taxable income for such taxable year which may be reduced by net operating loss carryovers or carrybacks to such taxable year under section 172.

**(2) Amount described**

The amount described in this paragraph is the sum of—

(A) the amount required to be taken into account under section 951(a)(1) by reason of this section (determined after the application of subsection (c)), plus

(B) in the case of a domestic corporation which chooses to have the benefits of subpart A of part III of subchapter N for the taxable year, the taxes deemed to be paid by such corporation under subsections (a) and (b) of section 960 for such taxable year with respect to the amount described in subparagraph (A) which are treated as a dividends[2] under section 78.

**(3) Election**

Any election under this subsection shall be made not later than the due date (including extensions) for filing the return of tax for the taxable year and shall be made in such manner as the Secretary shall prescribe.

**(o) Regulations**

The Secretary shall prescribe such regulations or other guidance as may be necessary or appropriate to carry out the provisions of this section, including—

(1) regulations or other guidance to provide appropriate basis adjustments, and

(2) regulations or other guidance to prevent the avoidance of the purposes of this section, including through a reduction in earnings and profits, through changes in entity classification or accounting methods, or otherwise.

(Added Pub. L. 108–357, title IV, § 422(a), Oct. 22, 2004, 118 Stat. 1514; amended Pub. L. 109–135, title IV, § 403(q), Dec. 21, 2005, 119 Stat. 2627; Pub. L. 115–97, title I, § 14103(a), Dec. 22, 2017, 131 Stat. 2195.)

REFERENCES IN TEXT

The date of the enactment of the Tax Cuts and Jobs Act, referred to in subsec. (*l*)(1), probably means the date of the enactment of title I of Pub. L. 115–97, which was approved Dec. 22, 2017. Prior versions of the bill that was enacted into law as Pub. L. 115–97 included such Short Title, but it was not enacted as part of title I of Pub. L. 115–97.

AMENDMENTS

2017—Pub. L. 115–97 amended section generally. Prior to amendment, section related to temporary dividends received deduction.

2005—Subsec. (a)(2)(B). Pub. L. 109–135, § 403(q)(1), inserted "from another controlled foreign corporation in such chain of ownership" before ", but only to the extent".

_____
[2] So in original.

Subsec. (b)(2)(A). Pub. L. 109–135, § 403(q)(2), inserted "cash" before "dividends".

Subsec. (b)(3). Pub. L. 109–135, § 403(q)(3), inserted at end "The Secretary may prescribe such regulations as may be necessary or appropriate to prevent the avoidance of the purposes of this paragraph, including regulations which provide that cash dividends shall not be taken into account under subsection (a) to the extent such dividends are attributable to the direct or indirect transfer (including through the use of intervening entities or capital contributions) of cash or other property from a related person (as so defined) to a controlled foreign corporation."

Subsec. (c)(1). Pub. L. 109–135, § 403(q)(4), reenacted heading without change and amended text generally. Prior to amendment, text read as follows: "The term 'applicable financial statement' means, with respect to a United States shareholder, the most recently audited financial statement (including notes and other documents which accompany such statement) which includes such shareholder—

"(A) which is certified on or before June 30, 2003, as being prepared in accordance with generally accepted accounting principles, and

"(B) which is used for the purposes of a statement or report—

"(i) to creditors,

"(ii) to shareholders, or

"(iii) for any other substantial nontax purpose.

In the case of a corporation required to file a financial statement with the Securities and Exchange Commission, such term means the most recent such statement filed on or before June 30, 2003.''

Subsec. (d)(2). Pub. L. 109–135, § 403(q)(5), substituted "directly allocable" for "properly allocated and apportioned".

Subsec. (d)(4). Pub. L. 109–135, § 403(q)(6), added par. (4).

Subsec. (e)(1). Pub. L. 109–135, § 403(q)(7), inserted "which are imposed by foreign countries and possessions of the United States and are" after "taxes" in concluding provisions.

