# No. 25-5694

## In the United States Court of Appeals for the Sixth Circuit

FEDEX CORP. AND SUBSIDIARIES,

*Plaintiff- Appellee,*

v.

UNITED STATES OF AMERICA,

*Defendant- Appellant.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE, No. 2:20-cv-02794 (Hon. Samuel H. Mays)

———————————

**BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF-APPELLEE AND AFFIRMANCE**

———————————

Maria C. Monaghan
Matthew P. Sappington
U.S. CHAMBER
LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

Christopher J. Walker
*Counsel of Record*
UNIVERSITY OF MICHIGAN
SCHOOL OF LAW
701 South State Street
Ann Arbor, MI 48109-3091
(734) 763-3812
chris.j.walker@umich.edu

*Counsel for the Chamber of Commerce of the United States of America*

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 25-5694                    Case Name: FedEx Corp. v. United States

Name of counsel:  Christopher J. Walker

Pursuant to 6th Cir. R. 26.1,  Chamber of Commerce of the United States of America
                                        *Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

No

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
      in the outcome?  If yes, list the identity of such corporation and the nature of the financial
      interest:

No

CERTIFICATE OF SERVICE

I certify that on _____March 29, 2026_____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Christopher J. Walker

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

**TABLE OF CONTENTS**

Page

INTEREST OF *AMICUS CURIAE*.............................................................1

SUMMARY OF ARGUMENT ....................................................................2

ARGUMENT ...............................................................................................5

I.    *Loper Bright* Requires Courts To Exercise Independent Judgment When Interpreting Statutes...................................5

II.   *Loper Bright* Cabins Federal Agencies' Policymaking Discretion..........................................................................8

     A.    Congress Can Specifically Delegate To Agencies Authority To Define Statutory Terms. ..........................9

     B.    When Congress Grants General Rulemaking Authority, Agencies May Be Authorized To Fill Up Details And Regulate Subject To The Limits Of Flexible Terms. ........................................................12

III.   *Loper Bright* Reaffirms Existing Guardrails On Agency Policymaking. ....................................................16

     A.    The APA And *Loper Bright* Require Courts To Fix The Boundaries Of Statutory Delegations. ................17

     B.    The Constitution Requires Courts To Rein In Excessive Statutory Delegations..................................20

     C.    The APA Requires Courts To Ensure Agencies Have Engaged In Reasoned Decisionmaking.............21

IV.   Exercising *Loper Bright* Independent Judgment, The District Court Correctly Concluded That The Statute's Plain Text Forecloses The IRS's Interpretation. ...................23

CONCLUSION .................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Batterton v. Francis*, 432 U.S. 416 (1977) ....................................9, 18, 25

*Chevron v. NRDC*, 467 U.S. 837 (1984)............................................ passim

*FCC v. Consumers' Research,* 606 U.S. 656 (2025) ...............................21

*Gundy v. United States*, 588 U.S. 128 (2019) ..................................14, 15

*J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394 (1928)...........20

*Kmart Corp. v. Cartier, Inc.*, 486 U.S. 281 (1988)...............................6, 19

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)..........passim

*Michigan v. EPA*, 576 U.S. 743 (2015) ......................................15, 19, 31

*Motor Vehicles Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29 (1983) ........................................................................................22

*Wayman v. Southard*, 23 U.S. 1 (1825) ...............................................14

*West Virginia v. EPA*, 597 U.S. 697 (2022) .........................................21

**Statutes**

26 U.S.C. § 56A........................................................................................28

26 U.S.C. § 7805.................................................................................13, 25

26 U.S.C. § 902.................................................................................26, 27

26 U.S.C. § 960 (2016) ...................................................................... passim

26 U.S.C. § 965........................................................................................ passim

29 U.S.C. § 213.................................................................................9, 11, 25

Page(s)

42 U.S.C. § 5846.................................................................9, 11, 25

42 U.S.C. § 607 (1977) ....................................................9, 10, 18, 25

42 U.S.C. § 7412................................................................ 15, 19, 20, 31

**Other Authorities**

Antonion Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ........................................................................6, 7

Cass R. Sunstein, *Nondelegation Canons*, 67 U. Chi. L. Rev. 315 (2000) ........................................................................................21

Henry P. Monaghan, Marbury *and the Administrative State*, 83 Colum. L. Rev. 1 (1983) ..............................................................17

Jennifer L. Selin & David E. Lewis, *Sourcebook of United States Executive Agencies* (Admin. Conf. of U.S., 2d ed. 2018) ....................12

U.S. Chamber *Amicus* Br., *Coca-Cola Co. v. Comm'r*, No. 24–13470 (11th Cir., filed Mar. 18, 2025) ...........................................................2

U.S. Chamber *Amicus* Br., *Lesko v. United States*, No. 23–1823 (Fed. Cir., filed May 29, 2025) ...............................................................2

U.S. Chamber *Amicus* Br., *Relentless v. Dep't of Commerce*, No. 25–1845 (1st Cir., filed Jan. 23, 2026) ...........................................................2

U.S. Chamber Supp. *Amicus* Br., *3M Co. v. Comm'r*, No. 23–3772 (8th Cir., filed Oct. 2, 2024) ...............................................................2

## INTEREST OF *AMICUS CURIAE**

The Chamber of Commerce of the United States of America (Chamber) is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus* briefs in cases, like this one, that raise issues of concern to the nation's business community.

