# No. 25-5694

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

**FEDEX CORPORATION, and Subsidiaries**

**Plaintiff-Appellee**

v.

**UNITED STATES OF AMERICA**

**Defendant-Appellant**

---

## ON APPEAL FROM THE JUDGMENT OF
## THE WESTERN DISTRICT OF TENNESSEE

---

## REPLY BRIEF FOR THE APPELLANT

---

BRETT A. SHUMATE
  *Assistant Attorney General*
JOSHUA WU
  *Deputy Assistant Attorney General*

CLINT A. CARPENTER        (202) 514-4346
NORAH E. BRINGER          (202) 307-6224
  *Attorneys, Tax Litigation Branch*
  *Civil Division, U.S. Department of Justice*
  *Post Office Box 502, Washington, D.C. 20044*

-i-

# TABLE OF CONTENTS

**Page**

Table of contents..............................................................................i

Table of authorities .................................................................... iii

Glossary ..........................................................................................vii

Introduction ................................................................................... 1

Argument ........................................................................................5

The statutory scheme does not clearly allow FTCs for Offset Earnings Foreign Taxes, but it does clearly authorize Treasury to issue the disallowance rule................5

A.   The disallowance rule does not rewrite any statute; it carries one out ...............................................6

    1.   Congress directed Treasury to protect section 965's "purposes" .....................................................7

    2.   The disallowance rule is within section 965(o)'s delegation ..................................................9

    3.   The disallowance rule does not "rewrite" anything ............................................................12

    4.   The disallowance rule affects only Offset Earnings............................................................15

B.   The statutes governing FTCs and the transition tax do not allow—much less clearly allow—FTCs for Offset Earnings Foreign Taxes..............................16

    1.   Offset Earnings Foreign Taxes cannot meet section 960(a)(3)'s requirements for FTCs because those taxes are treated as already "deemed paid" under section 960(a)(1) ...............17

    2.   FedEx offers no response to several of the Government's arguments supporting reversal...21

-ii-

3.  Statutory history, context, and purpose
    support the Government's interpretation .........25

4.  Statutes allowing tax credits are strictly
    construed in the Government's favor.................31

Conclusion.......................................................................................34
Certificate of compliance ..................................................................35

-iii-

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Allegheny Def. Project v. FERC,*
964 F.3d 1 (D.C. Cir. 2020) (en banc) ........................................... 12

*Apache Corp. v. Commissioner,*
165 T.C. No. 11, 2025 WL 3172872 (Nov. 13, 2025) ................... 33

*Audio Technica U.S., Inc. v. United States,*
963 F.3d 569 (6th Cir. 2020) ................................................. 31-32

*Ball v. Commissioner,*
742 F.3d 552 (3d Cir. 2014) ...................................................... 14

*Burnet v. Chi. Portrait Co.,*
285 U.S. 1 (1932) ..................................................................... 26

*Burroughs Adding Mach. Co. v. Terwilliger,*
135 F.2d 608 (6th Cir. 1943) ..................................................... 32

*Cellnet Commc'ns, Inc. v. FCC,*
149 F.3d 429 (6th Cir. 1998) ..................................................... 20

*Chrysler Corp. v. Commissioner,*
436 F.3d 644 (6th Cir. 2006) .............................................. 26, 32

*General Mills, Inc. v. United States,*
957 F.3d 1275 (Fed. Cir. 2020) ................................................. 33

*Gitlitz v. Commissioner,*
531 U.S. 206 (2001) .............................................................. 13-14

*Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.,*
968 F.3d 454 (5th Cir. 2020) ..................................................... 15

*Hanover Bank v. Commissioner,*
369 U.S. 672 (1962) ................................................................. 14

*Helvering v. Campbell,*
139 F.2d 865 (4th Cir. 1944) ..................................................... 30

*Helvering v. Nw. Steel Rolling Mills, Inc.,*
311 U.S. 46 (1940) ................................................................... 33

*INDOPCO, Inc. v. Commissioner,*
503 U.S. 79 (1992) ................................................................... 32

*Loper Bright Enterprises v. Raimondo,*
603 U.S. 369 (2024) ............................................................ 2, 6-7

*McPherson v. Kelsey,*
125 F.3d 989 (6th Cir. 1997) ..................................................... 22

**Cases (cont'd):**                                                    **Page(s)**

*Moore v. United States,*
36 F.4th 930 (9th Cir. 2022) ................................................... 7, 10

*Murray Energy Corp. v. EPA,*
936 F.3d 597 (D.C. Cir. 2019) .................................................... 14

*New Colonial Ice Co. v. Helvering,*
292 U.S. 435 (1934) ................................................................... 32

*NextEra Energy Res., LLC v. FERC,*
118 F.4th 361 (D.C. Cir. 2024) .................................................. 26

*Sackett v. EPA,*
598 U.S. 651 (2023) .............................................................. 25, 27

*Schering Corp. v. Commissioner,*
69 T.C. 579 (1978) ..................................................................... 31

*Schiff v. United States,*
942 F.2d 348 (6th Cir. 1991) ..................................................... 32

*Staub v. Proctor Hosp.,*
562 U.S. 411 (2011) ................................................................... 26

*Summa Holdings, Inc. v. Commissioner,*
848 F.3d 779 (6th Cir. 2017) ................................................ 13-15

*United States v. Merriam,*
263 U.S. 179 (1923) ................................................................... 33

*United States v. Woodmansee,*
578 F.2d 1302 (9th Cir. 1978) ................................................... 31

*Varian Med. Sys., Inc. v. Commissioner,*
163 T.C. 76 (2024) ......................................................... 8-9, 13, 24

*Varian Med. Sys., Inc. v. Commissioner,*
166 T.C. No. 8 (2026) ......................................................... 7, 9-10

*White v. United States,*
305 U.S. 281 (1938) ................................................................... 33

**Statutes:**                                                          **Page(s)**

Internal Revenue Code (26 U.S.C.):

§ 245A(a) ...................................................................... 10
§ 901 ............................................................................ 16
§ 902 ...................................................................... 16, 18
§ 904 .......................................................................27-30
§ 951 ...............................................................18-21, 23
§ 959 ...........................................................3-4, 6, 18-25
§ 960 ..................................................................... *passim*
§ 965 ..................................................................... *passim*

Tax Cuts and Jobs Act of 2017,
    Pub. L. No. 115-97 (2017)........................................ 18, 30