Subsec. (f). Pub. L. 109–135, § 403(q)(8), inserted "on or" before "before the due date" in concluding provisions.

EFFECTIVE DATE OF 2005 AMENDMENT

Amendments by Pub. L. 109–135 effective as if included in the provisions of the American Jobs Creation Act of 2004, Pub. L. 108–357, to which they relate, see section 403(nn) of Pub. L. 109–135, set out as a note under section 26 of this title.

EFFECTIVE DATE

Section applicable to taxable years ending on or after Oct. 22, 2004, see section 422(d) of Pub. L. 108–357, set out as an Effective Date of 2004 Amendments note under section 56 of this title.

SUBPART G—EXPORT TRADE CORPORATIONS

Sec.
970.    Reduction of subpart F income of export trade corporations.
971.    Definitions.
[972.    Repealed.]

AMENDMENTS

1976—Pub. L. 94–455, title XIX, § 1901(b)(27)(B), Oct. 4, 1976, 90 Stat. 1799, struck out item 972 "Consolidation of group of export trade corporations".

1962—Pub. L. 87–834, § 12(a), Oct. 16, 1962, 76 Stat. 1027, added heading of subpart G, and items 970 to 972.

**§ 970. Reduction of subpart F income of export trade corporations**

**(a) Export trade income constituting foreign base company income**

**(1) In general**

In the case of a controlled foreign corporation (as defined in section 957) which for the

**26 C.F.R. § 1.965-5**

(B) *Analysis.* The distribution is a specified payment because (*1*) CFC1 and CFC2 are related specified foreign corporations; (*2*) the distribution occurs after November 2, 2017, and on or before December 31, 2017; and (*3*) the distribution would, without regard to the application of the rule in paragraph (f)(1) of this section, reduce the post-1986 earnings and profits of CFC2 as of the E&P measurement date on December 31, 2017. Under paragraph (f)(1) of this section, the distribution is disregarded with the result that CFC1 and CFC2 each have post-1986 earnings and profits of 100u as of the E&P measurement date on December 31, 2017, and a section 965(a) earnings amount of 100u.

(iii) *Example 3. Deductible payment between related (but not wholly owned) specified foreign corporations is a specified payment*—(A) *Facts.* The facts are the same as in paragraph (f)(4)(i)(A) of this section (the facts in *Example 1*), except that CFC1 owns only 51% of the only class of stock of CFC2, the remainder of which is owned by USI, a United States citizen unrelated to USP, CFC1, and CFC2.

(B) *Analysis.* The analysis is the same as in paragraph (f)(4)(i)(B) of this section (the analysis in *Example 1*); thus, the payment is disregarded with the result that CFC1 and CFC2 each have post-1986 earnings and profits of 100u as of the E&P measurement date on December 31, 2017, and a section 965(a) earnings amount of 100u.

(iv) *Example 4. Deductible payment between unrelated specified foreign corporations is not a specified payment*—(A) *Facts.* The facts are the same as in paragraph (f)(4)(i)(A) of this section (the facts in *Example 1*), except that CFC1 owns only 50% of the only class of stock of CFC2, the remainder of which is owned by USI, a United States citizen unrelated to USP, CFC1, and CFC2.

(B) *Analysis.* Paragraph (f)(1) of this section does not apply because CFC1 and CFC2 are not related. Thus, the payment is taken into account with the result that CFC1 has post-1986 earnings and profits of 110u as of the E&P measurement date on December 31, 2017, and a section 965(a) earnings amount of 110u.

(v) *Example 5. Deductible payment and income accrued from unrelated persons are not specified payments*—(A) *Facts.* The facts are the same as in paragraph (f)(4)(i)(A) of this section (the facts in *Example 1*), except that CFC2 does not make a deductible payment to CFC1, and, between E&P measurement dates, CFC2 accrues gross income of 20u from a person that is not related to CFC2, and CFC1 incurs a deductible expense of 20u to a person that is not related to CFC1.

(B) *Analysis.* Paragraph (f)(1) of this section does not apply because neither the deductible expense of CFC1 nor the income accrual by CFC2 are attributable to a specified payment.