In *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412–13 (2024), the Supreme Court eliminated *Chevron* deference and held that courts must exercise independent judgment when reviewing agency statutory interpretations. Given the breadth of its membership and its long

---

* Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *amicus* states that no counsel for any party authored this brief in whole or in part and no entity or person, aside from *amicus curiae*, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. The parties consent to the filing of this brief.

history of challenging regulatory overreach, the Chamber has a strong interest in how courts review agency statutory interpretations and is uniquely positioned to speak to the effects of *Loper Bright.* Indeed, the Chamber has filed numerous *amicus* briefs on the impact of *Loper Bright* in courts across the country—including in cases involving tax issues like the one here. *See, e.g.*, U.S. Chamber *Amicus* Br., *Relentless v. Dep't of Commerce*, No. 25–1845 (1st Cir., filed Jan. 23, 2026); U.S. Chamber *Amicus* Br., *Lesko v. United States*, No. 23–1823 (Fed. Cir., filed May 29, 2025); U.S. Chamber *Amicus* Br., *Coca-Cola Co. v. Comm'r*, No. 24–13470 (11th Cir., filed Mar. 18, 2025); U.S. Chamber Supp. *Amicus* Br., *3M Co. v. Comm'r*, No. 23–3772 (8th Cir., filed Oct. 2, 2024).

## SUMMARY OF ARGUMENT

In *Loper Bright*, the Supreme Court decisively rejected *Chevron* deference. Under that doctrine, courts were required to defer to a federal agency's interpretation of ambiguous statutory language so long as that interpretation was "reasonable." *Chevron v. NRDC*, 467 U.S. 837, 842–43 (1984). Now, courts must exercise independent judgment to determine the meaning of statutes that govern federal agencies. That means courts

must conduct *de novo* review and use all of the traditional tools of statutory interpretation to arrive at the "best" reading of the statute.

In some instances, the best reading could be that Congress has authorized the agency to exercise a degree of policymaking discretion. *Loper Bright* recognizes two such categories: (1) when Congress specifically instructs the agency to define or give meaning to a statutory term; and (2) when both (a) Congress grants the agency general rulemaking authority, and (b) the agency "fills up the details" of a statutory scheme or regulates subject to the limits imposed by a statutory term that leaves the agency with flexibility, such as "appropriate" or "reasonable." In these circumstances, the agency may not rewrite the statute. And the reviewing court must still ensure the delegation is consistent with the Constitution, the agency's policymaking does not exceed the boundaries of the statutory delegation, and the agency's policymaking complies with the reasoned-decisionmaking requirements of the Administrative Procedure Act (APA).

Applying this framework, the district court correctly invalidated an Internal Revenue Service (IRS)[1] regulation purporting to interpret the Tax Code, as amended by the Tax Cuts and Jobs Act of 2017, to prohibit Plaintiff FedEx from receiving credit for foreign taxes paid to offset earnings. In exercising independent judgment, the district court concluded that this is not a case in which Congress has delegated policymaking discretion to the agency. The Tax Code does not specifically instruct the IRS to define or give meaning to the relevant statutory terms. And although the Tax Code grants the IRS general rulemaking authority, there are no relevant details to fill up in the statutory scheme, which provides for the foreign tax credits at issue here. Nor does the statute use open-ended terms that leave the IRS with flexibility to regulate subject to the limits of those terms. Instead, the district court held that the statute is unambiguous and that the IRS regulation purported to rewrite at least two different sections of the Tax Code. *See* Partial Summ. J. Order, at 23–25, 28–29 (Mar. 31, 2023) (SJ Order).

---

[1] For ease of reference, *amicus* refers to the agency at issue as the IRS, which interchangeably refers to the Commissioner of Internal Revenue, Department of Treasury, Internal Revenue Service, and Secretary of Treasury.

This Court should affirm the district court's conclusion that the IRS's interpretation contradicts the best—indeed, the only plausible—interpretation of the statute and that FedEx is entitled to the tax credits at issue in this refund lawsuit. This affirmance would have been an easy one when *Chevron* deference was the governing framework, and it becomes even easier after *Loper Bright*. The IRS does not have the authority to rewrite unambiguous statutory terms in an effort to generate more tax revenue beyond what Congress has authorized in the Tax Code.

## ARGUMENT

### I. *Loper Bright* Requires Courts To Exercise Independent Judgment When Interpreting Statutes.

For decades, the Supreme Court had instructed courts to defer to agencies' reasonable interpretations of ambiguous statutes they administer. *See Chevron*, 467 U.S. at 842–43. In *Loper Bright*, however, the Court eliminated *Chevron* deference. Judicial review now requires courts to "exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright*, 603 U.S. at 412. In other words, courts must apply the traditional tools of statutory interpretation to determine the statute's best meaning.