**Rules and regulations:**

Treasury Regulations (26 C.F.R.):

§ 1.861-20(d)(2)(iii)(B) ................................................ 29
§ 1.965-5(c)(1)(ii) ................................................. *passim*

**Legislative history:**

H.R. Rep. No. 87-1447 (1962) ....................................... 19
H.R. Rep. No. 115-409 (2017) ......................................... 7
H.R. Rep. No. 115-466 (2017) ......................................... 7
S. Rep. No. 99-313 (1985)..........................................28-29
S. Rep. No. 100-445 (1988)........................................... 29

-vi-

**Other authorities:**                                                    **Page(s)**

Antonin Scalia & Bryan A. Garner, *Reading Law* (2012) .................. 26

Joel D. Kuntz & Robert J. Peroni,
    *U.S. International Taxation* ................................................ 28-30

Silicon Valley Tax Directors Group, Comment Letter on
    Proposed Section 965 Regulations (Oct. 9, 2018),
    https://www.regulations.gov/comment/
    IRS-2018-0019-0147. .................................................... 10

U.S. Chamber of Commerce, Chart of Feedback for
    REG-104226-18 (Oct. 3, 2018),
    https://www.regulations.gov/comment/
    IRS-2018-0019-0087 ..................................................... 16

-vii-

# GLOSSARY[1]

| | |
|---|---|
| Ans. | FedEx's answering brief |
| Br. | Government's opening brief |
| Ch.Br. | *Amicus* brief filed by the Chamber of Commerce of the United States of America |
| Disallowance rule | Treas. Reg. § 1.965-5(c)(1)(ii) |
| FTC | Foreign tax credit |
| I.R.C. | Internal Revenue Code (26 U.S.C.) (citing pre-TCJA (2016) versions of I.R.C. §§ 901, 902, 951, 959, and 960 (*see* Br.8 n.3)) |
| IRS | Internal Revenue Service |
| NFTC.Br. | *Amicus* brief filed by the National Foreign Trade Council |
| Offset Earnings | A type of foreign income that Congress effectively exempted from U.S. taxation under I.R.C. § 965(b) |
| Offset Earnings Foreign Taxes | Foreign taxes paid with respect to Offset Earnings |
| Sil.Br. | *Amicus* brief filed by the Silicon Valley Tax Directors Group |
| TCJA | Tax Cuts and Jobs Act of 2017 |
| Treas. Reg. | Treasury Regulation (26 C.F.R.) |

---

[1] Terms defined in the opening brief have the same meanings here.

-1-

## INTRODUCTION

FedEx's brief is most instructive for what it does *not* say.  It fails to identify any plausible reason why Congress, in enacting the transition tax, would have allowed full FTCs for earnings exempt from *all* U.S. tax, while expressly limiting FTCs for transition-taxed earnings to only the amount necessary to prevent double taxation.  (Br.42-46.)  It fails to acknowledge that the "purpose" and "policy" it derides are *Congress's* purpose and policy—reflected in the text of section 965(g) (and a century's worth of other statutes)—which Congress commanded Treasury to protect in the text of section 965(o).  (Br.40-47.)  It ignores the fact that FedEx's claim for FTCs *depends* on section 965(b)(4)(A) applying to part of section 960(a)(3)—but only the part that helps FedEx—even as it doubles down on the District Court's reading that section 965(b)(4)(A) does not apply to section 960 at all.  (Br.49-52.) And it does not dispute that if, as the Government contends, section 965(b)(4)(A) applies to *all* of section 960(a)(3), then FedEx's claim for FTCs fails.  (Br.52-56.)

With all these holes and more, the statutory interpretation that FedEx presents as a *fait accompli* falls far short of the "best" reading.

-2-

This Court should reject FedEx's arguments and reverse the District Court's allowance of FTCs for Offset Earnings Foreign Taxes for either of two independent reasons that do not "rewrite," but rather are compelled by, statutory text.

First, Congress enacted a statute, I.R.C. § 965(o), commanding Treasury to promulgate regulations (or issue guidance) to prevent the avoidance of section 965's purposes. Congress elevated its purpose-driven concern in the statutory text, and Treasury carried out Congress's direction through the disallowance rule, Treas. Reg. § 1.965-5(c)(1)(ii). Section 965(g) demonstrates that one of section 965's purposes is limiting related FTCs to the amount necessary to mitigate double taxation. (Br.40-47.)

Allowing FTCs for Offset Earnings Foreign Taxes would avoid that purpose because Offset Earnings are U.S.-tax-free, so there is no double taxation to mitigate. Indeed, FedEx identifies *no* purpose for allowing such FTCs that would *not* avoid the congressional purpose reflected in section 965(g). Because the disallowance rule prevents the avoidance of section 965's purposes, it is within Congress's delegation of regulatory authority in section 965(o) and valid under *Loper Bright*.

-3-

Second, the complex scheme of statutes governing FTCs, in the context of section 965's transition tax, does not allow FTCs for Offset Earnings Foreign Taxes. (Br.48-66.) That is pellucidly clear when those statutes are strictly construed, as they must be. (Br.65-66 & n.10.) The relevant statutes, which Congress engrafted on one another over the course of a century, must be read as a cohesive whole—not interpreted in isolation.

FedEx nonetheless centers its claim for FTCs on the District Court's myopic view that section 965(b)(4)(A) applies only to section 959, and not to section 960. But again, FedEx offers no response to our argument that, even under the District Court's cramped approach to section 965(b)(4)(A), FedEx still could not qualify for FTCs under section 960(a)(3). (Br.49-52.) For FedEx to win, section 965(b)(4)(A) must be interpreted to apply to the fragment of the single sentence in section 960(a)(3) that helps FedEx (the first requirement) but not to the rest of that sentence (the second requirement), which puts an end to FedEx's claim.[2] (Br.52-56.) FedEx cannot have it both ways.

---

[2] Section 960(a)(3)'s first requirement is that the distribution "is excluded from gross income under section 959(a)." The second

(continued…)

-4-

The better reading is that section 965(b)(4)(A) applies to *all* of section 960(a)(3), but on that point, too, FedEx offers no response to several text-based arguments.  For example, FedEx ignores that (1) section 965(b)(4)(A) applies for multiple "purposes of section 959," not just the single purpose of excluding Offset Earnings distributions from income; (2) section 959(a) applies "[f]or purposes of this chapter" of the Internal Revenue Code; and (3) that chapter includes section 960. (Br.56-57.)