(vi) *Example 6. Deductible payment and income accrued with respect to unrelated persons are not specified payments; deductible payment between wholly specified foreign corporations is a specified payment*—(A) *Facts.* The facts are the same as in paragraph (f)(4)(v)(A) of this section (the facts in *Example 5*), except that CFC2 also makes a deductible payment of 10u to CFC1 on November 3, 2017.

(B) *Analysis.* The deductible payment is a specified payment because (*1*) CFC1 and CFC2 are related specified foreign corporations; (*2*) the payment occurs after November 2, 2017, and on or before December 31, 2017; and (*3*) the deductible payment would, without regard to the application of the rule in paragraph (f)(1) of this section, reduce the post-1986 earnings and profits of CFC2 as of the E&P measurement date on December 31, 2017. Accordingly, under paragraph (f)(1) of this section, the deductible payment is disregarded with the result that CFC1 and CFC2 have 80u and 120u of post-1986 earnings and profits as of the E&P measurement date on December 31, 2017, respectively. Accordingly, CFC1 and CFC2 have section 965(a) earnings amounts of 100u and 120u, respectively.

[T.D. 9846, 84 FR 1875, Feb. 5, 2019]

**§ 1.965–5 Allowance of credit or deduction for foreign income taxes.**

(a) *Scope.* This section provides rules for the allowance of a credit or deduction for foreign income taxes in connection with the application of section

965. Paragraph (b) of this section provides rules under section 965(g) for the allowance of a credit or deduction for foreign income taxes paid or accrued. Paragraph (c) of this section provides rules for the allowance of a credit or deduction for foreign income taxes treated as paid or accrued in connection with the application of section 965. Paragraph (d) of this section defines the term applicable percentage.

(b) *Rules for foreign income taxes paid or accrued*—(1) *In general.* Neither a deduction (including under section 164) nor a credit under section 901 is allowed for the applicable percentage of any foreign income taxes paid or accrued with respect to any amount for which a section 965(c) deduction is allowed for a section 958(a) U.S. shareholder inclusion year. Neither a deduction (including under section 164) nor a credit under section 901 is allowed for the applicable percentage of any foreign income taxes attributable to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits. Accordingly, for example, no deduction or credit is allowed for the applicable percentage of any withholding taxes imposed on a United States shareholder by the jurisdiction of residence of the distributing foreign corporation with respect to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits. Similarly, for example, no deduction or credit is allowed for the applicable percentage of foreign income taxes imposed on a United States citizen by the citizen's jurisdiction of residence upon receipt of a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits.

(2) *Attributing taxes to section 959(a) distributions of section 965 previously taxed earnings and profits.* For purposes of paragraph (b)(1) of this section, foreign income taxes are attributable to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits if such taxes would be allocated and apportioned to a distribution of such previously taxed earnings and profits under the principles of §1.904–

6(a)(1)(iv), regardless of whether an actual distribution is made or recognized for Federal income tax purposes. Therefore, for example, a credit or deduction for the applicable percentage of foreign income taxes imposed on a United States shareholder that pays foreign tax on a distribution that is not recognized for Federal income tax purposes (for example, in the case of a consent dividend or stock dividend upon which a withholding tax is imposed) is not allowed under paragraph (b)(1) of this section to the extent it is attributable to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits under the principles of §1.904–6(a)(1)(iv). For taxable years of foreign corporations beginning after December 31, 2019, in lieu of applying the principles of §1.904–6 under this paragraph (b)(2), the rules in §1.861–20 apply by treating the portion of a distribution attributable to section 965(a) previously taxed earnings and profits and the portion of a distribution attributable to section 965(b) previously taxed earnings and profits each as a statutory grouping, and the portion of the distribution that is attributable to other earnings and profits as the residual grouping. See §1.861–20(g)(7) (*Example 6*).