Arriving at the best interpretation—or "fair reading," as Justice Scalia would frame it—involves "determining the application of a governing text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 33 (2012). Under the traditional tools of statutory interpretation, courts begin with the statutory text. "Words are to be understood in their ordinary, everyday meanings," Justice Scalia explained, "unless the context indicates that they bear a technical sense." *Id.* at 69.

This independent judgment often involves the application of a collection of semantic, contextual, syntactic, structural, and substantive canons of statutory interpretation jurists have recognized and developed over the centuries. *See id.* at 53–339 (chronicling 57 distinct canons of statutory interpretation). These interpretive tools, or canons, do not just focus myopically on the statutory terms that are most directly in dispute. "In ascertaining the plain meaning of the statute," the Supreme Court has instructed that "the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Kmart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988); *see also*

Scalia & Garner, *supra*, at 167–69 (classifying this interpretive tool as "the whole-text canon").

In *Loper Bright*, the Supreme Court referred to another interpretive tool that courts have applied in the context of statutes that have been interpreted by federal agencies. Eight decades ago in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), the Supreme Court suggested that courts should give "weight" to an agency interpretation based on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* at 140. In *Loper Bright*, the Court was careful to frame *Skidmore* as a form of "respect" based on the agency's power to persuade. *See, e.g.*, 603 U.S. at 412–13 ("Careful attention to the judgment of the Executive Branch may help inform that inquiry."); *id.* at 403 ("The better presumption is therefore that Congress expects courts to do their ordinary job of interpreting statutes, with due respect for the views of the Executive Branch."). In other words, sometimes the government may have views that are helpful to understand a statutory framework, perhaps due to its informed and contemporaneous understanding of the meaning of the statute at its

enactment or its specialized expertise implementing a complex statutory scheme. When the government's views are thoughtful and well informed, they may well carry significant respect.

In sum, the ultimate objective of courts exercising independent judgment is to "use every tool at their disposal to determine the *best* reading of the statute and resolve the ambiguity"—"'the reading the court would have reached' if no agency were involved." *Loper Bright*, 603 U.S. at 400 (quoting *Chevron*, 467 U.S. at 843 n.11). Gone are the days of *Chevron* deference when statutory ambiguity "somehow relieved [courts'] obligation to independently interpret the statutes." *Id.*

## II. *Loper Bright* Cabins Federal Agencies' Policymaking Discretion.

*Loper Bright* rejects *Chevron*'s holding that statutory ambiguity authorizes agencies to exercise discretion. As discussed above, statutory ambiguity calls for judicial interpretation, not agency policymaking. Thus, if agencies are to exercise policymaking discretion, it must be because the statute's best reading directs them to do so. *Loper Bright* identifies two categories of statutory language—specific and general—that can mean Congress has delegated a degree of policymaking authority to an agency.

**A. Congress Can Specifically Delegate To Agencies Authority To Define Statutory Terms.**

*Loper Bright* recognizes that Congress may vest in "an agency the authority to give meaning to a particular statutory term." 603 U.S. at 394. The Court's citations are instructive. *See id.* at 395 & n.5 (citing *Batterton v. Francis*, 432 U.S. 416, 425 (1977); 29 U.S.C. § 213(a)(15); 42 U.S.C. § 5846(a)(2)).

Consider *Batterton*. In this pre-*Chevron* case, the Supreme Court assessed the meaning of "unemployment" in a section of the Social Security Act. *See* 432 U.S. at 418–19. The Court explained that "[o]rdinarily, administrative interpretations of statutory terms are given important but not controlling significance"; they are entitled to "mere deference or weight." *Id.* at 424, 425. The provision at issue in *Batterton*, however, did not raise an ordinary statutory-interpretation question. Instead, "Congress in [42 U.S.C. § 607(a)] expressly delegated to the Secretary the power to prescribe standards for determining what constitutes 'unemployment' for purposes of AFDC-UF eligibility." *Id.* at 425. The provision provided that "[t]he term 'dependent child' shall . . . include a needy child . . . who has been deprived of parental support or care by reason of the unemployment (*as determined in accordance with standards*

9

*prescribed by the Secretary*) of his father . . . ." *Id.* at 418 n.2 (quoting 42 U.S.C. § 607 (1977)) (emphasis added). Because of this specific delegation, "Congress entrusts to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term." *Id.* at 425.

To be sure, *Batterton* was decided in a different era of statutory interpretation—nearly half a century ago and some seven years before *Chevron* itself. As such, the Supreme Court's use of "interpret" there was understandably antiquated. When Congress has specifically charged an agency to define terms in a statute, the agency's subsequent definition is not an act of interpretation, but one of policymaking. *Loper Bright* appreciates this nuance, by reframing the statutory provision in *Batterton* as an example of Congress's "'expressly delegat[ing]' to an agency the authority to *give meaning* to a particular statutory term." 603 U.S. at 394–95 (quoting *Batterton*, 423 U.S. at 425) (emphasis added).