The Government's interpretation is straightforward and consistent with statutory text and structure: Section 965(b)(4)(A) applies to all of section 960(a)(3), and that means FedEx cannot claim FTCs for Offset Earnings Foreign Taxes.  Any doubt on that front, moreover, must be resolved in the Government's favor because statutes granting tax credits are strictly construed.  (Br.65-66.)  In arguing to the contrary, FedEx blatantly misrepresents governing precedent from the Supreme Court and this Court.  If Congress intended to create this nonsensical giveaway from the U.S. Treasury—providing special

---

requirement is that the relevant foreign taxes "were not deemed paid by the domestic corporation under [section 960(a)(1)] for any prior taxable year."

-5-

rewards to companies with unprofitable foreign subsidiaries (and thus Offset Earnings)—Congress had to do so clearly and explicitly, and it did not.

The disallowance rule is within the broad regulatory delegation in section 965(o), and in any event, the Internal Revenue Code does not allow—much less clearly allow—FTCs for Offset Earnings Foreign Taxes. The District Court's decision allowing such FTCs and holding the disallowance rule invalid should be reversed.

## ARGUMENT

**The statutory scheme does not clearly allow FTCs for Offset Earnings Foreign Taxes, but it does clearly authorize Treasury to issue the disallowance rule**

When Congress enacted the transition tax, it squarely addressed FTCs with respect to foreign earnings subject to the transition tax: FTCs are allowed only to the extent necessary to prevent double taxation. I.R.C. § 965(g). But Congress said *nothing* about FTCs with respect to Offset Earnings, the newly created category of foreign earnings that Congress exempted from the transition tax and all other U.S. taxation.

-6-

FedEx does not dispute that the amount of FTCs necessary to prevent double taxation of Offset Earnings is *zero*. And FedEx's position—that Congress, by enacting section 965(b)(4)(A) and leaving in place the fifty-year-old text of sections 959(a) and 960(a)(3), allowed through the back door *unlimited* FTCs with respect to Offset Earnings—is not plausible.

The question for this Court is what is the *best* reading of the statutory scheme, as a whole and in context, regarding FTCs for Offset Earnings Foreign Taxes. The best reading is that, when Congress enacted the transition tax in section 965(a) and limited FTCs with respect to transition-taxed earnings in section 965(g), it delegated authority to Treasury in section 965(o) to similarly limit FTCs with respect to Offset Earnings. And in any event, the statutory scheme does not allow FTCs for Offset Earnings Foreign Taxes.

## A.   The disallowance rule does not rewrite any statute; it carries one out

In *Loper Bright Enterprises v. Raimondo*, the Supreme Court recognized that Congress may confer discretionary authority on agencies, admonished courts "to stay out of discretionary policymaking left to the political branches," and obliged judges to, *inter alia*,

-7-

"independently identify *and respect* [Congress's] delegations of authority."  603 U.S. 369, 404 (2024) (emphasis added).  The District Court's invalidation of the disallowance rule should be reversed because the court neither considered nor respected Congress's broad delegation of discretionary authority in I.R.C. § 965(o).

### 1.  Congress directed Treasury to protect section 965's "purposes"

Preventing windfalls in the transition to a new international tax system was Congress's overall reason for the transition tax in I.R.C. § 965.  (Br.17-19.)  *Moore v. United States*, 36 F.4th 930, 938 (9th Cir. 2022) ("*Moore I*"), *aff'd*, 602 U.S. 572 (2024); H.R. Rep. No. 115-409, at 375 (2017).  That ensured taxpayers with foreign earnings stockpiled offshore would pay some U.S. taxes, albeit at reduced tax rates, before foreign earnings could (generally) be repatriated tax-free under the new system.  (Br.17-18.)  Given the transition tax's low rates, Congress also prevented *FTC-related* windfalls by limiting FTCs to amounts necessary to prevent double taxation.  (Br.22-23.)  *See* I.R.C. § 965(g); *Varian Med. Sys., Inc. v. Commissioner*, 166 T.C. No. 8, *17 (2026) ("*Varian II*"); H.R. Rep. No. 115-466, at 620 (2017) (Conf. Rep.).

-8-

Section 965(g)'s exacting calibration demonstrates that, in imposing the transition tax, Congress struck careful balances. But Congress also was aware that, when it engrafted the transition tax onto longstanding complex international tax provisions (*see* Br.6-23), its legislation would not prevent all machinations by well-resourced taxpayers attempting to subvert the statute's purposes. Congress therefore directed Treasury to prescribe regulations "as may be necessary or appropriate to carry out" section 965, "including . . . regulations or other guidance to prevent the avoidance of the purposes of this section, including through" specified means "or otherwise." I.R.C. § 965(o). That broad delegation—indicated by Congress's use of "necessary or appropriate," "including" (twice), and "or otherwise"—does not limit Treasury's authority to only "address[] certain *means* of avoiding § 965's purpose," as FedEx claims (Ans.49).

Congress, not Treasury, decided that section 965's enacted text was insufficient to protect its purposes. Congress, not Treasury, elevated "the purposes" of section 965 and directed Treasury to protect them. And Congress, not Treasury, "[a]ppeal[ed] to policy and Congress's overarching purpose" in section 965. *Cf. Varian Med. Sys.,*

-9-

*Inc. v. Commissioner*, 163 T.C. 76, 102 (2024) ("*Varian I*") (cited at

Ans.53; rejecting policy arguments that, the Tax Court concluded,

conflicted with explicit statutory text).

### 2.    The disallowance rule is within section 965(o)'s delegation

This dispute highlights one of the issues that Congress did not

explicitly address in section 965.  There is no evidence that Congress

imagined that taxpayers reaping the benefits of the transition tax's low

rates—and protected from double taxation through FTCs in

corresponding amounts set by section 965(g)—would also demand FTCs

related to Offset Earnings, which Congress permanently exempted from

U.S. taxes.  But section 965(g) nonetheless makes plain Congress's

*purpose* regarding FTCs and section 965: In this context, FTCs should

be allowed only to the extent necessary to mitigate double taxation.