(c) *Rules for foreign income taxes treated as paid or accrued*—(1) *Disallowed credit*—(i) *In general.* A credit under section 901 is not allowed for the applicable percentage of any foreign income taxes treated as paid or accrued with respect to any amount for which a section 965(c) deduction is allowed for a section 958(a) U.S. shareholder inclusion year. For purposes of the preceding sentence, taxes treated as paid or accrued include foreign income taxes deemed paid under section 960(a)(1) with respect to a section 965(a) inclusion, foreign income taxes deemed paid under section 960(a)(3) (as in effect on December 21, 2017) or section 960(b) (as applicable to taxable years of controlled foreign corporations beginning after December 31, 2017) with respect to distributions of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits, foreign income taxes allocated to an entity under §1.901–2(f)(4),

544

and a distributive share of foreign income taxes paid or accrued by a partnership.

(ii) *Foreign income taxes deemed paid under section 960(a)(3) (as in effect on December 21, 2017).* Foreign income taxes deemed paid by a domestic corporation under section 960(a)(3) with respect to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits include only the foreign income taxes paid or accrued by an upper-tier foreign corporation with respect to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits from a lower-tier foreign corporation. No credit is allowed under section 960(a)(3) or any other section for foreign income taxes that would have been deemed paid under section 960(a)(1) with respect to the portion of a section 965(a) earnings amount that is reduced under §1.965–1(b)(2) or §1.965–8(b).

(iii) *Foreign income taxes deemed paid under section 960(b) (as applicable to taxable years of controlled foreign corporations beginning after December 31, 2017, and to taxable years of United States persons in which or with which such taxable years of foreign corporations end).* Paragraph (c)(1)(i) of this section applies to foreign income taxes deemed paid under section 960(b) (as in effect for a taxable year of a controlled foreign corporation beginning after December 31, 2017, and a taxable year of a United States person in which or with which such controlled foreign corporation's taxable year ends) only if such taxes are deemed paid under §1.960–3(b)(1) with respect to distributions to a domestic corporation of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits. *See also* §1.960–3(c)(2)(i), (ii), (vi), or (vii). Foreign income taxes that would have been deemed paid under section 960(a)(1) (as in effect on December 21, 2017) with respect to the portion of a section 965(a) earnings amount that was reduced under §1.965–1(b)(2) or §1.965–8(b) are not eligible to be deemed paid under section 960(b) and §1.960–3(b) or any other section of the Code.

(2) *Disallowed deduction.* No deduction (including under section 164) is allowed for the applicable percentage of any foreign income taxes treated as paid or accrued with respect to any amount for which a section 965(c) deduction is allowed. Such taxes include foreign income taxes allocated to an entity under §1.901–2(f)(4) and a distributive share of foreign income taxes paid or accrued by a partnership.

(3) *Coordination with section 78*—(i) *In general.* With respect to foreign income taxes deemed paid by a domestic corporation with respect to its section 965(a) inclusion amount for a section 958(a) U.S. shareholder inclusion year, section 78 applies only to so much of such taxes as bears the same proportion to the amount of such taxes as—

(A) The excess of—

(*1*) The section 965(a) inclusion amount for a section 958(a) U.S. shareholder inclusion year, over

(*2*) The section 965(c) deduction amount allowable with respect to such section 965(a) inclusion amount, bears to

(B) Such section 965(a) inclusion amount.

(ii) *Domestic corporation that is a domestic pass-through owner.* With respect to foreign income taxes deemed paid by a domestic corporation attributable to such corporation's domestic pass-through owner share of a section 965(a) inclusion amount of a domestic pass-through entity, section 78 applies only to so much of such taxes as bears the same proportion to the amount of such taxes as the proportion determined under paragraph (c)(3)(i) of this section as applied to the domestic pass-through entity's section 965(a) inclusion amount for a section 958(a) U.S. shareholder inclusion year.