*Loper Bright* invokes two other examples of specific delegations; these examples similarly concern instances where Congress has specifically and expressly tasked the agency with defining certain terms in a statute. *See* 603 U.S. at 395 n.5. The Court cited a provision of the Fair Labor Standards Act that exempts "any employee employed in domestic

service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (*as such terms are defined and delimited by regulations of the Secretary*)." 29 U.S.C. § 213(a)(15) (emphasis added). And it cited a provision of the Atomic Energy Act that requires notification to the Nuclear Regulatory Commission when a facility or activity regulated under the statute "contains a defect which could create a substantial safety hazard, *as defined by regulations which the Commission shall promulgate.*" 42 U.S.C. § 5846(a)(2) (emphasis added)).

It is important to underscore what *Loper Bright* does *not* categorize as a specific delegation to define statutory terms: provisions that generally authorize the agency to engage in rulemaking or adjudicative activities. When Congress wants to authorize an agency to give meaning to statutory language, it must specifically direct the agency to define, or give meaning to, certain terms. And the agency must follow the procedures Congress requires—such as rulemaking or formal adjudication—to promulgate those definitions.

A contrary holding would effectively gut *Loper Bright*'s overruling of *Chevron* deference. Congress has given most agencies general

11

rulemaking authority. *See* Jennifer L. Selin & David E. Lewis, *Sourcebook of United States Executive Agencies* 118–19 (Admin. Conf. of U.S., 2d ed. 2018). If that were enough to justify judicial deference to an agency's reading of a statute, courts would not be permitted to exercise "independent judgment" in most cases. That is not what the Supreme Court intended when it identified the narrow circumstances in which courts should respect the discretion statutes provide to agencies. Moreover, reading a general rulemaking provision in this way would effectively eliminate *Loper Bright*'s specific delegation category as well as render superfluous each statutory provision in which Congress has specifically delegated definitional authority to an agency.

**B. When Congress Grants General Rulemaking Authority, Agencies May Be Authorized To Fill Up Details And Regulate Subject To The Limits Of Flexible Terms.**

The fact that general rulemaking provisions do not authorize agencies to define statutory terms does not mean those provisions are irrelevant after *Loper Bright*. They simply serve a different purpose: giving agencies authority to "fill up the details" of a statutory scheme and to "regulate subject to the limits imposed by a term or phrase that 'leaves

agencies with flexibility,' such as 'appropriate' or 'reasonable.'" *Loper Bright*, 603 U.S. at 395 (citations omitted).

1.     **Fill Up The Details.** When Congress enacts a regulatory scheme, it typically charges an agency with implementing Congress's policy decisions. That implementation often requires agencies to fill up the minor details in the statutory scheme. To vest an agency with this implementation authority, Congress includes a general rulemaking provision in the statute. *See, e.g.*, 26 U.S.C. § 965(o) (granting the IRS authority to "prescribe such regulations or other guidance as may be necessary or appropriate to carry out the provisions of this section, including . . . regulations or other guidance to prevent the avoidance of the purposes of this section . . . ."); 26 U.S.C. § 7805(a) (granting the IRS authority to "prescribe all needful rules and regulations for the enforcement of this title"). *Loper Bright* recognizes that when Congress has granted an agency general rulemaking authority, a court exercising independent judgment may conclude—after looking at the structure and design of the statute as a whole—that the statute's best interpretation authorizes the agency to fill up certain implementation details. *See Loper Bright*, 603 U.S. at 394–96.

With respect to filling up the details, *Loper Bright* refers to *Wayman v. Southard*, 23 U.S. 1 (1825). As Justice Gorsuch has explained, "[i]n *Wayman v. Southard*, this Court upheld a statute that instructed the federal courts to borrow state-court procedural rules but allowed them to make certain 'alterations and additions.'" *Gundy v. United States*, 588 U.S. 128, 157 (2019) (Gorsuch, J., dissenting). Since "Congress had announced the controlling general policy when it ordered federal courts to follow state procedures," Justice Gorsuch observed, "the residual authority to make 'alterations and additions' did no more than permit courts to fill up the details." *Id.* at 157–58. Or as the *Wayman* Court put it, the Constitution draws a line between "important subjects, which must be entirely regulated by the legislature itself, from those of less interest, in which a general provision may be made, and power given to those who are to act under such general provisions to fill up the details." *Wayman*, 23 U.S. at 43.

In his *Gundy* dissent, Justice Gorsuch provided several other helpful examples of statutes authorizing agencies to fill up the details:

> In *In re Kollock*, for example, the Court upheld a statute that assigned the Commissioner of Internal Revenue the responsibility to design tax stamps for margarine packages. Later still, and using the same logic, the Court sustained other and far

more consequential statutes, like a law authorizing the Secretary of Agriculture to adopt rules regulating the "use and occupancy" of public forests to protect them from "destruction" and "depredations." Through all these cases, small or large, runs the theme that Congress must set forth standards "sufficiently definite and precise to enable Congress, the courts, and the public to ascertain" whether Congress's guidance has been followed.

588 U.S. at 158 (Gorsuch, J., dissenting) (footnotes omitted).

From these various examples it becomes clear that "fill up the details" delegation does not concern interpreting or providing meaning to particular terms in a statute. Instead, this category involves filling the interstitial gaps in a statutory scheme.