(Br.40-47.)  Without the reduction in section 965(g), taxpayers "would

receive full credit for foreign taxes deemed paid" on amounts subject to

the transition tax, "even though the underlying earnings . . . [are] taxed

at significantly reduced rates." *Varian II*, 166 T.C. No. 8, at *17.  "To

avoid this result, section 965(g) includes rules that reduce deemed paid

foreign taxes . . . in tandem with the section 965(c) deduction" that effectuates the transition tax's low rates.  *Id.*

In avoidance of section 965(g)'s purpose, FedEx demands *full* FTCs related to Offset Earnings that are subject to *zero* U.S. taxes.  The disallowance rule prevents such avoidance, just as section 965(o) directed Treasury to do.  (Br.40-47.)  FedEx, notably, has proffered *no* purpose for section 965(g) that would *not* be avoided by allowing FTCs for Offset Earnings Foreign Taxes.  FedEx only parrots the District Court's unsupported musing that perhaps Congress silently meant to allow the disputed FTCs as an additional incentive to repatriate offshore earnings.[3]  (Ans.32, 54; Order, RE 49, Page ID # 989.)  But the TCJA's explicit incentive was making repatriation (generally) tax-free. *See Moore I*, 36 F.4th at 933 (citing I.R.C. § 245A(a)).

---

[3] The Silicon Valley Tax Directors Group posits that *Congress's silence* on the topic should be understood as a "deliberate" decision to allow FTCs for Offset Earnings Foreign Taxes and argues that the disallowance rule therefore "displays a lack of reasoned decisionmaking."  (Sil.Br.17.)  But when that group wanted Treasury to change the "literal interpretation" of *enacted statutory text*, to avoid a policy outcome the group viewed as "potentially harmful," it contended that section 965(o) granted Treasury such authority.  Silicon Valley Tax Directors Group, Comment Letter on Proposed Section 965 Regulations, at 11, 13 (Oct. 9, 2018), https://www.regulations.gov/comment/IRS-2018-0019-0147.

-11-

It is wholly implausible, moreover, that Congress—without saying a single word—allowed full FTCs for Offset Earnings Foreign Taxes at the same time it expressly limited FTCs with respect to transition-taxed earnings in section 965(g).  (Br.44-45.)  If Congress had wanted to use FTCs as an additional repatriation incentive, why would it have limited FTCs for earnings that it *did* tax to amounts necessary to prevent double taxation (in section 965(g)) but then allowed full FTCs related to Offset Earnings, which Congress *exempted* from U.S. taxes?  (*See id.*)

Recall, too, that Congress created the concept of U.S.-tax-free Offset Earnings to recognize the existence of unprofitable foreign subsidiaries.  (Br.19-20.)  FedEx offers no reason—and there is no reason—to think that Congress intended to offer greater repatriation incentives to companies that were *less successful* at business overseas (and thus had more Offset Earnings) than it offered to companies that were *more successful* at business overseas (and thus had less Offset Earnings).  FedEx's assertions regarding congressional purpose are unsupported and senseless.

-12-

### 3. The disallowance rule does not "rewrite" anything

FedEx primarily asserts that the disallowance rule impermissibly rewrites a statute. That is not so. The Government agrees with the unassailable principle that "agencies cannot rewrite statutes" (Ans.49), but the disallowance rule does no such thing. The disallowance rule carries out Congress's mandate in section 965(o) to prevent the avoidance of section 965's "purposes." Because there is no statute that expressly addresses (much less allows) FTCs for Offset Earnings Foreign Taxes, there is no statute that the disallowance rule could have "'render[ed] nugatory.'" (Ans.46 (quoting *Allegheny Def. Project v. FERC*, 964 F.3d 1, 16 (D.C. Cir. 2020) (en banc) (invalidating "delet[ion]" of statute's explicit time limit, *id.* at 15).)

FedEx's *argument* is that section 960(a)(3) addresses FTCs for Offset Earnings Foreign Taxes. And it repeatedly protests that the disallowance rule somehow rewrote section 960(a)(3). (*E.g.*, Ans.36-37, 47-48.) But section 960(a)(3) was enacted in 1962, more than fifty years before Congress created the concept of Offset Earnings in the 2017 TCJA. (Br.10-20.) It is therefore unsurprising that the text of section 960(a)(3) says nothing about Offset Earnings or related FTCs.

-13-

FedEx also posits that the disallowance rule's existence is evidence that Treasury thought section 960(a)(3) allowed FTCs for Offset Earnings Foreign Taxes.  (Ans.47-48.)  That, plainly, is not true. Treasury's consistent position, from the promulgation of the disallowance rule throughout this litigation, has been that section 960(a)(3) does not allow such FTCs.  (*See* Br.20-22, 25, 48-66.)

With no statute explicitly allowing FTCs for Offset Earnings Foreign Taxes, it is easy to distinguish *Summa Holdings, Inc. v. Commissioner*, 848 F.3d 779 (6th Cir. 2017), on which FedEx heavily relies (Ans.2, 33, 39, 51-56).  *Summa Holdings* concluded that "tax avoidance" was the "congressionally sanctioned purpose[]" that the relevant statute "expressly contemplate[d]," and that the Commissioner could not "recharacterize the meaning of statutes."  *Id.* at 782, 784-85. FedEx also cites *Varian I* (Ans.53), which invalidated a Treasury regulation that "contradict[ed] the [statute's] clear effective date."  163 T.C. at 107-08.  In *Gitlitz v. Commissioner* (cited at Ans.52), the Supreme Court declined to consider policy concerns about taxpayers' "double windfall," which "the Code's plain text permit[ted]."  531 U.S.

-14-

206, 219-20 (2001), *superseded by statute*, *as recognized in Ball ex rel.*
*Ball v. Commissioner*, 742 F.3d 552, 557 n.17 (3d Cir. 2014).

Here, *no statutory text* explicitly addresses or allows FTCs for
Offset Earnings Foreign Taxes. There is, accordingly, no "clear,
specific" statutory text that the disallowance rule could have
"displace[d]." *Cf. Murray Energy Corp. v. EPA*, 936 F.3d 597, 627 (D.C.
Cir. 2019) (per curiam) (cited at Ans.46; holding that the EPA allowed
"exactly what the plain text of the [statute] forbids," *id.* at 625). There
*is*, however, statutory text (section 965(o)) directing Treasury to stop
taxpayers from avoiding section 965's purposes.