(d) *Applicable percentage*—(1) *In general.* For purposes of this section, except as provided in paragraph (d)(2) and (d)(3) of this section, the term *applicable percentage* means, with respect to a section 958(a) U.S. shareholder and a section 958(a) U.S. shareholder inclusion year, the amount (expressed as a percentage) equal to the sum of—

(i) 0.771 multiplied by the ratio of—

(A) The section 958(a) U.S. shareholder's 8 percent rate amount for the

545

section 958(a) U.S. shareholder inclusion year, divided by

(B) The sum of the section 958(a) U.S. shareholder's 8 percent rate amount for the section 958(a) U.S. shareholder inclusion year plus the section 958(a) U.S. shareholder's 15.5 percent rate amount for the section 958(a) U.S. shareholder inclusion year; plus

(ii) 0.557 multiplied by the ratio of—

(A) The section 958(a) U.S. shareholder's 15.5 percent rate amount for the section 958(a) U.S. shareholder inclusion year, divided by

(B) The amount described in paragraph (d)(1)(i)(B) of this section.

(2) *No section 965(a) inclusion amount.* If a section 958(a) U.S. shareholder does not have an aggregate section 965(a) inclusion amount, the section 958(a) U.S. shareholder's applicable percentage is 55.7 percent.

(3) *Applicable percentage for domestic pass-through owners.* In the case of a domestic pass-through owner with respect to a domestic pass-through entity, the domestic pass-through owner's applicable percentage that is applied to foreign income taxes attributable to the domestic pass-through owner share of the section 965(a) inclusion amount or of distributions of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits is equal to the applicable percentage determined under paragraph (d)(1) or (2) of this section, as applicable, with respect to the domestic pass-through entity.

(4) *Applicable percentage with respect to certain distributions of previously taxed earnings and profits.* In the case of a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits (other than with respect to a section 958(a) U.S. shareholder described in paragraph (d)(2) of this section), the applicable percentage that is applied to foreign income taxes attributable to the distribution is the applicable percentage that applied with respect to the section 958(a) U.S. shareholder and the section 958(a) U.S. inclusion year in which, or with which, the inclusion year of the relevant deferred foreign income corporation ends. For this purpose, the relevant deferred foreign income corporation is the deferred

foreign income corporation with respect to which the section 958(a) U.S. shareholder had the section 965(a) inclusion as a result of which the section 965(a) previously taxed earnings and profits first arose (as described in § 1.965–2(c)) or the section 965(b) previously taxed earnings and profits first arose (as described in § 1.965–2(d)).

[T.D. 9846, 84 FR 1875, Feb. 5, 2019, as amended by T.D. 9882, 84 FR 69120, Dec. 17, 2019; T.D. 9922, 85 FR 72072, Nov. 12, 2020]

### § 1.965–6　Computation of foreign income taxes deemed paid and allocation and apportionment of deductions.

(a) *Scope.* This section provides rules for the computation of foreign income taxes deemed paid and the allocation and apportionment of deductions. Paragraph (b) of this section provides the general rules for the computation of foreign income taxes deemed paid under sections 902 and 960. Paragraph (c) of this section provides rules for allocation and apportionment of expenses. Paragraph (d) of this section provides rules for foreign income taxes associated with hovering deficits.

(b) *Computation of foreign incomes taxes deemed paid*—(1) *In general.* For purposes of determining foreign income taxes deemed paid under section 960(a)(1) with respect to a section 965(a) inclusion attributable to a deferred foreign income corporation that is a member of a qualified group (as defined in section 902(b)(2)), section 902 applies as if the section 965(a) inclusion, translated (if necessary) into the functional currency of the deferred foreign income corporation using the spot rate on December 31, 2017, were a dividend paid by the deferred foreign income corporation. For purposes of computing the amount of foreign income taxes deemed paid under section 960(a)(1), §§ 1.965–2(b), 1.965–5, sections 902 and 960, the regulations under those sections, and this section apply.

(2) *Dividend or inclusion in excess of post-1986 undistributed earnings.* When the denominator of the section 902 fraction is positive but less than the numerator of such fraction, the section 902 fraction is one. When the denominator of the section 902 fraction is zero

546