**2. Flexible Terms.** *Loper Bright* also recognizes that Congress sometimes uses capacious statutory terms like "appropriate" or "reasonable" that "'leave[] agencies with flexibility.'" 603 U.S. at 395 (quoting *Michigan v. EPA*, 576 U.S. 743, 752 (2015)).

For example, the Court referred to a provision of the Clean Air Act, construed in *Michigan v. EPA*, that directs the EPA to regulate power plants only "if the Administrator finds such regulation is *appropriate and necessary*." 42 U.S.C. § 7412(n)(1)(A) (emphasis added). With respect to "appropriate and necessary," the Court has observed that "[o]ne does not need to open up a dictionary in order to realize the capaciousness of this

phrase." *Michigan v. EPA*, 576 U.S. at 752. In other words, the best interpretation of "appropriate and necessary" is that Congress has delegated a degree of policymaking authority to the agency in deciding whether to regulate, subject to a court's independent judgment of the limits of what the phrase "appropriate and necessary" means.

## III. *Loper Bright* Reaffirms Existing Guardrails On Agency Policymaking.

If a court determines that Congress has delegated policymaking authority to an agency—whether by directing the agency to define a statutory term, to fill up the details of a statutory scheme, or to regulate subject to limits like "reasonable" or "appropriate"—that is not the end of the matter. "When the best reading of a statute is that it delegates discretionary authority to an agency," *Loper Bright* reaffirms, "the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." 603 U.S. at 395. Accordingly, the court must enforce the guardrails of both the Constitution and all relevant statutory requirements.

**A. The APA And *Loper Bright* Require Courts To Fix The Boundaries Of Statutory Delegations.**

The APA commands courts to set aside an agency action if it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). Throughout its decision in *Loper Bright*, the Court also reinforced that the independent judgment inquiry extends beyond courts' determining the statute's best meaning. When a court determines the best interpretation is that Congress has delegated a degree of discretion to the agency, the next step is for the court to "exercise [] independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright*, 603 U.S. at 412.

In articulating this principle, the Court invoked Henry Monaghan's assertion that courts must "fix the boundaries of delegated authority." *Loper Bright*, 603 U.S. at 395 (quoting Henry P. Monaghan, Marbury *and the Administrative State*, 83 Colum. L. Rev. 1, 27 (1983)) (cleaned up). As Professor Monaghan explained, this "judicial role" involves courts "defining the range of permissible criteria" and "specify[ing] what the statute cannot mean, and some of what it must mean, but not all that it does mean." Monaghan, *supra*, at 27.

Revisiting *Loper Bright*'s examples of statutory delegations helps underscore that judicial role. With respect to specific delegations for agencies to define statutory terms, agencies' discretion is not boundless. For instance, in *Batterton*, if the agency had defined "unemployment" to include a parent who had a full-time, full-salaried job, a court would have to exercise independent judgment to declare that the agency's policymaking exceeded its statutory authority. *See Batterton*, 432 U.S. at 418 n.2 (providing that "[t]he term 'dependent child' shall . . . include a needy child . . . who has been deprived of parental support or care by reason of the unemployment . . . of his father . . . ." (quoting 42 U.S.C. § 607 (1977))). The Supreme Court said as much in *Batterton*: "Of course, the Secretary's statutory authority to prescribe standards is not unlimited. He could not, for example, adopt a regulation that bears no relationship to any recognized concept of unemployment or that would defeat the purpose of the AFDC-UF program." *Id.* at 428.

The same is true with respect to delegations based on general rulemaking authority. Applying the traditional tools of statutory interpretation, courts must ensure that agencies use their general rulemaking authority to truly fill up minor implementation details in their statutory

scheme and that such interstitial gap-filling is permissible under "the particular statutory language at issue, as well as the language and design of the statute as a whole." *Kmart*, 486 U.S. at 291.

When it comes to flexible statutory terms, the court must exercise independent judgment to ensure the agency "regulate[s] subject to the limits imposed by a term or phrase." *Loper Bright*, 603 U.S. at 395. *Loper Bright*'s invocation of *Michigan v. EPA* is instructive. *See id.* In *Michigan v. EPA*, the Supreme Court reviewed a statutory delegation that commanded the "EPA to add power plants to [a regulatory] program if (but only if) the Agency finds regulation 'appropriate and necessary.'" 576 U.S. at 752 (quoting 42 U.S.C. § 7412(n)(1)(A)). The Court concluded that the term "appropriate" is capacious and "leaves agencies with flexibility," but that "an agency may not 'entirely fai[l] to consider an important aspect of the problem' when deciding whether regulation is appropriate." *Id.* (quoting *Motor Vehicles Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The Court held that, "[r]ead naturally in the present context, the phrase 'appropriate and necessary' requires at least some attention to cost." *Id.* It was thus "unreasonable for EPA to read

19

§ 7412(n)(1)(A) to mean that cost is irrelevant to the initial decision to regulate power plants." *Id.* at 759.