FedEx quotes *Summa Holdings* for the concept that "'[t]he best
way to effectuate Congress's nuanced policy judgments is to apply each
provision as its text requires—not to elevate purpose over text.'"
(Ans.53 (quoting 848 F.3d at 788-89).) But here, *Congress* elevated
statutory purpose "on the face of the statute." *Cf. Hanover Bank v.*
*Commissioner*, 369 U.S. 672, 687-88 (1962) (cited at Ans.53; declining
"to effect a purpose which *does not* appear on the face of the statute,"
where "an informed Congress" explicitly chose not to act (emphasis
added)). In section 965(o), *Congress* made a nuanced policy judgment to

-15-

delegate to Treasury authority to ensure sophisticated taxpayers like FedEx could not sidestep section 965's purposes.

The Government does not ask this Court to engage in "judicial innovation based on misty calls to higher purposes." *Summa Holdings*, 848 F.3d at 789. Congress called on Treasury to protect the purposes of section 965. The disallowance rule thus is not "text avoidance" but text compliance. *See id.* at 787.

### 4. The disallowance rule affects only Offset Earnings

Consistent with the boundaries on section 965(o)'s delegation to Treasury, the disallowance rule is directly focused on preventing the avoidance of section 965's purposes. The rule affects how Offset Earnings—uniquely created by section 965(b)—are treated regarding FTCs. Treasury thus did not seize "unbounded" discretion across the Internal Revenue Code. (*E.g.*, Ans.45-46; *see also id.* at 48.) And Treasury did not "expand the scope of the provisions" Congress assigned it to carry out. *Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.*, 968 F.3d 454, 465 (5th Cir. 2020) (quoted at Ans.46).

To be sure, because Congress chose to implement section 965 through long-existing pathways in subpart F (Br.17-23), the outputs of

-16-

section 965 and the disallowance rule necessarily interact with and flow through other Code provisions. Section 965(g)(1), for example, limits FTCs "allowed under section 901." The disallowance rule, Treas. Reg. § 1.965-5(c)(1)(ii), similarly provides that, for Offset Earnings Foreign Taxes, "[n]o credit is allowed under section 960(a)(3)," which references the indirect FTC in section 902. But section 965(g) and the disallowance rule create customizations for the transition-tax context *within* the preexisting statutory pathways in subpart F.[4] The disallowance rule thus is "anchored to" section 965, which Treasury unquestionably can "carry out." (Ans.45.)

B.   **The statutes governing FTCs and the transition tax do not allow—much less clearly allow—FTCs for Offset Earnings Foreign Taxes**

FedEx argues that, somewhere in the interaction of section 965(b)(4)(A) and 960(a)(3), Congress silently allowed full FTCs related

---

[4] The Chamber of Commerce now contends that section 965(o) applies only to section 965 and not to section 960. (Ch.Br.26-27.) But when commenting on proposed regulations, the Chamber advocated the opposite: that section 965(o) empowered Treasury to issue a regulation reflecting the Chamber's preferred policy regarding FTCs under section 960(a)(3). U.S. Chamber of Commerce, Chart of Feedback for REG-104226-18, at 23-25 (Oct. 3, 2018), https://www.regulations.gov/comment/IRS-2018-0019-0087.

-17-

to Offset Earnings, while entirely exempting Offset Earnings from U.S. taxes—and while carefully limiting FTCs for foreign income that *was* subject to the transition tax. In its opening brief, the Government offered a panoply of reasons to reject that interpretation. FedEx has not overcome the Government's arguments that statutory text, interpreted in context, shows that Congress did *not* allow FTCs for Offset Earnings Foreign Taxes.

> **1. Offset Earnings Foreign Taxes cannot meet section 960(a)(3)'s requirements for FTCs because those taxes are treated as already "deemed paid" under section 960(a)(1)**

As discussed at length in our opening brief (Br.5-24, 48-66), the interlocking statutes regarding FTCs and section 965 do not allow FTCs for Offset Earnings Foreign Taxes. If there is any doubt, it must be resolved in the Government's favor because statutes allowing tax credits are strictly construed. (Br.65-66; *infra* at 31-34.)

Congress enacted the relevant statutes over the course of a century, starting with creating FTCs in 1918 and limiting them three years later, to preserve U.S. taxes on U.S. source income. (Br.7-10.) Historically, foreign earnings generally were not subject to U.S. tax until distributed to U.S. taxpayers. Congress enacted subpart F in 1962

-18-

to currently tax some foreign income, even if it was not actually distributed. (Br.10-11.) And in the 2017 TCJA, Congress used the subpart F mechanism to carry out the transition tax and related provisions. (Br.17-24.) These statutes work together and must be interpreted as a unified scheme, not as isolated parts.

In subpart F, Congress carefully corresponded *inclusion* in taxable income with making FTCs available, and *exclusion* from taxable income with barring FTCs. (*See* Br.15.)

1. When subpart F income is included under I.R.C. § 951(a), section 960(a)(1) allows FTCs through I.R.C. § 902, by effectively deeming the associated foreign taxes to have been paid by the U.S. corporation. (Br.11-14; *see* Ans.17.)

2. When a U.S. shareholder later receives distributions of earnings already taxed under subpart F (via section 951(a)), section 959(a) prevents a second round of U.S. taxes by excluding the distribution from income (because the related earnings previously were included under section 951(a)), and section 960(a)(2) prevents a second round of FTCs. (Br.12, 14-15; *see* Ans.14, 17.)

-19-

   3. When a distribution is excluded under section 959(a), section 960(a)(3) provides a narrow exception to section 960(a)(2) that allows FTCs for certain foreign taxes that were *not* "deemed paid" under section 960(a)(1).  (Br.15-16.)

Congress enacted the narrow exception in section 960(a)(3) to allow FTCs where foreign taxes were imposed *after* the subpart F inclusion under section 951(a), and thus *after* the initial round of FTCs under section 960(a)(1).  (Br.15 (citing H.R. Rep. No. 87-1447 (1962), at 66).)

The later-enacted transition tax works through subpart F's preexisting statutory pathways.  (Br.17-20.)  Generally speaking:

   1. Section 965(a) increases subpart F income (under section 951(a)) by certain accumulated foreign income.  (Br.19; *see* Ans.18-19.)

   2. Section 965(b)(1)-(3) reduces that subpart F income inclusion by certain accumulated foreign deficits, recognizing that some foreign entities were historically unprofitable.  (Br.19-20.)  The income offset by deficits is Offset Earnings and is not subject to the transition tax.  (*Id.*; *see* Ans.19-20.)

-20-

3. Section 965(b)(4)(A) exempts *distributions* of Offset Earnings from U.S. taxes—rendering Offset Earnings permanently exempt from U.S. taxes.[5]  (Br.20-22; *see* Ans.20-21.)