**B.     The Constitution Requires Courts To Rein In Excessive Statutory Delegations.**

*Loper Bright* also repeatedly underscores that courts should ensure that congressional delegations of policymaking discretion are "subject to constitutional limits." 603 U.S. at 395; *accord id.* at 404 (same); *id.* at 413 ("consistent with constitutional limits"); *see also* 5 U.S.C. § 706(2)(B) (requiring a reviewing court under the APA to set aside an agency action if it is "contrary to constitutional right, power, privilege, or immunity"). That means courts must assess whether, among other things, the statute delegating policymaking discretion to the agency complies with the non-delegation doctrine.

The nondelegation doctrine provides that Congress cannot delegate its legislative power to another entity. Accordingly, the Supreme Court has held that, when Congress delegates policymaking authority to federal agencies, "Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform." *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928).

In addition to the nondelegation doctrine, courts have recognized several canons of statutory interpretation—"nondelegation canons"—that construe statutes more narrowly to avoid excessive delegations. *See generally* Cass R. Sunstein, *Nondelegation Canons*, 67 U. Chi. L. Rev. 315 (2000). The major questions doctrine may be the most recently identified variant of such a canon. *See, e.g.*, *West Virginia v. EPA*, 597 U.S. 697, 723 (2022). Indeed, in *FCC v. Consumers' Research* last Term, Justice Kavanaugh observed that "many of the broader structural concerns about expansive delegations have been substantially mitigated by this Court's recent case law in related areas—in particular (i) the Court's rejection of so-called *Chevron* deference and (ii) the Court's application of the major questions canon of statutory interpretation." 606 U.S. 656, 705 (2025) (Kavanaugh, J., concurring); *accord id.* at 745 (Gorsuch, J., dissenting) ("To its credit, the Court has sometimes mitigated its failure to police legislative delegations by deploying other tools, like the major questions doctrine and *de novo* review of statutory terms . . . .").

C. **The APA Requires Courts To Ensure Agencies Have Engaged In Reasoned Decisionmaking.**

As *Loper Bright* underscores, reviewing courts must also "ensure that agencies exercise their discretion consistent with the APA." 603 U.S.

at 404. When it comes to agency policymaking, the APA commands courts to set aside an agency action if, among other things, it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The Supreme Court has explained that, to survive arbitrary-and-capricious review, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (1983) (internal quotation marks omitted). Articulating what has been coined the APA's reasoned-decisionmaking requirement, the *State Farm* Court identified a number of ways in which an agency action would be arbitrary and capricious: "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*; *see also Loper Bright*, 603 U.S. at 395 (discussing this "reasoned decisionmaking" requirement and citing *State Farm*).

## IV. Exercising *Loper Bright* Independent Judgment, The District Court Correctly Concluded That The Statute's Plain Text Forecloses The IRS's Interpretation.

Under *Loper Bright*, a court must exercise independent judgment to arrive at the statute's "best reading." 603 U.S. at 400. As detailed in Part I, this involves "us[ing] every tool at [this Court's] disposal to determine the best reading of the statute and resolve the ambiguity." *Id*. That toolkit consists of all of the traditional tools of statutory interpretation, including the text, structure, and design of the statute as well as the various interpretive canons. That also includes giving "due respect for the views of the Executive Branch," *Loper Bright*, 603 U.S. at 403, based on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140.

*Skidmore* respect has no force here, and the IRS understandably does not invoke it in this appeal. Importantly, this case also does not implicate any of three exceptions the *Loper Bright* Court identified for policymaking discretion, which are detailed in Part II.

**1. Specific Definitional Authority.** In enacting 26 U.S.C. § 960 (2016), Congress did not "expressly delegate to [the IRS] the authority to give meaning to [any] particular statutory term." *Loper Bright*, 603 U.S. at 394–95 (cleaned up). The statutory text in Section 960 reads in relevant part:

> Any portion of a distribution from a foreign corporation received by a domestic corporation which is excluded from gross income under section 959(a) shall be treated by the domestic corporation as a dividend, solely for purposes of taking into account under section 902 any . . . taxes paid to any foreign country . . . , on or with respect to the accumulated profits of such foreign corporation from which such distribution is made, which were not deemed paid by the domestic corporation under [section 960(a)(1)] for any prior taxable year.

26 U.S.C. § 960(a)(3) (2016). Congress similarly did not delegate definitional authority to the IRS in 26 U.S.C. § 965, the section on which the IRS relies to rewrite Section 960. *See* 26 U.S.C. § 965(b)(4)(A) ("For purposes of applying section 959 . . . , an amount equal to such shareholder's reduction under paragraph (1) which is allocated to such deferred foreign income corporation under this subsection shall be treated as an amount which was included in the gross income of such United States shareholder under section 951(a).").