Specifically, "[f]or purposes of applying section 959," section 965(b)(4)(A) treats Offset Earnings "as an amount which was included" in income "under section 951(a)."  Sending that fictional treatment through the usual subpart F rules under section 959(a) is what makes distributions of Offset Earnings exempt from U.S. taxes.  (Br.12.)

Critically, section 965(b)(4)(A)'s treatment of distributions of Offset Earnings as though they *already were* included in income under section 951(a) also means treating them, under the usual subpart F rules, as though any associated foreign taxes were "deemed paid"—and thus as though FTCs *already were* allowed—under section 960(a)(1). And that makes FTCs unavailable under section 960(a)(3).  (Br.13-15,

---

[5] FedEx has abandoned and forfeited its argument, rejected by the District Court (Order, RE 49, Page ID # 987 n.13), that Offset Earnings could eventually be subject to double taxation.  This Court should not consider any attempt by *amicus* to revive FedEx's forfeited argument. (*See* NFTC.Br.25-27.)  Indeed, *amici* raise many arguments that FedEx has not.  We generally do not address such arguments because an *amicus* "may not raise additional issues or arguments not raised by the parties," and this Court "may not consider such issues."  *Cellnet Commc'ns, Inc. v. FCC*, 149 F.3d 429, 443 (6th Cir. 1998).

22.) Regarding this critical point, FedEx agrees that, when a taxpayer includes income under section 951, it can claim FTCs in that same year under section 960(a)(1). (Ans.17, 34, 40.) There is no dispute that, under the usual subpart F rules, these occur together. But what FedEx fails to recognize is that this means, when Offset Earnings are distributed, no FTCs are available under section 960(a)(3) for Offset Earnings Foreign Taxes. Why? Because those foreign taxes are treated as though they already *were* "deemed paid by the domestic corporation under [section 960(a)(1)]," in contravention of section 960(a)(3)'s second requirement.

### 2. FedEx offers no response to several of the Government's arguments supporting reversal

The keystone to FedEx's position is its view that the District Court correctly held that the treatment of Offset Earnings distributions in section 965(b)(4)(A) applies *solely* to section 959—and specifically *not* to section 960. (Ans.37, 42, 58-59; Order, RE 49, Page ID # 980-982.) That means, in FedEx's view, that section 965(b)(4)(A) does only one thing: It excludes Offset Earnings distributions from U.S. taxes under section 959 and stops right there. There are a panoply of problems with that analysis, as we explained in our brief. Section 965(b)(4)(A) applies

-22-

to section 960(a)(3)—to *all* of that provision, not just the part that helps FedEx—and that is fatal to FedEx's FTC claims.  (Br.52-56.)

We start with several arguments supporting reversal that FedEx ignores in its brief, thereby forfeiting any response.  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

1.    FedEx ignores (and forfeited any response to) our argument that it would lose, even under the District Court's mistaken and cramped view that section 965(b)(4)(A) applies solely to section 959 (and not section 960).  (Br.49-52.)  If that were the case, distributions of Offset Earnings could not meet section 960(a)(3)'s first requirement because, without section 965(b)(4)(A) applying to section 960(a)(3), Offset Earnings distributions are not "excluded from gross income under section 959(a)."  (Br.49-52.)  Offset Earnings distributions are only *treated* that way if section 965(b)(4)(A) applies to section 960, but the District Court and FedEx insist that it does not.  The Government disagrees with this analysis, but it still closes the door on FTCs for Offset Earnings Foreign Taxes.  (Br.49-52.)  Especially given FedEx's silence on this issue, this Court could reverse on this basis alone.

-23-

2.      FedEx also ignores (and forfeited any response to) our argument that section 965(b)(4)(A) must apply to the whole sentence in section 960(a)(3), not just the part that helps FedEx.  (Br.53-56.)  FedEx just plows ahead (albeit implicitly) with an inconsistent position. Despite insisting that section 965(b)(4)(A) *does not apply to section 960 at all*, FedEx relies on section 965(b)(4)(A) to assert that Offset Earnings meet section 960(a)(3)'s first requirement (exclusion from gross income under section 959(a)).  But that would require section 965(b)(4)(A) *to apply to section 960* (which FedEx paradoxically insists it does not do).  (*Compare, e.g.*, Ans.37, 42, 58-59 (arguing that section 965(b)(4)(A) applies solely to section 959 and not section 960) *with* Ans.21, 41 (citing section 965(b)(4)(A) to argue that Offset Earnings meet section 960(a)(3)'s first requirement).)  In one place, FedEx flipflops from one page to the next.  On page 41, FedEx cites section 965(b)(4)(A) to assert that Offset Earnings meet section 960(a)(3)'s first requirement.  But on page 42, FedEx states that "§ 965(b)(4)(A) requires only application of § 959, and treating offset earnings as previously taxed under § 951(a) for purposes of *that* application only."  FedEx cannot have it both ways.

-24-

3.      FedEx also ignores (and forfeited any response to) our grammatical argument that section 965(b)(4)(A) cannot be applied only for the *singular* purpose of exempting Offset Earnings distributions from U.S. taxes (*see* Ans.42) because section 965(b)(4)(A) applies "[f]or purposes"—*plural*—"of applying section 959" (Br.52-53).  And section 959(a), in turn, applies "[f]or purposes of this chapter" of the Internal Revenue Code, which includes section 960.  (*See* Br.56-57.)  "Saying that an amount will be treated in a particular manner for purposes of this [chapter] . . . is equivalent to listing every section in the [chapter] and saying that the amount will be so treated for purposes of each section." *Varian I*, 163 T.C. at 93 (internal quotations omitted).  Applying section 965(b)(4)(A) "[f]or purposes of applying section 959" thus means for purposes of every relevant section in section 959's chapter, including section 960.[6]  (Br.56-57.)

For these and other reasons, the best statutory interpretation is that section 965(b)(4)(A) applies to all of section 960.  But if section

---

[6] FedEx also does not defend (and forfeited any defense of) the District Court's *sua sponte* commentary regarding the "prior taxable year" issue.  (Order, RE 49, Page ID # 986-987.)  That commentary was mistaken (Br.58-61), and we will not further address it.