As detailed in Part II.A, for this to be a specific delegation to give meaning to a statutory term, Congress would have needed to include a command that certain terms in the statute shall be defined by the agency. *See Loper Bright*, 603 U.S. at 394–95 & n.5; *see also Batterton*, 432 U.S. at 418 n.2 ("as determined in accordance with standards prescribed by the Secretary" (quoting 42 U.S.C. § 607(a) (1977))); 29 U.S.C. § 213(a)(15) ("as such terms are defined and delimited by regulations of the Secretary"); 42 U.S.C. § 5846(a)(2) ("as defined by regulations which the Commission shall promulgate").[2] Congress did not do so in Section 960, Section 965, or any other section of the Tax Code relevant to this case.

The three statutory provisions on which the IRS relies do not constitute such specific delegations. The first provision, 26 U.S.C. § 7805(a), is a general rulemaking provision that grants the IRS authority to "prescribe all needful rules and regulations for the enforcement of this title." Such a general rulemaking provision is necessary for an agency to have

---

[2] As discussed in Part III.A, even when Congress specifically delegates definitional authority to an agency, the agency's discretion is not boundless. For instance, the agency cannot "adopt a regulation that bears no relationship to any recognized concept of [the statutory term] or that would defeat the purpose of the [statutory regime]." *Batterton*, 432 U.S. at 428.

a delegation of policymaking discretion to fill up the details in a statutory scheme or to regulate subject to the limits of a flexible term. But *Loper Bright* makes clear that Congress must specifically charge the agency to define, or give meaning to, specific statutory terms in Section 960 before a court may conclude that the agency has this kind of definitional authority. Section 7805(a) does no such thing.

The same is true of the second and third statutory provisions the IRS identifies, 26 U.S.C. § 965(o) and 26 U.S.C. § 902(c)(8). Section 965(o) authorizes the IRS to "prescribe such regulations or other guidance as may be necessary or appropriate to carry out the provisions of this section, including . . . regulations or other guidance to prevent the avoidance of the purposes of this section, including through a reduction in earnings and profits, through changes in entity classification or accounting methods, or otherwise." Again, this general rulemaking provision in no way expressly authorizes the IRS to define any terms in Section 960 or elsewhere. Moreover, Section 965's general rulemaking provision *only* applies to "prescribe such regulations . . . to carry out the provisions of *this*

*section*"—Section 965—and not to the substantive section at issue in this case, Section 960.[3]

Section 902(c)(8), by contrast, does apply to Section 960. It authorizes the IRS to issue "such regulations as may be necessary or appropriate to carry out the provisions of this section *and section 960 . . . .*" 26 U.S.C. § 902(c)(8) (emphasis added); *see* U.S. Br. 44 n.8 (citing this provision in a footnote). Even though this general rulemaking provision refers to Section 960, Section 902(c)(8) does not specifically delegate definitional authority to the agency. To the contrary, as detailed in Part II, Congress expressly limits the IRS's policymaking discretion to filling up the statutory details or regulating subject to the limits of flexible terms in the relevant sections of the Tax Code. That should be the end of the matter.[4]

---

[3] As FedEx explains in its opening brief, the IRS's invocation of Section 965(g) to rewrite Section 960 or any other part of the Tax Code similarly fails. *See* FedEx. Br. 51–54.

[4] The current version of Section 960 now includes a general rulemaking provision. *See* 26 U.S.C § 960(f). This provision does not apply to the taxes at issue in this case. In all events, like the three general rulemaking provisions the IRS invokes here, Section 960(f) does not delegate the IRS any definitional authority. It merely authorizes the IRS to fill up the implementation details in Section 960.

Congress knows how to specifically delegate definitional authority to the IRS. Take, for instance, 26 U.S.C. § 56A, which addresses corporations' adjusted financial statement income. Section 56A, like Section 965, has a general rulemaking provision. *See* 26 U.S.C. § 56A(e) (authorizing the IRS to "provide for such regulations and other guidance as necessary to carry out the purposes of this section, including regulations and other guidance relating to the effect of the rules of this section on partnerships with income taken into account by an applicable corporation"). But Section 56A also vests the IRS with policymaking authority to give meaning to certain statutory terms. After detailing how to calculate adjusted financial statement income, Section 56A(c)(15) specifically grants the IRS the "secretarial authority" to "issue regulations or other guidance to provide for *such adjustments* to adjusted financial statement income as the Secretary determines necessary to carry out the purposes of this section, including adjustments—(A) to prevent the omission or duplication of any item, and (B) to carry out the principles of [other parts of the Tax Code]." 26 U.S.C. § 56A(c)(15).

In other words, the IRS has the definitional authority to give meaning to make "adjustments to adjusted financial statement income" as

28

necessary to implement the statute. The IRS points to no similar specific delegations in the Tax Code relating to Section 960 or Section 965. That is because there is none.

**2. Fill Up the Details.** While the IRS has authority under both of these statutes to fill up certain details in the regulatory scheme, defining or redefining the statutory terms in Section 960 or Section 965 does not fall within the *Loper Bright* "fill up the details" category. As detailed in Part II.B.1, "fill up the details" delegation involves filling interstitial gaps. It does not concern fixing the meaning of particular terms in a statute, much less issuing a regulation that contradicts unambiguous statutory text as the IRS did here. Congress knows how to specifically delegate such definitional authority to an agency. And the Supreme Court made clear in *Loper Bright* that Congress has to do so explicitly in order to assign that task to the agency rather than a reviewing court.