965(b)(4)(A) applies only to section 959, and *not* section 960—as the District Court held—FedEx cannot meet section 960(a)(3)'s first requirement (exclusion from gross income under section 959(a)).  (Br.49-52.)  And if 965(b)(4)(A) applies to section 960, as the Government contends (and FedEx implies, when it suits FedEx), FedEx cannot meet section 960(a)(3)'s second requirement (that the foreign taxes were not previously deemed paid under section 960(a)(1)).  (Br.52-56.)  Either way, FedEx is not entitled to the FTCs it seeks.

### 3.    Statutory history, context, and purpose support the Government's interpretation

FedEx and the District Court interpret the relevant statutes in isolation.  But "[t]he meaning of a word may only become evident when placed in context."  *Sackett v. EPA*, 598 U.S. 651, 674 (2023) (internal quotations omitted).  The Government's interpretation is the best way to read the text in these complex statutes, integrates these statutes as a cohesive whole, and comports with the overarching purpose for FTCs, *viz.*, to mitigate double taxation while preserving unrelated U.S. taxes.  (Br.61-65.)  As the Supreme Court, this Court, and other courts have stated for nearly a century, this is *Congress's* overall policy for FTCs, not *Treasury's* policy preference, as FedEx asserts (*e.g.* Ans.51-54).  *E.g.*,

-26-

*Burnet v. Chi. Portrait Co.*, 285 U.S. 1, 7 (1932); *Chrysler Corp. v. Commissioner*, 436 F.3d 644, 654 (6th Cir. 2006).  The Government's interpretation is rooted in statutory text and faithfully applies the transition-tax customizations in section 965 to the preexisting statutory pathways for subpart F.

FedEx's interpretation, by contrast, would topple that integrated and longstanding statutory structure by allowing FTCs on U.S.-tax-free Offset Earnings, against Congress's overarching purpose for FTCs—all without a single word from Congress even suggesting that should be the outcome.  That conflicts with the "bedrock principle[] of statutory construction" that "courts should prefer textually permissible readings that would advance statutory or regulatory goals over ones that would frustrate them."  *NextEra Energy Res., LLC v. FERC*, 118 F.4th 361, 371 (D.C. Cir. 2024) (citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 420 (2011); Antonin Scalia & Bryan A. Garner, *Reading Law* 63 (2012)).

Particularly against this backdrop, this Court should not conclude that Congress silently created a massive giveaway from the U.S. Treasury to subsidize corporations with unprofitable foreign subsidiaries, out of the pockets of every other U.S. taxpayer who is not

-27-

in that position.  Again, there is no reason to think that Congress

(1) carefully limited FTCs for amounts that *are* subject to the transition

tax, (2) permanently exempted Offset Earnings from the transition tax

*and all other U.S. taxes*, but nonetheless (3) allowed full FTCs for those

U.S.-tax-free Offset Earnings.  Especially in light of Congress's silence

on the subject, such an "implausible interpretation" should not be

adopted.  *See Sackett*, 598 U.S. at 677 (observing that "it would be odd

indeed if Congress had tucked an important expansion to [a statute's

reach] into convoluted language in a relatively obscure provision").

FedEx acknowledges (Ans.3) that the FTC "regime generally was

designed to address issues that arise when U.S. entities face taxation at

home and abroad," *i.e.*, double taxation.  But FedEx nonetheless

attempts to chip away at the idea that double taxation is (and always

has been) Congress's overarching goal for FTCs.  As we described,

Congress now employs a categorical or "basketing" approach to the FTC

limitation in I.R.C. § 904.  (*See* Br.9-10 & n.4.)  FedEx points out that

basketing allows taxpayers to "claim FTCs associated with foreign taxes

paid on income that the United States doesn't also tax."  (Ans.11-12.)

-28-

For three reasons, Congress's use of basketing does not aid FedEx. First, Congress enacted statutes clearly allowing basketing for FTCs but it enacted no statute clearly allowing FTCs for Offset Earnings Foreign Taxes. Second, the marginal mismatches between FTCs and double taxation that basketing allows within each category are incidental, ease administrability, and are different in kind from allowing full FTCs related to an entire swath of income (Offset Earnings) that Congress rendered U.S.-tax-free. Third, Congress created the basketing scheme to *more closely correspond* FTCs with the related foreign taxes (and mitigation of double taxation), and thereby *reduce* taxpayers' ability to use FTCs to avoid unrelated U.S. taxes. That supports the Government's position, not FedEx's.

The overall FTC limitation that Congress enacted in 1921 (now codified at I.R.C. § 904(a), *see* Br.8-10) still allowed "averaging" (or "cross-crediting") of different tax rates in different countries, and on different types of income. *See* S. Rep. No. 99-313, at 296-98, 302 (1985). Taxpayers could "credit high foreign taxes paid on one stream of income against the residual U.S. tax otherwise due on other, lightly taxed foreign income." S. Rep. No. 99-313, at 302; *see also* Joel D. Kuntz &

-29-

Robert J. Peroni, *U.S. International Taxation* ¶ B4.16[1] ("Kuntz-Peroni").

Over the years, Congress has taken different approaches to address this problem, including varying the level of restrictions for basketing. *See* Kuntz-Peroni ¶ B4.16[1]. When Congress broadened basketing in 1986, *id.* at ¶ B4.16[5][a], it recognized that the overall FTC limitation had aimed, since 1921, at "prevent[ing] a taxpayer from using [FTCs] to offset U.S. tax on U.S. income," S. Rep. No. 99-313, at 295. (*See also* Br.8-9.) Congress imposed separate FTC limitations on certain baskets of income to "help to preserve the U.S. tax on foreign income that frequently bears little or no foreign tax while at the same time ensuring that double taxation is relieved with respect to all categories of income." S. Rep. No. 99-313, at 297; *see also* S. Rep. No. 100-445, at 217 (1988); Kuntz-Peroni ¶ B4.16[5][a].[7]

---

[7] FedEx also references the basketing treatment for "base differences" (Ans.12), where (generally speaking) a foreign country taxes something that the U.S. never treats as income. Such "base differences" are narrow and relatively rare—and do not support the massive departure from FTC norms that FedEx advocates here. *See* Treas. Reg. § 1.861-20(d)(2)(iii)(B) (limiting base differences to, *e.g.*, certain statutorily defined death benefits, gifts and inheritances, capital contributions, and money or property exchanged for stock or partnership interests).