This remains true even if statutory terms are susceptible to more than one meaning, which the district court found was not the case with respect to Section 960(a)(3) (and Section 965(b)(4)(A)). *See* Partial Summ. J. Order at 28–29 (Feb. 13, 2025). If this Court were to hold that giving meaning to ambiguous statutory terms amounts to "filling up the

details," it would reinvent *Chevron* deference under a different name. That would conflict with the Supreme Court's holding in *Loper* Bright.

Faithfully following *Loper Bright*'s command to exercise independent judgment and apply all of the tools of statutory interpretation, no interpretation—let alone the best interpretation—of the statute's substantive provisions authorizes the IRS to redefine Section 960 to preclude FedEx's claim for foreign tax credits. *See* SJ Order at 10–29 (detailing why the statute unambiguously precludes the IRS's interpretation); *accord* FedEx. Br. 38–43. Nothing in the Tax Code or the Supreme Court's instructions in *Loper Bright* authorizes the IRS to rewrite Section 960 or any other relevant provisions of the Tax Code.

**3. Flexible Terms.** The IRS has not identified any flexible term in the statute's substantive provisions that could implicitly delegate policy-making authority to the IRS. Instead, the IRS focuses on the general rulemaking provision's charge to "prevent the avoidance of the purposes of this section," 26 U.S.C. § 965(o), arguing that this provision authorizes the IRS to rewrite the relevant statutory terms in Section 965 and, in turn, in Section 960. This argument would not have worked in the prior *Chevron* regime, and it certainly does not work under *Loper Bright*.

30

As discussed above, this general rulemaking provision does not even apply to Section 960—the relevant substantive section of the Tax Code—but only Section 965. But even if it did, this is still a category error. When *Loper Bright* recognizes that Congress at times may implicitly delegate policymaking authority to an agency "to regulate subject to the limits imposed by a term or phrase that '"leaves agencies with flexibility,"'" 603 U.S. at 395 (quoting *Michigan v. EPA*, 576 U.S. at 752), the Supreme Court was not referring to general rulemaking provisions—but to specific grants of substantive regulatory authority. *Loper Bright*'s invocation of *Michigan v. EPA* is instructive. There, the Supreme Court reviewed a substantive provision of the Clean Air Act that did not authorize the agency to "regulate electric utility steam generating units" unless the agency "finds such regulation is appropriate and necessary after considering the results of the study required by this subparagraph." 42 U.S.C. § 7412(n)(1)(A); *see also Michigan v. EPA*, 576 U.S. at 771–773 (analyzing "appropriate and necessary" language).

General rulemaking provisions like Section 902(c)(8), Section 965(o), and Section 7805(a), without more, cannot be sufficient to allow the IRS to essentially rewrite the statute in the guise of filling up minor

31

implementation details. As discussed in Part II.B, Congress has given most agencies general rulemaking authority. If each of those general rulemaking provisions authorize agencies to define (or, worse, redefine) statutory terms, the IRS's approach would effectively gut *Loper Bright*'s overruling of *Chevron* deference. This case does not involve any statutory delegations. It involves ordinary statutory interpretation where the reviewing court must exercise independent judgment to arrive at the statute's best interpretation. Here, the district court correctly concluded that the statute unambiguously precludes the IRS's interpretation and that, accordingly, FedEx is entitled to the tax credits it seeks in this refund lawsuit. That judgment should be affirmed.

**CONCLUSION**

For these reasons, the Court should affirm the district court.

Respectfully submitted,

March 29, 2026

Maria C. Monaghan
Matthew P. Sappington
U.S. CHAMBER
LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

/s/ Christopher J. Walker

Christopher J. Walker
  *Counsel of Record*
UNIVERSITY OF MICHIGAN
SCHOOL OF LAW
701 South State Street
Ann Arbor, MI 48109-3091
(734) 763-3812
chris.j.walker@umich.edu
  *\* Institutional affiliation is provided for identification purposes only. Professor Walker is Of Counsel and Consultant at the U.S. Chamber Litigation Center.*

*Counsel for the Chamber of Commerce of the United States of America*

# CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Fed. R. App. P. 32(g)(1) that the foregoing brief has been prepared using proportionally spaced typeface and includes 6,447 words according to the Microsoft Word count function, excluding those materials not required to be included under Fed. R. App. P. 32(f).

March 29, 2026

/s/ Christopher J. Walker
Christopher J. Walker
  *Counsel of Record*
UNIVERSITY OF MICHIGAN
SCHOOL OF LAW
701 South State Street
Ann Arbor, MI 48109-3091
(734) 763-3812
chris.j.walker@umich.edu

# CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I further certify that counsel for the parties in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

March 29, 2026

/s/ Christopher J. Walker
Christopher J. Walker
   *Counsel of Record*
UNIVERSITY OF MICHIGAN
SCHOOL OF LAW
701 South State Street
Ann Arbor, MI 48109-3091
(734) 763-3812
chris.j.walker@umich.edu