-30-

Congress simplified the basketing regime in the early 2000s but maintained separate categories for general income and passive income, which is typically taxed at lower rates.  I.R.C. § 904(d)(1) (2016); Kuntz-Peroni ¶¶ B4.16[1], [5][a].  And in the 2017 TCJA, the same Act that imposed the transition tax and created Offset Earnings, Congress also added two baskets and thus "moved in the direction of tightening up the foreign tax credit limit and reducing the amount of 'averaging' or 'cross-crediting' of foreign taxes."  Kuntz-Peroni ¶ B4.16[5B].  *See* I.R.C. § 904(d)(1); TCJA, Pub. L. No. 115-97, §§ 14201(b)(2), 14302(a), 131 Stat. 2054, 2212, 2225 (2017).  Consistent with the Government's position here, Congress's tightening of the FTC limits in the TCJA demonstrated a continued commitment to the broad goal of using the FTC to mitigate double taxation, while preserving U.S. taxes on unrelated income.

FedEx also cites some historic cases (Ans.12) that do not advance its cause.  *Helvering v. Campbell* allowed FTCs for an individual U.S. citizen earning all income abroad (a far cry from FedEx) because the governing statute had "no ambiguity" and "clearly authorize[d]" the credit.  139 F.2d 865, 870-71 (4th Cir. 1944).  But no statute clearly or

-31-

unambiguously allows FTCs for Offset Earnings Foreign Taxes. *United States v. Woodmansee* decided a limitations issue and observed that the Government did not rely on the position *Campbell* rejected. 578 F.2d 1302, 1303-04 & n.2 (9th Cir. 1978). *Schering Corp. v. Commissioner* cited *Campbell* to bolster its conclusion that, although U.S. tax did not reach an item, a Swiss tax on an item was an "income tax" for FTC purposes (a dispute not relevant here). 69 T.C. 579, 592-93 (1978).

### 4. Statutes allowing tax credits are strictly construed in the Government's favor

The complex and interconnected statutes governing FedEx's claims do not allow FTCs for Offset Earnings Foreign Taxes. (Br.52-65.) But any doubt on that front must be resolved in the Government's favor—*i.e.*, to not allow FTCs for Offset Earnings Foreign Taxes—because statutes regarding tax credits must be strictly construed in the Government's favor. (Br.65-66 & n.10.)

Responding to this argument, FedEx misrepresents precedent of the Supreme Court and this Court by positing that the cases the Government cited (at Br.65-66) "just confirm that taxpayers have" the burden of proof (Ans.61). FedEx is wrong. In *Audio Technica U.S., Inc. v. United States*, this Court wrote, "Federal statutes that grant tax

-32-

deductions [and credits] are matters of legislative grace *and are strictly construed in favor of the government*"—before stating, in the next sentence, that taxpayers bear the burden of proof.  963 F.3d 569, 578 (6th Cir. 2020) (bracketed addition in original; internal quotations omitted; emphasis added).  FedEx also misrepresents *INDOPCO, Inc. v. Commissioner*, where the Supreme Court stated that "deductions are strictly construed and allowed only 'as there is a clear provision therefor.'"  503 U.S. 79, 84 (1992) (quoting *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934)).  *Schiff v. United States* explained that "[t]ax deductions and credits are a matter of legislative grace, and a taxpayer must *clearly establish* entitlement"—not just bear the burden of proof.  942 F.2d 348, 352 (6th Cir. 1991) (emphasis added).  FedEx also ignores (*see* Ans.61) that two of this Court's cases regarding FTCs cited the rule of strict construction.  (Br.65-66 (citing *Burroughs Adding Mach. Co. v. Terwilliger*, 135 F.2d 608, 610 (6th Cir. 1943); *Chrysler Corp.*, 436 F.3d at 654).)

    The cases from which FedEx seeks support (Ans.61) address a different issue, *viz.*, whether there is an interpretive canon that applies to statutes *imposing* tax.  That is irrelevant here, and courts have

-33-

rejected the idea that statutes imposing tax obligations are read in favor of the taxpayer. Along with a D.C. Circuit footnote and a Tax Court opinion (Ans.61), FedEx cites *United States v. Merriam*, which stated that, for "statutes levying taxes," "doubt must be resolved against the government and in favor of the taxpayer," 263 U.S. 179, 187-88 (1923). But fifteen years later, in *White v. United States*, the Supreme Court not only rejected that argument but also emphasized that a different rule applies to deductions, which are "a matter of legislative grace" and only allowed where there is "clear provision therefor." 305 U.S. 281, 292 (1938) (internal quotations omitted); *see also General Mills, Inc. v. United States*, 957 F.3d 1275, 1285 n.8 (Fed. Cir. 2020) (explaining that *White* rejected this aspect of *Merriam*). The Tax Court opinion FedEx cites (Ans.61) relied, *inter alia*, on *Merriam*'s disavowed reasoning. *See Apache Corp. v. Commissioner*, 165 T.C. No. 11, 2025 WL 3172872, at *11 (Nov. 13, 2025). And the Supreme Court later cited *White* in observing that "[i]t has been said many times that provisions granting special tax exemptions are to be strictly construed." *Helvering v. Nw. Steel Rolling Mills, Inc.*, 311 U.S. 46, 49 & n.7 (1940).

-34-

As this precedent shows, statutes concerning tax credits are strictly construed, in the Government's favor.

Congress did not enact any statute addressing FTCs related to Offset Earnings, and no existing statute—especially when strictly construed—clearly allows FTCs for Offset Earnings Foreign Taxes.

## CONCLUSION

The District Court erred in invalidating the disallowance rule and in allowing FedEx to claim FTCs for Offset Earnings Foreign Taxes. This Court should reverse that ruling, vacate the judgment, and remand for further proceedings.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*
JOSHUA WU
  *Deputy Assistant Attorney General*

/s/ Norah Bringer

CLINT A. CARPENTER          (202) 514-4346
NORAH E. BRINGER           (202) 307-6224
  *Attorneys, Tax Litigation Branch*
  *Civil Division, U.S. Department of Justice*
  *Post Office Box 502, Washington, D.C. 20044*

MAY 13, 2026

-35-

## CERTIFICATE OF COMPLIANCE

### Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.  This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

[X]   this document contains 6,400 words, **or**

[ ]   this brief uses a monospaced typeface and contains _____ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X]   this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

[ ]   this brief has been prepared in a monospaced typeface using _____ with _____.

(s)   /s/ Norah E. Bringer

Attorney for   United States of America

Dated:  May 13, 2026